**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                              )
CAMPAIGN FOR ACCOUNTABILITY,          )
                                                              )
                        Plaintiff,                          )
                                                              )
            v.                                               )            Civil Action No. 1:16-cv-1068 (KBJ)
                                                              )
U.S. DEPARTMENT OF JUSTICE,              )
                                                              )
                        Defendant.                       )
_____)


**<u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

Table of Contents ....................................................................................................... i

Table of Authorities................................................................................................... iii

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................4

I.   Relevant Statutory Framework. .............................................................................4

II.  Factual and Procedural History. ............................................................................5

STANDARD OF REVIEW ...........................................................................................9

ARGUMENT ...............................................................................................................10

I.   CFA's Primary Claim Is Not Redressable Because FOIA Does Not Permit the Type of
     Broad Relief Sought Here. .................................................................................11

     A.  Pursuant to FOIA's Limited Remedial Provision, Courts Cannot Compel Agencies
         to Affirmatively Publish Documents. ..........................................................11

     B.  Any Alternative Approach Would Radically Transform FOIA by Allowing
         Comprehensive Judicial Oversight of Agencies' Ongoing Publication Practices. ............13

II.  CFA's Primary Claim is Not Ripe for Adjudication Because it Is Too Abstract for
     Judicial Resolution................................................................................................15

     A.  A More Concrete Factual Setting is Necessary for Adjudicating CFA's Claim................15

     B.  CFA Would Not Suffer Any Hardship in Delaying Review..............................................17

III. The Complaint Also Fails as a Matter of Law Because FOIA Does Not Require OLC
     to Publish Its Legal Advice. ...............................................................................19

     A.  CFA Does Not Plausibly Allege Any Unlawful Failure to Publish by OLC. ...................21

     B.  OLC Is Not Required to Publish Its Confidential Legal Advice, as the D.C.
         Circuit's Recent *EFF* Decision Confirms. ........................................................24

         1.  OLC Need Not Disclose All of its Legal Advice.........................................................24

         2.  OLC's Legal Advice Does Not Fall Within § 552(a)(2). ............................................25

         3.  OLC's Opinions Are Generally Exempt from Disclosure Pursuant to Both the
             Deliberative Process Privilege and the Attorney-Client Privilege..............................29

     C.  OLC Does Not Create Secret Law. ..................................................................33

D.  OLC's Role Within the Executive Branch Underscores the Importance of Maintaining Applicable Privileges.....................................................................35

E.  CFA's Argument Raises Significant Constitutional Concerns. .........................................37

IV. The Indexing Claim Must Be Dismissed. ...............................................................................40

CONCLUSION.....................................................................................................................................41

## TABLE OF AUTHORITIES

CASES

*ACLU v. Dep't of Justice*,
   2011 WL 10657342 (D.D.C. Feb. 14, 2011) ......................................................................... 33

*Afshar v. Dep't of State*,
   702 F.2d 1125 (D.C. Cir. 1983) ............................................................................................ 34

*Am. Fed'n of Gov't Employees, AFL-CIO v. O'Connor*,
   747 F.2d 748 (D.C. Cir. 1984) .............................................................................................. 17

*Am. Mail Line, Ltd. v. Gulick*,
   411 F.2d 696 (D.C. Cir. 1969) .............................................................................................. 12

*Armstrong v. Bush*,
   924 F.2d 282 (D.C. Cir. 1991) .............................................................................................. 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 21, 22

*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*,
   997 F.2d 898 (D.C. Cir. 1993) .............................................................................................. 38

*Atl. States Legal Found. v. EPA*,
   325 F.3d 281 (D.C. Cir. 2003) .............................................................................................. 16

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) .............................................................................................................. 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 9, 10, 21, 23

*Brennan Ctr.*,
   697 F.3d at  (2d Cir. 2012) .................................................................................................. 28

*Brinton v. Dep't of State*,
   636 F.2d 600 (D.C. Cir. 1980) .............................................................................................. 35

*Clark v. Martinez*,
   543 U.S. 371 (2005) .............................................................................................................. 13

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ........................................................................................ 32, 35

*Consolidation Coal Co. v. Fed. Mine Safety & Health Review Comm'n*,
   824 F.2d 1071 (D.C. Cir. 1987) ............................................................................................ 15

*CREW v. Dep't of Justice*,
   Case No. 13-cv-01291,  2016 WL 912167 (D.D.C. Mar. 7, 2016) ........................ 7, 12, 13, 18

*CREW v. Nat'l Archives & Records Admin.*,
  583 F. Supp. 2d 146 (D.D.C. 2008) ............................................................ 31, 33

*CREW v. Office of Admin.*,
  249 F.R.D. 1 (D.D.C. 2008) ...................................................................... 31, 35

*Crowell v. Benson*,
  285 U.S. 22 (1932) ......................................................................................... 40

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ......................................................................................... 9

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) ......................................................................... 9

*Elec. Frontier Found. v. Dep't of Justice*,
  739 F.3d 1 (D.C. Cir. 2014) ................................................................... passim

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,
  584 F. Supp. 2d 65 (D.D.C. 2008) ...................................................... 28, 31, 35

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,
  511 F. Supp. 2d 56 (D.D.C. 2007) ................................................................. 33

*EPA v. Mink*,
  410 U.S. 73 (1973) ......................................................................................... 12

*Fed. Open Mkt. Cmte. v. Merrill*,
  443 U.S. 340 (1979) ....................................................................................... 27

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ....................................................................... 30

*Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*,
  389 U.S. 64 (1967) ......................................................................................... 14

*Irons v. Schuyler*,
  465 F.2d 608 (D.C. Cir. 1972) ................................................................. 12, 18

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
  219 F. Supp. 2d 20 (D.D.C. 2002) ................................................................. 38

*Kennecott Utah Copper Corp. v. Dep't of Interior*,
  88 F.3d 1191 (D.C. Cir. 1996) ............................................................. 2, 12, 13

*Kissinger v. Reporters Comm. for Freedom of the Press*,
  445 U.S. 136 (1980) ....................................................................................... 14

*Love v. Vilsack*,
  908 F. Supp. 2d 139 (D.D.C. 2012) ................................................................11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................... 9, 11

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ........................................................................................ 14

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ......................................................................... 32

*Morrison v. Dep't of Justice*,
    1988 WL 47662 at (D.D.C. Apr. 29, 1988) ..................................................... 32

*Murphy v. Dep't of Army*,
    613 F.2d 1151 (D.C. Cir. 1979) ....................................................................... 35

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) ........................................................................................ 15

*Nat'l Sec. Counselors v. CIA*,
    960 F. Supp. 2d 101 (D.D.C. 2013) ................................................................ 33

*New York Times Co. v. Dep't of Def.*,
    499 F. Supp. 2d 501 (S.D.N.Y. 2007) ............................................................ 32

*New York Times v. Dep't of Justice*,
    2013 WL 174222 at (S.D.N.Y. Jan. 7, 2013) ................................................. 31

*New York Times v. Dep't of Justice*,
    806 F.3d 682 (2d Cir. 2015) ........................................................... 3, 27, 31, 34

*Newdow v. Roberts*,
    603 F.3d 1002 (D.C. Cir. 2010) ...................................................................... 11

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ................................................................................. passim

*Norton v. S. Utah Wilderness Alliance*,
    542 U.S. 55 (2004) .......................................................................................... 14

*Pub. Citizen v. Dep't of Justice*,
    491 U.S. 440 (1989) ................................................................................... 39, 40

*Pub. Citizen v. Lew*,
    127 F. Supp. 2d 1 (D.D.C. 2000) .................................................................... 41

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
    421 U.S. 168 (1975) ........................................................................................ 28

*Rockwell Int'l Corp. v. Dep't of Justice*,
    235 F.3d 598 (D.C. Cir. 2001) ........................................................................ 27

*Schlefer v. United States,*
 702 F.2d 233 (D.C. Cir. 1983)...................................................................................... 27

*Southam News v. INS,*
 674 F. Supp. 881 (D.D.C. 1987) ................................................................................... 32

*State Farm Mut. Auto. Ins. Co. v. Dole,*
 802 F.2d 474 (D.C. Cir. 1986)................................................................................. 15, 16

*Swan v. Clinton,*
 100 F.3d 973 (D.C. Cir. 1996)......................................................................................11

*Truckers United for Safety v. Mead,*
 251 F.3d 183 (D.C. Cir. 2001)...................................................................................... 18

*United States v. Jicarilla Apache Nation,*
 564 U.S. 162 (2011) ...................................................................................................... 32

*United States v. Nixon,*
 418 U.S. 683 (1974) ...................................................................................................... 38

*United States v. Weber Aircraft Corp.,*
 465 U.S. 792 (1984) ........................................................................................................ 5

*Vietnam Veterans of Am. v. Dep't of Navy,*
 876 F.2d 164 (D.C. Cir. 1989)...................................................................................... 29

*Webb v. Dep't of Health & Human Servs.,*
 696 F.2d 101 (D.C. Cir. 1982)...................................................................................... 18

*XP Vehicles, Inc. v. Dep't of Energy,*
 118 F. Supp. 3d 38 (D.D.C. 2015) ............................................................................... 23


STATUTES

28 U.S.C. §§ 511-513................................................................................................................ 6

5 U.S.C. § 552................................................................................................................... passim


UNITED STATES CONSTITUTION

U.S. Const. art. II, §1, cl. 8 ..................................................................................................... 38

US. Const. art. II, §2, cl. 1 ...................................................................................................... 38

US. Const. art. II, §3 ........................................................................................................... 3, 38

RULES

Fed. R. Civ. P. 65(d) ................................................................................................................... 14

REGULATIONS

28 C.F.R. § 0.25(a) ...................................................................................................................... 6

49 C.F.R. § 1.26 ......................................................................................................................... 36

OTHER AUTHORITIES

*Office and Duties of Attorney General*,
    6 Op. Att'y Gen. 326 (1854) ................................................................................................ 37

*Opinions of Attorneys General and Decisions of Auditors*,
    5 Op. Att'y Gen. 97 (1849) .................................................................................................. 37

Randolph D. Moss, *Executive Branch Legal Interpretation*,
    52 Admin. L. Rev. 1303 (2000) ........................................................................................... 37

**INTRODUCTION**

This lawsuit is premised on the extraordinary argument that the Freedom of Information Act (FOIA) requires the Department of Justice's Office of Legal Counsel (OLC) to publish a broad but ill-defined swath of its formal and informal legal advice documents, even though courts—including the D.C. Circuit—have squarely concluded that those legal advice documents are privileged and therefore need not be disclosed.  According to the plaintiff, Campaign for Accountability (CFA), ongoing publication of OLC's advice documents is required by FOIA's affirmative disclosure provision, 5 U.S.C. § 552(a)(2).  CFA purportedly seeks to enforce that provision through this lawsuit.

CFA's lawsuit is not a typical FOIA lawsuit, however, as CFA does not seek to challenge the withholding of any specific OLC opinions; indeed, CFA's Complaint does not mention *any* particular advice documents that CFA believes OLC has unlawfully failed to publish under § 552(a)(2).  Instead, CFA seeks to challenge OLC's failure to publish in the abstract—alleging that OLC has an unlawful "policy of making case-by-case individualized decisions about which of its binding, precedential opinions will be made publicly available based on factors of its own choosing."  Compl. ¶ 2.  CFA therefore seeks a declaratory judgment that OLC "has failed to comply with the disclosure obligations of 5 U.S.C. § 552(a)(2)," *id.* ¶ 34, as well as an injunction directing OLC to make broad categories of its controlling advice documents "available for public inspection and copying, and without a specific request," for both now-existing OLC opinions as well as opinions created in the future.  *Id.* ¶ 35.

For several reasons, this lawsuit must be dismissed.  First, FOIA does not permit the broad, open-ended relief that CFA seeks here.  The D.C. Circuit has held that FOIA provides courts with jurisdiction to order agencies to disclose particular documents to a complaining party—but not to order agencies to publish documents for the public as a whole.  *See Kennecott*

*Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996).   Thus, CFA's requested injunction that OLC make its opinions "available for public inspection and copying" is not available under FOIA.   Compl. ¶ 41.   Indeed, accepting CFA's argument would transform FOIA from a limited disclosure statute into a license for comprehensive, unending judicial oversight of agencies' entire publication programs.   CFA's claim is not redressable, therefore, because the relief requested is unavailable under FOIA.

Furthermore, CFA's claim is not ripe.   Because CFA is not challenging the withholding of any particular OLC advice documents, this case presents only broad, abstract questions of legal principle—not the type of concrete dispute that Article III empowers courts to decide.   That is particularly true with respect to CFA's claim that OLC should be required to publish *future* advice documents that do not yet even exist.   The current lawsuit does not present a sufficient factual foundation on which to resolve the abstract legal question posed by CFA's complaint, and CFA will not suffer any hardship in denying review until a more appropriate lawsuit is presented.

Finally, even were the Court to consider CFA's claim, that claim must be dismissed for failure to state a claim.   As an initial matter, the abstract nature of the Complaint also highlights the lack of plausible factual allegations demonstrating that OLC has violated FOIA in any way. The Complaint does not allege any concrete examples of unlawful action by OLC; indeed, CFA has not identified any particular OLC advice documents being withheld that, in CFA's view, must be disclosed under § 552(a)(2).   CFA's Complaint thus contains mere legal conclusions, simply tautologically re-stating the requirements of § 552(a)(2) itself.   As a matter of pleading, therefore, CFA's Complaint must be dismissed.

More fundamentally, CFA's argument—that significant portions of OLC's legal advice must be affirmatively disclosed—cannot be reconciled with the overwhelming weight of judicial

authority, which holds that unless privileges are subsequently waived, OLC opinions are privileged and properly withheld under FOIA.  Indeed, the D.C. Circuit recently concluded that a final, formal OLC opinion—one that CFA contends should have been disclosed under § 552(a)(2)—was properly withheld as privileged.  *See Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1 (D.C. Cir.), *cert. denied*, No. 13-1474, 135 S. Ct. 356 (2014) [hereafter *EFF*]; *see also New York Times v. Dep't of Justice*, 806 F.3d 682, 687 (2d Cir. 2015).  By contrast, despite numerous cases challenging the withholding of OLC's legal advice under FOIA, no court has ever concluded that the automatic disclosure of OLC's legal advice was compelled under § 552(a).  This extensive judicial authority, and in particular the *EFF* decision, forecloses CFA's claim here.  CFA cannot challenge OLC's compliance with § 552(a)(2) even as a general matter, because it is clear that OLC has acted appropriately—by reviewing its advice documents on an individual, case-by-case basis to determine whether publication is appropriate.

Accepting CFA's argument—that every "controlling" or precedential piece of legal advice must be affirmatively disclosed—would threaten the Executive Branch's ability to receive *any* legal advice in confidence, thereby interfering with the President's duty to "take Care that the Laws be faithfully executed[.]"  U.S. Const., art. II, § 3.  The Freedom of Information Act does not require such a result, nor should it be construed to compel as much.  In fact, the D.C. Circuit has consistently interpreted FOIA to protect confidential Executive Branch legal advice.  Thus, CFA's claim that OLC must publish *all* of its controlling advice is wholly without merit.

In Count Two of the Complaint, CFA also alleges that OLC has failed to comply with FOIA's indexing requirement, because OLC has not made available public indices of its controlling legal opinions—opinions that, in CFA's view, are subject to § 552(a)(2).  This claim should also be dismissed.  It is doubtful that this claim is even cognizable under FOIA.  But in

any event, the claim depends on OLC's opinions actually falling within § 552(a)(2).  For all the same reasons discussed above, then, this claim too should be dismissed.

In sum, CFA's claims seek to transform FOIA from a disclosure statute into a vehicle for obtaining broad, unending judicial oversight of an agency's publication practices.  FOIA does not permit such open-ended relief, nor does Article III allow such broad, generalized challenges absent a concrete dispute.  And in any event, there is no legal merit to CFA's claim here.  OLC opinions are not the type of documents falling within FOIA's affirmative disclosure provisions, and are also generally exempt from disclosure under FOIA pursuant to (at least) the deliberative process and attorney-client privileges.  CFA's Complaint should therefore be dismissed.

## BACKGROUND

### I.      RELEVANT STATUTORY FRAMEWORK.

Pursuant to the Freedom of Information Act, government agencies are required to affirmatively publish certain categories of records.  *See* 5 U.S.C. § 552(a)(1), (2).  As relevant here, the affirmative disclosure provisions of FOIA require that:

> Each agency . . . shall make available for public inspection . . . (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases; [and] (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register[.]

*Id.* § 552(a)(2).

For records that have not been affirmatively disclosed, FOIA permits individuals to submit requests to agencies for the disclosure of specific records:

> Except with respect to the records made available under paragraphs (1) and (2) of this subsection . . . each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

*Id.* § 552(a)(3)(A).

To the extent an agency withholds records, FOIA authorizes judicial review of the challenged withholdings in federal district court.  A litigant may file suit, and if the agency fails to sustain its withholdings, then FOIA authorizes a particular form of relief:  the district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).

Not all records need to be disclosed under FOIA.  The Act contains nine specific exemptions, which allow the agency to withhold the information falling within such exemptions. *See id.* § 552(b).  In light of the language of § 552(b)—"[t]his section does not apply to matters that [fall within an exemption]"—agencies may withhold such exempt information regardless of whether the record falls within the affirmative-disclosure provisions of § 552(a)(2), or was requested by an individual under § 552(a)(3).  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 160 (1975) (holding that the attorney work-product privilege applied, and thus the document was exempt regardless of whether it fell within a § 552(a)(2) category).

Here, the most relevant exemption is § 552(b)(5), which protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]"  This exemption incorporates the privileges traditionally available to the government in civil discovery, such as the deliberative process, attorney-client, and attorney work-product privileges.  *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799-801 (1984).

## II.     FACTUAL AND PROCEDURAL HISTORY.

The plaintiff here, CFA, alleges that it is "a non-profit, non-partisan project" that "uses research, litigation and communications to expose misconduct and malfeasance in public life." Compl. ¶ 5.  CFA states that it advances its mission by using "government records made

available to it under public information laws as well as government records agencies have made publicly available." *Id.*

In the present lawsuit, CFA seeks access to records within the Office of Legal Counsel, which is a component of the United States Department of Justice charged with providing confidential legal advice within the Executive Branch. Specifically, OLC's responsibilities include "[p]reparing the formal opinions of the Attorney General; rendering informal opinions and legal advice to the various agencies of the Government; and assisting the Attorney General in the performance of his functions as legal adviser to the President and as a member of, and legal adviser to, the Cabinet." 28 C.F.R. § 0.25(a); Compl. ¶ 17. These functions are vested in the Attorney General by statute, 28 U.S.C. §§ 511-513, and since the 1950s OLC has assisted the Attorney General in their performance. *See generally* Compl. ¶¶ 13-17. The Department's advice-giving functions are longstanding in nature: since 1789 the Attorney General has been statutorily charged with providing his "advice and opinion upon questions of law" to the President and to the heads of other agencies. *See* Compl. ¶ 13.

On March 22, 2016, CFA sent a letter to the head of OLC, Principal Deputy Assistant Attorney General Karl Remón Thompson, requesting that OLC "comply immediately with its obligations under 5 U.S.C. § 552(a) to make available for public inspection and copying on an ongoing basis all unpublished OLC opinions that provide controlling legal advice to executive branch agencies and a general index of all such opinions." Compl. ¶ 24; *see also* Letter from Weismann to Thompson (attached hereto as Exh. 1) at 2. More specifically, CFA argued that "OLC opinions . . . function as binding law on the executive branch" and therefore "must be made publicly available as either 'final opinions . . . made in the adjudication of cases,' or 'statements of policy and interpretations which have been adopted by the agency[.]'" Exh. 1 at 3

(quoting 5 U.S.C. § 552(a)(2)(A), (B)).  CFA's letter noted that this request followed a similar request made by the same individual (Ms. Weismann) on behalf of a separate organization, the Citizens for Responsibility and Ethics in Washington (CREW).  *Id.* at 3.  That organization had recently filed suit attempting to challenge OLC's publication practices under the Administrative Procedure Act (APA), but the suit was dismissed.  *See CREW v. DOJ*, --- F. Supp. 3d ----, Case No. 13-cv-01291, 2016 WL 912167 (D.D.C. Mar. 7, 2016) (Mehta, J.), *appeal docketed*, Case No. 16-5110 (D.C. Cir.).

OLC responded to CFA's letter on May 26, 2016.  *See* Compl. ¶ 25; Letter from Bies to Weismann (attached hereto as Exh. 2).  The letter was from John E. Bies, a Deputy Assistant Attorney General within OLC, and explained that "OLC does not have policymaking authority, nor does it enforce laws against or adjudicate the rights of private individuals," but instead "OLC provides confidential legal advice within the Executive Branch."  Exh. 2 at 1.  "As such, OLC's advice is ordinarily covered by the attorney-client and deliberative process privileges, and is therefore exempt from mandatory disclosure under the FOIA[.]"  *Id.* (citing 5 U.S.C. § 552(b)(5)).  Additionally, the Bies letter stated that "as confidential and pre-decisional legal advice, our opinions generally constitute neither 'final opinions . . . made in the adjudication of cases' nor 'statements of policy and interpretations which have been adopted by the agency.'" *Id.* (quoting 5 U.S.C. § 552(a)(2)(A), (B)).

OLC's letter then went on to explain that, notwithstanding the fact that OLC opinions are generally exempt from FOIA, OLC nonetheless "make[s] an individualized, case-by-case determination with respect to whether each opinion of our Office is appropriate for publication." *Id.* (citing Memorandum for Attorneys of the Office, from David J. Barron, Acting Assistant Att'y Gen., Office of Legal Counsel, Re: Best Practices for OLC Legal Advice and Written

Opinions 5-6 (July 16, 2010) (hereafter "Best Practices Memo"), *available at* http://.justice.gov/olc/pdf/olc-legal-advice-opinions.pdf (attached hereto as Exhibit 3)). As summarized by Deputy Assistant Attorney General Bies, the "individualized publication decision process includes consultation with interested Executive Branch agencies and consideration of a number of factors, which are set out in the Best Practices Memo." Exh. 2 at 1-2. When OLC receives a FOIA request and an OLC opinion is responsive to that request, OLC similarly "consider[s] whether to waive applicable privileges and release the opinion as a matter of administrative discretion." *Id.* at 2 (citing Best Practices Memo at 6). OLC's letter made clear that if at any point OLC concluded an advice document needed to be disclosed under § 552(a)(2), it would do so: "If OLC were to conclude during the publication review process, the FOIA response process, or at any other time that the Department had an obligation under 5 U.S.C. § 552(a)(2) to make a particular opinion publicly available, we would do so at that time." *Id.*

Shortly after receiving OLC's response letter, CFA filed the present lawsuit. CFA's Complaint contains two claims. The primary claim is that OLC has failed to comply with the affirmative disclosure provisions of § 552(a)(2), *see* Compl. ¶¶ 30-32, which has "led to the creation of a body of secret law within OLC and DOJ." *Id.* ¶ 33. Accordingly, CFA requests "a declaratory judgment that defendant has failed to comply with the disclosure obligations of 5 U.S.C. § 552(a)(2)," *id.* ¶ 34, as well as an injunction:

> Plaintiff also is entitled to an injunction directing DOJ and its component, OLC, to comply with the disclosure obligations mandated by 5 U.S.C. § 552(a)(2) by making available for public inspection and copying, and without a specific request, all past and future final opinions made in the adjudication of cases and statements of policy and interpretations that have been adopted by the agency and not published in the Federal Register. Such injunction shall specify that this includes, *inter alia*, those written opinions issued by OLC that provide controlling advice to executive branch officials and agencies on questions of law, whether

formal or informal, those opinions that serve as precedent within OLC and the executive branch, and those opinions that serve as interpretive guides for the executive branch.

Compl. ¶ 35.

CFA's second claim is that OLC has failed to index its opinions under 5 U.S.C. § 552(a)(2), which requires each agency to "maintain and make available for public inspection . . . current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published." *See* Compl. ¶¶ 37-38.  CFA again seeks both declaratory and injunctive relief. *See id.* ¶¶ 40-41.

## STANDARD OF REVIEW

Defendant, the United States Department of Justice, moves to dismiss CFA's Complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. CFA bears the burden of showing subject-matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Indeed, it is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (internal quotation marks omitted).

Defendant also moves to dismiss CFA's Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In evaluating the sufficiency of the complaint, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Although a court must accept all factual allegations as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.* (internal quotation marks omitted).

## ARGUMENT

The premise of this lawsuit—that OLC must affirmatively publish its pre-decisional legal advice documents under FOIA—is fundamentally incorrect and foreclosed by binding D.C. Circuit precedent. *See EFF*, 739 F.3d at 8-10. CFA's claim seeks to compel the publication of OLC legal advice that is "controlling" or that "serves as precedent within OLC and the executive branch[.]" Compl. ¶ 35. The document at issue in *EFF*, however, was a formal OLC opinion that the D.C. Circuit described as "controlling" and "precedential," 739 F.3d at 9, and yet the D.C. Circuit unequivocally held that the opinion was properly withheld as confidential legal advice. *Id.* at 8-10. In light of that decision—and numerous other precedents holding that OLC advice documents are privileged—CFA cannot plausibly have any right to the automatic disclosure of all such "controlling" OLC advice documents. CFA's claim should therefore be dismissed.

Even before reaching the merits of that claim, however, two threshold arguments also require dismissal here. First, CFA cannot obtain the relief it seeks—a judicial order requiring automatic publication of documents under FOIA—because FOIA does not provide for such a remedy. Thus, the relief necessary to redress CFA's injury is not available. Second, CFA's claim is not ripe because it seeks to adjudicate the privileged status of future OLC advice documents not yet in existence, and even as to existing advice documents the claim is not presented in a concrete factual setting. For both of these reasons, too, CFA's primary claim here should be dismissed.

I.      **CFA'S PRIMARY CLAIM IS NOT REDRESSABLE BECAUSE FOIA DOES NOT PERMIT THE TYPE OF BROAD RELIEF SOUGHT HERE.**

To establish standing for a claim, the plaintiff must demonstrate that its injury will likely be redressed by a favorable decision.  *Defenders of Wildlife*, 504 U.S. at 561.  That includes demonstrating that the "federal court has the power to grant" the necessary relief.  *Swan v. Clinton*, 100 F.3d 973, 976 (D.C. Cir. 1996); *see also Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) (denying standing because "[t]he only apparent avenue of redress for plaintiffs' claimed injuries . . . is unavailable"); *Love v. Vilsack*, 908 F. Supp. 2d 139, 144-45 (D.D.C. 2012) ("To satisfy this [redressability] element, a plaintiff must show in the first instance that the court is capable of granting the relief sought.").

Here, CFA cannot make this showing because the requested relief—a broad injunction compelling publication of a significant number of advice documents on an ongoing basis—is not available under FOIA.  The D.C. Circuit has effectively already held as much, and any contrary interpretation would radically transform FOIA into a mechanism to obtain comprehensive judicial oversight of agencies' publication programs.

A.      **Pursuant to FOIA's Limited Remedial Provision, Courts Cannot Compel Agencies to Affirmatively Publish Documents.**

CFA's primary claim, seeking to compel OLC to publish all of its controlling legal advice under § 552(a)(2), is based on a purported "informational harm" of "being deprived of information the law requires DOJ to affirmatively make available to the public without any action by CfA or any member of the public."  Compl. ¶ 8.  To remedy that informational harm, CFA seeks its broad-ranging injunction directing OLC to publicly publish both its past and future advice documents.  But this claim must be rejected, as FOIA does not permit such relief.

CFA attempts here to enforce the provisions of § 552(a)(2) independent of a particularized FOIA request submitted under § 552(a)(3).  *See* Compl. ¶ 6.   It is not clear

whether such enforcement is even permissible under FOIA.[1]   But in any event, this Court need not decide that issue:  the critical point is that, even assuming requests may be submitted directly under § 552(a)(2), a court's power to remedy an improper withholding is limited by FOIA's remedial provision, 5 U.S.C. § 552(a)(4)(B).  *See Kennecott Utah Copper Corp.*, 88 F.3d at 1202 ("The statute's remedial provision, § 552(a)(4), governs judicial review of all three types of documents[.]").   Indeed, when Judge Mehta considered a similar attempt to challenge OLC's publication practices (brought by the same counsel here on behalf of a prior organization), the Court likewise noted that any enforcement of § 552(a)(2) under FOIA would be governed by the remedial provision of § 552(a)(4)(B).  *See CREW v. DOJ*, 2016 WL 912167 at *7 ("A suit to enforce the requirements of Section 552(a)(2) is thus available under Section 552(a)(4)(B).").

As previously held by the D.C. Circuit, the remedy authorized by § 552(a)(4)(B) is quite limited.   In *Kennecott Utah Copper Corp.*, the plaintiff argued that under § 552(a)(1)—which requires agencies to publish certain documents in the Federal Register—the court should compel such publication by the agency.  *See* 88 F.3d at 1202.   The D.C. Circuit disagreed, holding that FOIA's remedial provision "authorizes district courts to order the 'production' of agency documents, not 'publication.'"   *Id.* at 1203.   The statute's purpose of "mak[ing] information available to the public" was fulfilled "by handing the document over to an individual" without also requiring publication:

> We think it significant . . . that § 552(a)(4)(B) is aimed at relieving the injury suffered by the individual complainant, not by the general public. It allows district courts to order "the production of any agency records improperly withheld *from*

---

[1] The statutory language of § 552(a)(3) allows requests for records *not* made available under § 552(a)(2), *see Am. Mail Line, Ltd. v. Gulick*, 411 F.2d 696, 701 (D.C. Cir. 1969) (opinion of Tamm, J.), and the history of FOIA would also suggest that § 552(a)(2) is not enforceable. *See EPA v. Mink*, 410 U.S. 73, 79 (1973).  On the other hand, other language within FOIA seems to suggest that documents under § 552(a)(2) may be requested without going through the § 552(a)(3) process, *see* 5 U.S.C. § 552(a)(6)(A), as do some court opinions.  *See Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972); *CREW v. DOJ*, 2016 WL 912167 at *6.

> *the complainant*," not agency records withheld from the *public*. 5 U.S.C.
> § 552(a)(4)(B) (emphasis added). Providing documents to the individual fully
> relieves whatever informational injury may have been suffered by that particular
> complainant; ordering publication goes well beyond that need.

*Id.* Thus, the D.C. Circuit concluded "that § 552(a)(4)(B) does not authorize federal courts to

order publication." *Id.*

Applied here, that holding confirms that regardless of how the provisions of § 552(a)(2)

are enforced, the remedy would be limited to ordering disclosure of specific documents to

individuals—not to ordering broad, prospective relief requiring ongoing publication for the

benefit of the broader public.  Thus, CFA's requested injunction is not available as a matter of

law.[2]  And because that broad type of injunction is the only relief that could remedy CFA's

claimed informational harm here—*i.e.*, "being deprived of information the law requires DOJ to

affirmatively make available to the public without any action by CfA or any member of the

public," Compl. ¶ 8—CFA's claim here is not redressable.[3]

**B.      Any Alternative Approach Would Radically Transform FOIA by Allowing
          Comprehensive Judicial Oversight of Agencies' Ongoing Publication
          Practices.**

The above analysis is further buttressed by the practical consequences of adopting CFA's

version of FOIA, which would radically transform the statute from a disclosure statute into a

vehicle for comprehensive judicial oversight of agency publication programs.

---

[2] In *CREW v. DOJ*, Judge Mehta questioned in dicta whether the *Kennecott* decision extended to claims under § 552(a)(2), as that decision arose under § 552(a)(1). *See* 2016 WL 912167 at *8 n.5. While it is true that *Kennecott* arose under § 552(a)(1), that distinction is irrelevant:  the court's holding was based on interpreting the remedial provision of § 552(a)(4)(B), which expressly applies to § 552(a)(2) as much as to § 552(a)(1). *See Kennecott Utah Copper Corp.*, 88 F.3d at 1202 ("The statute's remedial provision, § 552(a)(4), governs judicial review of all three types of documents[.]").  There is no logical or sound basis for interpreting § 552(a)(4)(B) to mean something different for § 552(a)(2) than for § 552(a)(1). *See Clark v. Martinez*, 543 U.S. 371, 378 (2005) ("The operative [statutory] language . . . applies without differentiation to all three categories of aliens that are its subject. To give these same words a different meaning for each category would be to invent a statute rather than interpret one.").

[3] CFA's request for "a declaratory judgment that defendant has failed to comply with the disclosure obligations of 5 U.S.C. § 552(a)(2)," Compl. ¶ 34, also would not establish redressability.  A declaration of *past* failure to disclose certain documents would not compel OLC to disclose *in the future* different advice documents.

As the Supreme Court has noted, courts should be reluctant to construe FOIA "as silently departing from prior longstanding practice." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 154 (1980). Here, CFA is seeking a tremendous expansion indeed: courts would no longer adjudicate requests for specific records, but would now be responsible for entering injunctions—and adjudicating compliance with those injunctions—regarding agencies' entire publication programs, for both past and future records. Notably, this type of ongoing, prospective oversight of agencies' records programs is not permissible even under the Federal Records Act. *See Armstrong v. Bush*, 924 F.2d 282, 294 (D.C. Cir. 1991).

Even in the context of challenges to agency action under the APA, courts have steadfastly resisted such broad-ranging challenges. For example, a plaintiff "must direct its attack against some particular 'agency action' that causes it harm," as opposed to seeking broad improvements within an agency's overall program. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990); *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 66-67 (2004) (allowing a court to enforce "broad statutory mandates" would lead to "judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve," and would "inject[] the judge into day-to-day agency management"). Those same problems would exist here under CFA's expansive view of FOIA, as confirmed by the breadth and vagueness of CFA's requested injunction—which simply parrots the statutory language of § 552(a)(2) and contains a non-exclusive list of types of opinions that must be published. *See* Compl. ¶ 35. This type of injunction is not only contrary to FOIA but would be inappropriate under Rule 65. *See* Fed. R. Civ. P. 65(d) (an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required"); *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). For these reasons, this Court should

reject CFA's request to enter a broad-ranging injunction that has no support in the text, history, or purpose of FOIA.

## II.   CFA'S PRIMARY CLAIM IS NOT RIPE FOR ADJUDICATION BECAUSE IT IS TOO ABSTRACT FOR JUDICIAL RESOLUTION.

CFA's primary claim must also be dismissed on ripeness grounds. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction[.]" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). Typically ripeness is evaluated based on two factors: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* Here, both factors demonstrate CFA's claim is not ripe.

### A.   A More Concrete Factual Setting is Necessary for Adjudicating CFA's Claim.

CFA's lawsuit does not seek to obtain access to or compel publication of any specific OLC advice documents, but instead presents only a broad legal claim—that OLC must publish all of its controlling advice documents, both past and future, pursuant to § 552(a)(2). This abstract legal question lacks sufficient factual foundation for judicial resolution.

"The ripeness doctrine favors postponement of review when a court believes that it would be better able to decide the case in the concrete factual context of a specific application of the challenged agency decision." *Consolidation Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 824 F.2d 1071, 1083 (D.C. Cir. 1987). That is true even when an agency's policy is sure to cause the plaintiff's claimed injury. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 300 (1979). And even if the injury is alleged to have already occurred, the claim still must arise in a sufficiently concrete factual context to allow for judicial resolution. *See State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 484 (D.C. Cir. 1986) ("Although we agree that

the Secretary's alleged violation (as New York sees it) of the Safety Act has already occurred, this issue is still unfit for review because it has not yet arisen in a sufficiently concrete setting.").

Here, although CFA's claim is presented as a pure legal issue, which would generally be more fit for review, *see Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003), the legal question is at an exceedingly high level of generality—*i.e.*, whether OLC must affirmatively publish all of its controlling advice documents pursuant to 5 U.S.C. § 552(a)(2).  To grant CFA the relief requested in this lawsuit, this Court would have to determine that *all* of OLC's controlling legal advice documents fall within § 552(a)(2)(A) or (B), and that *none* of those advice documents are privileged.  It is difficult to see what basis the Court would have for making such determinations in the abstract, and in the absence of concrete and granular facts about the circumstances under which any given OLC legal advice document was prepared or what role it played in an agency's policymaking process.  Certainly the Court cannot make any such determination with respect to the *future* advice documents that do not even exist yet, but which CFA nonetheless seeks to compel OLC to publish (and effectively deem non-privileged).  *See* Compl. ¶ 35.  And CFA makes no attempt to ground its claim in the context of any more concrete or particularized allegations regarding already existing OLC advice documents; thus, even if the alleged injury of non-publication has already occurred, CFA's claim is not ripe because it is not based on a concrete dispute over particular documents.  *See Dole*, 802 F.2d at 484 (claim was not ripe because plaintiff State had "not alleged the existence of any proposed or pending legislation in that State on which the Secretary's asserted violation is having any purported effect").

CFA also has not created a concrete dispute simply through its exchange of letters with OLC.  After CFA sent a letter to OLC requesting that OLC comply with § 552(a)(2), *see* Exh. 1,

OLC responded that it does comply with § 552(a)(2) but not in the way CFA believes OLC must. *See* Exh. 2.   While this exchange of letters may present a dispute in the ordinary sense of the word, the dispute is not a concrete one capable of judicial resolution.   The D.C. Circuit held as much in similar circumstances, when a union of government employees sent a letter to the Special Counsel requesting a categorical assurance that certain activities were permissible.   *See Am. Fed'n of Gov't Employees, AFL-CIO v. O'Connor*, 747 F.2d 748, 755-56 (D.C. Cir. 1984). The Special Counsel declined to provide that categorical assurance, at which point the union sued.   *Id.*   The D.C. Circuit rejected the claim as unripe:

> Courts customarily deal in specific facts or circumstances drawn with some precision and legal questions trimmed to fit those facts or circumstances; they are not in the business of deciding the general without reference to the specific. . . . The Special Counsel denied the unions the general license they sought, but that action in itself presents no crystallized controversy.

*Id.*   The same is true here: although OLC declined to provide a categorical assurance that it would publish all the documents CFA argued must be disclosed, that in itself "presents no crystallized controversy."   *Id.* at 756.

Resolution of CFA's claim would obviously be much easier in the context of specific OLC advice documents.   For that reason, CFA's current claim—seeking relief on an abstract, categorical basis—is not presently fit for review.

**B.     CFA Would Not Suffer Any Hardship in Delaying Review.**

CFA also cannot identify any countervailing interest that would justify immediate review. CFA's Complaint implies that CFA is entitled to the OLC advice documents without having to take any affirmative action.   CFA is likely to argue, then, that it should not be forced to file a narrower lawsuit for only specific documents, which would not achieve its preferred relief of obtaining disclosure of all advice documents on an ongoing basis.   But this purported burden is insufficient to justify immediate review.

For one thing, the D.C. Circuit has held that "the burden of pursuing future litigation is not enough, by itself, to demonstrate hardship justifying premature judicial decision-making." *Truckers United for Safety v. Mead*, 251 F.3d 183, 192 (D.C. Cir. 2001); *see also Webb v. Dep't of Health & Human Servs.*, 696 F.2d 101, 107 (D.C. Cir. 1982) (the "burden of having to file another suit" when the plaintiff "is again denied information" is not sufficient to justify review). Thus, the need to pursue serial litigation, while perhaps inconvenient, does not overcome the need for a concrete factual setting for the claim.

More fundamentally, it is dubious whether CFA would even need to pursue serial litigation.  As Judge Mehta noted in *CREW v. DOJ*, were a litigant to be successful advancing the argument that all advice documents must be disclosed (even if in the context of a lawsuit over only a subset of advice documents), there would be strong incentives for OLC to adjust its policies to comply with that holding:

> [A]s a practical matter, the court finds it hard to conceive that, if this court or, more likely, the Court of Appeals, were to conclude that certain OLC opinions are subject to the disclosure requirements of Section 552(a)(2), DOJ would not modify its policies, thereby ameliorating the need for serial requests and litigation. Indeed, FOIA itself contains at least two provisions that would encourage, if not compel, DOJ to adjust its policies.

*CREW v. DOJ*, 2016 WL 912167 at *8.

Finally, it cannot be a "hardship" to require CFA to submit a particularized FOIA request for specific documents, as opposed to requesting the publication of "all unpublished OLC opinions that provide controlling legal advice to executive branch agencies."   Exh. 1 at 2. Submitting a particularized request is exactly what FOIA requires, even under § 552(a)(2).  *See Irons*, 465 F.2d at 614-15 (rejecting FOIA request because the documents requested, "all unpublished manuscript decisions" within the agency, were not sufficiently identifiable; the request sought "a large and indefinite number of records which have accumulated over the entire

history of this agency").  CFA thus cannot claim "hardship" from having to do exactly what FOIA requires.

For all of these reasons, CFA's broad, abstract claim is unripe.  A more concrete factual situation is necessary to ensure the legal issues are sufficiently crystallized, and there is no hardship in postponing review.

## III.   THE COMPLAINT ALSO FAILS AS A MATTER OF LAW BECAUSE FOIA DOES NOT REQUIRE OLC TO PUBLISH ITS LEGAL ADVICE.

Even if CFA could overcome the two threshold barriers to judicial review discussed above, CFA's Complaint must still be dismissed as a matter of law.  Even taking the allegations in the Complaint at face value, CFA has not adequately alleged any unlawful action by OLC, and OLC's individualized publication practice is plainly lawful under § 552(a)(2).

The theory articulated in CFA's Complaint is that OLC must publish *all* of its advice documents falling within certain broad categories:  at a minimum, "those written opinions issued by OLC that provide controlling advice to executive branch officials and agencies on questions of law, whether formal or informal, those opinions that serve as precedent within OLC and the executive branch, and those opinions that serve as interpretive guides for the executive branch." Compl. ¶ 35.  But this theory is necessarily foreclosed by the D.C. Circuit's recent decision in *EFF*, which confirmed that not all OLC opinions falling within the categories identified by CFA must be disclosed; the Court upheld OLC's decision to withhold a "written opinion[] issued by OLC that provide[d] controlling advice to executive branch officials and agencies on questions of law" and that "serve[s] as precedent within OLC and the executive branch."  Compl. ¶ 35; *see EFF*, 739 F.3d at 4-6, 9.

Even if CFA's Complaint were construed (contrary to its terms) to be arguing that only *some* of OLC's controlling advice documents must be published, that still would not save the

-19-

claim from dismissal.  For example, to the extent the Complaint is viewed as challenging OLC's general publication practices—*i.e.*, OLC's alleged practice of making publication decisions "based on factors of OLC's own choosing," Compl. ¶ 25—that claim is also subject to dismissal because CFA has failed to allege any unlawful withholdings pursuant to that policy, and the policy itself is clearly lawful given that OLC advice documents are generally privileged.  CFA's Complaint fails to allege that even a single OLC advice document has been unlawfully withheld from the public.  Regardless of how CFA's claim is framed, then, it must be dismissed as a matter of pleading—there are no factual allegations plausibly establishing even a single instance of purportedly unlawful conduct by OLC.  Furthermore, because not all OLC advice documents must be disclosed, OLC's individualized, case-by-case publication policy is clearly lawful.[4]

In any event, regardless of how the claim is framed, CFA's underlying legal theory—that OLC's advice documents, at least as a general matter, fall within § 552(a)(2)—is fundamentally incorrect for several reasons.  For one thing, OLC opinions do not fall within the categories of documents that must be affirmatively disclosed under § 552(a)(2).  Additionally, OLC opinions are generally exempt from disclosure under FOIA because they are privileged documents. Numerous courts, including the D.C. Circuit, have upheld OLC's withholding of specific OLC opinions as privileged, and no court has ever held that OLC was required to automatically publish even a single one of its opinions under § 552(a)(2).  Thus, it is baseless for CFA to suggest that OLC opinions even generally must be disclosed pursuant to the affirmative disclosure provisions of § 552(a)(2).

---

[4] To the extent CFA seeks to narrow its claim—away from arguing that *all* controlling advice documents must be disclosed—to provide the Court (and Defendant) with a meaningful opportunity to evaluate CFA's claim, it is incumbent upon CFA to clarify the scope of its claim: whether the claim challenges OLC's publication practice as a general matter; whether the claim is that *all* OLC advice documents within certain categories must be published; whether the claim is that only *some* of those advice documents must be published (and if so, concrete limitations identifying which ones must, in CFA's view, be published); or whether CFA's claim is something else entirely.

That conclusion is further confirmed by the Executive Branch's important interest in obtaining confidential legal advice as part of its decisionmaking processes.  OLC's advice-giving function plays a critical role in assisting the President in "fulfill[ing] his or her constitutional duties to preserve, protect, and defend the Constitution, and to 'take Care that the Laws be faithfully executed.'"  Best Practices Memo at 1 (quoting U.S. Const. art. II, § 3).  Adopting the implicit premise of CFA's Complaint—that any controlling, precedential, or interpretive legal advice provided to the Executive Branch must be disclosed pursuant to FOIA—would call into question the Executive Branch's ability to obtain *any* confidential legal advice.  Such a result would raise significant constitutional concerns, and CFA's proposed interpretation of FOIA should be rejected on this basis alone.

### A.      CFA Does Not Plausibly Allege Any Unlawful Failure to Publish by OLC.

As discussed above, CFA's Complaint does not challenge any specific withholdings or actions by OLC.  Instead, CFA's Complaint is essentially just a series of tautological references that merely re-state the requirements of 5 U.S.C. § 552(a)(2).  *See, e.g.*, Compl. ¶¶ 1-2, 6-7, 13, 23, 28, 31; *see also id.* ¶ 35 (alleging that OLC is required to "mak[e] available for public inspection and copying, and without a specific request, all past and future final opinions made in the adjudication of cases and statements of policy and interpretations that have been adopted by the agency and not published in the Federal Register").  Language in a complaint that simply parrots a legal requirement does not amount to a factual allegation entitled to the presumption of truth on a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  CFA's Complaint contains no factual allegations plausibly establishing that OLC has

acted unlawfully, either with respect to particular documents or pursuant to its individualized, case-by-case publication practice.

To state a valid claim, a complaint must allege *facts* that plausibly give rise to an entitlement to relief, rather than make conclusory assertions. *See Iqbal*, 556 U.S. at 679. But CFA's Complaint does not contain *factual* allegations regarding several key elements to its claim. For example, CFA's Complaint does not identify any particular advice documents that it believes fall within § 552(a)(2)(A) or (B), but which OLC has failed to disclose. Indeed, CFA does not include allegations describing even the *types* of OLC opinions that it believes fall within § 552(a)(2)'s coverage. This failure is particularly striking given that OLC has affirmatively published 1,300 of its opinions on its website. *See* http://www.justice.gov/olc/opinions (listing 1,300 opinions) (accessed on July 21, 2016). If CFA is correct that broad categories of OLC opinions fall within the requirements of § 552(a)(2), surely CFA could readily identify (and allege) at least some factual parameters regarding such categories from these 1,300 examples. It is wholly insufficient for CFA to instead rely on conclusory allegations that simply parrot the statutory language. *See, e.g.,* Compl. ¶ 13 ("OLC generates records within both of these categories[.]"); *see also id.* ¶¶ 1-2, 23, 28, 32, 35.

Additionally, CFA does not allege facts plausibly establishing that OLC's publication decisionmaking process is contrary to the command of § 552(a)(2). Although CFA alleges that "OLC makes individualized, case-by-case determinations regarding publication, exercising discretion based on factors of OLC's own choosing," Compl. ¶ 25, the exercise of discretion over particular documents does not inherently mean (or even suggest) that OLC has violated any statutory command. Indeed, OLC has confirmed that, notwithstanding its discretionary publication decisionmaking process, the agency still fully complies with the legal requirements

of § 552(a)(2):  "If OLC were to conclude during the publication review process, the FOIA response process, or at any other time that the Department had an obligation under 5 U.S.C. § 552(a)(2) to make a particular opinion publicly available, we would do so at that time."  Exh. 2 at 2.  Again, CFA does not identify a single OLC opinion that it asserts falls within § 552(a)(2) but has not been published by OLC, or even a single case where a court concluded that a withheld OLC opinion fell within § 552(a)(2).

Instead of making plausible factual allegations to establish these elements of its claim, CFA resorts to attaching vague labels to OLC's legal advice memoranda, calling them "controlling," "precedent[ial]," and "interpretive guides," Compl. ¶ 35, as though these conclusory labels are an acceptable substitute for factual allegations identifying unpublished OLC legal advice documents that are indeed subject to the requirements of § 552(a)(2), or otherwise establishing that OLC's publication practice fails to comply with that provision. Plausibly alleging an entitlement to relief "requires more than labels and conclusions." *Twombly*, 550 U.S. at 555; *see also XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 56 (D.D.C. 2015) (Jackson, J.) ("While detailed factual allegations are not necessary, the plaintiff must provide more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (internal modifications and quotation marks omitted)).  In this second lawsuit challenging OLC's publication practices (brought by the same counsel as the first lawsuit), CFA's apparent inability to plausibly allege *any* specific failure to publish an advice document covered by § 552(a)(2) demonstrates that the Complaint should be dismissed, and that OLC's individualized, case-by-case publication practice is entirely lawful.

**B.**  **OLC Is Not Required to Publish Its Confidential Legal Advice, as the D.C. Circuit's Recent *EFF* Decision Confirms.**

Even aside from CFA's failure to plead sufficient factual allegations, CFA's underlying theory—that OLC advice documents must be disclosed under § 552(a)(2)—is legally incorrect. For one thing, binding D.C. Circuit precedent makes clear that not *all* of OLC's controlling, precedential advice documents must be published.   Thus, CFA's claim at least in its current, broad form cannot be correct.   To the extent CFA seeks to advance a narrower claim—*i.e.*, that some ill-defined category of OLC's advice must be disclosed, even if not *all* of that advice must be disclosed—that claim fails too.   OLC opinions do not fall within the reach of § 552(a)(2). And OLC opinions are also generally privileged, and thus need not be published or disclosed under FOIA.

**1.**  **OLC Need Not Disclose All of its Legal Advice.**

The D.C. Circuit's decision in *EFF* forecloses any argument by CFA that *all* of OLC's controlling legal advice must be disclosed.   *Cf.* Compl. ¶ 35.   The legal advice document at issue in *EFF* was a formal OLC opinion, which the D.C. Circuit described as possessing many of the same labels as CFA ascribes to OLC opinions that, in CFA's view, must be disclosed.   *Compare EFF*, 739 F.3d at 9 (noting that the requested OLC opinion "bears . . . indicia of a binding legal decision" such as being "controlling" and "precedential"), *with* Compl. ¶ 18 ("This controlling advice serves as precedent for OLC and the executive branch at large[.]"), *id.* ¶ 35 (requesting an injunction directing disclosure of all "controlling advice" and "those opinions that serve as precedent").   Yet the D.C. Circuit unequivocally held that the OLC opinion at issue was properly withheld as confidential legal advice.   *See* 739 F.3d at 8-9.

Thus, controlling D.C. Circuit precedent forecloses CFA's argument that OLC must "make available for public inspection and copying on an ongoing basis *all* unpublished OLC

opinions that provide controlling legal advice to executive branch agencies," Compl. ¶ 24 (emphasis added), because the D.C. Circuit has already sustained the withholding of one such legal advice document. And for much the same reason, OLC's publication practices cannot be criticized for relying on individualized, case-by-case publication assessments: if not *all* opinions must be disclosed, then it is clearly permissible for OLC to conduct individualized, case-by-case publication assessments.

### 2.      OLC's Legal Advice Does Not Fall Within § 552(a)(2).

Even assuming CFA could somehow limit its claim to arguing that OLC's controlling legal advice need only be disclosed in some undefined circumstances and not in every instance, that claim would fail too. The (unsupported) premise of CFA's Complaint is that OLC produces documents falling within § 552(a)(2), but that OLC has not disclosed those documents. Specifically, CFA alleges that OLC has not made publicly available "all final opinions made in the adjudication of cases[,] and statements of policy and interpretations that have been adopted by the agency." Compl. ¶ 32; *see* 5 U.S.C. § 552(a)(2)(A), (B).

At least as a general matter, however, OLC opinions do not fall within either category. Indeed, the D.C. Circuit's binding decision in *EFF* confirms as much. In that case, a requester sought a formal, final OLC opinion that was prepared for the FBI—an opinion that would clearly fall within § 552(a)(2) in CFA's view, *see* Compl. ¶ 31—and the plaintiff (and CREW as amicus in a brief authored by the same counsel in this case) argued that the opinion must be disclosed because it represented the agency's effective law and policy. *See, e.g.*, Brief for Amici Curiae CREW et al., *EFF v. Dep't of Justice*, Case No. 12-5363 (D.C. Cir. filed Mar. 22, 2013) at 19 ("[T]he OLC Opinion represents the definitive word from the executive branch on the legality of a very controversial practice."). The D.C. Circuit squarely rejected this argument, concluding that "OLC is not authorized to make decisions about the FBI's investigative policy, so the OLC

Opinion cannot be an authoritative statement of the agency's policy."  739 F.3d at 9.  The court

also went on to reject the "working law" argument, notwithstanding the "precedential" nature of

the OLC opinion:

> EFF argues that the OLC Opinion must be "working law" because it is controlling (insofar as agencies customarily follow OLC advice that they request), precedential, and can be withdrawn.  That the OLC Opinion bears these indicia of a binding legal decision does not overcome the fact that OLC does not speak with authority on the FBI's policy; therefore, the OLC Opinion could not be the "working law" of the FBI unless the FBI "adopted" what OLC offered.  In *Brinton*, we rejected the appellant's claim that memoranda must be released because they constituted the "final opinions" of the Department of State.  We explained that while the privilege does not protect final decisions or authoritative statements on agency policy, the "final opinions" of the Department of State's Legal Adviser, "who has no authority to make final decisions concerning United States policy in the Middle East," are not final decisions of the Department of State.  The same is true of the OLC Opinion in this case.

*Id.* at 9-10 (internal citations omitted).

This binding decision is dispositive of CFA's claim here.  Pursuant to *EFF*, OLC opinions

are not final *agency* decisions, and therefore need not be disclosed under § 552(a)(2).  The D.C.

Circuit has squarely concluded that OLC opinions (at least as a general matter) are legal advice

documents, not final agency decisions.  *See EFF*, 739 F.3d at 8-9.  Thus, the *EFF* decision

forecloses CFA's theory here.

But even going beyond *EFF*, there are ample reasons why OLC's legal advice documents

do not fall within § 552(a)(2).  First, OLC does not issue any opinions in adversarial disputes

involving private parties.  *See* Exh. 2 at 1 ("OLC does not . . . enforce laws against or adjudicate

the rights of private individuals.").  Section 552(a)(2), however, is limited only to agency

adjudication of private citizens' rights and obligations.  This limitation is supported by the text of

§ 552(a)(2) itself, which makes clear that the covered documents refer to typical adjudicatory

contexts involving private individuals, not internal agency documents.  *See* 5 U.S.C.

§ 552(a)(2)(A) (referring to "final opinions, *including concurring and dissenting opinions, as*

*well as orders*, made in the adjudication of cases" (emphasis added); *id.* § 552(a)(2) (failure to publish a covered document precludes using the document "as precedent . . . *against a party other than an agency*," *i.e.*, against an individual (emphasis added)).   The D.C. Circuit's decisions have consistently confirmed this limitation as well.   *See EFF*, 739 F.3d at 9-10 (rejecting the "working law" line of cases in the context of an OLC opinion); *Schlefer v. United States*, 702 F.2d 233, 244 (D.C. Cir. 1983) ("A strong theme of our opinions has been that an agency will not be permitted to develop a body of 'secret law,' used by it *in the discharge of its regulatory duties and in its dealings with the public*[.]" (emphasis added)); *see also Fed. Open Mkt. Cmte. v. Merrill*, 443 U.S. 340, 352-53, 360 n.23 (1979) (policy directives are "intra-agency memorandums" exempt from § 552(a)(2) because they "do not establish rules that govern the adjudication of individual rights, nor do they require particular conduct or forbearance by any member of the public"); *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 603 (D.C. Cir. 2001) (holding that a report was not subject to affirmative disclosure because it "sets forth the conclusions of a voluntarily undertaken internal agency investigation, not a conclusion about agency action (or inaction) *in an adversarial dispute with another party*" (emphasis added)). The only other appellate court to take up the question agreed with the D.C. Circuit.   *See New York Times v. Dep't of Justice*, 806 F.3d 682, 687 (2d Cir. 2015) (citing *EFF* and rejecting "the general argument that the legal reasoning in OLC opinions is 'working law'").

Furthermore, OLC opinions generally cannot be considered "final opinions," because they do not finally dispose of any agency action—OLC simply provides legal advice relating to an agency's prospective policy choices, and that advice may or may not ultimately be relevant to an agency's final decision.   This description contrasts starkly with "final opinions" under § 552(a)(2), which the Supreme Court has stated will "not only invariably explain agency action

already taken or an agency decision already made, but also constitute 'final dispositions' of matters by an agency." *Sears*, 421 U.S. at 153-54.  As explained in other court decisions, OLC itself does not possess policymaking authority; instead, OLC merely provides legal advice to other Executive Branch actors, who then make policy decisions within the legal framework articulated by OLC.  *See EFF*, 739 F.3d at 10 ("Even if the OLC Opinion describes the legal parameters of what the FBI is *permitted* to do, it does not state or determine the FBI's policy."); *Brennan Ctr.*, 697 F.3d at 203 (2d Cir. 2012); *see also* Exh. 2 at 1 ("OLC does not have policymaking authority[.]").  OLC's limited advisory role in the policymaking process thus confirms that OLC opinions are not "final opinions" subject to affirmative disclosure.  *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 74-78 (D.D.C. 2008) (rejecting the "final opinion" argument with respect to OLC documents); *see also Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 187-89 (1975).

Because OLC itself does not have authority to act on or implement matters of policy, OLC therefore does not adopt statements of policy within the meaning of FOIA.  Rather, it is the client agencies ultimately responsible for making policy decisions that may, after receiving OLC's deliberative and pre-decisional advice, choose to adopt a statement of interpretation or policy that is subject to the publication requirement of § 552(a)(2)(B) ("statements of policy and interpretations *which have been adopted by the agency*") (emphasis added).  If the policymaking agency were to expressly adopt both the conclusion and the reasoning of an OLC advice document as the agency's own statement of interpretation or policy, then it might be covered by § 552(a)(2).[5]  Even in such a circumstance, however, that publication requirement would run to

---

[5] An agency must expressly adopt both the conclusion and the reasoning of a pre-decisional and deliberative document in order transform that document into agency policy.  *See Grumman Aircraft Eng'g Corp.*, 421 U.S. at 184–85.  Consequently, in order establish that an OLC advice document has become the agency policy

the policymaking agency, not OLC, which has no policymaking authority.  This understanding is confirmed by the D.C. Circuit's opinion in *Vietnam Veterans of Am. v. Dep't of Navy*, 876 F.2d 164, 164-65 (D.C. Cir. 1989), which held that when an entity has authority only to dispense legal advice on certain topics, but not to actually act on behalf of the agency on those topics, the legal opinions do not constitute statements of policy.  Whatever publication obligations may rest with individual client agencies in certain circumstances, therefore, clearly OLC itself is not required to affirmatively publish its confidential legal advice.

Finally, the fact that OLC opinions are not § 552(a)(2) documents is confirmed by the weight of authority holding that specific OLC opinions are exempt from disclosure under FOIA as privileged.  In *Sears*, the Supreme Court indicated that § 552(a)(2) generally does not cover deliberative documents.  421 U.S. at 153.  Undercutting CFA's argument that OLC opinions are subject to § 552(a)(2), then, is the fact that courts have routinely recognized that specific OLC opinions and other advice documents are properly withheld as privileged.  *See* Section III.B.3, *infra* (citing cases).  This ample case law not only provides an independent basis for non-disclosure of OLC opinions, *see id.*, but also shows that OLC opinions are not covered by § 552(a)(2) to begin with.

> **3.    OLC's Opinions Are Generally Exempt from Disclosure Pursuant to Both the Deliberative Process Privilege and the Attorney-Client Privilege.**

CFA's demand for compelled publication of OLC opinions would also destroy the judicially recognized privileges generally applicable to OLC legal advice documents, particularly

---

of a policymaking agency, there must be evidence that the agency adopted not only the conclusion, but also the reasoning, of that OLC advice as the agency's own view.

the deliberative process and attorney-client privileges.[6]  The applicability of Exemption Five means that OLC's advice documents (at least as a general matter) would be exempt from disclosure even if CFA were correct that such documents fell within § 552(a)(2) in the first instance.  *See Sears*, 421 U.S. at 154 n.21 (disclosure under § 552(a)(2) is not required where a record falls within FOIA's Exemption 5).

CFA's claim is meritless, as demonstrated by the numerous courts that have permitted OLC to withhold opinions that under CFA's theory would need to be affirmatively published. Again, the most prominent example is the D.C. Circuit's *EFF* decision, which not only rejected the applicability of the "working law" line of cases, but also expressly held that the OLC opinion was protected by the deliberative process privilege in its entirety.  Specifically, the court held that the OLC opinion was "advice offered by OLC for consideration by officials of the FBI," and fell within the line of decisions "holding that the deliberative process privilege *does* cover legal memoranda that concern the *advisability* of a particular policy, but do not authoritatively state or determine the agency's policy."  *EFF*, 739 F.3d at 8.  With this precedent in mind, it is clear that a substantial portion (if not all) of the OLC opinions that CFA asks the Court to mandate be made public here, *see* Compl. ¶ 35, may be properly withheld as privileged.  Accordingly, CFA's claim that affirmative publication of those documents is required is wrong.

Turning to the two privileges generally applicable to OLC advice, the deliberative process privilege applies when material is both "predecisional" and "deliberative."  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).  The purpose of the privilege is to "prevent injury to

---

[6] Many OLC opinions could be withheld on the basis of additional exemptions as well, such as the presence of classified information, § 552(b)(1); information specifically exempted from disclosure by statute, § 552(b)(3); information subject to privacy protections, § 552(b)(6); or law enforcement sensitive information, § 552(b)(7).  And OLC opinions may be subject to other privilege protections, including the presidential communications privilege and the attorney work-product doctrine.  At a minimum, however, OLC opinions may generally be withheld pursuant to the deliberative process and attorney-client privileges.  Thus, these two privileges are sufficient to justify the rationality of OLC's alleged policy of not automatically disclosing *all* of its opinions.

the quality of agency decisions." *Sears*, 421 U.S. at 151.  Because "the frank discussion of legal or policy matters in writing might be inhibited if the discussion were made public," the privilege "focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 150 (internal quotation marks omitted).

OLC opinions generally meet these requirements.  As discussed above, OLC itself does not make policy decisions; instead, it provides legal advice for other agencies, and those agencies in turn make policy decisions within the legal framework articulated by OLC.  Accordingly, OLC's advice is ordinarily simply one input into its client agencies' ongoing deliberations about how to conduct or implement their policy goals.  *See EFF*, 739 F.3d at 10 ("Even if the OLC Opinion describes the legal parameters of what the FBI is *permitted* to do, it does not state or determine the FBI's policy."); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 77 n.19 (D.D.C. 2008) ("[A] legal conclusion that is part of a larger decision-making process may well be subject to the deliberative process privilege.").  In general, then, OLC opinions are critical aspects of the "process by which governmental decisions and policies are formulated," *Sears*, 421 U.S. at 150, and the public disclosure of these opinions would undoubtedly chill the "candid, independent, and principled advice" that OLC aims to provide.  Best Practices Memo at 1.

Again, there is ample case law confirming that OLC opinions are generally protected by the deliberative process privilege.  *See, e.g.*, *New York Times v. Dep't of Justice*, 806 F.3d at 687; *New York Times v. Dep't of Justice*, 2013 WL 174222 at *4-9 (S.D.N.Y. Jan. 7, 2013); *CREW v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 166 (D.D.C. 2008); *CREW v. Office of Admin.*, 249 F.R.D. at 4-8; *New York Times Co. v. Dep't of Def.*, 499 F. Supp. 2d 501, 516

(S.D.N.Y. 2007); *Southam News v. INS*, 674 F. Supp. 881, 886 (D.D.C. 1987); *Morrison v. Dep't of Justice*, 1988 WL 47662 at \*1-2 (D.D.C. Apr. 29, 1988).  These cases confirm that OLC's legal advice, at least as a general matter, is deliberative in nature.

There can similarly be little debate that OLC's legal advice falls within the attorney-client privilege, which protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).  This privilege applies to government officials seeking advice from government attorneys, just as it does to private parties. *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 170 (2011); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

OLC opinions generally fall within the privilege.  "OLC's central function is to provide . . . controlling legal advice to Executive Branch officials[.]"  Best Practices Memo at 1.  That advice aims to "focus intensively on the central issues raised by a [client agency's] request[.]" *Id.* at 2.  And although OLC "operates from the presumption that it should make its significant opinions fully and promptly available to the public," frequently there will be "countervailing considerations" that lead OLC to conclude that public disclosure is inappropriate. *Id.* at 5.

One clear example (although not the only one) demonstrating why OLC's advice is covered by the attorney-client privilege is when an agency requests legal advice about a proposed course of action, but then OLC concludes that such actions would be legally impermissible.  As the Best Practices Memo explains:

> OLC will also decline to publish opinions when doing so is necessary to . . . protect the confidentiality of information covered by the attorney-client relationship between OLC and other executive offices.  The President and other Executive Branch officials, like other public- and private-sector clients, sometimes depend upon the confidentiality of legal advice in order to fulfill their duties effectively.  An example is when an agency requests advice regarding a

> proposed course of action, the Office concludes it is legally impermissible, and the action is therefore not taken.   If OLC routinely published its advice concerning all contemplated actions of uncertain legality, Executive Branch officials would be reluctant to seek OLC advice in the early stages of policy formulation—a result that would undermine rule-of-law interests.

Exh. 3 at 5-6.   In such circumstances, the fact that a particular policy choice (ultimately not taken) was being considered at a particular time will often remain confidential and privileged, and yet CFA's proposed approach would require destroying that privilege.   To the contrary, these considerations (typical to the attorney-client relationship) clearly permit OLC to consider the context of a particular opinion, and the interests of its clients, before deciding to publish a given opinion.

Indeed, several courts have previously recognized that OLC may withhold its opinions on the basis of the attorney-client privilege.  *See, e.g.*, *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 196 (D.D.C. 2013) ("[T]he Court concludes that the attorney-client privilege does apply to the sixteen OLC opinions because they 'embody legal advice that was provided in confidence at the request of and to Executive Branch officials.'" (quoting Colborn Decl.)); *ACLU v. Dep't of Justice*, 2011 WL 10657342 at *9 (D.D.C. Feb. 14, 2011); *CREW v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d at 166; *Elec. Privacy Info. Ctr.*, 511 F. Supp. 2d at 69.

In light of this significant amount of case law holding that OLC's legal advice is privileged and thus exempt from disclosure, CFA cannot plausibly maintain that OLC is compelled to publish wholesale categories of its opinions.   CFA's Complaint must therefore be dismissed for failure to state a claim upon which relief can be granted.

### C.    OLC Does Not Create Secret Law.

CFA's Complaint asserts that OLC creates "secret law."  *See* Compl. ¶¶ 28, 33, 39.  OLC does not create "secret law," however, nor does the nature of OLC's legal advice require it to be disclosed.  The case law does not support either assertion, and the relevant privileges should not

be construed in a manner that would undermine OLC's important role of providing confidential legal advice to the Executive Branch.

First, contrary to CFA's allegations, OLC does not create "secret law."  In the FOIA context, the phrase "secret law" is a term of art, sometimes also referred to as "working law." The "secret law" doctrine is a narrow one, under which agencies are prohibited from withholding decisional or post-decisional documents that govern the substantive rights or liabilities of private citizens:

> [W]e recognize that there is a narrow definition of "working law" that limits the term to those policies or rules, and the interpretations thereof, that either create or determine the extent of the substantive rights and liabilities of a person.  This appears to be the definition understood by all the sources relied upon by the Supreme Court in *Sears* for the proposition that "working law" is not protected by exemption 5.  All of the sources apparently operate under the assumption that the reason "working law" should be disclosed is that a private party may have cause to rely on it.

*Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983) (internal quotation marks and citations omitted).  Here, of course, OLC opinions do not regulate the public.  OLC simply provides legal advice to agencies, which then may (or may not) make policy decisions that may (or may not) regulate the public.  Regardless of whether those agencies' rationales must be disclosed as working law in some circumstances, OLC's legal advice itself is not the working law of any agency (though an agency could subsequently remove the protection of the deliberative process privilege by adopting both the conclusions and the reasoning of OLC's legal advice as the agency's own official policy, *see* note 5, *supra*).

Again, the D.C. Circuit expressly rejected the plaintiff's contrary argument in the *EFF* decision.  *See EFF*, 739 F.3d at 9-10 ("OLC does not speak with authority on the FBI's policy; therefore, the OLC Opinion could not be the 'working law' of the FBI unless the FBI 'adopted' what OLC offered."); *see also New York Times Co. v. Dep't of Justice*, 806 F.3d at 687 ("[T]hese

-34-

OLC documents are not 'working law.'  At most, they provide, in their specific contexts, legal advice as to what a department or agency is *permitted* to do, but OLC did not have the authority to establish the 'working law' of the agency, and its advice is not the law of an agency unless the agency adopts it." (internal modifications and citations omitted)); *CREW v. Office of Admin.*, 249 F.R.D. at 6-8 (rejecting the "secret law" argument).

As confirmed by *EFF* and numerous other cases, the proper way to view OLC's advice is not as the "working law" of OLC or any particular agency, but rather as confidential legal advice that is just one of the pre-decisional inputs an agency may receive when fashioning its policies. *See EFF*, 739 F.3d at 8 ("The authorities that control the disposition of this case are the decisions holding that the deliberative process privilege *does* cover legal memoranda that concern the *advisability* of a particular policy, but do not authoritatively state or determine the agency's policy."); *see also Elec. Privacy Info. Ctr.*, 584 F. Supp. 2d at 75 ("The D.C. Circuit has long recognized that legal advice is an integral part of the decision-making process and is protected by the deliberative process privilege." (citing *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980), and *Coastal States Gas Corp.*, 617 F.2d at 868)); *see also Murphy v. Dep't of Army*, 613 F.2d 1151, 1154 (D.C. Cir. 1979) (holding that the provision of legal advice to a person with "decision-making power" is "a classic case of the deliberative process at work").  Just as in *Brinton*, *Coastal States*, and *Murphy*, the legal advice provided by OLC aids the recipient agencies in their decisionmaking processes, and thus the advice is protected as privileged.

### D. OLC's Role Within the Executive Branch Underscores the Importance of Maintaining Applicable Privileges.

CFA attempts to portray OLC's advice-giving function as unique, by focusing on the "controlling" nature of OLC's advice, and the fact that OLC's advice may be treated as precedent within the Executive Branch.  *See* Compl. ¶¶ 13-23.  But these features of OLC's advice do not

undermine its privileged nature.  For one thing, the *EFF* decision expressly rejected the argument that the "precedential" nature of OLC's legal advice made it any less privileged.  *See* 739 F.3d at 9.  Indeed, many agencies receive similarly controlling or precedential legal advice from their in-house general counsels or chief counsels.[7]  Thus, the controlling nature of OLC's legal advice can hardly be described as unique within Executive Branch attorney-client relationships (nor is it relevant, in any event, to whether or not the advice is covered by § 552(a)(2)).

If anything, CFA's description of OLC's advice only highlights why such advice must remain privileged.  A proper construction of the relevant privileges—and in particular the deliberative process privilege, which is a uniquely governmental privilege—must account for the Executive Branch's designation of a single office as responsible for conclusively resolving difficult (and sometimes disputed) legal questions.  As prior Attorneys General and former OLC officials have recognized, the Department of Justice's advice-giving function—with that advice generally being treated as authoritative throughout the Executive Branch—is necessary for the government's orderly administration:

> Although the [Judiciary Act of 1789], requiring this [advice-giving] duty of the Attorney General, does not expressly declare what effect shall be given to his opinion, yet the general practice of the Government has been to follow it;—partly for the reason already suggested, that an officer going against it would be subject to the imputation of disregarding the law as officially pronounced, and partly from the great advantage, and almost necessity, of acting according to uniform rules of law in the management of the public business: a result only attainable under the guidance of a single department of assumed special qualifications and official authority.

---

[7]  In many cases, individual agencies' general counsels or chief counsels will provide controlling legal advice, in the sense that their legal opinions are customarily followed within the agency.  In some cases, moreover, the general counsels' or chief counsels' legal advice may even be formally controlling.  *See, e.g.*, 49 C.F.R. § 1.26 (Department of Transportation regulation stating that "[t]he General Counsel is the chief legal officer of the Department, legal advisor to the Secretary, and final authority within the Department on questions of law").  Regardless of whether it is formally controlling or followed as a matter of custom, however, it is clear that, contrary to CFA's contention, legal advice by such agency lawyers to policymaking officials is generally privileged.

*Office and Duties of Attorney General*, 6 Op. Att'y Gen. 326, 334 (1854); *see also Opinions of Attorneys General and Decisions of Auditors*, 5 Op. Att'y Gen. 97, 97 (1849); Randolph D. Moss, *Executive Branch Legal Interpretation*, 52 Admin. L. Rev. 1303, 1309-11 (2000). The consolidation of the Executive's advice-giving function within a single office in the Department of Justice serves important rule-of-law values, including by allowing the office to create certain norms governing the provision of legal advice. *See, e.g.*, Best Practices Memo at 1 ("OLC must always give candid, independent, and principled advice—even when that advice is inconsistent with the aims of policymakers. This memorandum reaffirms the longstanding principles that have guided and will continue to guide OLC attorneys in all of their work[.]").

Accordingly, the fact that OLC provides authoritative legal advice for the Executive Branch—or that OLC may approach its advice-giving function in a somewhat different way than private lawyers would—does not prevent OLC from invoking the relevant privileges. Congress has intended, since 1789, that the Attorney General (and, by extension, OLC) provide objective, authoritative legal advice to the rest of the Executive Branch. *See* Moss, *Executive Branch Legal Interpretation*, 52 Admin. L. Rev. at 1306-16. Construing FOIA as CFA proposes—to require the automatic disclosure of entire categories of OLC opinions—would undoubtedly undermine this long-settled and important role for OLC and the Department of Justice in our nation's government, and, by undermining the confidentiality of Executive Branch legal advice, threaten the rule of law.

### E.    CFA's Argument Raises Significant Constitutional Concerns.

CFA's argument that a significant number of OLC opinions must be publicly disclosed would have far-reaching implications. Not only would this argument damage OLC's effectiveness as an institution, it would also call into question the ability of the Executive Branch

and senior Executive Branch officials to obtain *any* confidential legal advice.  CFA's argument thus raises significant constitutional concerns, and should be rejected on this basis alone.

CFA's argument and its accompanying prayer for relief—seeking a judicial order compelling the public disclosure of, at a minimum, every controlling or precedential OLC opinion, Compl. ¶ 35—is not only incorrect as a matter of law and unwise as a policy matter, *see* Sections III.B-D, *supra*, but would also significantly interfere with the President's constitutional duties under Article II.  Specifically, the Constitution requires that the President take an Oath promising to "faithfully execute the Office of President of the United States," and to "preserve, protect and defend the Constitution of the United States."  U.S. Const. art. II, § 1, cl. 8.  The Constitution further requires the President to "take Care that the Laws be faithfully executed[.]"  US. Const. art. II, § 3.  In connection with those duties, the President is authorized to "require the Opinion, in writing, of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices."  U.S. Const. art. II, § 2, cl. 1.

Courts and government officials have consistently recognized that, for a President to effectively execute his duties under Article II, he must be able to obtain confidential and candid legal advice.  *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 705-06 (1974) (discussing the President's need for confidentiality "in the exercise of Art. II powers," noting that "the importance of this confidentiality is too plain to require further discussion"); *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 909 (D.C. Cir. 1993) ("The ability to discuss matters confidentially is surely an important condition to the exercise of executive power.  Without it, the President's performance of any of his duties—textually explicit or implicit in Article II's grant of executive power—would be made more difficult."); *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 50-51 (D.D.C. 2002) ("[T]he Supreme Court

has repeatedly recognized that the importance to the Presidency of receiving candid, honest, and when necessary, unpopular, advice from high Government officials and those who advise and assist them in the performance of their manifold duties is paramount."); Letter from Att'y Gen. Mukasey to Sen. Maj. Leader Reid, Re: The OLC Reporting Act of 2008 (Nov. 14, 2008) at 3-4 (discussing how "[a]dministrations of both political parties have long recognized the importance of protecting the Executive branch's confidential legal advice" and citing examples).[8]

Plainly, CFA's requested relief here—the mandatory disclosure of a large swath of OLC advice documents—would, if granted, significantly interfere with the President's ability to receive confidential legal advice.[9]  Not only would it prevent the President himself from receiving such advice—thus interfering with his authority under the Opinions Clause, in addition to the execution of his Article II duties—but the requested relief would also interfere with the President's discharge of his constitutional obligation to take care that agencies faithfully execute the laws, including by ensuring that those agencies may receive confidential legal advice directly, to inform both their decisionmaking processes and their ability to faithfully execute the law.

Construing FOIA to permit CFA to obtain this relief would clearly raise significant constitutional concerns, and in similar circumstances, the Supreme Court has construed statutes in a manner that avoided such constitutional problems.  *See Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 465-68 (1989) (construing Federal Advisory Committee Act (FACA) so as to avoid encroaching on President's Article II authority) (citing, *inter alia*, *Crowell v. Benson*, 285 U.S.

---

[8] This letter is available online at http://www.justice.gov/archive/ola/views-letters/110-2/11-14-08-ag-ltr-re-s3501-olc-reporting-act.pdf, and also on Westlaw at 2008 WL 5533799.

[9] The President's need to receive confidential legal advice raises yet another privilege, the presidential communications privilege, that would protect a substantial portion of OLC's advice from disclosure.  *See* note 6, *supra*.

22, 62 (1932)); *see also id.* at 488-89 (Kennedy, J., concurring) (concluding that FACA was unconstitutional as applied, because "[t]he mere fact that FACA would regulate so as to interfere with the manner in which the President obtains information necessary to discharge his duty assigned under the Constitution to nominate federal judges is enough to invalidate the Act").

Even outside the context of OLC advice, moreover, accepting CFA's argument would call into question Executive Branch policymakers' ability to obtain *any* confidential legal advice, regardless of whether the advice came from OLC or from within an agency.  *See* note 7 & accompanying text, *supra*.  The damage to the Executive Branch that would be caused by such a holding—essentially eliminating the government's ability to protect "binding" legal advice under the deliberative process and/or attorney-client privileges—can scarcely be overstated.  *Cf.* Letter from Mukasey to Reid at 4 ("[L]egal matters are likely to be among those on which high government officials most need, and should be encouraged to seek, objective, expert advice. . . . Any other approach would jeopardize not just particular policies and programs but the principle that the government must obey the law.").

In sum, OLC's advice-giving function is important not only as a policy matter, but also for the President's effective execution of his constitutional duties and responsibilities pursuant to Article II.  CFA's arguments here are plainly in substantial tension with the Executive's ability to obtain confidential legal advice.  These significant constitutional concerns, by themselves, caution against CFA's radical reading of the FOIA statute and warrant dismissal of the extraordinary legal claim presented in CFA's Complaint.

## IV.	THE INDEXING CLAIM MUST BE DISMISSED.

The above discussion demonstrates why Count One in CFA's Complaint must be dismissed.  Count Two alleges that OLC has failed to comply with the indexing requirement of § 552(a)(2), which requires that each agency make available indices of "any matter issued,

adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published." 5 U.S.C. § 552(a)(2); *see* Compl. ¶¶ 37-38.  This claim, too, must be dismissed.

As an initial matter, it is doubtful that this type of "indexing" claim can be enforced through FOIA directly.  FOIA's remedial provision, § 552(a)(4)(B), authorizes the production of documents,  but says nothing about compelling creation and disclosure of indices.  *See* Section I, *supra*.  Because § 552(a)(4)(B) would not provide a remedy, this type of indexing claim is more naturally enforced through the APA, to the extent that such relief is available at all.  *See Pub. Citizen v. Lew*, 127 F. Supp. 2d 1, 8-9 (D.D.C. 2000) (reviewing an indexing claim under APA standards because the claim was a "FOIA action[] outside the scope of § 552(a)(4)(B)").

In any event, this Court need not resolve whether the indexing claim may be brought under FOIA directly.  CFA's indexing claim is entirely derivative of its first claim about the scope of § 552(a)(2); the indexing duty applies only to materials "required by this paragraph to be made available or published."  5 U.S.C. § 552(a)(2).  For all the reasons discussed above, CFA has not plausibly established that OLC has unlawfully withheld any advice documents under § 552(a)(2).  *A fortiori*, then, CFA also has not plausibly established any violation of the indexing requirement.  Both of the claims in CFA's Complaint should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, CFA's Complaint should be dismissed for lack of subject-matter jurisdiction, and for failure to state a claim upon which relief can be granted.

Dated: July 21, 2016                                    Respectfully Submitted,

                                                        BENJAMIN C. MIZER
                                                        Principal Deputy Assistant Attorney General

                                                        CHANNING D. PHILLIPS
                                                        United States Attorney

-41-

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/   Daniel Schwei
DANIEL SCHWEI
Trial Attorney (N.Y. Bar)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530
Tel.:        (202) 305-8693
Fax:        (202) 616-8470
Email:      daniel.s.schwei@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C. 20044

Courier Address:
20 Massachusetts Avenue N.W.
Washington, D.C. 20001

*Counsel for Defendant*