**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAMPAIGN FOR ACCOUNTABILITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-cv-1068 (KBJ) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**


Anne L. Weismann
D.C. Bar No. 298190
Campaign for Accountability
1201 Connecticut Avenue, N.W., Suite 300
Washington, D.C.  20036
(202) 780-5750

*Counsel for Plaintiff*

August 22, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………. iii

INTRODUCTION…………………………………………………………… 1

STATUTORY AND REGULATORY BACKGROUND………………………... 3

The Office of Legal Counsel……………………………………………… 6

FACTUAL BACKGROUND………………………………………………… 7

ARGUMENT………………………………………………………………... 10

STANDARD OF REVIEW…………………………………………………..10

I.  THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S
    CLAIMS………………………………………………………………….. 11

A.  CfA Is Challenging DOJ's Ongoing Policy And Practice Of Refusing To
    Proactively Provide Public Access To Its Opinions And Indices In
    Violation Of The FOIA……………………………………………………… 11

B.  This Court Has Jurisdiction To Compel DOJ To Comply With The Indexing
    Requirement Of The FOIA................................................................ 13

C.  The Requested Relief Falls Within This Court's Broad Remedial Powers
    Under The FOIA………………………………………………………… 15

D.  Recognizing The Power Of Courts To Award The Equitable Relief Sought
    Here Would Enhance, Not Undermine, The FOIA………………………… 19

E.  CfA's Claims Are Ripe For Resolution…………………………………… 21

II. CfA HAS STATED VALID CLAIMS THAT OLC'S PUBLICATION
    POLICY AND PRACTICE ARE CONTRARY TO LAW………………………… 24

A.  CfA's Complaint Leaves No Doubt As To The Policy And Practice It Is
    Challenging That Apply To Documents Clearly Within The Scope Of
    § 552(a)(2)…………………………………………………………………25

B.  OLC Produces Opinions And Interpretations That Fall Within § 552(a)(2)……… 28

C.  OLC Produces Opinions And Interpretations That Are Not Exempt From
    Disclosure Under The FOIA……………………………………………………….. 33

D.  By Refusing To Comply With § 552(a)(2), OLC Is Creating Secret Law…………. 38

III.  REQUIRING OLC TO COMPLY WITH § 552(a)(2) DOES NOT
     THREATEN OLC'S ROLE WITHIN THE EXECUTIVE BRANCH
     OR IMPLICATE ANY CONSTITUTIONAL CONCERNS……………………... 40

CONCLUSION…………………………………………………………………………… 42

## TABLE OF AUTHORITIES

**CASES** **PAGE**

*A.N.S.W.E.R. Coalition v. Salazar*, 915 F. Supp. 2d 93 (D.D.C. 2013) ……………… 10

*Afshar v. Dep't of State*, 702 F.2d 1125 (D.C. Cir. 1983) …………………………….. 40

*Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86 (D.C. Cir. 1986) …………………19,23

*Bhd. of Locomotive Eng'rs v. Surface Transp. Bd.*, 1997 U.S. Dist. LEXIS 11808
   (D.D.C. July 10, 1997) …………………………………………………………….. 37

*Brinton v. Dep't of State*, 636 F.2d 600 (D.C. Cir. 1980) ………………………… 34

*Byrd v. EPA*, 174 F.3d 239 (D.C. Cir. 1999) ………………………………………19

*Cause of Action v. FTC*, 799 F.3d 1108 (D.C. Cir. 2015) ………………………….. 18-19

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of
   Justice*, No. 13-1291 (APM), 2016 U.S. Dist. LEXIS 28497
   (D.D.C. March 7, 2016) …………………………………………………… 2,3,17,18

*Coalition for Underground Expansion v. Mineta*, 333 F.3d 193 (D.C. Cir. 2003) ……. 10

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2sd 854 (D.C. Cir.
   1980) …………………………………………………………………………... 33,35,37

*Conley v. Gibson*, 355 U.S. 41 (1957) …………………………………………… 11

*CREW v. Cheney*, 593 F. Supp. 2d 194 (D.D.C. 2009) ………………………….... 10

*CREW v. Office of Admin.*, 249 F.R.D. 1 (D.D.C. 2008) ……………………………. 40

*Ctr. for Effective Gov't v. U.S. Dep't of State*, 7 F. Supp. 3d 16 (D.D.C. 2013) ………. 39

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) ………….. 11

*Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1 (D.C. 2014) ………………... passim

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1968) …………………………………. 12

*Fed. Open Mkt. Cmte. v. Merrill*, 443 U.S. 340 (1979) ………………………………... 31

*Jordan v. Dep't of Justice*, 519 F.2d 753 (D.C. Cir 1978) (en banc) ………………  22,39

*Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ……………………….. 19

*Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191 (D.C. Cir. 1996) …... 17

*Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980) ………. 14

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S.
    163 (1993) ……………………………………………………………………………… 10

*Long v. IRS*, 693 F.2d 907 (9th Cir. 1982) ………………………………………………  12,13

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir.  2007) ……………………………………… 18

*Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221 (D.D.C. 2011) …………………. 12

*Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir 1995) ……………….... 18

*Nat'l Ass'n of Home Builder v. EPA*, 667 F.3d 6 (D.C. Cir. 2011) ……………………. 10

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012) ……………………. 12

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ……………………………… 32,37

*Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) …………….... passim

*Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982) …………………………………………… 18

*Pfeiffer v. CIA*, 721 F. Supp. 337 (D.D.C. 1989) ……………………………………… 34

*Public Citizen v. Dep't of State*, 276 F.3d  634 (D.C. Cir. 2002) ……………………… 23

*Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1 (1974) ……………16,18

*Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598 (D.C. Cir. 2001) ……………… 31

*Schlefer v. United States*, 702 F.2d 233 (D.C. Cir. 1983) ……………………………… 30

*Steinberg v. Dep't of Justice*, 23 F.3d 548 (D.C. Cir. 1994) …...……………………… 18

*Sterling Drug, Inc. v. FTC*, 450 F.2d 698 (D.C. Cir. 1971) …………………………… 37

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) ………………………………... 18,35

*Taxation With Representation Fund v. IRS*, 646 F.2d 666 (D.C. Cir. 1981) …………... 37

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749 (1989) ……………………………………………………………………… 39

*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) ……………………………….. 34

**STATUTES**

5 U.S.C. § 552 ………………………………………………………….. passim

5 U.S.C. § 553(e) ………………………………………………………… 14

28 U.S.C. § 508 (1988) ……………………………………………………. 7

28 U.S.C. § 509 ………………………………………………………….. 29

28 U.S.C. § 510 ………………………………………………………….. 7

28 U.S.C. § 523 ………………………………………………………….. 7

Independent Offices Appropriation Act, Pub. L. No. 73-78, § 16(a), 48 Stat. 283 (June 16, 1933) ………………………………………………………… 7

Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 73………………………………… 7

Pub. L. 89-487, Section 3(b) ……………………………………………...4-5

Reorganization Plan No. 2 of 1950, 64 Stat. 1261 …………………………… 7

**UNITED STATES CONSTITUTION**

U.S. Const. art. II, § 3 …………………………………………………… 36

**RULES AND REGULATIONS**

Exec. Order No. 12, 146, § 1-501, 3 C.F.R. § 409 (1979) …………………………… 7,29

Fed. R. Civ. P. 12(b)(1) ………………………………………………… 10

Fed. R. Civ. P. 12(b)(6) ………………………………………………… 10

28 C.F.R. § 0.25 …………………………………………………………… 7

## OTHER AUTHORITIES

S. Rep. No. 79-752 (1945) ……………………………………………………..· 4

S. Rep. No. 89-813 (1965) …………………………………………………… 4,6,22

H. Rep. No. 89-1497 (1966) ………………………………………………… 5,33,38

92 Cong. Rec. 56750 (Sen. Doc. P. 357) …………………………………………... 3

*Hearings Before the Subcommittee on Administrative Practice and Procedure of
the Senate Judiciary Committee on S. 1160, S. 1336, S. 1758, and S. 1879,
Administrative Procedure Act*, 89th Cong., 1st Sess. 143 (1966) ………………....... 38

Att'y Gen. Order No. 9-53 (Apr. 3, 1953) ……………………………………………… 7

Kenneth C. Davis, *The Information Act:  A Preliminary Analysis*, 34 U. Chi. L.
Rev. 7861 (1967) ………………………………………………………………….. 33

Frank H. Easterbrook, *Privacy and the Optimal Extent of Disclosure Under
the Freedom of Information Act*, 9 J. Legal Studies 774 (1980) ……………………... 39

Randolph D. Moss, *Recent Developments Federal Agency Focus:  The Department
of Justice:  Executive Branch Legal Interpretation:  A Perspective From the Office
of Legal Counsel*, 52 Admin. L. Rev. 1303 (Fall 2000) ……………………………… 36

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAMPAIGN FOR ACCOUNTABILITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-cv-1068 (KBJ) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

The Freedom of Information Act (FOIA) imposes on government agencies an affirmative obligation to make certain categories of documents proactively available to the public on an ongoing basis, including agency opinions and interpretations of law, as well as indices of those opinions.  5 U.S.C. § 552(a)(2).  These obligations are completely separate from an agency's obligation to respond to a specific request for documents pursuant to § 552(a)(3) of the FOIA.  Enacted against the backdrop of a broader push to open up the processes of government to public scrutiny, Congress imposed the so-called "reading room" requirement of § 552(a)(2) to prevent agencies from creating a body of secret law that undermines our democratic system of government.  This lawsuit by Campaign for Accountability (CfA) challenges the refusal of defendant U.S. Department of Justice (DOJ) to comply with these obligations, as reflected in both DOJ's practices and the policy it has adopted granting itself the unlimited discretion to ignore these requirements at will.  As a result, CfA and the public have been denied, and will continue to be denied, access to information to which the FOIA guarantees a right of access.

DOJ now seeks dismissal of CfA's lawsuit based on arguments that fundamentally misconstrue the relevant statutory language, the congressional intent behind the reading room provision, the case law that, while not dispositive of all of the issues here offers helpful guidance, and the nature of CfA's claims and the relief it seeks. In essence, DOJ seeks to read the reading room and indexing provisions of the FOIA out of existence or, at least, beyond the power of any court to enforce.

As all parties agree, CfA is not challenging DOJ's refusal to produce specifically requested documents in response to a specific FOIA request.  All parties agree further that the Office of Legal Counsel (OLC), a component of DOJ, has a written policy prescribing the process for preparing formal written opinions of the Attorney General that contain "controlling advice to Executive Branch official on questions of law" and that "may effectively be the final word on controlling law."[1]  But the parties disagree on the import and impact of this policy and the extent to which the FOIA authorizes this Court to entertain and redress CfA's challenge to this policy and OLC's practices under it.

Ample Circuit precedent establishes that the declaratory and injunctive relief CfA seeks falls within this Court's broad remedial powers to redress agency policies that violate the FOIA.  Further, because CfA is challenging a policy and practice of DOJ, its claims are neither made moot nor unripe by the fact that CfA is not challenging DOJ's refusal to produce specific documents pursuant to a specific FOIA request.  DOJ's arguments to the contrary ignore a recent ruling from Judge Amit P. Mehta of this district, *Citizens for Responsibility & Ethics in Washington (CREW) v. U.S. Dep't of*

---

[1] Memorandum for Attorneys of the Office, from David J. Barron, Acting Assistant Att'y Gen., Office of Legal Counsel, Re:  *Best Practices for OLC Legal Advice and Written Opinions* (July 16, 2010) (Best Practices Memo) at 2 (Exhibit 3 to Memorandum in Support of Defendant's Motion to Dismiss (D's Mem.))

*Justice*, No. 13-1291 (APM), 2016 U.S. Dist. LEXIS 28497, *3 (D.D.C. March 7, 2016),

that suits to compel agency compliance with § 552(a)(2) properly are brought under the

FOIA.  Any other conclusion would render the statutory provisions an unenforceable

nullity.

On the merits of CfA's claims, DOJ posits it produces no opinions that fall within

§ 552(a)(2), relying almost exclusively on a single decision from the D.C. Circuit ruling

that specific OLC advice was privileged and exempt from disclosure under the FOIA.

Beyond the limitations of this one opinion, DOJ has offered no evidence supporting its

claims that the attorney-client and deliberative process privileges protect all – or virtually

all – of its opinions.  At this early stage of the litigation, there simply is no factual record

from which this Court properly can reach that conclusion.

## STATUTORY AND REGULATORY BACKGROUND

Since 1946 and the enactment of the Administrative Procedure Act (APA),

Congress has required all federal agencies to publish in the Federal Register or otherwise

make publicly available specified categories of records.  Section 3(a) of the APA directed

every agency to make publicly available "substantive rules adopted as authorized by law

and statements of general policy or interpretations formulated and adopted by the agency

for the guidance of the public."[2]  Section 3(b) directed agencies to make publicly

available "all final opinions or orders in the adjudication of cases (except those required

for good cause to be held confidential and not cited as precedents)."  *Id.*  The Senate

described these requirements, known as the "public information section," as:

> among the most important, far-reaching, and useful provisions

---

[2] *See* Attorney General's Manual on the Administrative Procedure Act, Section 3 – Public Information (1947) (1947 AG Manual), citing 92 Cong. Rec. 56750 (Sen. Doc. P. 357), *available at* http://www.law.fsu.edu/library/admin/1947ii.html.

> of the bill . . . drawn upon the theory that administrative
> operations and procedures are public property which the general
> public, rather than a few specialists or lobbyists, is entitled to
> know or have ready means of knowing with definiteness and
> assurance.

S. Rep. No. 79-752, at 198 (1945).

In 1965, frustrated with the various loopholes of § 3 of the APA on which

agencies were relying "to deny legitimate information to the public," and "as an excuse

for secrecy," S. Rep. No. 89-813, at 38 (1965), Congress proposed legislation to clarify

that "section 3 of the Administrative Procedure Act is not a withholding statute but a

disclosure statute[.]" *Id.* at 40.  The vast post-World War II expansion of the federal

government highlighted for Congress "the great importance of having an information

policy of full disclosure." *Id.* at 38.  Echoing the words of James Madison, supporters of

the proposal noted, "[a] popular government without popular information or the means of

acquiring it, is but a prologue to a farce, or a tragedy, or perhaps both." *Id.*

Addressing these concerns, in 1966 Congress amended § 3, which it included as

part of the newly enacted FOIA, to require all agencies to make publicly available, *inter*

*alia*, "all final opinions . . . and all orders made in the adjudication of cases" and "those

statements of policy and interpretations which have been adopted by the agency."  Pub.

L. 89-487, Section 3(b).  The legislative history to this provision explains these changes

were designed to reconcile perceived conflicts between the public's need to know and the

need to protect individual privacy.  The legislative solution

> would require agencies to make available statements of policy,
> interpretations, staff manuals, and instructions that affect any
> member of the public.  This material is the end product of
> Federal administration.  It has the force and effect of law in
> most cases, yet under the present statute these Federal agency
> decisions have been kept secret from the members of the

> public affected by the decisions.
>
> As the Federal government has extended its activities to solve
> the Nation's expanding problems – and particularly in the 20
> years since the Administrative Procedure Act was established –
> the bureaucracy has developed its own form of case law.  This
> law is embodied in thousands of orders, opinions, statements,
> and instructions issued by hundreds of agencies.  This is the
> material which would be made available under [the proposed
> bill].

H. Rep. No. 89-1497, at 28 (1966).

The current codification of this provision continues to require every agency to proactively make publicly available "(A) final opinions . . . made in the adjudication of cases" and (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register."  5 U.S.C. §§ 552(a)(2)(A), (B). DOJ guidance explains that subsection (a)(2) requires agencies to "proactively identify" records falling within the scope of this provision "and to make those records "available for public inspection and copying" "automatically . . . without waiting for a FOIA request."[3]  Further, this provision "requires agencies to not only maintain, but also to continuously update, the records in each of the four categories designated by subsection (a)(2) of the FOIA."[4]

Subsection (a)(3)(A) further clarifies that this obligation is separate and distinct from the obligation to respond to a specific FOIA request under § 552(a)(3)(A):

> *Except with respect to the records made available under*
> *paragraphs (1) and (2)* of this subsection, and except as
> provided in subparagraph (E), each agency, upon request
> for records which (i) reasonably describes such records
> and (ii) is made in accordance with published rules . . .
> shall make the records promptly available to any person.

---

[3] Department of Justice Guide to the Freedom of Information Act 10 (2014) (quotation omitted), *available at* https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/proactive-disclosures.pdf#_PAGE4.
[4] *Id.* at 12.

(emphasis added).  The legislative history to this provision confirms § 552(a)(3)(A) was initially added to the FOIA "to emphasize the agency records made available by (paragraphs (1) and (2)) are not covered by paragraph (3) which deals with other agency records."  S. Rep. No. 89-813, at 2.[5]

Section 552(a)(2)(E) of Title 5 imposes on agencies the additional requirement to make publicly available "current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and requested by this paragraph [which includes the reading room requirements] to be made available or published."  Like the other proactive disclosure provision discussed above, the indexing requirement is not tied to whether a record has been requested or released.

### The Office of Legal Counsel

The Judiciary Act of 1789 charged the Attorney General with, *inter alia*,

> giving his advice and opinion upon questions of law when required by the President of the United States, or when requested by the heads of any of the departments, touching any matters that may concern their departments[.]

Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 73, 93.  The current codification of this law, found at 28 U.S.C. § 523, directs the Attorney General to render opinions when requested by the President or heads of executive departments "on questions of law arising in the administration of his department."  Pursuant to 28 U.S.C. § 510, the Attorney General has delegated this responsibility to OLC.

---

[5] In 1996, Congress again amended § (a)(2) of the FOIA through the Electronic Freedom of Information Amendments.  Those amendments emphasize the forward-looking operation of § 552(a)(2) by requiring agencies affirmatively to make a new category of information publicly available through agency reading rooms:  records disclosed in response to a FOIA request that likely will be subject to subsequent requests. *See* DOJ Freedom of Information Act Guide, 2014, *available at* https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/proactive-disclosures.pdf#_PAGE4.

Further, the President by executive order has directed agencies to submit inter-agency disputes to the Attorney General "[w]henever two or more Executive agencies are unable to resolve a legal dispute between them[.]"  Exec. Order No. 12, 146, § 1-501, 3 C.F.R. § 409 (1979), reprinted as amended in 28 U.S.C. § 508 (1988).  Various DOJ components have exercised this authority over the years.  In 1933, the Independent Offices Appropriation Act, Pub. L. No. 73-78, § 16(a), 48 Stat. 283, 307 (June 16, 1933), created within DOJ a new office of the assistant solicitor general to which the Attorney General delegated the responsibility of drafting legal opinions and providing legal advice to other executive branch agencies.  This office was abolished through the Reorganization Plan No. 2 of 1950, 64 Stat. 1261, and replaced with the Executive Adjudications Division.  In 1953, the Attorney General renamed it the Office of Legal Counsel.  Att'y Gen. Order No. 9-53 (Apr. 3, 1953).

Under authority delegated by 28 U.S.C. § 510, current DOJ regulations define the function of OLC as including the preparation of "the formal opinions of the Attorney General," 28 C.F.R. § 0.25(a), and "rendering opinions to the Attorney General and to the heads of the various organizational units of the Department on questions of law arising in the administration of the Department."  *Id.* at § 0.25(c).  It is these OLC opinions, particularly those OLC designates as "formal," for which CfA seeks disclosure pursuant to § 552(a)(2) and publicly available indexing.

## FACTUAL BACKGROUND

Plaintiff Campaign for Accountability is a non-profit, non-partisan project of a tax-exempt entity organized under § 501(c)(3) of the Internal Revenue Code.  Complaint (Compl.), ¶ 5.  CfA uses research, litigation and communications to expose misconduct

and malfeasance in public life.  *Id.*  As part of its research, CfA uses government records made available to it under public information laws as well as government records agencies have made publicly available.  *Id.*  To fulfill this mission, CfA seeks access to OLC opinions.  *Id*. at ¶ 6.

Toward that end, in a letter dated March 22, 2016, CfA asked OLC to abide by its legal responsibilities pursuant to 5 U.S.C. § 552(a)(2) to make available for public inspection and copying on an ongoing basis all unpublished OLC opinions that provide controlling interpretations of legal authority to executive branch agencies and to provide an index of such opinions, independent of any specific FOIA request under 5 U.S.C. § 552(a)(3).[6]  This letter was similar to a letter Ms. Weismann had sent to OLC on July 3, 2013, on behalf of another organization.  *Id.*  CfA's letter explained that the agency's ongoing refusal to comply with § 552(a)(2) has led to the creation of a body of secret law that contravenes the congressional purpose behind that provision and undermines our democratic system of government.  *Id.*

On behalf of OLC, Deputy Assistant Attorney General John E. Bies responded to this letter on May 26, 2016.[7]  Mr. Bies made clear OLC continues to believe none of its opinions is covered by § 552(a)(2) and all are otherwise privileged.  *Id*.  Mr. Bies further explained OLC makes individualized, case-by-case determinations as to which of its opinions it will make public, exercising administrative discretion it has ceded to itself based on factors of its own choosing.  *Id*.  Accordingly, OLC refused to provide CfA with the relief it requested in its March 22, 2016 letter.

---

[6] Letter from Anne L. Weismann to Principal Deputy Assistant Attorney General Karl Remón Thompson, March 22, 2016 (Exhibit 1 to D's Mem.).
[7] This response (Bies Letter) is Exhibit 2 to D's Mem.

In his response, Mr. Bies referenced a July 16, 2010 memorandum issued by then-Acting Assistant Attorney General David J. Barron to OLC attorneys, *Best Practices for OLC Legal Advice and Written Opinions* (Best Practices Memo) (Exhibit 3 to D's Mem.). That memo describes the "core function" of OLC as "provid[ing] controlling advice to Executive Branch officials on questions of law that are centrally important to the functioning of the Federal Government." *Id*. *at* 1. According to the Best Practices Memo, the opinions OLC renders in furtherance of this core function "may effectively be the final word on controlling law." *Id*. Indeed, the memo uses the term "controlling" three times on the first page alone.

The Best Practices Memo also spells out the procedural process OLC must use for certain formal opinions that appear to be the most substantively significant and "most likely . . . [are] necessary when the legal question is the subject of a concrete and ongoing dispute between two or more executive agencies." *Id*. at 3. Such opinions are easy to recognize: they are personally signed by the current head of OLC at the time of approval as well as two deputies and any attorney advisers who worked on them; prepared on bond paper; go through additional clearance processes, including the preparation of an opinion control sheet; and are separately filed and indexed. Best Practices Memo at 4-5.

OLC's refusal to comply with the statutory mandate in 5 U.S.C. § 552(a)(2) has harmed and continues to harm CfA in carrying out its core programmatic activities. Specifically, CfA has suffered an informational harm by being deprived of information the law requires DOJ to affirmatively make publicly available without any action by CfA of any other member of the public. Compl., ¶ 8.

## ARGUMENT

## STANDARD OF REVIEW

In responding to a motion brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff bears the burden of establishing the court's jurisdiction. *See, e.g.*, *A.N.S.W.E.R. Coalition v. Salazar*, 915 F. Supp. 2d 93, 100 (D.D.C. 2013), and cases cited therein. This burden at the pleading stage "'is not onerous,'" *id.* (quoting *Nat'l Ass'n of Home Builder v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011)), and a plaintiff need allege only "general factual allegations of injury resulting from the defendant's conduct." *A.N.S.W.E.R.*, 915 F. Supp. 2d. at 100 (quotation omitted).

The reviewing court must accept all factual allegations in the complaint as true, giving the plaintiff "the benefit of all favorable inferences that can be drawn from the alleged facts." *CREW v. Cheney*, 593 F. Supp. 2d 194, 209-10 (D.D.C. 2009) (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). Further, in resolving a motion to dismiss for lack of subject matter jurisdiction, a court may properly consider "the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quotation omitted).

A reviewing court ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6) also must construe the complaint "in a light favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *CREW*, 593 F. Supp. 2d at 210. Further, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957). The court may consider only those facts alleged in the complaint, including documents attached or incorporated in the complaint, as well as matters of public record and those of which the court may take judicial notice. *See*, *e.g.*, *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Evaluating defendant's motion to dismiss under these standards it is clear not only that the government has failed to carry its burden, but also that there are holes in the factual record that limited discovery could fill in to provide this Court and any subsequent reviewing court a full record to evaluate the scope of DOJ's obligations under § 552(a)(2) of the FOIA.

## I.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS.

### A.    CfA Is Challenging DOJ's Ongoing Policy And Practice Of Refusing To Proactively Provide Public Access To Its Opinions and Indices In Violation Of The FOIA.

The starting point for any analysis is the nature of CfA's claims. As even DOJ admits, CfA is not challenging the agency's withholding of specific documents in response to a specific FOIA request. Rather, any fair reading of CfA's complaint demonstrates CfA is complaining about DOJ's ongoing policy and practice of exercising discretion on an individualized, case-by-case basis, based on factors of its own choosing, in determining whether to comply with the requirements of 5 U.S.C. § 552(a)(2) -- a policy CfA alleges conflicts with DOJ's statutory obligations. *See*, *e.g.*, Compl., ¶¶ 7, 25.

The FOIA authorizes a party to bring a "claim that an agency policy or practice will impair the party's lawful access to information in the future," separate and apart from a claim seeking the disclosure of specifically requested records the agency has

withheld under § 552(a)(3).  *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491

(D.C. Cir. 1988).  Courts frame such claims as challenges to a "policy or practice" if they

allege an agency's "failure to abide by the terms of the FOIA, and not merely isolated

mistakes by agency officials."  *Id.*  To properly state a policy or practice claim,

> a plaintiff must plausibly demonstrate that:  (1) the agency in
> question has adopted, endorsed, or implemented a policy or
> practice that constitutes an ongoing failure to abide by the terms
> of the FOIA; and (2) the plaintiff will suffer continuing injury
> due to this practice.

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 253 (D.D.C. 2012) (quoting *Payne*

*Enters.*, 837 F.2d at 491) (internal quotation marks omitted)).  Once a policy and practice

claim has been demonstrated, courts are empowered under the FOIA to order declaratory

and injunctive relief.  *Id.* at 266; *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982); *Muttitt*

*v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 229 (D.D.C. 2011);

Here, as noted, DOJ has implemented a policy and practice of using its own

discretionary factors in deciding which of its opinions to make publicly available, rather

than following the command of § 552(a)(2).  The Bies Letter, which mirrors a similar

letter sent by Mr. Bies in August 2013, describes this policy, which the Best Practices

Memo lays out in detail.

DOJ's policy and practice deprive CfA of information that, if not made publicly

available, will result in the accumulation of a body of secret law.  The informational harm

CfA has suffered, and will continue to suffer, establishes CfA's standing to sue based on

an injury in fact.  *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1968).

Further, postponing review until the issue is presented in the narrow context of a

specific request for a specific document would not remedy the harm that flows from

DOJ's unlawful policy and practice.  As in *Payne Enters.*, delaying review of CfA's policy and practice claims would allow DOJ "to use the FOIA offensively to hinder the release of . . . documents."  837 F.2d at 949 (quoting *Long v. IRS*, 693 F.2d at 910).  Even more troubling, DOJ's proposed approach – the submission of serial requests – would allow DOJ to avoid altogether its broader obligations under § 552(a)(2).

At bottom, the government's mischaracterization of this action stems from its refusal to recognize the fundamental differences between §§ 552(a)(2) and (a)(3).  As discussed, the first provision, which is at issue here, imposes an obligation to proactively and continuously make available to the public at large – through real or virtual reading rooms – categories of records, while the second provision is aimed retroactively at the disclosure of specifically requested documents to a specific requester only.  These differences explain why relief under § (a)(3) is not an effective substitute for the injunctive and declaratory relief CfA seeks here to remedy DOJ's policy and practice of refusing to comply with the statutory requirements of § (a)(2).

### B.    This Court Has Jurisdiction To Compel DOJ To Comply With The Indexing Requirement Of The FOIA.

Count two of CfA's complaint seeks redress for DOJ's failure to comply with the indexing requirement set forth in paragraph (2) of § 552(a), which directs agencies to

> maintain and make available for public inspection and copying current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph [2] to be made available or published.

The index requirement is of obvious importance to the public, providing a means of knowing everything an agency must make publicly available.  Without this information, citizens cannot hold agencies accountable, inform Congress of rules or policies with

which they disagree, or exercise their right under 5 U.S.C. § 553(e) to petition an agency

to amend a rule or issue a new one. Denying CfA access to this information precludes it

from informing the public and engaging in a debate over how OLC is interpreting federal

statutes and the Constitution, activities that lie at the core of the First Amendment.

Nevertheless, as with the other provision at issue, DOJ argues this Court lacks

jurisdiction to resolve this claim under the FOIA, suggesting instead it is "more naturally

enforced through the APA[.]" D's Mem. at 41. This is a curious suggestion given that in

*CREW v. Dep't of Justice*, DOJ argued the APA did not confer jurisdiction over any of

the plaintiff's claims, which included an indexing claim. DOJ's goal is clear: to render

this key statutory provision a nullity the agency can continue to ignore at will with little

or no consequences.

Such a result runs contrary to congressional intent, which the Supreme Court

recognized in *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136

(1980). There the Court concluded that the FOIA "does not obligate agencies to create or

retain documents; it only obligates them to provide access to those which it in fact has

created and retained." 445 U.S. at 152. But in a footnote immediately following this

statement, the Court also acknowledged "Congress has imposed some very limited

record-creating obligations with regard to indexing under the FOIA," citing 5 U.S.C. §

552(a)(2). *Id.* at n.7. As this footnote makes clear, the Supreme Court recognized the

indexing requirements are on a different footing, with the necessary implication that

enforcing those requirements also is on a different footing.

DOJ also characterizes this claim as "entirely derivative of its [CfA's] first claim

about the scope of § 552(a)(2)," and argues it therefore must fail because OLC has not

withheld any documents the FOIA requires it to make publicly available. D's Mem. at 41. But having failed on that defense, *see infra*, DOJ *a fortiori* must fail in its defense of why it can ignore entirely the FOIA's indexing requirements.

Finally, the logic of DOJ's argument that the indexing claim lies beyond the power of any court to redress also would extend to the requirements in 5 U.S.C. § 552(a)(1) that agencies publish in the Federal Register matters of great public importance including, *inter alia*, "rules of procedure" and "substantive rules of general applicability" along with "statements of general policy or interpretations of general applicability formulated and adopted by the agency[.]" *Id.* at §§ 552(a)(1)(C) and (D). Left unenforceable, these provisions could be ignored at will depriving the public of access to critically important information, such as the regulations an agency has adopted that spell out how it performs its statutory responsibilities. Such a result would directly contravene Congress' purpose in enacting the publication and indexing provisions of the FOIA.

### C. The Requested Relief Falls Within This Court's Broad Remedial Powers Under The FOIA.

As relief for DOJ's continued failure to comply with its affirmative disclosure and indexing requirements, CfA seeks declaratory and injunctive relief compelling DOJ to:

> make available for public inspection and copying, and without a specific request, all past and future final opinions made in the adjudication of cases and statements of policy and interpretation that have been adopted by the agency and not published in the Federal Register.

Compl., ¶ 35. CfA also seeks an injunction directing DOJ to make indices of these opinions publicly available without a specific request. *Id.* at ¶ 41. CfA relies on 5 U.S.C. § 552(a)(4)(B), which grants district courts jurisdiction to "enjoin the agency from withholding agency records improperly withheld from the complainant."

Under the rubric of redressability, DOJ argues this provision does not authorize the injunctive relief CfA seeks, relying on an unduly narrow view of the scope of this Court's jurisdiction and overheated rhetoric about the impact of the requested relief.  As the D.C. Circuit has recognized in comparable cases, courts retain broad remedial powers to remedy agency policies – like those at issue here – that conflict with the FOIA.

The Supreme Court first addressed the scope of a court's equitable powers under the FOIA in *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1 (1974).  The specific issue before the Court was whether the FOIA conferred jurisdiction to enjoin an administrative process until a specific claim was resolved.  The Court answered this question in the affirmative, relying on

> the broad language of the FOIA, with its obvious emphasis on disclosure and with its exceptions carefully delineated as exceptions; the truism that Congress knows how to deprive a court of broad equitable power when it chooses so to do . . . and the fact that the Act, to a definite degree, makes the district courts the enforcement arm of the statute . . . With the express vesting of equitable jurisdiction in the district court by § 552(a), there is little to suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an equity court.

415 U.S. at 19-20 (citations omitted).

The D.C. Circuit applied this same reasoning in *Payne Enters.*, when it upheld the court's power to issue equitable relief under the FOIA to address an agency's blanket refusal to grant the plaintiff's FOIA requests.  In language directly applicable here, the *Payne Enters.* court noted "[t]he FOIA imposes *no limits* on courts' equitable powers in enforcing its terms," 837 F.2d at 494 (emphasis added) (citation omitted), and emphasized "courts have a duty to prevent" agency actions that "violate the intent and purpose of the FOIA."  *Id.* at 488 (quotation omitted).

16

In the face of this clear and persuasive precedent, DOJ nevertheless insists the FOIA contains only a "[l]imited [r]emedial [p]rovision" available *only* in the context of "a particularized FOIA request submitted under § 552(a)(3)," citing in support *Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191 (D.C. Cir. 1996).  D's Mem. at 11, 12.  In that case the issue before the D.C. Circuit was whether the FOIA's judicial review provisions authorize a court to order the publication in the Federal Register of documents that allegedly are substantive rules of general applicability under § 552(a)(1).  After parsing the differences between "publication" and "production," the court held that "§ 502(a)(4) of the FOIA does not authorize federal courts to order publication."  *Id.* at 1203.  Notably, the court focused exclusively on the second clause of § 552(a)(4)(B), which authorizes "district courts to order 'the production of any agency records improperly withheld *from the complainant*,'" *id.* at 1203 (emphasis in original), and did not examine the scope of the court's authority under the first clause, which gives courts the power "to enjoin the agency from withholding agency records," without any limitations.  5 U.S.C. "§ 552(a)(4)(B).  Also missing from the opinion was any discussion of the court's authority to order an agency to "make available for public inspection" records falling within § 552(a)(2) through means other than publication in the Federal Register.  Clearly the *Kennecott* decision is far from the broad unequivocal ruling DOJ portrays it to be.

In the most recent case to address the scope of a court's equitable powers under the FOIA, *CREW v. Dep't of Justice*, 2016 U.S. Dist. LEXIS 28497, at *24 n.5 (D.D.C. March 7, 2016), District Court Judge Amit P. Mehta observed that *Kennecott* "did not address the scope of a district court's authority to afford relief for a violation of Section

552(a)(2)," the very issue this case presents.  He noted further that in a case decided after *Kennecott*, *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997), the D.C. Circuit "acknowledged that the extent of a court's authority to remedy a Section 552(a)(2) violation remains an open question."  2016 U.S. Dist. LEXIS 28497, at *24-25.  Relying on *Renegotiation Bd.*, *Payne Enters.*, and "[t]he statute's use of the conjunctive 'and' [which] suggests that district courts have the power to issue injunctive relief beyond merely compelling disclosure of records,"[8] *id.* at *24, Judge Mehta concluded FOIA provides an adequate remedy for § 552(a)(2) claims.  *Id.* at *23-24.[9]

In other FOIA contexts, courts often order relief that goes beyond compelling the disclosure of particular records to a particular complainant.  For example, the D.C. Circuit has directed agencies to conduct searches for additional responsive records, *Morley v. CIA*, 508 F.3d 1108, 1120 (D.C. Cir.  2007); *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir 1995), and considered the adequacy of agency searches under the FOIA.  *See Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994); *Perry v. Block*, 684 F.2d 121, 126-26 (D.C. Cir. 1982). The court also has reviewed the denial of a fee waiver, *see*, *e.g.*, *Cause of Action v. FTC*, 799 F.3d 1108 (D.C. Cir. 2015),

---

[8] This is a reference to 5 U.S.C. § 552(a)(4)(B) that, as discussed *supra*, confers jurisdiction on district courts to "enjoin the agency from withholding agency records *and* to order the production of any agency records improperly withheld from the complainant."  (emphasis added).

[9] Judge Mehta reached this conclusion in the context of evaluating whether CREW could bring its claims under the APA.  He found the availability of relief under the FOIA's judicial review provisions forecloses APA review.  CREW has appealed this decision to the D.C. Circuit, *CREW v. Dep't of Justice*, No. 16-5110.  CfA is arguing here that this Court has inherent authority to award CfA its requested injunctive and declaratory relief under the FOIA, following the course laid out by Judge Mehta.  CfA understands, however, that if the D.C. Circuit agrees with CREW that the obligations imposed by § 552(a)(2) are enforceable under the APA because relief is not available under the FOIA, this would require dismissal of this lawsuit.  In the interim, however, this issue is ripe for this Court's consideration, especially given the position of DOJ that the only avenue to address and enforce the reading room and indexing requirements is through a specific FOIA request under § 552(a)(3), a result not compelled by *Kennecott* and in conflict with the Court's role as "the enforcement arm of the statute."  *Renegotiation Bd.*, 415 U.S. at 19.

and ordered an agency to grant a requested fee waiver. *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1315 (D.C. Cir. 2003).

CfA is aware of no appellate case that speaks directly to the precise jurisdictional question presented here. Some courts have addressed challenges to agency FOIA policies and practices that were brought under both the FOIA and the APA, with little or no discussion about the jurisdictional implications. *See*, *e.g.*, *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86 (D.C. Cir. 1986) (challenge to agency guidelines governing fee waivers under the FOIA). At least one court has applied *Payne Enters.* to entertain a challenge to an agency policy alleged to violate the Federal Advisory Committee Act. *Byrd v. EPA*, 174 F.3d 239, 244 (D.C. Cir. 1999). But there is no case that has rejected a FOIA claim similar to that brought here.

### D.    Recognizing The Power Of Courts To Award The Equitable Relief Sought Here Would Enhance, Not Undermine, The FOIA.

According to the government, allowing plaintiffs like CfA to enforce the requirements of § 552(a)(2) would completely upset the statutory scheme and thrust the courts into the role of overseeing agency publication practices on an ongoing basis. D's Mem. at 13-14. This characterization grossly distorts CfA's claims and the impact of the requested relief.

There is nothing "broad-ranging"[10] about CfA's request that DOJ be directed to comply with its obligations under § 552(a)(2) to make certain categories of documents publicly available on an ongoing basis and to provide an index of those documents. As set forth in the Complaint, CfA is asking this Court to order DOJ to make available for public inspection and copying three defined categories of documents:  (1) final opinions

---

[10] D's Mem. at 14.

made in the adjudication of cases and statements of policy and interpretations adopted by the agency; (2) OLC opinions providing controlling advice to executive branch officials on questions of law centrally important to the functioning of the federal government; and (3) OLC opinions that serve as precedent either within OLC or the executive branch. Compl., Prayer for Relief, ¶¶ 2-4.  Providing further detail, the Complaint explains these categories include, at a minimum, "those written opinions issued by OLC that provide controlling advice to executive branch officials and agencies on questions of law, whether formal or informal, those opinions that serve as precedent within OLC and the executive branch, and those opinions that serve as interpretive guides for the executive branch."  *Id.* at ¶ 35.  CfA also seeks an order directing DOJ to make indices of these final opinions publicly available.  Id. at ¶ 6.  In other words, CfA seeks declaratory relief that DOJ comply with the specific requirements of § 552(a)(2), nothing more and nothing less.

DOJ faults the requested relief for "simply parrot[ing] the statutory language of § 552(a)(2)," while at the same time claims the requested relief (and therefore the statute) is vague and overbroad.  D's Mem. at 14.  Aside from the self-evident contradiction in these claims, DOJ reveals its real complaint is with the statute and the obligations it imposes – obligations DOJ has resisted for decades.  Moreover, DOJ's own internal guidance in the Best Practices Memo belies its newly minted claim that the agency somehow lacks a basic understanding of the categories of records § (a)(2) encompasses – categories Congress first identified in 1946 in what was then § 3 of the APA.

Nor is CfA seeking this Court's continuing oversight over DOJ's compliance with these statutory mandates.  Should CfA prevail here, DOJ – like all agencies found to

20

violate the law -- would be subject to a continuing obligation to comply with the law, here § 552(a)(2). But any order requiring such compliance would bear no relationship to an order establishing the Court's ongoing oversight over how DOJ complies with respect to any specific document. Indeed, taken to its logical extension DOJ's characterizations would apply to any court order that imposes an ongoing obligation on an agency to comply with the law, and would undermine judicial efforts to compel agency compliance with the express terms of this or any other statute.

If CfA instead were asking this Court to make the call for DOJ on a document-by-document basis as to which specific OLC opinions fall within § 552(a)(2) and to retain jurisdiction to ensure DOJ actually implements any such determination, DOJ's arguments might have more force. But that decidedly is not the case here, and DOJ has not demonstrated otherwise.

### E.    CfA's Claims Are Ripe For Resolution.

DOJ alleges CfA's claims are not ripe because they have not been presented in the context of a specific FOIA request for specific documents pursuant to § 552(a)(3), and that absent this context the Court cannot resolve what DOJ concedes is "a pure legal issue[.]" D's Mem., at 16. The text of the statute and governing case law undermine this claim.

DOJ's ripeness argument conflates two separate statutory provisions that impose two separate obligations on agencies. Section §552(a)(3) requires agencies to respond to a specific requester based on an individual request for specific records that exist at a certain point in time. By contrast, § 552(a)(2) requires agencies to proactively provide automatic public access to certain categories of records on an ongoing basis, a conclusion

reinforced by the language and structure of the statute.  Section 552(a)(3)(A) obligates

agencies to respond to individual requests, but specifically excludes from this

requirement "records made available under paragraphs (1) and (2) of this subsection [§§

552(a)(1) and (2)]."  *See also Jordan v. Dep't of Justice*, 591 F.2d 753, 760 (D.C. Cir

1978) (en banc) (subsection 552(a) "provides for three [d]ifferent methods of making

information available to the public").

The legislative history also reflects this demarcation, explaining the obligation

imposed by § 552(a)(2) concerns "agency records . . . not made available by" § 552(a)(3),

which "deals with other agency records" sought pursuant to individual FOIA requests.  S.

Rep. No. 89-813, at 2.

DOJ's own guidance adopts this interpretation, further undercutting its argument

here that documents agencies are required to make publicly available under § 552(a)(2)

can be publicly accessed only through individual FOIA requests.  DOJ FOIA guidance

issued in 2004 stated that "records required to be made publicly available pursuant to

subsection (a)(2) ordinarily cannot be the subject of regular 'FOIA requests.'"[11]  The

current guidance provides "records required to be publicly available under subsection

(a)(2) are not required to be processed in response to regular FOIA requests."[12]  Under

either formulation, DOJ has recognized sections (a)(2) and (a)(3) address different

categories of records, and those differences affect how they are accessed.[13]

Facing comparable challenges under the FOIA, courts have readily concluded the

absence of a specific FOIA request for a specific document does not render a challenge to

---

[11] *See* https://www.justice.gov/oip/foia-guide-2004-edition-foia-reading-rooms.
[12] https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/proactive-disclosures.
pdf#_PAGE13.
[13] DOJ has failed to even acknowledge its own guidance, much less attempt to explain why it does not
apply here.

a FOIA policy unripe.  In *Better Gov't Ass'n*, for example, the government argued that the plaintiff's facial challenge to certain DOJ FOIA guidelines and an Interior Department regulation were not justiciable on ripeness grounds.  780 F.2d at 92.  The court concluded the issues were "fit for judicial resolution" because the question before it "will be resolved by an analysis of FOIA, its legislative history, and its construction by relevant case law."  *Id.*  As the court explained, "[e]ach claim presents purely legal questions, the understanding of which neither requires nor is facilitated by further factual development."  *Id.* at 92-93.

Here, too, CfA is challenging a policy as violating the express terms of the FOIA. Resolution of this claim will depend on the FOIA's statutory language and structure, its legislative history, and any relevant case law.  But deciding this issue in the context of a specific FOIA request will not "enhance[]" the Court's "appraisal of the legitimacy" of DOJ's policy.  *Id.*

Similarly, in *Public Citizen v. Dep't of State*, 276 F.3d  634, 641-42 (D.C. Cir. 2002), the D.C. Circuit rejected the government's assertion that the issue before the court – the reasonableness of an agency's cut-off policy for deciding the outer dates of a FOIA request – was unripe because it could be resolved only in the context of a particular case. Because the plaintiff, like CfA here, was seeking a declaration that the application of its challenged policy "to *all* FOIA requests is unreasonable," the court deemed the plaintiff's "generic challenge" to be ripe.  *Id.* at 642 (emphasis in original).  *See also Payne Enters.*, 837 F.2d at 492 (case was ripe because it presented "a concrete legal dispute" and "no further factual development [was] necessary to clarify the issues").

Moreover, requiring CfA to present this issue in the context of a request for a specific document would hinder, not advance, the resolution of the overarching issue of DOJ's policy to substitute the statutory criteria found in § 552(a)(2) with its own discretionary factors that it applies not on an across-the-board basis, but document by document. Resolving a claim brought under § 552(a)(3) will settle only the issue of whether OLC properly withheld a particular document, leaving unaddressed the statutory requirement that it make its opinions available *without a request* and *on an ongoing basis*. And without the mandated index, the public has no way of knowing when OLC issues an opinion of any kind, and so has no way of knowing when to make a request.

In sum, requiring CfA to present these issues only in the context of a specific FOIA request would give DOJ carte blanche to ignore its affirmative proactive obligations that exist independent of the submission of any particular request. Such a result would convert the FOIA's affirmative disclosure requirements into an unenforceable dead letter.

## II.    CfA HAS STATED VALID CLAIMS THAT OLC'S PUBLICATION POLICY AND PRACTICE ARE CONTRARY TO LAW.

On the merits, DOJ argues that because CfA is challenging the policy and practice OLC follows in deciding which of its opinions it will make publicly available rather than an agency response to an individual claim, the complaint fails as a matter of law. In support, DOJ offers four reasons: (1) CfA has not "plausibly" alleged an illegal policy or practice by OLC; (2) OLC produces no documents that are subject to the requirements of § 552(a)(2); (3) such documents are otherwise privileged; and (4) OLC does not create secret law. Each of these arguments rests on a misconstruction of the FOIA's

requirements and ignores final agency opinions OLC has admitted it creates under the process spelled out in the Best Practices Memo.

### A. CfA's Complaint Leaves No Doubt As To The Policy And Practice It Is Challenging That Apply To Documents Clearly Within The Scope Of § 552(a)(2).

DOJ's refusal to recognize that the FOIA imposes on it an affirmative obligation to make certain categories of documents publicly available forms the basis of its argument that CfA's complaint lacks crucial facts, such as those a claim under 552 § 552(a)(3) would present.  As a starting point, the statutory provision itself details the kinds of documents agencies must make affirmatively and proactively available on an ongoing basis.  Thus, by relying on the statutory requirements CfA has done more than recite "the elements of a cause of action[.]"  D's Mem. at 21.

Moreover, CfA's claims are rounded out by specific factual allegations relevant to DOJ's failure to comply with § 552(a)(2).  Both the Best Practices Memo and the Bies Letter document the policy and practice DOJ follows for making its opinions publicly available – a policy and practice that ignores the FOIA's non-discretionary commands. DOJ has adopted its own discretionary criteria to decide, in its discretion, which of its "significant opinions" "merit publication."  Best Practices Memo. at 5.  Those criteria include, *inter alia*, factors such as "the historical context of the opinion or the context in which it arose," *id.*, which are found nowhere in § 552(a)(2).  Those factors are not drawn at all from the statute, but rather are of OLC's own creation based on a unilateral application of the otherwise unfettered discretion OLC believes it enjoys.  OLC exercises this same discretion in deciding whether publication of a particular opinion would be

"improper or inadvisable," Best Practices Memo at 5, another factor completely absent from the statute.

Given the specificity of the statutory requirements and the allegations in the Complaint explaining how DOJ has failed to meet those requirements, DOJ has more than adequate notice of the claims against it. Faced with this reality, DOJ argues that simply because it exercises "discretion over particular documents does not inherently mean (or even suggest) that OLC has violated any statutory command." D's Mem. at 22. But this is the nub of the debate here: whether DOJ can substitute for its obligation to make certain categories of records publicly available a policy that allows it to exercise discretion over those records on a case-by-case basis. Moreover, that DOJ may have published 1,300 of its opinions, *id.*, does not obviate its refusal to publish the hundreds, or likely thousands of other opinions that fall within the contours of § 552(a)(2).

The core problem for OLC is that it is not writing on a clean slate. Through § 552(a)(2) Congress already has made a determination as to which OLC opinions must be made publicly available applying factors of Congress' choice, and they do not include whether public access is "inadvisable" or whether disclosure relates to opinions OLC may not consider "significant." Most importantly, § (a)(2) is a *disclosure* statute meaning it flows from the premise that all agency material falling within its scope must be made publicly available. OLC's policy and practice, by contrast, turn this principle on its head by starting from a position of *non-disclosure* from which OLC exercises discretion and applies self-made criteria to determine if certain of its opinions should be published.

DOJ also faults CfA for failing to adequately describe the kinds of "legal advice documents" that are subject to the publication requirements of § 552(a)(2). D's Mem. at 23. At this early stage of the litigation, CfA does not have access to all the facts that would establish the full universe of opinions OLC issues that fall within this statutory provision. At a minimum, however, as documented in the Best Practices Memo, OLC issues formal written opinions that appear to be the most significant and that bear certain objective signs that make them easy to identify and therefore make publicly available pursuant to § 552(a)(2). These opinions are signed by the individual who heads OLC at the time they are approved as well as two deputies and any attorney advisers who worked on them. Their formality is reflected in the requirement that they be prepared on bond paper; they go through additional clearance processes, including the preparation of an opinion control sheet; and they are separately filed and indexed. Best Practices Memo at 2-4. These opinions are "the product of a careful and deliberate process," and are "most likely to be necessary when the legal question is the subject of a concrete and ongoing dispute between two or more executive agencies." *Id.* at 3. Further underscoring their status as opinions that must be made publicly available under § 552(a)(2) is the recognition by OLC that "OLC's advice may effectively be the final word on the controlling law." Best Practices Memo at 1.

From OLC's own description of these legal opinions, set forth in its own memo that has been operative for years, it is clear that at a minimum OLC renders formal opinions that fall within § 552(a)(2). It is equally clear that OLC issues other legal opinions, sometimes orally or by email, that in the words of Principal Deputy Assistant Attorney General Karl Remón Thompson, the current head of OLC, are equally

27

authoritative and "binding by custom and practice in the executive branch. It's the official view of the office. People are supposed to and do follow it."[14] Whether these opinions also fall within § 552(a)(2) is a question that can be resolved only on a more developed factual record.

**B.     OLC Produces Opinions And Interpretations That Fall Within § 552(a)(2).**

DOJ essentially posits that compliance with § 552(a)(2) is an all or nothing proposition, arguing that because some of its legal advice is privileged it bears no responsibility to make any of its opinions publicly available. Although some courts have found particular OLC opinions exempt from disclosure under Exemption 5 of the FOIA, that does not mean no OLC opinions are subject to § (a)(2), which is the thrust of DOJ's position.

First, DOJ relies primarily on a single D.C. Circuit opinion, *Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1 (D.C. 2014) (*EFF*). The issue before the court was whether specific legal advice OLC had given the FBI was privileged or, instead, constituted "working law" that must be made publicly available. The FBI sought OLC's advice as part of its process of formulating agency policy about the use of exigent letters to request telephone records, and in the end did not adopt the practice for which OLC's advice was sought. The D.C. Circuit concluded the OLC opinion did not constitute "working law" because it neither stated nor determined the FBI's policy. 739 F.3d at 9-10. The court was clear its decision was based "[o]n *this* record," as well as the fact that

---

[14] Principal Deputy Assistant Attorney General Thompson made these remarks at an American Bar Association conference last fall. *See* Josh Gerstein, Official: FOIA Worries Dampen Requests for Formal Legal Opinions, *Politico*, November 5, 2015, *available at* http://www.politico.com/blogs/under-the-radar/2015/11/official-foia-worries-dampen-requests-for-formal-legal-opinions-215567.

the opinion at issue merely was "part of a process by which governmental decisions and policies are formulated[.]"  *Id.* at 10 (emphasis added)

At no point in its decision did the D.C. Circuit suggest it was establishing an across-the-board rule applicable to all OLC opinions, no matter their role in an agency's decision-making process.  Thus, there is no basis to extend this ruling to *all* OLC opinions issued for any and all purposes, including opinions that definitely determine agency policy.  In short, *EFF* leaves unanswered the status of the remaining OLC opinions, especially those formal opinions prepared under the process the Best Practices Memo dictates.

Second, DOJ argues that because OLC fails to issue opinions "in adversarial disputes involving private parties," D's Mem. at 26, none of its opinions is subject to § 552(a)(2).  DOJ cannot credibly dispute that OLC resolves disputes between parties.  An executive order directs agency heads to submit inter-agency disputes to the Attorney General that, in turn, are delegated to OLC for resolution, "[w]henever two or more Executive agencies are unable to resolve a legal dispute between them[.]"  Exec. Order No. 12,146, § 1-501, 3 C.F.R. § 409 (1979), reprinted as amended in 28 U.S.C. § 509 (1988).  OLC's Best Practices Memo expressly references "interagency dispute[s]," and explains that "[a] written opinion is most likely to be necessary when the legal question is the subject of a concrete and ongoing dispute between two or more executive agencies."  Best Practices Memo at 3.

Nevertheless, DOJ attempts to add a gloss to § 552(a)(2)(A) it cannot bear, specifically that it applies only to disputes between *private* parties.  D's Mem. at 26.  Neither the statutory language nor the cited cases support this construction.  That

provision, written in the conjunctive through the use of "as well as," refers to two categories of records:  "final opinions . . . *as well as* orders, made in the adjudication of cases[.]"  *Id.* (emphasis added).  The first category – final opinions -- "*include*[s] concurring and dissenting opinions," *id.* (emphasis added), language DOJ reads as limiting final opinions to only those involving private individuals.  D's Mem., at 26.  But the statutory language itself does not support this limitation; the plain language meaning of the term "including" is "to take in or comprise *as a part of* a whole or group[.]"[15] Thus, by definition, orders made in the adjudication of cases comprise only a part of the larger category of final opinions.

DOJ's citation to *EFF* undermines, not advances, its strained construction of § 552(a)(2)(A).  In *EFF* the court described the kinds of opinions prior decisions had found to be the "working law" of an agency as consisting of "a conclusive or authoritative statement of its policy, *usually* a higher authority instructing a subordinate on how the agency's general policy applies to a particular case, *or* a document that determined policy or applied established policy."  739 F.3d at 9-10 (emphasis added).   Consistent with the text of the statute, this description includes both statements of policy – that "usually," but not always, involve "a particular case" -- and documents that in and of themselves establish or apply policy.

DOJ also draws no support from its citation to *Schlefer v. United States*, 702 F.2d 233, 244 (D.C. Cir. 1983).  That court referred to "secret law" as that the agency uses "in the discharge of its regulatory duties *and* in its dealings with the public."  (emphasis added) (cited in D's Mem. at 27).  Again the use of the conjunctive makes clear secret

---

[15] Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/include (emphasis added).

law can consist of both opinions that relate to how an agency discharges its duties and

how it deals with the public.  DOJ's reliance on *Fed. Open Mkt. Cmte. v. Merrill*, 443

U.S. 340 (1979), is equally unavailing.  At issue were policy directives the Supreme

Court described as "essentially the FOMC's written instructions to the Account

Manager" that were "binding only upon the Account Manager[.]"  *Id.* at 352.  As such

they were properly treated as "'intra-agency memorandums' within the meaning of

Exemption 5."  *Id.* at 353.  By contrast, the kinds of opinions at issue here, particularly as

described in the Best Practices Memo, "may effectively be the final word on the

controlling law."  Best Practices Memo, at 1.

Similarly, in *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598 (D.C. Cir.

2001), cited in D's Mem. at 25, the plaintiff claimed an internal report defending DOJ's

prosecution of the plaintiff for environmental crimes was a final opinion subject to

disclosure under § 552(a)(2)(A).  The D.C. Circuit rejected this claim because the report

> set forth the conclusion of a voluntarily undertaken
> internal agency investigation, not a conclusion about
> agency action (or inaction) in an adversarial dispute
> with another party.

*Id.* at 603.  The report did not explain a decision, but instead "simply rejects as a factual

matter the Congressional charges of prosecutorial misconduct-charges," *id.*, and therefore

was not a final opinion subject to disclosure under § (a)(2)(A).  *Id.*  Thus, the dispositive

factor was not, as DOJ claims, the lack of a dispute with a private party, but the character

of the report itself, which did not rise to the level of a "final opinion."

Third, DOJ argues none of its opinions can be considered "final" "because they

do not finally dispose of any agency action[.]"  D's Mem., at 27.  On the basis of the

current record, which contains no support whatsoever for this claim, this Court lacks a

31

factual predicate to reach this conclusion.  This case stands in marked contrast to *Tax Analysts v. IRS*, where the court ruled on whether certain field office memoranda had to be disclosed only after the parties had engaged in "extensive discovery[.]"  117 F.3d at 609.

Further, what evidence there is – the Best Practice Memo – states OLC formal opinions often are the last word on significant issues.  In that same memo, OLC describes its "core function" as "provid[ing] *controlling advice* to Executive Branch officials on questions of law that are centrally important to the functioning of the Federal Government."  Best Practices Memo at 1 (emphasis added).  By OLC's own concession, these opinions are controlling and have a precedential effect, much like judicial opinions whose preparation process they mirror.  *Id.*  As this Circuit recognized in *Tax Analysts v. IRS*, legal conclusions, even ones 'not formally binding," must be disclosed even if the offices receiving them do not necessarily act to carry out those conclusions. 117 F.3d at 617.  Such conclusions provide "what the law is" and "what is not the law," and are issued as part of an "attempt[] to develop a body of coherent, consistent interpretations . . . nationwide."  *Id.*  This precisely describes OLC's role and the process it uses, through its formal written opinions, to establish a "system of precedent" that may "reflect the institutional traditions and competencies" of the subject agency, and that "give[s] great weight to any relevant opinions of Attorneys General and the Office."  Best Practices Memo at 2.

In arguing to the contrary, DOJ attempts to contrast the opinions it issues with those the Supreme Court found to be "final opinions" in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975).  D's Mem.' at 27-28.  *Sears*, however, supports the conclusion here

that OLC issues "final opinions" subject to mandatory, proactive disclosure. There the Supreme Court held that the FOIA, "properly construed, calls for disclosure of *all* 'opinions and interpretations' which embody the agency's effective law and policy[.]" 421 U.S.at 153 (quoting Kenneth C. Davis, *The Information Act: A Preliminary Analysis*, 34 U. Chi. L. Rev. 7861 (1967)) (emphasis added).

The underlying concern of Congress in enacting § 552(a)(2)(A) – to provide public access to material that "has the force and effect of law in most cases, yet . . . ha[s] been kept secret from the member of the public affected by the decision"[16] -- reinforces this conclusion. Congress sought to compel disclosure of decisions "that affect any member of the public," *id.*, and to "prevent the development of secret law." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980) (quotation omitted). This concern is present even when a statement, interpretation, or opinion resolves purely governmental conflicts over the meaning of a statute, rule or policy, as how those conflicts are resolved often will directly impact the rights and obligations of private parties. Granting public access to the opinions sought here is precisely the result Congress intended when it enacted § 552(a)(2).

**C.    OLC Produces Opinions And Interpretations That Are Not Exempt From Disclosure Under The FOIA.**

DOJ claims further that requiring it to comply with § 552(a)(2) would "destroy" privileges the courts have recognized apply to some legal documents, specifically the deliberative process and attorney-client privileges. D's Mem. at 29-30. As proof, DOJ cites to the *EFF* decision, from which it extracts the principle that "a substantial portion

---

[16] H. Rep. No. 89-1497, at 28 (1966).

(if not all)" of the OLC opinions at issue are privileged. *Id.* at 30. Once again, however, DOJ has placed a weight on the *EFF* decision that it cannot bear.

As even DOJ concedes, the OLC opinion at issue in *EFF* involved "advice offered by OLC for consideration by officials of the FBI[.]" D's Mem. at 30 (quoting *EFF*, 739 F.3d at 8). This is a far cry from the "controlling advice to Executive Branch officials on questions of law that are centrally important to the functioning of the Federal Government" that OLC's formal written opinions provide. Best Practices Memo at 1. At most, *EFF* stands for the proposition that a specific OLC opinion in which OLC offered advice as part of an agency's policy deliberations that was neither accepted nor followed is privileged. That there are cases like *EFF* holding individual agency opinions made in the context of specific agency processes are not subject to disclosure does not, however, resolve the larger issue presented here: whether OLC's policy and practice of treating all of its opinions and interpretations as outside the scope of § (a)(2) is lawful.

Not only is there no legal or evidentiary support for DOJ's broad claim that all – or virtually all – OLC opinions are privileged, but there is no specific factual record for this Court to address any privilege claims that may attach to specific OLC opinions. For the deliberative process privilege, the government must establish the communication at issue is both predecisional and deliberative. *See*, *e.g.*, *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). Within this factual context, those documents that "discuss established policies and decisions" fall outside the privilege. *Coastal States*, 617 F.2d at 868. Also relevant is the nature of the decision-making authority vested in the author of the document. *See*, *e.g.*, *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) ("What matters is that the person who issues the document has authority to speak finally and

officially for the agency.").  And even deliberative documents can lose their protection if they are either adopted or incorporated by reference.  *Coastal States*, 617 F.2d at 866.

Similarly, the attorney-client privilege is fact-dependent and extends only to information supplied to an attorney from his or her client.  So, for example, facts conveyed from a client to his or her attorney that are acquired from outside sources are not privileged.  *Brinton v. Dep't of State*, 636 F.2d 600, 603 (D.C. Cir. 1980).  Moreover, "Exemption 5 and the attorney-client privileged may not be used to protect . . . agency law from disclosure to the public."  *Tax Analysts*, 117 F.3d at 619.

Here, the absence of any factual context prevents this Court from concluding all or even a substantial number of OLC opinions and interpretations properly are privileged. While DOJ cites to the Best Practices Memo as proof that OLC opinions generally fall within the attorney-client privilege, that memo describes the opinions OLC provides as "*controlling*" on "Executive Branch officials," Best Practices Memo at 1 (emphasis added), a quintessential element of a final opinion subject to disclosure.  *See Coastal States*, 617 F.2d at 866.  And there is no factual predicate from which the Court could conclude that any particular OLC opinion consists entirely, or even in part, of information supplied to an attorney from his or her client.

Even more fundamentally, there are no facts before the Court supporting the government's central premise that OLC has an attorney-client relationship with all agencies in all situations in which they seek OLC's advice.  OLC issues its controlling legal opinions in fulfillment of the role assigned by statute to the Attorney General: rendering definitive legal advice on behalf of the executive branch.  OLC serves the

interests of the United States, not merely those of an individual agency.  The Best

Practices Memo underscores this constitutional role, noting OLC provides

> controlling legal advice to Executive Branch officials *in
> furtherance of the President's constitutional duties* to preserve,
> protect, and defend the Constitution, and to 'take Care that
> the Laws be faithfully executed.'

Best Practices Memo at 1 (quoting U.S. Const. art. II, § 3) (emphasis added).  This

function has been vested in DOJ to ensure its legal opinions are as objective and accurate

as possible, not swayed by the more parochial concerns animating the traditional

attorney-client relationship.[17]

DOJ advances similar arguments regarding the deliberative process privilege,

claiming it "generally" protects OLC opinions.  D's Mem. at 31.  Once again, however,

the government makes this argument with no factual support and based solely on cases

holding that individual documents are privileged based on the specific records before the

courts.  These cases say nothing about whether the deliberative process privilege protects

all OLC opinions and interpretations, including those designated as formal and subject to

extensive internal procedural requirements.

DOJ's claims also ignore the bright line courts have drawn between documents

that reflect agency deliberations and those that reflect a final agency decision.  Decisional

documents like the opinions OLC issues present an especially acute need for this bright

line to avoid "secret law."  The D.C. Circuit summarized its opinions on this issue as

follows:

> A strong theme of our opinions has been that an agency will
> not be permitted to develop a body of 'secret law,' used by it

---

[17]  *See* Randolph D. Moss, *Recent Developments Federal Agency Focus:  The Department of Justice:
Executive Branch Legal Interpretation:  A Perspective From the Office of Legal Counsel*, 52 Admin. L.
Rev. 1303, 1312 (Fall 2000).

> in the discharge of its regulatory duties and its dealings with
> the public . . . The theme was sounded as early as 1971 when
> the court emphatically stated that agencies would be required
> to disclose 'orders and interpretations which it actually applies
> to cases before it,' in order to prevent the development of
> 'secret law.'

*Coastal States*, 617 F.2d at 876 (citation omitted). The court further described "binding

agency opinions and interpretations" as "the law itself" that "'should be made available

to the public . . . to prevent the development of secret law.'" *Id.* at 868 (quoting *Sterling

Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971)). As a necessary consequence,

this "'working law' of the agency" is "outside the protection of Exemption 5." *Bhd. of

Locomotive Eng'rs v. Surface Transp. Bd.*, 1997 U.S. Dist. LEXIS 11808, *12-13

(D.D.C. July 10, 1997) (quoting *Sears*, 421 U.S. at 152-53). *See also Taxation With

Representation Fund v. IRS*, 646 F.2d 666, 678 (D.C. Cir. 1981) (deliberative process

privilege does not apply to "final opinions that have the force of law").

To be clear, CfA is not arguing that no OLC opinion is privileged, in whole or in

part. For example, OLC opinions providing the definitive legal position of the executive

branch on the meaning of a statute or treaty obligation, as applied to a particular situation,

may include specific, factual information provided by the agency seeking the

interpretation that properly is protected by the attorney-client privilege. But this is a far

cry from DOJ's position here that the entirety of all OLC opinions and interpretations is

privileged.

DOJ also asserts CfA seeks to compel OLC to "publish wholesale categories of its

opinions," relief that cannot be reconciled with the cases it cites holding certain of OLC's

legal advice to be privileged. D's Mem. at 33. Not so. CfA is challenging the policy and

practice of OLC to treat all of its opinions and interpretations as falling outside the reach

of § (a)(2), limiting public access to only those opinions OLC decides, in its discretion, are appropriate for publication based on criteria of its own choosing.  This is the core of the dispute here, not whether a particular OLC opinion may or may not be properly withheld as privileged.

> **D.    By Refusing To Comply With § 552(a)(2), OLC Is Creating Secret Law.**

Accepting at face value the government's assertion that virtually all of OLC's work is privileged would blanket that office and its work in secrecy, producing a result directly at odds with the congressional intent behind § (a)(2):  the elimination of secret law.

Before Congress strengthened § (a)(2) in 1966 with the passage of the FOIA, many agencies had developed bodies of law governing their treatment of the public that they kept secret.  According to a leading administrative law authority, before the FOIA "nearly all" agencies had "in some degree systems of secret law."  *Hearings Before the Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee on S. 1160, S. 1336, S. 1758, and S. 1879, Administrative Procedure Act*, 89th Cong., 1st Sess. 143 (1966) (statement of Kenneth Culp Davis).  DOJ's Immigration Service, for example granted public access to only 58 of the approximately 7000,000 orders and decisions it issued in 1963, even though many of those opinions served as agency precedent.  *Id.* at 144, 187-88.  The House Committee on Government Operations observed that these agency policy statements and interpretations were "the end product of Federal administration" with the "force and effect of law in most cases," yet so many "have been kept secret from the members of the public affected by the decisions."  H.R. Rep. No. 1497, 89th Cong., 2d Sess. 7 (1966).

These concerns led Congress to strengthen § (a)(2) and incorporate it into the newly enacted FOIA, with the goal of eliminating secret law. *See, e.g.*, *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 796 n.20 (1989) (the FOIA's "primary objective is the elimination of 'secret law'") (quoting Frank H. Easterbrook, *Privacy and the Optimal Extent of Disclosure Under the Freedom of Information Act*, 9 J. Legal Studies 774, 777 (1980)); *Jordan v. U.S. Dep't of Justice*, 591 F.2d at 781; *Ctr. for Effective Gov't v. U.S. Dep't of State*, 7 F. Supp. 3d 16, 29-30 (D.D.C. 2013) ("engag[ing] in what is in effect governance by 'secret law' . . . conflicts with the very purpose of FOIA"). To accomplish this goal, Congress included in § (a)(2) the affirmative disclosure provisions requiring agencies to make available to the public the countless orders, opinions, statements, and instructions federal agencies issue. H.R. Rep. No. 1497 at 7.

Despite the clear intent of this provision, DOJ insists its refusal to make OLC opinions publicly available does not implicate the secret or "working law" doctrine because OLC does not regulate the public. D's Mem. at 34. To the contrary, OLC opinions have profound effects on members of the public, as they determine the lawfulness of a range of conduct from warrantless surveillance to targeted killing of Americans on foreign soil. Further, DOJ generally does not prosecute individuals who relied on OLC opinions, regardless of whether their actions later are believed or determined to be illegal. As a result, OLC opinions confer the functional equivalent of immunity from criminal prosecution. Without question, OLC's opinions "create or

determine the extent of the substantive rights and liabilities of a person." *Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983).[18]

DOJ's Best Practices Memo and the Bies Letter comprise the only hard evidence before this Court at this point in the litigation. They show definitely that OLC produces at least one category of formal written opinions that bear all the hallmarks of final opinions subject to the mandatory affirmative disclosure requirements of § 552(a)(2). From this the Court certainly cannot conclude OLC produces nothing that constitutes the "working" or "secret law" of the agency. And without further factual development, the Court cannot yet determine the full universe of documents OLC creates that are subject to § 552(a)(2).

### III.    REQUIRING OLC TO COMPLY WITH § 552(a)(2) DOES NOT THREATEN OLC'S ROLE WITHIN THE EXECUTIVE BRANCH OR IMPLICATE ANY CONSTITUTIONAL CONCERNS.

OLC seeks to be accorded a special status and excused from complying with the FOIA's affirmative disclosure requirements because it is charged with "conclusively resolving difficult (and sometimes disputed) legal questions." D's Mem. at 36. That OLC is charged with rendering "official pronounce[ments]" of what the law is and means, D's Mem. at 36 (quotation omitted), only underscores the critical importance of ensuring public access to those pronouncements. Given OLC's role to "provide objective, authoritative legal advice to the rest of the Executive Branch," *id.* at 37, the danger is especially acute that absent such access, OLC will continue to accumulate a

---

[18] In arguing to the contrary, DOJ cites to *CREW v. Office of Admin.*, 249 F.R.D. 1, 6-8 (D.D.C. 2008), D's Mem at 35, a case plainly inapplicable here. The court rejected the secret law argument based on the specific record before it, which demonstrated that the executive branch had neither relied on the opinion at issue nor used it in dealings with the public. This does not answer the question this case presents: whether OLC produces any opinions or interpretations on which the executive branch relies or that affect the public.

body of working law that while definitive and binding on the executive branch, is completely unknown to the public at large.

Nor is this an "all or nothing" proposition, as OLC suggests. To the extent individual OLC opinions are not final, binding, conclusive, or controlling, or are properly subject to privilege, DOJ remains free to treat them as outside the reach of § (a)(2). What CfA seeks here is DOJ's compliance with the statutory requirements that those categories of records falling within the statutory subsection be made publicly available.

Prior examples where OLC made certain of its opinions public after enormous public and congressional pressure underscore the imperative that OLC comply with § 552(a)(2). For example, we now know that during a prior administration, OLC authored an opinion that provided the basis for our torture of enemy combatants. Disclosure of this OLC opinion prompted a heated public debate over issues that tore at the very fabric of our nation, as Americans tried to come to grips with their national identity and values. Certainly OLC carries a weighty responsibility. But the importance of the role it plays reinforces, not negates, the need for disclosing those critical decisions, which can have life and death consequences.

DOJ's constitutional arguments similarly are without merit, as they rest on the mistaken fear that granting CfA its requested relief would interfere with the President's ability to obtain confidential advice. CfA does not challenge the ability of the executive branch and the President in particular to obtain, in appropriate circumstances, confidential legal advice. That, however, is a far cry from what is challenged here: the refusal of OLC and DOJ to conform with any of their statutory obligations under § 552(a)(2) to make publicly available final OLC opinions, unpublished statements of

policy and interpretations all of which by definition are not privileged, as well as indices

of these documents.  Properly understood, CfA's lawsuit threatens no constitutional

interest of the President nor poses any danger to the ability of the executive branch to

receive "*any* confidential legal advice."  D's Mem. at 40 (emphasis in original).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss should be denied.


Dated:  August 22, 2016                    Respectfully submitted,


                                             /s/ Anne L. Weismann
                                           Anne L. Weismann
                                           D.C. Bar No. 298190
                                           Campaign for Accountability
                                           1201 Connecticut Avenue, N.W., Suite 300
                                           Washington, D.C.  20036
                                           (202) 780-5750

                                           *Counsel for Plaintiff*