## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
CAMPAIGN FOR ACCOUNTABILITY,                        )
                                                    )
                              Plaintiff,            )
                                                    )
                    v.                              )          Civil Action No. 1:16-cv-1068 (KBJ)
                                                    )
U.S. DEPARTMENT OF JUSTICE,                         )
                                                    )
                              Defendant.            )
_____)


## <u>REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities............................................................................................................ ii

INTRODUCTION ............................................................................................................1

ARGUMENT ....................................................................................................................4

I.    OLC's Discretionary Publication Policy Does Not Seek to Implement FOIA's
      Affirmative Disclosure Requirement. ........................................................................4

II.   CFA Has Failed to Identify Any Relief This Court Could Order That Would Redress Its
      Primary Claim. ...........................................................................................................7

      A.    Under FOIA's Remedial Provision, Courts Cannot Compel the Affirmative
            Publication of Documents. .................................................................................7

      B.    Accepting CFA's Claim Would Transform FOIA Into a Mechanism for Private
            Parties to Obtain Comprehensive Judicial Oversight of Agencies' Publication
            Programs. .........................................................................................................10

      C.    A Purported "Policy and Practice" Claim Does Not Establish Redressability. .................11

III.  The Primary Claim Is Not Ripe for Resolution Because It Is Too Abstract. ...........................13

IV.   The Complaint Fails As a Matter of Law Because FOIA Does Not Require OLC to
      Affirmatively Disclose Its Advice Documents. .......................................................15

      A.    CFA's Complaint Does Not Contain Sufficient Factual Allegations Plausibly
            Establishing Any Unlawful Failure to Disclose..............................................15

      B.    OLC Is Not Required to Publish Its Advice Documents. ..................................17

            1.    The Overwhelming Precedent Approving the Withholding of OLC Opinions as
                  Privileged Disproves CFA's Claim Here....................................................17

            2.    OLC Advice Documents Do Not Fall Within § 552(a)(2). ..........................20

      C.    Granting CFA's Requested Relief Would Undermine OLC's Important Role in the
            Executive Branch, and Raise Significant Constitutional Concerns. ..................23

V.    The Indexing Claim Must be Dismissed.................................................................25

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Bannercraft Clothing Co. v. Renegotiation Bd.*,
   466 F.2d 345 (D.C. Cir. 1972)...................................................................... 23

*Better Gov't Ass'n v. Dep't of State*,
   780 F.2d 86 (D.C. Cir. 1986)........................................................................ 14

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980)...................................................................... 19

*Cobell v. Norton*,
   392 F.3d 461 (D.C. Cir. 2004).......................................................................11

*Common Cause v. Internal Revenue Serv.*,
   646 F.2d 656 (D.C. Cir. 1981)...................................................................... 21

*Competitive Enter. Inst. v. EPA*,
   153 F. Supp. 3d 376 (D.D.C. 2016) ............................................................ 12

*CREW v. DOJ*,
   --- F. Supp. 3d ----, 2016 WL 912167 (D.D.C. Mar. 7, 2016)............................ 14, 15

*Del Monte Fresh Produce N.A. v. United States*,
   706 F. Supp. 2d 116 (D.D.C. 2010) ............................................................ 13

*DOJ v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989)..................................................................................... 22

*Elec. Frontier Found. v. DOJ*,
   739 F.3d 1 (D.C. Cir. 2014)................................................................... passim

*Kennecott Utah Copper Corp. v. Dep't of Interior*,
   88 F.3d 1191 (D.C. Cir. 1996)................................................................. 2, 7, 8

*Lujan v. National Wildlife Federation*,
   497 U.S. 871 (1990)..................................................................................... 13

*Maydak v. Dep't of Justice*,
   254 F. Supp. 2d 23 (D.D.C. 2003) ............................................................ 9, 18

*New York Times Co. v. Dep't of Justice*,
   806 F.3d 682 (2d Cir. 2015) ..................................................................... 19, 21

*NLRB v. Express Pub. Co.*,
   312 U.S. 426 (1941)......................................................................................11

*NLRB v. U.S. Postal Service,*
   486 F.3d 683 (10th Cir. 2007) ...............................................................11

*Norton v. Southern Utah Wilderness Alliance,*

   542 U.S. 55 (2004) ......................................................................11, 13

*Payne Enters., Inc. v. United States,*
   837 F.2d 486 (D.C. Cir. 1988) ........................................................... 12

*Pub. Citizen v. Dep't of State,*
   276 F.3d 634 (D.C. Cir. 2002) ........................................................... 14

*Pub. Employees for Envtl. Responsibility v. Dep't of Interior,*
   No. 06-cv-182, 2006 WL 3422484 (D.D.C. Nov. 28, 2006) .................. 12

*Public Citizen, Inc. v. Lew,*
   127 F. Supp. 2d 1 (D.D.C. 2000) ......................................................... 25

*Renegotiation Bd. v. Bannercraft Clothing Co.,*
   415 U.S. 1 (1974).................................................................................. 9

*Rockwell Int'l Corp. v. Dep't of Justice,*
   235 F.3d 598 (D.C. Cir. 2001) ........................................................... 21

*Vietnam Veterans of Am. v. Dep't of Navy,*
   876 F.2d 164 (D.C. Cir. 1989) ........................................................... 22

*Webb v. Dep't of Health & Human Servs.,*
   696 F.2d 101 (D.C. Cir. 1982) ........................................................... 14


**STATUTES**

5 U.S.C. § 552.............................................................................. passim


**REGULATIONS**

28 C.F.R. § 0.25 ...................................................................... 19, 22

74 Fed. Reg. 51878-02 (Oct. 8, 2009) ........................................... 6


**OTHER AUTHORITIES**

Easterbrook, *Privacy and the Optimal Extent of Disclosure Under the Freedom of Information Act,*
   9 J. Legal Studies 775 (1980) ........................................................... 22

H. Rep. No. 89-1497 (1966) ......................................................... 22, 23

Kenneth C. Davis, *The Information Act: A Preliminary Analysis*,
     34 U. Chi. L. Rev. 761 (1967) ................................................................................. 21

Wright & Miller, *Federal Practice & Procedure* § 1363 (3d ed. Apr. 2016) ................................. 6

## INTRODUCTION

This lawsuit seeks a radical expansion of the Freedom of Information Act (FOIA), as confirmed by Campaign for Accountability's (CFA's) opposition brief (ECF No. 11). CFA seeks to compel the Department of Justice's Office of Legal Counsel (OLC) to affirmatively publish a vast number of its legal advice documents—in CFA's estimation, "hundreds, or likely thousands" of advice documents that have not yet been made public. CFA's Opp. at 26. This request cannot be reconciled with the overwhelming number of judicial decisions recognizing that OLC advice documents may lawfully be withheld as privileged, including a recent decision from the D.C. Circuit that rejects many of the same arguments that CFA seeks to advance here.

CFA's opposition brief also confirms the abstract nature of this lawsuit: CFA is not challenging the withholding of any particular set of OLC advice documents, but is instead challenging OLC's publication practices as a whole. In defending the amorphous nature of this lawsuit, CFA's opposition characterizes its claim as challenging "the policy and practice DOJ follows for making its opinions publicly available – a policy and practice that ignores the FOIA's non-discretionary commands." CFA's Opp. at 25. To describe this claim is to highlight its generalized nature.

But even setting aside the reasons why such a "policy and practice" claim is not cognizable in the first instance, this description reveals a fundamental error that permeates CFA's opposition: CFA incorrectly believes that OLC's voluntary publication policy (as described in OLC's Best Practices Memo, *see* ECF No. 9-5) is OLC's attempt to implement § 552(a)(2), and this publication policy is therefore unlawful because it relies on considerations different from the ones compelled by § 552(a)(2). This premise is wrong, as made clear by the existing record in this case. The Best Practices Memo describes the process by which OLC, along with affected Executive Branch agencies and components, decide whether to make a *discretionary* release of an OLC advice

document even when that advice document is otherwise privileged.  *See* OLC Best Practices Memo (ECF No. 9-5) at 5-6.  That is entirely distinct from the affirmative disclosure requirements of § 552(a)(2), which OLC has separately noted its commitment to follow when applicable.  *See* Bies Letter (ECF No. 9-4) at 1-2.  Thus, CFA's opposition seeks to justify a claim that is meritless on its face, because the challenged OLC policy simply does not exist.  This defect alone is reason to dismiss CFA's claim.

In addition to challenging a non-existent policy, several other reasons require dismissal as well.  First, FOIA does not permit the broad relief that CFA seeks here—compelled publication of advice documents to the public as a whole.  Nothing in CFA's opposition overcomes the D.C. Circuit's binding precedent holding that FOIA's remedial provision, § 552(a)(4)(B), does not authorize courts to order agencies to affirmatively publish documents.  *See Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996).

Second, CFA's claim is not ripe due to its abstract, generalized nature.  The claim actually articulated in the Complaint—requesting compelled disclosure of a large number of past and future OLC advice documents, *see* Compl. (ECF No. 1) ¶ 35—plainly cannot be adjudicated in that broad form, and CFA does not suggest otherwise.  Instead, CFA argues that its "policy and practice" claim is narrower; it is simply challenging whether OLC can follow the criteria laid out in the Best Practices Memo as opposed to the criteria required by § 552(a)(2).  *See* CFA's Opp. at 23-24.  Even were CFA permitted to re-characterize its claim at this stage, however, the claim is still highly abstract and generalized, and would not permit meaningful resolution absent grounding the claim in a concrete factual setting—*i.e.*, a lawsuit over particular documents (or at least categories of documents) that CFA believes must be made public under § 552(a)(2), but which OLC has withheld.  Even this re-characterized claim, then, is still too abstract to resolve.

CFA's continued failure to allege with any specificity the documents OLC has purportedly unlawfully failed to publish provides another basis for dismissal. In this second lawsuit challenging OLC's publication policies, CFA still has not pointed to even a *single* document that CFA believes falls within § 552(a)(2) but that OLC has unlawfully failed to publish, nor has CFA described with any particularity the types of documents it contends OLC is obligated to publish under § 552(a)(2) but has not. CFA's Complaint therefore lacks sufficient factual allegations demonstrating a plausible entitlement to relief; merely parroting the statutory language of § 552(a)(2) is insufficient to survive a motion to dismiss.

More fundamentally, CFA does not explain how its broad legal theory can be reconciled with the wealth of precedent permitting OLC opinions to be withheld under FOIA. As confirmed recently by the D.C. Circuit, OLC opinions—including formal ones that are "controlling" and "precedential"—generally constitute pre-decisional legal advice that is protected from disclosure. *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 9 (D.C. Cir.), *cert. denied*, 135 S. Ct. 356 (2014) [hereafter *EFF*]. This precedent cannot be cast aside as merely resolving the privileged status of one particular OLC opinion. *See, e.g.*, CFA's Opp. at 34. This precedent is important because its reasoning undermines the *entire theory* on which CFA's claim is based: the formal, final OLC opinion at issue in *EFF* clearly falls within the category of OLC opinions that CFA contends must be disclosed, *see* CFA's Opp. at 27, but the D.C. Circuit held unequivocally that the opinion was exempt from disclosure. CFA does not explain how its broad theory about the scope of § 552(a)(2) can be reconciled with *EFF*'s holding—*i.e.*, that even a formal, final OLC opinion (presenting legal conclusions "controlling" on the client agency that serve as "precedent" within OLC) does not constitute agency "working law," and thus may be privileged and exempt from disclosure. 739 F.3d at 9-10.

In short, CFA's opposition brief fails to justify the relief sought here. Moreover, that relief is so expansive that accepting CFA's interpretation of FOIA would raise significant constitutional concerns. For that reason alone, CFA's Complaint should be dismissed.

## ARGUMENT

## I.    OLC'S DISCRETIONARY PUBLICATION POLICY DOES NOT SEEK TO IMPLEMENT FOIA'S AFFIRMATIVE DISCLOSURE REQUIREMENT.

Permeating CFA's opposition is an attempt to re-characterize its claim away from challenging OLC's supposed ongoing failure to disclose past and future advice documents, and instead as a challenge to OLC's alleged "policy and practice" of making publication decisions based on factors other than the terms of § 552(a)(2). This issue must be addressed at the outset because it affects all of the particular reasons why CFA's Complaint must be dismissed.

Throughout its opposition, CFA seeks to describe its claim as challenging a "policy and practice" of OLC to "ignore[] the FOIA's non-discretionary commands" embodied in the affirmative disclosure provision, 5 U.S.C. § 552(a)(2). CFA's Opp. at 25. The alleged policy and practice that violates § 552(a)(2), according to CFA, is OLC's Best Practices Memo—which represents "a policy and practice of [OLC] using its own discretionary factors in deciding which of its opinions to make publicly available, rather than following the command of § 552(a)(2)." *Id.* at 12; *see also id.* at 25-26. This argument incorrectly assumes, however, that OLC's Best Practices Memo is an attempt to implement the requirements of § 552(a)(2). And the record here actually makes clear the opposite: that OLC's publication process does not seek to implement FOIA, but instead sets forth a framework for determining whether to *voluntarily* publish certain advice documents when disclosure of those documents is *not* legally required.

As set forth in the Best Practices Memo itself, OLC's publication decision-making process is distinct from its responsibilities under FOIA. *See* Best Practices Memo (ECF No. 9-5) at 5-6

(describing "Opinion Publication and *Other Public Disclosure*," including a separate discussion of OLC's process for responding to FOIA requests (emphasis added)).  The publication decision-making process is designed to evaluate whether OLC, and its client Executive Branch agencies and components, ought to waive privilege and make public OLC's confidential, pre-decisional legal advice as a policy matter (despite the fact that such opinions are otherwise privileged).  *See id.* at 5.  OLC makes these discretionary publication decisions after considering a variety of factors, such as a presumption of disclosure, the significance of the opinion, and any countervailing considerations such as harm to Executive Branch decision-making.  *See id.* at 5-6.

Separately, OLC also recognizes its distinct responsibilities under FOIA, including that there may be circumstances in which FOIA compels disclosure of OLC advice documents.  *See id.* at 6.  But that determination is entirely separate, and does not depend on the factors used to evaluate discretionary release of an opinion.  *See id.*  The letter from Deputy Assistant Attorney General Bies, *see* ECF No. 9-4, further confirms this point.  OLC is "committed to complying with our obligations under the Freedom of Information Act[.]"  *Id.* at 1.  OLC believes that its advice documents typically need not be disclosed under FOIA, but nevertheless considers whether to voluntarily disclose its advice pursuant to its publication decision-making process.  *See id.* at 1-2.  Contrary to CFA's unsupported assumption, this process for considering voluntary disclosures does not equate to OLC asserting it is not bound by the requirements of § 552(a)(2), or that this process is a substitute for the requirements of § 552(a)(2).  To the contrary, as Deputy Assistant Attorney General Bies's letter makes clear, OLC recognizes its duty to comply with § 552(a)(2) notwithstanding the existence of the publication decision-making process:  "If OLC were to conclude during the publication review process, the FOIA response process, or at any other time

that the Department had an obligation under 5 U.S.C. § 552(a)(2) to make a particular opinion publicly available, we would do so at that time." Bies Letter (ECF No. 9-4) at 2.

Indeed, it is untenable to assume that the existence of OLC's discretionary publication process somehow undermines its commitment to complying with § 552(a)(2). OLC is no different from other agencies that routinely make discretionary decisions—according to factors of their own choosing—about whether to voluntarily disclose documents even when those documents may lawfully be withheld. *Cf.* Memorandum from The Attorney General to Heads of Executive Departments and Agencies, *The Freedom of Information Act (FOIA)*, 74 Fed. Reg. 51878-02 (Oct. 8, 2009) ("I strongly encourage agencies to make discretionary disclosures of information."). An agency's creation of a separate process for evaluating discretionary disclosures does not imply that the agency has failed to comply with the minimum requirements of FOIA; if anything, it demonstrates the agency's good-faith commitment to providing more information to the public than might otherwise be legally available. Here, particularly where OLC has affirmed its commitment to complying with FOIA, *see* Bies Letter at 1-2, CFA cannot base a claim on an unsupported assertion that OLC has, in effect, disavowed its obligation to comply with the requirements of § 552(a)(2).

In short, OLC has never represented or argued that its discretionary publication decision-making process implements, or is a substitute for, the requirements of § 552(a)(2). Nor has CFA plausibly alleged as much.[1] Thus, CFA's latest description of its claim—as challenging DOJ's

---

[1] CFA alleges only that OLC's legal advice documents that were formalized pursuant to the Best Practices Memo are subject to § 552(a)(2). *See* Compl. ¶ 31. But CFA does not allege any facts showing that the publication process described in the Best Practices Memo is OLC's attempt to implement § 552(a)(2). And even if CFA had made such an allegation, it is contradicted by the written documents incorporated by reference into CFA's own Complaint, *i.e.*, the Best Practices Memo and the Bies Letter. Thus, such an allegation would not be entitled to any presumption of truth even at this stage of the litigation. *See* Wright & Miller, *Federal Practice & Procedure* § 1363 (3d ed. Apr. 2016) ("The district court will not accept as true pleading allegations that are contradicted by . . . exhibits attached to or incorporated in the pleading.").

"policy and practice of exercising discretion on an individualized, case-by-case basis, based on factors of its own choosing, in determining whether to comply with the requirements of 5 U.S.C. § 552(a)(2)," CFA's Opp. at 11—reveals the meritless nature of the claim: it seeks to challenge a policy that simply does not exist.  This defect permeates CFA's attempts to avoid dismissal on each of the arguments discussed below.  And regardless of how this defect is framed doctrinally, it compels dismissal of Count One given that CFA is seeking to challenge a purported policy within OLC that CFA's own Complaint makes clear does not exist.

## II.    CFA HAS FAILED TO IDENTIFY ANY RELIEF THIS COURT COULD ORDER THAT WOULD REDRESS ITS PRIMARY CLAIM.

CFA's Count One must also be dismissed because CFA has not established redressability. FOIA does not authorize a court to issue a broad injunction compelling publication of a significant number of advice documents on an ongoing basis, in particular because that would transform FOIA into a mechanism for private parties to obtain comprehensive judicial oversight of agencies' publication programs.  CFA's opposition responds by noting that courts generally have equitable authority under FOIA, by downplaying the consequences of granting CFA's requested relief, and by relying on the concept of "policy and practice" claims under FOIA.  None of these responses has merit, however, and none can overcome the D.C. Circuit's binding decision in *Kennecott Utah Copper Corp.*, 88 F.3d at 1203.

### A.    Under FOIA's Remedial Provision, Courts Cannot Compel the Affirmative Publication of Documents.

Regardless of whether CFA is bringing a "policy and practice" claim or some other type of FOIA claim, CFA agrees that the statute governing the scope of permissible relief is 5 U.S.C. § 552(a)(4)(B).  *See* CFA's Opp. at 15.  And as discussed in DOJ's Opening Brief, the D.C. Circuit has conclusively interpreted that provision as not authorizing courts to compel agencies to affirmatively publish documents.  *See* DOJ's Opening Br. (ECF No. 9-1) at 11-13 (citing *Kennecott*

*Utah Copper Corp.*, 88 F.3d at 1202-03).  CFA's attempts to distinguish this binding precedent are unpersuasive.

First, CFA argues that the D.C. Circuit's decision addressed only the second clause of § 552(a)(4)(B)—authorizing courts "to order the production of any agency records improperly withheld from the complainant"—but not the first clause of the provision, which authorizes courts "to enjoin the agency from withholding agency records[.]"  5 U.S.C. § 552(a)(4)(B); CFA's Opp. at 17.  There is nothing in the D.C. Circuit's opinion, however, that supports such a limited reading; the opinion appears to construe the entirety of § 552(a)(4)(B), and to determine the full scope of relief available under that provision.  *See, e.g.*, *Kennecott Utah Copper Corp.*, 88 F.3d at 1202-03 (holding that Congress intended not to "provid[e] courts with power to order publication").  Additionally, CFA does not explain how or why the first clause of § 552(a)(4)(B), which authorizes *negative* injunctions against the withholding of records, could be read to authorize an *affirmative* injunction beyond what the second clause of § 552(a)(4)(B) permits.

In effect, CFA is attempting to overcome the specific limitations of the second clause by broadly interpreting the more general first clause.  Not only is that contrary to general canons of statutory interpretation—if the first clause were as broad as CFA suggests, there would be no need for a second clause—but it is also contrary to the reasoning of the D.C. Circuit's opinion.  The D.C. Circuit's discussion of FOIA's purpose and other provisions within the statute, *see* 88 F.3d at 1202-03, clearly suggests that the first clause of § 552(a)(4)(B) should not be read as going beyond the limitations of the second clause.[2]

---

[2] As further evidence that § 552(a)(4)(B) does not authorize an order compelling affirmative publication, the statutory language focuses on courts enjoining the improper "withholding" of agency records.  As commonly understood, a "withholding" does not occur until somebody requests access; prior to that point, the agency has simply failed to affirmatively disclose something.  Thus, the natural understanding of the language of § 552(a)(4)(B) is counter to the very relief that CFA requests here—an order compelling affirmative publication even in the absence of any requests, *see* Compl. ¶ 35.

Second, CFA relies on the general concept that courts retain their equitable powers in FOIA lawsuits. *See* CFA's Opp. at 16-17. It is true that the Supreme Court embraced this notion in a case where a party sought to enjoin ongoing agency proceedings pending resolution of its FOIA claim against that agency. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 20 (1974). But Congress's preservation of a court's equitable powers as a general matter—*e.g.*, possibly authorizing courts to halt agency action pending resolution of a FOIA claim—does not speak to the precise question here about the scope of a court's authority under FOIA's remedial provision. That is a question that the D.C. Circuit has already answered. Preservation of equity as a general matter does not override the D.C. Circuit's specific holding that CFA's requested form of relief is unavailable under FOIA.

Finally, CFA relies on other types of relief that courts order in FOIA cases that "go[] beyond compelling the disclosure of particular records to a particular complainant." CFA's Opp. at 18. Again, the existence of these other types of relief does not change the fact that binding D.C. Circuit precedent forecloses the relief CFA seeks here. And in any event, these other types of relief are fully consistent with the limited nature of § 552(a)(4)(B). Judicial review of the adequacy of an agency's search is part and parcel of ensuring there has been no improper withholding of records. *See Maydak v. Dep't of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003) ("An improper withholding may arise from an agency's failure to conduct an adequate search[.]"). Providing relief for inadequate searches thus falls squarely within § 552(a)(4)(B)'s authorization to enjoin improper withholdings. And with respect to relief for denial of a fee waiver, *see* CFA's Opp. at 18-19, that relief is authorized by an entirely separate provision of FOIA, *see* 5 U.S.C. § 552(a)(4)(A)(vii), and thus offers no insight into the proper interpretation or scope of relief under § 552(a)(4)(B).

In sum, no matter how CFA seeks to characterize its claim, the relief necessary to redress that claim—an order directing OLC to affirmatively publish documents on an ongoing basis—is foreclosed by the plain terms of § 552(a)(4)(B) and by the D.C. Circuit's binding decision in *Kennecott Utah Copper Corporation*.  Thus, CFA cannot establish redressability.

**B.**    **Accepting CFA's Claim Would Transform FOIA Into a Mechanism for Private Parties to Obtain Comprehensive Judicial Oversight of Agencies' Publication Programs.**

If CFA's claimed relief were available, it would force courts to become entangled in overseeing agencies' entire publication programs, for both past and future records.  This conclusion follows ineluctably from CFA's requested relief—an injunction compelling OLC to affirmatively publish all of its "controlling" legal advice and other documents that CFA asserts fall within § 552(a)(2).  *See* Compl. ¶ 35; CFA's Opp. at 19-20.

CFA does not dispute that a broad-ranging, generalized legal challenge to an entire agency program is impermissible.  *See* CFA's Opp. at 19-21; DOJ's Opening Br. at 13-15.  Instead, CFA disputes the description of its claim as "broad-ranging," and insists that it is not actually seeking to oversee OLC's publication program.  *See* CFA's Opp. at 20-21.  This response confuses more than it clarifies.  For example, CFA admits that the Government's argument would have force if CFA "were asking this Court to make the call for DOJ on a document-by-document basis as to which specific OLC opinions fall within § 552(a)(2) and to retain jurisdiction to ensure DOJ actually implements any such determination[.]"  CFA's Opp. at 21.  CFA asserts "that decidedly is not the case here," *id.*, but makes no effort to explain how or why that is so.  To the contrary, those are exactly the consequences that would follow from granting CFA's requested injunction, as the Supreme Court explained in *Norton v. Southern Utah Wilderness Alliance* ("*SUWA*"):

> If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would

> ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management.

542 U.S. 55, 66-67 (2004).  Thus, the judicial oversight that CFA's claim would entail is quite real.

At times in its opposition, CFA seems to suggest that all it seeks here is an order directing OLC to comply with the terms of § 552(a)(2).  *See* CFA's Opp. at 20 ("CFA seeks declaratory relief that DOJ comply with the specific requirements of § 552(a)(2), nothing more and nothing less."); *see also id.* at 21 ("[A]ny order requiring such compliance would bear no relationship to an order . . . over how DOJ complies with respect to any specific document.").  That is plainly not the relief sought in the Complaint, which seeks an injunction *requiring* disclosure of *all* such documents. *See* Compl. ¶ 35.  Even if CFA were permitted to narrow its requested relief now, however, that relief still would be unavailable because it would amount to an impermissible "obey the law" injunction.  As numerous courts have recognized, "[i]njunctions that broadly order the enjoined party simply to obey the law and not violate the statute are generally impermissible."  *NLRB v. U.S. Postal Service*, 486 F.3d 683, 691 (10th Cir. 2007) (collecting cases); *see also Cobell v. Norton*, 392 F.3d 461, 475 (D.C. Cir. 2004) (vacating an "obey the law" injunction); *NLRB v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941).  Thus, even this narrower injunction—simply requiring OLC to comply with the terms of § 552(a)(2) but not requiring the disclosure of any specific documents—is unavailable and therefore cannot establish redressability.

### C.    A Purported "Policy and Practice" Claim Does Not Establish Redressability.

CFA also seeks to establish redressability by arguing that it is bringing a "policy and practice" claim challenging OLC's "us[e of] its own discretionary factors in deciding which of its opinions to make publicly available, rather than following the command of § 552(a)(2)."  CFA's Opp. at 12.  Even setting aside that this purported practice does not exist, *see* Section I, *supra*, there are still other flaws with this claim that prevent CFA from establishing redressability.

As an initial matter, even assuming that a "policy and practice" claim were cognizable in these circumstances, that says nothing about what *relief* the Court may order for such a claim. The question about the scope of relief permissible under FOIA must be analyzed separately, and as discussed above, CFA's requested relief here is unavailable. *See* Section II.A, *supra*.

In any event, no such claim is cognizable here. CFA relies on the D.C. Circuit's decision in *Payne Enterprises* for the proposition that litigants may challenge agency FOIA practices "separate and apart from a claim seeking the disclosure of specifically requested records[.]" CFA's Opp. at 11 (citing *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)). But *Payne* arose in very different circumstances: the extraordinary situation in which the agency was recalcitrant in refusing to abandon an admittedly illegal policy, and the court sought to provide a remedy even though the requester had already obtained its requested documents. *See* 837 F.2d at 490-94. The case's holding, therefore, was primarily based on the ability to provide relief even though a specific request for documents had become moot. The availability of declaratory relief in that context—permitting a challenge to an agency policy that was *actually applied* to a specific request for documents—does not support CFA's attempt here to bring a freestanding "policy and practice" claim, wholly unconnected to any request for documents. *Cf. Pub. Employees for Envtl. Responsibility v. Dep't of Interior*, No. 06-cv-182, 2006 WL 3422484 at *9 (D.D.C. Nov. 28, 2006) (describing *Payne* as holding that "declaratory relief may be appropriate even though a plaintiff's *specific claim* regarding a FOIA request is moot" (emphasis added)); *Competitive Enter. Inst. v. EPA*, 153 F. Supp. 3d 376, 385 (D.D.C. 2016) ("The *Payne Enterprises* decision arose out of a very specific and different set of circumstances.").

Indeed, to the extent *Payne* could be broadly interpreted to allow generalized challenges to agency disclosure programs, that is now foreclosed by the Supreme Court's more recent decisions

in *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990), and *Norton v. SUWA*, 542 U.S. at 66-67. *See Del Monte Fresh Produce N.A. v. United States*, 706 F. Supp. 2d 116, 120 (D.D.C. 2010) ("[I]nsofar as the D.C. Circuit's 1988 opinion conflicts with *SUWA* and *Lujan*, the Supreme Court's more recent proclamations of the law overrule it."); *see also* Section II.B, *supra*; DOJ's Opening Br. at 13-15. Thus, the *Payne* decision does not support CFA's attempt to establish redressability here through a purported "policy and practice" claim.

In sum, CFA has not established the legal availability of any relief that would redress its articulated injury of "an informational harm by being deprived of information the law requires DOJ to affirmatively make available to the public without any action by CfA or any member of the public." Compl. ¶ 8. Thus, CFA's primary claim must be dismissed for lack of standing.

## III. THE PRIMARY CLAIM IS NOT RIPE FOR RESOLUTION BECAUSE IT IS TOO ABSTRACT.

CFA's claim presents an abstract legal question—whether all of OLC's legal advice documents must be published under § 552(a)(2). This broad, generalized claim is too abstract to be adjudicated, and there is no meaningful hardship to CFA in requiring that the legal argument be raised through a more concrete factual setting, such as a particularized lawsuit under § 552(a)(3).

The bulk of CFA's response is devoted to emphasizing that §§ 552(a)(2) and 552(a)(3) impose different obligations on agencies. *See* CFA's Opp. at 21-22. That is obviously correct, but also wholly irrelevant to the ripeness analysis. CFA then asserts that it is seeking only to invalidate OLC's Best Practices Memo as applied to *all* advice documents. *See id.* at 23. Again, that description is plainly inconsistent with CFA's actual Complaint, which demands an injunction requiring that OLC "mak[e] available for public inspection and copying, and without a specific request, *all past and future final opinions* made in the adjudication of cases and statements of policy and interpretations that have been adopted by the agency[.]" Compl. ¶ 35 (emphasis added).

-13-

By failing to engage on this issue with respect to the claim actually articulated in its Complaint, CFA has thus conceded that the claim is insufficiently concrete for resolution.[3]

As to CFA's re-characterized claim—not seeking to compel the disclosure of any documents, but simply arguing that OLC's Best Practices Memo does not properly implement "the statutory criteria found in § 552(a)(2)," CFA's Opp. at 24—that theory obviously suffers from the fundamental defect noted at the outset. *See* Section I, *supra*. Furthermore, the claim is still highly abstract. Absent grounding the claim in some concrete, allegedly unlawful effects stemming from OLC's Best Practices Memo, it is difficult to see how the Court could meaningfully evaluate CFA's alleged injury of non-publication—the Court would have to do so without reference to any particular documents that CFA believes are being withheld. Even this re-characterized claim, then, is still too abstract for judicial resolution. *See* DOJ's Opening Br. at 15-17.

On the hardship element of ripeness, CFA again fails to meaningfully respond. Rather than identifying a cognizable hardship associated with review occurring in a more concrete setting, *see id.* at 17-19, CFA instead seeks to portray the Government's arguments as "giv[ing] DOJ carte blanche to ignore its affirmative proactive obligations," which would turn "FOIA's affirmative disclosure requirements into an unenforceable dead letter." CFA's Opp. at 24. But these assertions are overblown, for the reasons explained in Judge Mehta's decision in *CREW v. DOJ*, --- F. Supp. 3d ----, 2016 WL 912167 at *8 (D.D.C. Mar. 7, 2016). Even if a § 552(a)(3) lawsuit was about only a subset of OLC advice documents, if a court were to hold that some or all of those particular documents were subject to automatic disclosure under § 552(a)(2), DOJ would have to take that

---

[3] This result is also compelled by *Webb v. Dep't of Health & Human Servs.*, 696 F.2d 101, 107 (D.C. Cir. 1982), which makes clear that particularized FOIA requests are the preferred mechanism for determining whether information should be released. The "uniquely fact-based" nature of that inquiry is what distinguishes *Webb*, and the present case, from the two cases cited by CFA in its opposition. *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 95 (D.C. Cir. 1986); *see also Pub. Citizen v. Dep't of State*, 276 F.3d 634, 642 (D.C. Cir. 2002).

decision into account going forward—and there could be negative consequences if DOJ failed to do so. *See id.* at *8. The Government thus does not seek to turn § 552(a)(2) into "an unenforceable dead letter," but rather seeks to ensure that enforcement of § 552(a)(2) occurs in a sufficiently concrete and factually grounded setting to permit the Court to engage in a meaningful adjudication of CFA's claims and DOJ's counter-arguments. CFA's present lawsuit is not the appropriate vehicle, because the claim here is too abstract to be capable of judicial resolution.

## IV.    THE COMPLAINT FAILS AS A MATTER OF LAW BECAUSE FOIA DOES NOT REQUIRE OLC TO AFFIRMATIVELY DISCLOSE ITS ADVICE DOCUMENTS.

Even if CFA could overcome the two threshold barriers to judicial review discussed above, CFA's Complaint must still be dismissed as a matter of law. The factual allegations in CFA's Complaint do not plausibly establish even a single instance of unlawful action by OLC. And the fundamental theory of CFA's lawsuit—that, at a minimum, certain formal OLC opinions must be affirmatively disclosed under § 552(a)(2)—is squarely disproven by the D.C. Circuit's binding decision in *EFF*. CFA's opposition does not meaningfully engage with either of these defects, and only further confirms that granting the relief requested here would raise significant institutional and Constitutional concerns for the Executive Branch.

### A.    CFA's Complaint Does Not Contain Sufficient Factual Allegations Plausibly Establishing Any Unlawful Failure to Disclose.

CFA's opposition further highlights the lack of factual allegations within the Complaint plausibly establishing that OLC acted unlawfully in any way. Instead, the Complaint merely restates the statutory language in a conclusory fashion, which is insufficient to survive a motion to dismiss.

CFA first summarizes the OLC Best Practices Memo, and argues that its terms are inconsistent with § 552(a)(2). *See* CFA's Opp. at 25-26. As discussed in Section I, however, this

argument is based on a misunderstanding and is contradicted by the documents incorporated by reference into the Complaint; thus, it does nothing to establish a plausible claim.

CFA also asserts that it cannot yet describe the types of advice documents subject to publication under § 552(a)(2) because it has not had the benefit of discovery. *See id.* at 27. But the possibility of future discovery cannot excuse CFA's antecedent failure to file a Complaint containing sufficient factual allegations plausibly establishing a claim for relief. Despite CFA's unsupported assertion that there are "likely thousands of other opinions that fall within the contours of § 552(a)(2)" that OLC has not published, *id.* at 26, CFA's Complaint contains no allegations identifying even a *single* such opinion. Surely, with more than 1,300 published OLC opinions available to consult, *see* DOJ's Opening Br. at 22, CFA could have identified with some specificity the features of those OLC opinions it contends OLC is obligated to publish, rather than simply parroting the statutory language of § 552(a)(2) in conclusory fashion. Absent factual allegations establishing that some unlawful withholding has actually occurred as a result of the challenged policy, CFA has not plausibly established a claim for relief.

CFA argues that, at a minimum, formal OLC opinions are subject to § 552(a)(2), *see id.* at 27, but there is no explanation of why the internal processes for reviewing these opinions would somehow render this entire category of legal advice subject to § 552(a)(2). CFA again relies on labels such as "controlling" and "authoritative" to describe the legal advice subject to § 552(a)(2), even though such labels were squarely rejected in *EFF*, 739 F.3d at 9, and even though they reflect an overly simplistic view of how OLC's advice functions within the Executive Branch.[4] CFA thus does not address how its view can be squared with the ample caselaw upholding OLC's

---

[4] As discussed in DOJ's Opening Brief (at 28-29), OLC advice might be controlling as to the legal parameters within which an agency can set policy, but it is not controlling as to the agency policy decisions. And OLC advice to agencies is typically controlling only as to OLC's legal conclusions regarding those parameters, not the legal reasoning underlying those conclusions.

withholding of its advice documents on privilege grounds.  *See* Section IV.B, *infra*.  In any event, CFA still does not identify or make allegations regarding any *particular* formal OLC opinions that it believes are improperly being withheld, or identify with any specificity the factual parameters that make formal OLC opinions fall within § 552(a)(2).  Thus, CFA's Complaint still does not contain sufficient *factual* allegations to plausibly establish a claim for relief.

At bottom, if CFA is correct that OLC has "a policy and practice that ignores the FOIA's non-discretionary commands," CFA's Opp. at 25, then it should not be difficult for CFA to identify at least *one* example of an opinion that in CFA's view falls within § 552(a)(2) but which OLC has not made public.  CFA's failure to establish that such opinions exist is conclusive:  there is simply nothing in the Complaint demonstrating that OLC's purported "policy and practice" has led to any (allegedly) unlawful failure to disclose.

### B.    OLC Is Not Required to Publish Its Advice Documents.

#### 1.    The Overwhelming Precedent Approving the Withholding of OLC Opinions as Privileged Disproves CFA's Claim Here.

CFA tries to minimize the significant number of decisions allowing OLC to withhold its advice documents, *see* DOJ's Opening Br. at 24-33, by portraying those decisions as unique, fact-specific decisions that have no bearing on CFA's broader claim here.  But these decisions actually disprove the fundamental theory on which CFA's claim is based.

CFA first criticizes DOJ for treating § 552(a)(2) as "an all or nothing proposition," as if simply "because some of its legal advice is privileged it bears no responsibility to make any of its opinions publicly available."  CFA's Opp. at 28; *see also id.* at 33-34.  The reason DOJ argued that not all of its advice need be disclosed, of course, is because that is precisely what CFA's Complaint seeks as relief.  *See* Compl. ¶ 35.  In any event, the import of the overwhelming precedent, including the D.C. Circuit's recent decision in *EFF*, is not simply that particular advice documents

are privileged and therefore not all advice documents need to be published.  Rather, the critical

point is that the advice documents courts have found to be privileged are ones that, in CFA's view,

need to be affirmatively disclosed under § 552(a)(2).  CFA makes no attempt whatsoever to

reconcile its view that all "controlling" advice documents need to be published with the significant

number of court decisions approving the withholding of those same documents.  The case law thus

disproves the basic theory on which CFA's lawsuit here is predicated.

Turning to the *EFF* decision in particular, CFA asserts that the decision was based on a

particular record and the particular role that the OLC opinion played within the agency's decision-

making process.  *See* CFA's Opp. at 28-29; *id.* at 34.  But there is nothing in the *EFF* decision

suggesting unique factors pursuant to which the opinion at issue in that case could be privileged

but other OLC advice documents would not be:

> EFF argues that the OLC Opinion must be "working law" because it is controlling
> (insofar as agencies customarily follow OLC advice that they request),
> precedential, and can be withdrawn. That the OLC Opinion bears these indicia of a
> binding legal decision does not overcome the fact that OLC does not speak with
> authority on the FBI's policy; therefore, the OLC Opinion could not be the
> "working law" of the FBI unless the FBI "adopted" what OLC offered.

*EFF*, 739 F.3d at 9; *see also* Bies Letter (ECF No. 9-4) at 1 ("OLC does not have policymaking

authority, nor does it enforce laws against or adjudicate the rights of private individuals. Rather,

OLC provides confidential legal advice within the Executive Branch.").  The opinion at issue in

*EFF* was a final, formalized opinion—one that CFA clearly believes must be disclosed under

§ 552(a)(2), *see* CFA's Opp. at 27—and the D.C. Circuit's contrary conclusion therefore

undermines the entire theory on which CFA's Complaint is founded.

As to the privileged nature of OLC's advice, CFA offers scant reason to doubt the

applicability of the attorney-client and deliberative process privileges.  First, CFA questions

whether "OLC has an attorney-client relationship with all agencies in all the situations in which

they seek OLC's advice." CFA's Opp. at 35. But it cannot be seriously questioned that OLC's role—effectively functioning as agencies' outside counsel, *see* 28 C.F.R. § 0.25—is sufficient to invoke attorney-client protections. *Cf. Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (noting that the attorney-client relationship applies when "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests"). Furthermore, OLC's unique role within the Executive Branch does not justify applying a narrower version of the attorney-client privilege to OLC. *See* DOJ's Opening Br. at 35-37.

With respect to the deliberative process privilege, CFA's arguments generally boil down to the "working law" (or "secret law") line of cases already discussed above. *See* CFA's Opp. at 35-37. Those cases are inapplicable, as confirmed by the *EFF* decision. 739 F.3d at 9 ("Because OLC cannot speak authoritatively on the FBI's policy, the OLC Opinion differs from memoranda we have found to constitute the 'working law' of an agency."); *see also New York Times Co. v. Dep't of Justice*, 806 F.3d 682, 687 (2d Cir. 2015) (citing *EFF* and rejecting "the general argument that the legal reasoning in OLC opinions is 'working law'"). CFA makes no effort to explain how its arguments on working law can be reconciled with the D.C. Circuit's definitive holding in *EFF*.

Finally, CFA disputes that its lawsuit seeks to compel disclosure of entire categories of OLC opinions, and asserts that the lawsuit does not implicate "whether a particular OLC opinion may or may not be properly withheld as privileged." CFA's Opp. at 37-38. Again, these assertions cannot be reconciled with the relief requested in CFA's Complaint. *See* Compl. ¶ 35. But in any event, even if CFA is now seeking to narrow its claim, the overwhelming weight of authority recognizing that OLC opinions may be withheld as privileged confirms, at a minimum, that OLC's document-by-document approach to publication is rational and consistent with FOIA.

### 2.    OLC Advice Documents Do Not Fall Within § 552(a)(2).

Even setting aside the privileged nature of OLC's advice documents, CFA's claim also fails as a matter of law because OLC generally does not produce documents that fall within § 552(a)(2)(A) or (B).  CFA asserts that these affirmative publication categories are not limited only to disputes involving private parties, or to final agency opinions.  *See* CFA's Opp. at 29-33.  These responses are unpersuasive.

CFA first addresses § 552(a)(2)(A)'s category of "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases," offering a series of arguments about why it is not limited only to opinions issued by the agency in an adversarial dispute with a private party.  As a statutory matter, CFA asserts that "orders made in the adjudication of cases comprise only a part of the larger category of final opinions."  CFA's Opp. at 30.  But that interpretation plainly misreads the statute and its use of commas, which make clear that the phrase "made in the adjudication of cases" is a requirement applicable to *all* types of "final opinions" covered by § 552(a)(2)(A).  That understanding is further confirmed by the sanction within § 552(a)(2), prohibiting the use of unpublished opinions in a dispute *with individuals*, which CFA wholly ignores.  *See* DOJ's Opening Br. at 26-27.

CFA then relies on the language in *EFF* that a "working law" document includes "a document that determined policy or applied established policy," 739 F.3d at 9, as if OLC advice documents fall within that category.  *See* CFA's Opp. at 30.  Of course, the D.C. Circuit in *EFF* went on to refute that very notion.  *See* 739 F.3d at 9 (holding that "OLC is not authorized to make decisions about the FBI's investigative policy, so the OLC Opinion cannot be an authoritative statement of the agency's policy," and therefore "the OLC Opinion differs from memoranda we have found to constitute the 'working law' of an agency").  CFA's attempts to rely on other cases fare no better, because *EFF* makes clear that OLC does not perform any regulatory duties, and that

the purportedly "controlling" nature of its legal advice does not transform that advice into "working law."  *Compare* CFA's Opp. at 30-31, *with* EFF, 739 F.3d at 9-10; *N.Y. Times*, 806 F.3d at 687; Bies Letter at 1-2.

With respect to the D.C. Circuit's decision in *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598 (D.C. Cir. 2001), the agency's voluntary, internal report at issue was not a "final opinion" under § 552(a)(2)(A) because it was "not a conclusion about agency action (or inaction) in an adversarial dispute with another party."  *Id.* at 603.  CFA seeks to limit this decision, arguing that the D.C. Circuit's reasoning was based on the report's rejection of the alleged misconduct as a factual matter.  *See* CFA's Opp. at 31.  But CFA quotes only part of the relevant sentence, and the rest of that sentence makes clear that it was the overall posture of the report—*i.e.*, the fact that it did not arise in an adjudicative setting—that motivated the D.C. Circuit's decision, not the particular contents of the report:  "And far from explaining a decision not to pursue a judicial remedy, the Report simply rejects as a factual matter the Congressional charges of prosecutorial misconduct—*charges not put forward in any formal agency or judicial proceeding*."  *Rockwell Int'l*, 235 F.3d at 603 (emphasis added); *see also Common Cause v. Internal Revenue Serv.*, 646 F.2d 656, 659 (D.C. Cir. 1981) (holding that an internal agency opinion was not a "final opinion" under § 552(a)(2)(A) because the document only "involves the voluntary suggestion, evaluation, and rejection of a proposed policy by an agency," unlike documents that are "adjudicatory in nature and constitute[] final dispositions of pending disputes").  Thus, CFA's attempt to broaden § 552(a)(2)(A) beyond adversarial, adjudicatory disputes with private parties is meritless.[5]

---

[5] The *Sears* decision and its reliance on Professor Davis's article, *see* CFA's Opp. at 33, also make clear the degree to which § 552(a)(2) is limited to documents involving the adjudication of private rights.  *See* Kenneth C. Davis, *The Information Act: A Preliminary Analysis*, 34 U. Chi. L. Rev. 761, 774 (1967) (discussing the scope of the provision and stating that "[t]he case law of the agencies has to be available for public inspection" because, as an example, "[i]f a letter ruling interprets tax law in favor of X, fairness requires that Y who has the same problem should

With respect to § 552(a)(2)(B) and its category of "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," CFA asserts that the current record does not support a conclusion that OLC does not make final statements of policy. But the Complaint itself confirms that OLC's function is to provide *opinions* and *advice*, not to determine matters of policy. *See* Compl. ¶¶ 14-22. OLC's governing regulation confirms the same: while OLC may provide its opinion and advice to policymaking agencies, it has no policymaking authority itself. *See* 28 C.F.R. § 0.25(a), (c). This limitation is further confirmed by the *EFF* decision, as well as the Bies letter, *see* ECF No. 9-4. CFA again relies on OLC's Best Practices Memo and its description of OLC advice as "controlling." *See* CFA's Opp. at 32. But as *EFF* makes clear, this feature of OLC's advice does not require the publication of such advice. *See* 739 F.3d at 9-10; *see also Vietnam Veterans of Am. v. Dep't of Navy*, 876 F.2d 164, 164-65 (D.C. Cir. 1989) (holding that when an entity has authority only to dispense legal advice on certain topics, but not to actually act on behalf of the agency on those topics, the legal opinions do not constitute statements of policy).

Finally, CFA relies on FOIA's legislative history to argue that § 552(a)(2) was intended to reach documents resolving "purely governmental conflicts." CFA's Opp. at 33. But this argument inaccurately describes the legislative history. CFA relies on a single phrase from the House Report to argue that "Congress sought to compel disclosure of decisions 'that affect any member of the public.'" *Id.* (quoting H. Rep. No. 89-1497 at 28 (1966)). CFA's quoted phrase, however, was attached to Congress's concern about disclosing *staff manuals and instructions* that affect members

---

have opportunity to know the interpretation in X's case"); *see also DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 n.20 (1989) ("The act's indexing and reading-room rules indicate that the primary objective is the elimination of secret law. Under the FOIA, an agency must disclose its rules *governing relationships with private parties and its demands on private conduct*." (emphasis added, quoting Easterbrook, *Privacy and the Optimal Extent of Disclosure Under the Freedom of Information Act*, 9 J. Legal Studies 775, 777 (1980)).

of the public. *See* 5 U.S.C. § 552(a)(2)(C) (requiring the affirmative disclosure of "administrative

staff manuals and instructions to staff *that affect a member of the public*" (emphasis added)).  CFA

cannot impute this purported congressional purpose to final opinions or unpublished statements of

policy, given that those provisions do not contain such statutory language.  *Id.* §§ 552(a)(2)(A),

(B).  Moreover, another passage from the House Report makes clear that Congress's primary

concern in § 552(a)(2) was with the adjudication of private rights:

> Subsection (b) [referring to § 552(a)(2)] would . . . requir[e] each agency to
> maintain for public inspection an index of all the documents having precedential
> significance which would be made available or published under the law. The
> indexing requirement will *prevent a citizen from losing a controversy with an
> agency* because of some obscure or hidden order or opinion which the agency
> knows about but which has been unavailable to the citizen simply because he had
> no way to discover it.

H.R. Rep. 89-1497 at 29 (emphasis added); *see also Bannercraft Clothing Co. v. Renegotiation

Bd.*, 466 F.2d 345, 352 (D.C. Cir. 1972) (quoting legislative history and stating that Congress

enacted § 552(a)(2) because it was "troubled by the plight of those forced to litigate with agencies

on the basis of secret laws or incomplete information"), *rev'd on other grounds*, 415 U.S. 1 (1974).

Because OLC opinions do not involve disputes with private parties, then, OLC need not disclose

its advice documents under § 552(a)(2).[6]

### C.    Granting CFA's Requested Relief Would Undermine OLC's Important Role in the Executive Branch, and Raise Significant Constitutional Concerns.

CFA's requested relief—the compelled disclosure of a significant number of OLC advice

documents—is extremely broad, and would undermine OLC's important role of providing

confidential legal advice to assist the Executive Branch in the discharge of its constitutional

responsibilities.

---

[6] CFA's theory—that "Congress sought to compel disclosure of decisions 'that affect any member of the public,'" CFA's Opp. at 33—would mark a radical expansion of agencies' disclosure obligations under § 552(a)(2). Virtually *every* agency opinion can be described as affecting a member of the public in some manner.

First, as CFA itself acknowledges, OLC serves an important function in the Executive Branch by providing legal advice representing "the interests of the United States, not merely those of an individual agency." CFA's Opp. at 35-36. Granting CFA's requested relief here, however, would undermine this and other important rule-of-law interests by discouraging agencies from seeking OLC's legal advice and potentially inhibiting OLC's ability to provide full and frank advice. *See* DOJ's Opening Br. at 35-37. Indeed, the logic underlying CFA's claim is so expansive that it would call into question the Executive Branch's ability to obtain *any* confidential legal advice. *See id.* at 35-40. Such a result would raise significant constitutional concerns, interfering with the President's ability to receive confidential advice and his constitutional duty to take care that the laws be faithfully executed by Executive Branch agencies. *Id.* at 37-40.

CFA's opposition ignores the potentially devastating effect that its requested relief could have on OLC's important function, and then trivializes the constitutional concerns discussed above. Specifically, CFA asserts that some OLC opinions may not need to be disclosed. *See* CFA's Opp. at 41. Of course, CFA does not deny that it seeks disclosure of a broad swath of OLC's opinions, *see* Compl. ¶ 35. And whatever the exact number of OLC opinions CFA ultimately believes must be disclosed, there can be no question that this expansive relief would interfere with the President's execution of his Article II duties.[7] Notwithstanding CFA's remarkable lack of concern about these far-reaching implications, this lawsuit threatens to critically impair the ability of OLC to provide, and for the President and the rest of the Executive Branch to receive, confidential legal advice. These concerns, by themselves, warrant rejection of CFA's claim.

---

[7] CFA responds that it "does not challenge the ability of the executive branch and the President in particular to obtain, in appropriate circumstances, confidential legal advice." CFA's Opp. at 41. But this statement cannot be reconciled with the relief requested in the Complaint, *see* ¶ 35, or with CFA's underlying legal theory in this lawsuit— that authoritative legal advice provided within the Executive Branch must be affirmatively published under FOIA. If anything, it simply underscores the vague and ever-evolving nature of CFA's claim in this case.

## V.    THE INDEXING CLAIM MUST BE DISMISSED.

Count Two of CFA's Complaint must also be dismissed.  The claim, if cognizable at all, must be brought under the APA, and the particular claim here is meritless because Count One is also meritless.

Regarding the APA point, CFA does not even attempt to address the analysis in *Public Citizen, Inc. v. Lew*, 127 F. Supp. 2d 1, 8-9 (D.D.C. 2000), holding that an indexing claim must be brought under the APA.  Instead, CFA accuses the Government of having taken an inconsistent position in the prior *CREW v. DOJ* litigation, by "argu[ing] the APA did not confer jurisdiction over any of the plaintiff's claims, which included an indexing claim."  CFA's Opp. at 14.  That accusation is wrong.  There was no indexing claim at issue in that case, and the Government expressly argued that certain claims—including indexing claims—may be cognizable under the APA rather than FOIA.  *See CREW v. DOJ*, No. 13-cv-1291 (D.D.C.), Government's Reply Brief Supporting Renewed Mot. to Dismiss Mem. (ECF No. 21) at 6 n.4.  Thus, there is no inconsistency between the Government's positions in that case and in this one.

Regardless, CFA does not dispute that if Count One is dismissed, then Count Two must also be dismissed.  *See* CFA's Opp. at 14-15.  Because Count One must be dismissed for all the reasons discussed above, Count Two must be dismissed as well.  Thus, both claims in CFA's Complaint ought to be dismissed.

### CONCLUSION

For the foregoing reasons, CFA's Complaint should be dismissed for lack of subject-matter jurisdiction, and for failure to state a claim upon which relief can be granted.

Dated: September 8, 2016                    Respectfully Submitted,

                                            BENJAMIN C. MIZER
                                            Principal Deputy Assistant Attorney General

                                            CHANNING D. PHILLIPS
                                            United States Attorney

                                            ELIZABETH J. SHAPIRO
                                            Deputy Branch Director

                                            /s/   Daniel Schwei
                                            DANIEL SCHWEI
                                            Trial Attorney (N.Y. Bar)
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Ave. NW
                                            Washington, DC 20530
                                            Tel.:      (202) 305-8693
                                            Fax:       (202) 616-8470
                                            Email:     daniel.s.schwei@usdoj.gov

                                            Mailing Address:
                                            Post Office Box 883
                                            Washington, D.C. 20044

                                            Courier Address:
                                            20 Massachusetts Avenue N.W.
                                            Washington, D.C. 20001

                                            Counsel for Defendant