# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAMPAIGN FOR ACCOUNTABILITY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 16-cv-1068 (KBJ) |
| U.S. DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

This lawsuit arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, but it is not the familiar sort of FOIA lawsuit that challenges an agency's failure to produce records in response to a specific request from the plaintiff. Rather, plaintiff Campaign for Accountability ("CfA") seeks an order requiring the Department of Justice's Office of Legal Counsel ("OLC") to comply with its obligation to make certain records available *affirmatively*, without the need for a prior request, pursuant to the FOIA's seldom-litigated 'reading-room' provision, 5 U.S.C. § 552(a)(2). CfA alleges that the legal opinions that OLC provides on behalf of the Attorney General to various officials in the Executive Branch are subject to the reading-room provision either because OLC's legal advice documents are "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases[,]" *id.* § 552(a)(2)(A), or because they qualify as "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register[,]" *id.* § 552(a)(2)(B). (*See* Compl., ECF No. 1, ¶ 31.) OLC has already made

many of its opinions (more than 1,300 of them) available to the public on its website; however, in the instant lawsuit, CfA seeks an order requiring OLC to make available *all* of its opinions that have precedential effect within the Executive Branch, as well as an index of those opinions.  (*See id.* ¶ 35.)

Before this Court at present is the government's motion to dismiss CfA's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* Mem. in Supp. of Def.'s Mot. to Dismiss ("Mot."), ECF No. 9-1.)  In its motion, the government argues that this Court lacks subject matter jurisdiction to entertain CfA's complaint because it seeks a type of relief that is beyond the scope of what the FOIA's remedial provision authorizes.  (*See id.* at 19–23 (discussing 5 U.S.C. § 552(a)(4)(B)).)[1] The government also takes various doctrinal tacks under both Rule 12(b)(1) and Rule 12(b)(6) to press the argument that CfA's claim is too broad and abstract for judicial resolution.  Specifically, the government asserts that the FOIA's remedial provision does not authorize broad injunctions that are not tethered to specific documents (*see id.* at 19–21); that FOIA claims that are not presented in a concrete factual setting are constitutionally unripe (*see id.* at 23–27); and that CfA's allegations fail to state a claim upon which relief can be granted, because OLC opinions are not plausibly subject to the reading-room requirement, at least at the level of generality that CfA's complaint identifies them (*see id.* at 29–31).  In this regard, the government's motion—and indeed, CfA's complaint itself—raises novel questions regarding how a plaintiff who seeks to enforce the FOIA's reading-room provision must present its claims.

---

[1] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

On September 29, 2017, this Court issued an order that **GRANTED** the government's motion to dismiss, and **DISMISSED** CfA's complaint.  (*See* ECF No. 18.) The instant Memorandum Opinion explains the reasons for that order.  In short, having considered the parties' arguments, and in light of the D.C. Circuit's recent decision in *Citizens for Responsibility and Ethics in Washington v. Department of Justice* (*CREW*), 846 F.3d 1235 (D.C. Cir. 2017), this Court concludes that it does have subject matter jurisdiction to award the type of broad, prospective injunction that CfA seeks, even if the Court can only require that the requested records be produced to CfA rather than made available to the public.  However, in this Court's view, CfA has not identified an ascertainable set of OLC opinions that OLC has withheld from the public and that is also plausibly subject to the FOIA's reading-room requirement.  Accordingly, and for the reasons explained fully below, the Court agrees with the government that CfA's complaint must be dismissed because it fails to state a claim upon which relief can be granted.  The Court will permit CfA to file an amended complaint, if it chooses to do so, as provided in the Order that accompanies this Memorandum Opinion.

## I.     BACKGROUND

Because this case presents the question of whether OLC must make its legal opinions available for public inspection pursuant to the FOIA's reading-room provision, the statutory framework that informs the Court's analysis of that provision appears below.  Following that recitation is a description of the role of OLC opinions within the Executive Branch, and an account of the various efforts—both by Plaintiff and by another similar organization, Citizens for Responsibility and Ethics in Washington ("CREW")—to compel OLC to make its opinions available to the public.

## A.     Statutory Framework

Under the FOIA, this Court "has jurisdiction to enjoin [an] agency from withholding agency records and to order the production of records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  A FOIA complaint that seeks judicial review of an agency's withholding of records can allege that the government's withholding violates any one of the statute's three disclosure requirements—sections 552(a)(1), (a)(2), or (a)(3).  *See Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior*, 88 F.3d 1191, 1202 (D.C. Cir. 1996).  The vast majority of FOIA lawsuits arise under section 552(a)(3)(A), which mandates that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3).  The D.C. Circuit has referred to (a)(3) as the FOIA's "reactive" disclosure provision, because it requires an agency to produce records only "in response to specific requests."  *CREW*, 846 F.3d at 1240.

A FOIA lawsuit may also accuse an agency of violating either one of the statute's "two distinct affirmative disclosure obligations[,]" *id.*, which, unlike section 552(a)(3), require agencies to act *proactively* with respect to the publication of certain types of records and information; *i.e.*, the agency must disclose the records without waiting for a request.  One of these two affirmative disclosure provisions, section 552(a)(1), pertains to information that agencies must "publish in the Federal Register for the guidance of the public[.]"  5 U.S.C. § 552(a)(1).  The matters that an agency must publish in the Federal Register include "statements of the general course and method by which [an agency's] functions are channeled and determined," "rules of

procedure," and "substantive rules of general applicability[,]" among others. *Id.* § 552(a)(1)(B)–(D).

This lawsuit arises under the FOIA's *other* affirmative disclosure requirement, which appears in section 552(a)(2)—the "so-called 'reading room' provision." *Tax Analysts v. IRS*, 117 F.3d 607, 609 (D.C. Cir. 1997).[2] Section 552(a)(2) identifies certain items than each agency must "make available for public inspection in an electronic format[.]" *Id.* § 552(a)(2). The categories of items that agencies must publicize pursuant to the reading-room provision include "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases[,]" and "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register[.]" *Id.* § 552(a)(2)(A)–(B). Section 552(a)(2) also contains an indexing requirement, which dictates that "[e]ach agency shall . . . maintain and make available for public inspection in electronic format current indexes providing identifying information for the public as to any matter" covered by the other provisions of the reading-room requirement. *Id.* § 552(a)(2)(E).

The FOIA's reading-room provision "represents an affirmative congressional purpose to require disclosure of documents which have the force and effect of law." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (internal quotation marks and citation omitted). The types of documents that section 552(a)(2) requires agencies to publicize and index—"final opinions . . . made in the adjudication of cases[,]"

---

[2] Before Congress amended the FOIA in 1996 to transition agencies toward electronic recordkeeping, *see* Electronic Freedom of Information Act Amendments of 1996, Pub L. No. 104-231, 110 Stat. 3048, most agencies fulfilled their obligations under section 552(a)(2) by placing records in a literal reading room—hence the moniker. *See generally* Office of Information Policy, *FOIA Guide, 2004 Edition: FOIA Reading Rooms*, U.S. Dep't of Justice (May 2004), https://www.justice.gov/oip/foia-guide-2004-edition-foia-reading-rooms.

"statements of policy and interpretations which have been adopted by the agency[,]" and "instructions to staff that affect a member of the public[,]" 5 U.S.C. § 552(a)(2)(A)–(C)—collectively "indicate that the primary objective is the elimination of 'secret law'"; that is, these requirements prevent an agency from subjecting members of the public to a rule that the agency has not publicly announced. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 n.20 (1989) (quoting Frank H. Easterbrook, *Privacy and the Optimal Extent of Disclosure Under the Freedom of Information Act*, 9 J. Legal Studies 775, 777 (1980)); *see also id.* ("Under the FOIA an agency must disclose its rules governing relationships with private parties and its demands on private conduct[.]"). In this same vein, any document to which section 552(a)(2) pertains "may be relied on, used, or cited as precedent by an agency against a party other than an agency only if" the agency has indexed and publicized it as the reading-room provision requires (or if the affected party otherwise knows about it). 5 U.S.C. § 552(a)(2)(E).[3]

Notably, even if a record is subject to one of the FOIA's three disclosure requirements, the FOIA permits an agency to withhold the record if it falls within one of nine statutory exemptions. *See* 5 U.S.C. § 552(b)(1)–(9). Of particular relevance to this case, the FOIA's Exemption 5 protects from disclosure "inter-agency or intra-

---

[3] When the Supreme Court decided all of the cases cited in this paragraph, the reading-room provision contained only three sub-parts—5 U.S.C. § 552(a)(2)(A)–(C). *See Sears*, 421 U.S. at 136 n.1. In the 1996 amendments mentioned above (*see supra* note 2), Congress expanded the reading room requirement to encompass an additional category of records—set forth in 5 U.S.C. § 552(a)(2)(D)—that focuses on the public's *interest* in the records, and not necessarily the records' regulatory impact on the public. *See* Michael E. Tankersley, *How the Electronic Freedom of Information Act Amendments of 1996 Update Public Access for the Information Age*, 50 Admin. L. Rev. 421, 426–27 (1998) (discussing the addition of 5 U.S.C. § 552(a)(2)(D)). Nevertheless, the Supreme Court's descriptions of the reading-room requirement in *Sears* and *Reporters Committee for Freedom of the Press* remain pertinent for the portions of the reading-room requirement that pre-date the 1996 amendments, including both provisions that are at issue in this case—sections 552(a)(2)(A) and (a)(2)(B).

agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" *Id.* § 552(b)(5). To qualify for Exemption 5, a document "must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). "[T]hose privileges include the privilege for attorney work-product and what is sometimes called the 'deliberative process' privilege." *Id.*

Significantly for present purposes, it is well established that Exemption 5 correlates with, and sheds light on, the scope of the FOIA's reading-room provision. Specifically, the Supreme Court has explained that courts generally should construe Exemption 5 and the reading-room provision such that they do not overlap. *See Sears*, 421 U.S. at 153 ("We should be reluctant . . . to construe Exemption 5 to apply to the documents described in 5 U.S.C. § 552(a)(2)[.]"). This means that if a record can be withheld under Exemption 5, then it is generally not subject to affirmative disclosure under the reading-room provision and vice versa, and this principle of mutual exclusion stems from the fact that Exemption 5 is limited to communications within an agency that "reflect the agency's group thinking in the process of working out its policy and determining what its law shall be[,]" and does *not* apply to communications that "embody the agency's effective law and policy[.]" *Id.* (internal quotation marks and citation omitted). In *Sears*, the Court observed that these features of Exemption 5 reveal that it is a kind of mirror image of the reading-room requirement, and that with respect to the latter, Congress sought only "to require disclosure of documents which have the force and effect of law." *Id.* (internal quotation marks and citation omitted).

**B.     Legal Opinions Of The Office Of Legal Counsel**

"For decades, [OLC] has been the most significant centralized source of legal advice within the Executive Branch."  *CREW*, 846 F.3d at 1238 (internal quotation marks and citation omitted).  This role is, "in some sense, nearly as old as the Republic itself.  In the Judiciary Act of 1789, Congress authorized the Attorney General 'to give his advice and opinion upon questions of law when required by the President of the United States, or when requested by the heads of any of the departments, touching any matters that may concern their departments.'"  *Id.* (quoting Act of Sept. 24, 1789, ch. 20, § 35, 1 Stat. 73, 93 (codified as amended at 28 U.S.C. §§ 511–13)).  As that statutory language suggests, the Attorney General's legal advice to the President and various executive agencies spans a wide range of issues and contexts.  To give one example that CfA highlights, an Executive Order encourages (and in some cases, requires) executive agencies to submit disputes among themselves to the Attorney General for resolution.  *See* Exec. Order No. 12,146, §§ 1-401 to 1-402, 3 C.F.R. 409 (1979).  (*See also* Compl. ¶ 16.)

The Attorney General has delegated his authority to provide legal opinions to other Executive Branch officials to OLC.  *See* 28 C.F.R. § 0.25(a) (charging OLC with "[p]reparing the formal opinions of the Attorney General[,] rendering informal opinions and legal advice to the various agencies of the Government[,] and assisting the Attorney General in the performance of his functions as legal adviser to the President and as a member of, and legal adviser to, the Cabinet").  It is allegedly OLC's "official view" that each of the legal opinions that it issues—whether formal or informal—is an "authoritative" statement of the law and is "binding" on the Executive Branch official to whom OLC issues the opinion "by custom and practice[.]"  (Compl. ¶ 19 (quoting

8

Karl Remon Thompson, Principal Deputy Assistant Attorney General, Remarks at American Bar Association Conference (2014)); *see also id.* ¶ 21.)

OLC does not make all of its legal opinions available to the public, but with respect to "formal written opinions[,]" which is "one particularly important form of controlling legal advice" that OLC issues to Executive Branch officials, OLC "has a longstanding internal process in place for regular consideration and selection of significant opinions for official publication." (Memorandum from David J. Barron, Acting Assistant Attorney General, to Attorneys of the Office, Best Practices for OLC Legal Advice and Written Opinions at 1, 5 (July 16, 2010) ("Best Practices Memo"), Ex. 3 to Def.'s Mot. to Dismiss, ECF No. 9-5).[4] Pursuant to that process, OLC's "internal publication review committee" makes publication decisions after seeking input from the authoring attorneys, from OLC's front office, and from "the requesting Executive Branch official or agency and any other agencies that have interests that might be affected by publication[.]" (*Id.* at 5.) Furthermore, when making publication decisions, OLC considers a variety of discretionary factors such as "the potential importance of the opinion to other agencies or officials in the Executive Branch" and "the likelihood that similar questions may arise in the future[.]" (*Id.*) OLC has published over 1,300 opinions, dating from 1934 to the present.[5]

---

[4] The Best Practices Memo is discussed in detail in CfA's complaint (*see* Compl. ¶¶ 18, 31), and the Court deems the complaint to "necessarily rel[y]" on that memorandum such that the Court may consider it at the pleadings stage. *See Abraha v. Colonial Parking, Inc.*, 243 F. Supp. 3d 179, 184 (D.D.C. 2017) ("In deciding a Rule 12(b)(6) motion, a court may consider . . . documents upon which the plaintiff's complaint necessarily relies[.]" (internal quotation marks and citation omitted)).

[5] *See* Office of Legal Counsel, *Opinions*, Dep't of Justice (June 5, 2016), http://www.justice.gov/olc/opinions-main (linking to 1,309 opinions). This Court can take judicial notice of the fact that material has been posted to a government website. *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (citing Fed. R. Evid. 201); *see also Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (noting that "matters of which the court may take judicial notice" are properly considered at the motion-to-dismiss stage (internal quotation marks, alteration and citation omitted)).

## C.  Attempts To Get OLC To Publicize Its Legal Opinions

On July 3, 2013, Anne Weisman, then Chief Counsel of Citizens for Responsibility and Ethics in Washington, wrote to OLC to "request[] that [OLC] immediately comply with its obligation under 5 U.S.C. § 552(a)(2) to make available for public inspection and copying all OLC opinions that are binding on the executive branch." (Letter from Anne L. Weisman to Assistant Attorney General Virginia A. Seitz (July 3, 2013) ("CREW Letter"), Ex. 1 to Def.'s Mot. to Dismiss, ECF 9-3, at 6; *see also* Compl. ¶ 26.)  The letter quoted OLC's Best Practices Memo, and noted OLC's practice of publishing only some, but not all, of its opinions.  (CREW Letter at 6–7.) The letter contended that OLC's opinions must be made available for public inspection under the FOIA's reading-room provision, because OLC's opinions "function as binding law on the executive branch."  (*Id* at 7.)  OLC responded that, in its view, FOIA exempts OLC opinions from disclosure because they are "ordinarily covered by [FOIA's] attorney-client and deliberative process privileges" and as such are covered by Exemption 5, and furthermore, OLC opinions are not subject to the reading-room provision's affirmative disclosure requirements because, "as confidential and predecisional legal advice, . . . [they] constitute neither 'final opinions . . . made in the adjudication of cases' nor 'statements of policy and interpretations which have been adopted by the agency.'"  Letter from John E. Bies, Deputy Assistant Attorney General, to Anne L. Weisman (Aug. 20, 2013), *quoted in CREW*, 846 F.3d at 1239.

CREW initially sued the Department of Justice under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, seeking to use that statute's judicial review provision to compel OLC to comply with its obligations under the FOIA.  *See CREW v. Dep't of Justice*, 164 F. Supp. 3d 145, 147 (D.D.C. 2016) (Mehta, J.), *aff'd*,

*CREW*, 846 F.3d 1235 (D.C. Cir. 2017). CREW brought that initial lawsuit under the APA, rather than under the FOIA itself, because CREW took the position that the "FOIA does not provide an adequate remedy to address DOJ's alleged Section 552(a)(2) violation." *Id.* Judge Mehta dismissed the case, reasoning that even if CREW could not obtain *all* of its requested relief under the FOIA, that statute provides relief of the "same genre" that CREW was seeking, and thus the FOIA supplies an "adequate remedy" for CREW's injuries, precluding a lawsuit under the APA. *Id.* at 155–56; *see also* 5 U.S.C. § 704 (providing that the APA allows for judicial review of "final agency action for which there is no other adequate remedy in a court"). The D.C. Circuit later affirmed that ruling in an opinion discussed at length below. *See CREW*, 846 F.3d 1235.

On March 22, 2016, fifteen days after the district court decision in *CREW*, Ms. Weisman again wrote to OLC, this time as the Executive Director of Plaintiff Campaign for Accountability, and she again requested that OLC make its legal opinions available for public inspection. (*See* Compl. ¶ 24; Letter from Anne L. Weisman to Principal Deputy Assistant Attorney General Karl Remon Thompson (Mar. 22, 2016), Ex. 1 to Def.'s Mot. to Dismiss, ECF No. 9-3, at 1–3.) This second letter was "similar" to the previous letter (Compl. ¶ 26), insofar as it specifically requested that OLC make publicly available "all unpublished OLC opinions that provide controlling legal advice to executive branch agencies and a general index of all such opinions" (*id.* ¶ 24). OLC responded by letter on May 26, 2016, reiterating its "continuing position that none of the opinions it issues are covered by the requirements of 5 U.S.C. § 552(a)(2)." (Compl. ¶ 25; *see also* Letter from John E. Bies, Deputy Assistant Attorney General, to

Anne L. Weisman (May 26, 2016), Ex. 2 to Def.'s Mot. to Dismiss, ECF No. 9-4, at 1 (asserting that OLC opinions "generally" are not subject to the reading-room provision and are "ordinarily" exempt from disclosure under the FOIA's attorney-client and deliberative process privileges).)

### D.    Procedural History

CfA filed its complaint in this lawsuit on June 8, 2016, challenging "OLC's ongoing refusal to comply with its mandatory obligations under 5 U.S.C. § 552(a)[.]" (Compl. ¶ 28.)  The complaint contains two counts: in Count One, CfA alleges that OLC's years-long refusal to publish all of its binding opinions violates the disclosure provisions of the FOIA's reading-room requirement, 5 U.S.C. § 552(a)(2).  (*See id.* ¶¶ 29–35.)  In Count Two, CfA alleges that OLC has also failed to comply with the separate indexing requirement of section 552(a)(2)(E), by "fail[ing] for years to make available for public inspection and copying indices of all final opinions made by OLC in the adjudication of cases and statements of policy and interpretation that have been adopted by the agency."  (*Id.* ¶ 38.)  As relief, CfA seeks a declaration that both of these failures constitute violations of section 552(a)(2) (*see id.*, Prayer for Relief, ¶¶ 1, 5), as well as an injunction requiring OLC to make available for public inspection and copying: (1) "all final opinions made in the adjudication of cases and statements of policy and interpretations that have been adopted by the agency"; (2) "all opinions issued by OLC that provide controlling advice to executive branch officials on questions of law that are centrally important to the functioning of the federal government"; (3) "all opinions issued by OLC that serve as precedent either within the OLC or within the executive branch, whether or not they are formal or informal opinions"; and (4) "indices of all final opinions made in the adjudication of cases and

statements of policy and interpretations that have been adopted by the agency[.]" (*Id.* ¶¶ 2–4, 6.)  Finally, the complaint requests "such other and further relief as the Court may deem just and proper."  (*Id.* ¶ 7.)

The government has moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and that motion is now fully briefed.  (*See* Mot.; *see also* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opp'n"), ECF No. 11; Reply Mem. in Supp. of Def.'s Mot. to Dismiss ("Reply"), ECF No. 12.)  In its motion, the government argues, first, that CfA's requested relief is not available because the FOIA's judicial review provision, 5 U.S.C. § 552(a)(4)(B), only authorizes courts to "order[] disclosure of specific documents to individuals—not to order[] broad, prospective relief requiring ongoing publication for the benefit of the broader public."  (Mot. at 21.)  Second, the government argues that Count One of the complaint must be dismissed on the grounds that it "is not ripe for adjudication because it is too abstract for judicial resolution." (*Id.* at 23.)  Third, the government argues that the complaint must be dismissed pursuant to Rule 12(b)(6) on the grounds that CfA "does not plausibly allege any unlawful failure to publish by OLC" because CfA's complaint "does not identify any particular advice documents that it believes fall within 5 U.S.C. § 552(a)(2)(A) or (B), but which OLC has failed to disclose."  (*Id.* at 29–30.)  In support of this last argument, the government cites the D.C. Circuit's decision in *Electronic Frontier Foundation v. Department of Justice* (*EFF*), 739 F.3d 1 (D.C. Cir. 2014), which it argues stands for the proposition that OLC opinions, as a general matter, are not subject to the reading-room requirement and are exempt from disclosure under pursuant to Exemption 5.  (*See* Mot. at 32–41.)  Finally, the government argues that Count Two—the indexing claim—

must be dismissed because it is derivative of Count One, and there is no obligation to publish an index of opinions if the opinions themselves need not be published under section 552(a)(2). (*See id.* at 48–49.)

CfA responds to each argument in turn, as detailed below. (*See infra* Part III.) With respect to the government's jurisdictional points, CfA focuses primarily on the fact that the FOIA gives courts broad remedial powers and that CfA is challenging OLC's *policy* of refusing to publish its opinions, not its withholding of any particular opinion. (*See, e.g.*, Opp'n at 18–20, 22–26.) CfA also holds fast to its position that the reading-room requirement applies to OLC's controlling opinions because those opinions have binding legal effect. (*See, e.g.*, *id.* at 9, 34, 39, 41–42.)

After the government's motion was fully briefed, this Court stayed the instant case pending the D.C. Circuit's decision in the *CREW* case. (*See* Min. Order of Nov. 7, 2016.) The Circuit released its decision on January 31, 2017, *see CREW*, 846 F.3d 1235, and the parties then filed a Status Report explaining their views on the impact of that decision on this case. (*See* Joint Status Report, ECF No. 15.) CfA's portion of the Status Report focuses on the fact that, per the *CREW* decision, the FOIA is indeed the proper avenue for enforcing the reading-room provision, and the relief available under the FOIA encompasses a broad, forward-looking injunction that is not limited to the production of individual documents. (*See id.* at 1–3.) DOJ's portion of the Status Report focuses on the fact that the *CREW* decision forecloses using a FOIA lawsuit to secure disclosure of documents to the general public, rather than to the plaintiff alone. (*See id.* at 4.) DOJ also emphasizes that *CREW* did not change a plaintiff's duty to present a FOIA dispute to the courts in a discrete fashion. (*See id.* at 4–6.)

## II.    LEGAL STANDARDS

### A.    Motions To Dismiss Pursuant To Rule 12(b)(1) In The FOIA Context

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may seek dismissal of a complaint due to "lack of subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1).  Under the FOIA's judicial review provision, this Court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Because this provision uses the language of "jurisdiction" in erecting the boundaries of a district court's remedial powers under the FOIA, *id.*, Rule 12(b)(1) is the proper avenue by which a defendant may urge the court to dismiss a complaint on the grounds that it seeks a type of relief that the FOIA does not authorize. *See United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015) (explaining that a statutory limitation is jurisdictional in nature if the statute "speak[s] in jurisdictional terms or refer[s] in any way to the jurisdiction of the district courts" (internal quotation marks and citation omitted)); *see also, e.g.*, *Kennecott*, 88 F.3d at 1202 (affirming district court's dismissal of a FOIA complaint because the court "lacked jurisdiction" to award the requested type of relief—publication of records).  A court must also dismiss a FOIA complaint pursuant to Rule 12(b)(1) if the plaintiff cannot demonstrate Article III standing to sue or if the case is not ripe for review. *See, e.g.*, *Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 153 F. Supp. 3d 319, 330–31 (D.D.C. 2013).

### B.    Motions To Dismiss Pursuant To Rule 12(b)(6) In The FOIA Context

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to request dismissal of a complaint if the pleading "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Because the FOIA permits a court to "order the production of any agency records improperly withheld from the complainant[,]" 5 U.S.C. § 552(a)(4)(B), "[a] FOIA plaintiff states a claim where it properly alleges that 'an agency has (1) improperly (2) withheld (3) agency records.'" *Cause of Action v. Nat'l Archives & Records Admin.*, 926 F. Supp. 2d 182, 185 (D.D.C. 2013) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

Notably, it is rare in FOIA cases for a court to grant a Rule 12(b)(6) motion to dismiss that assails the *merits* of the plaintiff's pleading—*i.e.*, a motion that disputes the sufficiency of the allegations underlying the claim for relief—and indeed, "FOIA cases typically and appropriately are decided on motion for summary judgment." *Liberman v. U.S. Dep't of Transp.*, 227 F. Supp. 3d 1, 8 (D.D.C. 2016).[6]  The dearth of merits-based Rule 12(b)(6) dismissals most likely stems from the fact that most FOIA litigation arises under section 552(a)(3)—the FOIA's "reactive" disclosure provision, *CREW*, 846 F.3d at 1240—which is a provision that indicates that an agency's denial of "*any* [procedurally compliant] request for records" is improper, at least as a *prima facie* matter.  5 U.S.C. § 552(a)(3) (emphasis added).  Thus, in the typical FOIA case, it is quite straightforward to make a plausible allegation that an agency's withholding of records was 'improper' at the pleadings stage, and it is also relatively easy to plead the other elements of a FOIA claim—*i.e.*, that an agency has withheld the requested records

---

[6] Rule 12(b)(6) is frequently (and properly) utilized in the FOIA context to seek dismissal for failure to exhaust administrative remedies, *see, e.g.*, *Carroll v. U.S. Dep't of Labor*, 235 F. Supp. 3d 79, 85 (D.D.C. 2017), but Rule 12(b)(6) motions that successfully challenge the plausibility of a plaintiff's claim are unusual.

and that the things that the agency withheld were agency records.  *See, e.g.*, *Shapiro v. CIA*, 170 F. Supp. 3d 147, 154–56 (D.D.C. 2016) (denying Rule 12(b)(6) motion because the FOIA request at issue reasonably described the records sought).[7]

By contrast, Rule 12(b)(6) packs a heavier punch in the context of lawsuits that arise under section 552(a)(2)—the reading-room provision—which, as mentioned above, is one the FOIA's affirmative disclosure requirements.  That is, unlike section (a)(3), which requires agencies to produce records in response to *any* proper request, *see id.* § 552(a)(3), the reading-room provision only requires agency action with respect to specific, statutorily delineated categories of records.  *See, e.g.*, *id.* § 552(a)(2)(A) (requiring that agencies make publicly available "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases"). Consequently, in order to state a claim that an agency has improperly withheld records that it was obligated to make public under section 552(a)(2), the complaint must identify particular records (or categories of records) that the agency has failed to publicize and that plausibly fit within one of the statutory categories.  *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  In other words, if a complaint that asserts a violation of 5 U.S.C. § 552(a)(2) does not allege that certain identified  records (or categories of

---

[7] Of course, an agency may ultimately establish the propriety of the challenged withholding by demonstrating that any of FOIA's nine exemptions applies.  *See* 5 U.S.C. § 552(b)(1)–(9).  But an agency bears the burden of establishing the applicability of an exemption, *see Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011), and because an agency "[t]ypically . . . does so by affidavit[,]" *id.*, the appropriate vehicle for asserting an exemption is usually a motion for summary judgment, not a motion to dismiss.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion [to dismiss] under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

records) plausibly fit the statutory criteria for affirmative disclosure and yet have been withheld by the agency that maintains them, then such a complaint fails to assert that the agency has improperly withheld agency records, and as a result, is subject to dismissal under Rule 12(b)(6).

## III.  ANALYSIS

There are two strands to the argument that the government makes in support of the dismissal of CfA's complaint:  first, the government invokes Rule 12(b)(1) to maintain that this Court has no jurisdiction to order the relief sought in the complaint, and in any event, this Court lacks jurisdiction because CfA's primary claim is too abstract to be ripe.  (*See* Mot. at 19–27.)  Second, the government relies on Rule 12(b)(6) to assert that CfA has not stated a plausible violation of the reading-room requirement.  (*See id.* at 27–48.)  Because a federal court is "not free to pretermit the question" of subject matter jurisdiction, even in a case where the plaintiff's claims ultimately founder on the merits, *Iqbal*, 556 U.S. at 671, this Court's analysis begins by addressing its subject matter jurisdiction, and as explained below, the Court concludes both (1) that the government's remedy-related argument is foreclosed by recent D.C. Circuit case law holding that the FOIA authorizes district courts to award a type of relief that CfA's complaint seeks in the instant case, and (2) that the government's jurisdictional ripeness concern is not properly characterized as such.  By contrast, the government's Rule 12(b)(6) argument fares much better, because in this Court's view, the allegations in CfA's complaint are manifestly insufficient to assert a plausible violation of the FOIA's reading-room provision.

**A. This Court Has Jurisdiction To Order The Type Of Relief That CfA's Complaint Seeks, And The Government's Challenge To The Complaint's Allegations Do Not Implicate Ripeness**

      1.    <u>*CREW* Forecloses The Argument That This Court Lacks Jurisdiction To Order The Requested Remedy</u>

The government begins with the established proposition that "a court's power to remedy an improper withholding [of records] is limited by FOIA's remedial provision" (Mot. at 20 (citing 5 U.S.C. § 552(a)(4)(B)), and it proceeds to argue that the FOIA's remedial provision does not authorize the type of injunctive relief that CfA is seeking in this case (*see id.* at 19–23). Specifically, the government contends that CfA's requested injunction exceeds the boundaries of the FOIA in three respects: (1) it would apply prospectively, "on an ongoing basis[,]" to OLC opinions not yet written (*id.* at 19); (2) it would be "broad-ranging" rather than focused on specific records (*id.* at 22); and (3) it would require "publication" of records to "the broader public[,]" rather than production of records directly to CfA (*id.* at 21). The D.C. Circuit's recent decision in *CREW*, 846 F.3d 1235, speaks directly to the government's concerns in all three respects, and it makes clear that this Court does have subject matter jurisdiction over CfA's claims, because CfA seeks a type of relief that the Court is authorized to award.

In *CREW*, just as in the instant case, the plaintiff "argued that OLC opinions are subject to disclosure under the reading-room provision" of the FOIA, 846 F.3d at 1239, and as relief, CREW sought an injunction that required OLC to comply with its reading-room obligations by making all of its opinions available to the public, *see id.* at 1240. As explained above, CREW sought to enforce the reading-room provision by filing its lawsuit under the APA. *See id.* at 1241. And insofar as the APA only authorizes review of agency actions "for which there is no other adequate remedy in a court[,]"

5 U.S.C. § 704, the D.C. Circuit evaluated whether the FOIA itself provided the sort of "adequate remedy" that would preclude APA review—*i.e.*, whether CREW's requested relief (or something close enough) would be available in a lawsuit brought directly under the FOIA. *See CREW*, 846 F.3d at 1241. To analyze that question, the Circuit panel observed that CREW's requested injunctive relief had "four features":

> First, the injunction would have prospective effect—*i.e.*, it would apply to opinions not yet written. Second, it would impose an affirmative obligation to disclose on OLC—*i.e.*, without need for a specific prior request. Third, it would mandate disclosure to the *public*, as opposed to just CREW. Fourth, it would require OLC to make available to the public an index detailing all documents subject to the reading-room provision.

*Id.* (emphasis in original). Moreover, the court's analysis specifically addressed whether the FOIA's remedial provision authorizes federal courts to award injunctive relief with those features. *See id.* at 1241–44.

Given the "broad equitable authority" that is entrusted to district courts under the FOIA, *id.* at 1241, the *CREW* court "ha[d] little trouble concluding that a district court possesses authority to grant" an injunction that contains the first two features of the relief that CREW sought—"a prospective injunction with an affirmative duty to disclose." *Id.* at 1242. However, in the Circuit's view, the third and fourth aspects of CREW's requested injunction—a requirement that OLC disclose *to the public* all documents subject to the reading-room requirement and an index of those documents— "present[ed] a trickier problem." *Id.* Relying on a prior decision that had addressed the scope of relief available for a claim under section 552(a)(1), the *CREW* court held that because the FOIA's remedial provision is "focus[ed] on 'relieving the injury suffered by the individual complainant[,]'" 846 F.3d at 1243 (quoting *Kennecott*, 88 F.3d at 1203), that provision authorizes courts to "order[] an agency to provide *to the plaintiff*

documents covered by the reading-room provision[,]" *id.* (emphasis in original), but not "to issue an injunction mandating that an agency 'make [those documents] available for public inspection[,]'" *id.* (quoting 5 U.S.C. § 552(a)(2)). Similarly, the *CREW* decision held that a court may order an agency to furnish an index of reading-room documents to a plaintiff, but not to the general public. *See id.*[8]

The *CREW* decision provides a well-marked roadmap for analyzing the government's argument in the instant case that this Court has no jurisdiction to order the relief that CfA seeks. (*See* Mot. at 19–23.) As to the government's first quibble with CfA's requested injunction (*see id.* at 19 (complaining that the requested relief would apply prospectively to OLC opinions not yet written)), the *CREW* case unambiguously holds that "a district court possesses authority" under the FOIA to grant "a prospective injunction" of the sort that CfA seeks. 846 F.3d at 1242. With respect to the government's second concern (*see* Mot. at 22 (maintaining that CfA's requested injunction would be "broad-ranging" rather than focused on specific records)), the *CREW* case clarifies that a court may impose on an agency "an affirmative duty to disclose" categories of records "without need for a specific prior request." 846 F.3d at 1241–42; *see also id.* at 1240–41 (explaining that the requirement to produce reading-room records "is judicially enforceable without further identification under Section 552(a)(3)" (quoting *Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972))). In this regard, the *CREW* decision relied on a prior line of D.C. Circuit cases that had endorsed

---

[8] "While it might seem strange for Congress to command agencies to" make certain documents available for public inspection pursuant to the FOIA "without in the same statute providing courts with power" to order that agencies do so, "that is exactly what Congress intended" by "authoriz[ing] district courts to order the 'production' of agency documents, not 'publication.'" *Kennecott*, 88 F.3d at 1202–03 (quoting 5 U.S.C. § 552(a)(4)(B)); *see also CREW*, 846 F.3d at 1243.

FOIA "policy or practice" claims, by which a plaintiff may seek an order enjoining an agency practice that applies broadly to a category of records rather than to any specific, individual document. *See, e.g.*, *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) ("[E]ven though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." (emphasis in original)). Thus, while a FOIA plaintiff—like any other plaintiff—certainly must plead allegations that are specific enough to state a plausible claim for relief (*see* Section II.B, *supra*), the FOIA presents no *jurisdictional* impediment to a court entertaining a request for a broad injunction that is not tethered to specific records.[9]

As for the government's argument that the FOIA does not authorize courts to order that agencies make records available to the public at large (*see* Mot. at 20–21), CfA acknowledges that the *CREW* case vindicates the government's contention (*see* Joint Status Report at 3 (citing *CREW*, 846 F.3d at 1243)). Per *CREW*, this Court cannot order OLC to "make available for public inspection and copying" all documents that are subject to the reading-room provision, which is one of the remedies that CfA is seeking. (*See* Compl., Prayer for Relief, ¶¶ 2–4, 6.) However, this Court *is* authorized to order that OLC produce any documents that it has improperly withheld in violation of the reading-room provision *to CfA*. *See CREW*, 846 F.3d at 1243 (explaining that "nothing in [the court's prior case law] prevents a district court from, consistent with section 552(a)(4)(B), ordering an agency to provide *to the plaintiff* documents covered

---

[9] Nor does Article III of the Constitution present any such jurisdictional obstacle, for the reasons explained *infra* Part III.A.2. (*See* Mot. at 23 (arguing that CfA's complaint must be dismissed as unripe under Rule 12(b)(1) on the grounds that it "does not seek to obtain access to or compel publication of any specific OLC advice documents, but instead presents only a broad legal claim").)

by the reading-room provision" (emphasis in original)); *id.* ("We see no obstacle . . . to a district court, in the appropriate case, . . . ordering an agency to furnish [an index of reading-room records] *to a plaintiff.*" (emphasis in original)). (*See also* Joint Status Report at 3 (CfA's position); *id.* at 4 (government's position).) At the motion hearing that this Court held in this matter, the Court asked counsel for CfA whether it would be willing to amend its complaint so as to request only that the records be produced to CfA, and counsel maintained that such an amendment would not be necessary, because the complaint's reference to "such other and further relief as the Court may deem just and proper" (Compl., Prayer for Relief, ¶ 7) could properly be construed to encompass a request for an order requiring that documents be produced directly to CfA. (*See* Hrg. Tr. at 19–20.) This Court agrees, and so construed, the instant complaint seeks an order requiring that OLC produce to CfA any opinions that are subject to the reading-room provision—a type of relief that the D.C. Circuit has found to be available under the FOIA's remedial provision. *See CREW*, 846 F.3d at 1244.

Of course, the fact that such relief is *available* as a categorical matter does not answer the question of whether CfA is correct on the merits when it argues that such relief is *warranted*. *See id.* at 1246. But the fact that the type of relief that CfA seeks is available under the FOIA leads the Court to conclude that it has jurisdiction to consider that merits question, and thus the Court will not dismiss CfA's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

2. <u>The Government Identifies A Pleading Failure, Not A Jurisdictional Ripeness Issue, When It Contends That CfA's Primary Claim Is Too Abstract For Judicial Resolution</u>

The government argues that the breadth of CfA's primary claim presents a ripeness defect, which the government frames as follows: "CFA's lawsuit does not seek

to obtain access to or compel publication of any specific OLC advice documents, but instead presents only a broad legal claim—that OLC must publish all of its controlling advice documents, both past and future, pursuant to § 522(a)(2)." (Mot. at 23.) The government maintains that this is an "abstract legal question" that CfA has raised "at an exceedingly high level of generality—*i.e.*, whether OLC must affirmatively publish all of its controlling advice documents pursuant to 5 U.S.C. § 552(a)(2)"—and as such, the question "lacks sufficient factual foundation for judicial resolution." (*Id.* at 23–24.) But in this Court's view, what the government has characterized as a jurisdictional "ripeness" problem is really nothing other than the sort of pleading failure that warrants dismissal under Rule 12(b)(6).

As an initial matter, the government's arguments do not raise constitutional ripeness concerns because there is no question that CfA has suffered an actual injury. The D.C. Circuit has explained that, "if a threatened injury is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1428 (D.C. Cir. 1996); *see also Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 632 (D.C. Cir. 2017) (holding that plaintiffs' claims were ripe because they alleged an actual injury). Here, there is no question that CfA has suffered an actual, particularized injury sufficient to confer standing—and therefore one that is sufficient to generate a ripe controversy—because it reached out to OLC to request the records at issue and was rebuffed (*see* Compl. ¶¶ 6–7; 24–25), and the government does not argue otherwise. *See Prisology, Inc. v. Fed. Bureau of Prisons*, 852 F.3d 1114, 1117 (D.C. Cir. 2017)

(explaining that an unsuccessful attempt to get an agency to make records public confers standing to file a reading-room lawsuit).

The Court also concludes that CfA's complaint does not present prudential ripeness concerns, *see Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (distinguishing between constitutional and prudential ripeness), because when properly understood, the government's ripeness argument attacks CfA's *pleadings*, and does not persuasively contend that the underlying dispute is insufficiently concrete.[10] The prudential ripeness of a dispute turns on "the fitness of the issues for judicial decision and the extent to which withholding a decision will cause hardship to the parties." *Id.* at 387 (internal quotation marks and citation omitted). "[T]he fitness of an issue depends on[,]" *inter alia*, "whether it is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final[,]" *id.* (internal quotation marks and citation omitted)—all factors that relate to the underlying dispute between the parties, and not the level of generality at which the plaintiff has *alleged* that the defendant's conduct was illegal.

Here, the thrust of the government's "ripeness" argument is that, due to the manifest implausibility of CfA's contention that *all* of OLC's controlling legal opinions must be made available under the reading-room provision, CfA can only proceed if it provides the Court with a concrete context (*i.e.*, a particular set of documents) that the Court can evaluate in order to determine whether OLC has, in fact, engaged in unlawful

---

[10] The Supreme Court has recently cast doubt on whether the prudential ripeness doctrine is a viable limitation on the jurisdiction of federal courts. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014). This Court, like the Supreme Court in *Susan B. Anthony List*, "need not resolve the continuing vitality of the prudential ripeness doctrine" because, in this Court's view, there is no prudential ripeness problem in this case. *Id.*

withholding.  (*See* Mot. at 24 ("To grant CFA the relief requested in this lawsuit, this Court would have to determine that *all* of OLC's controlling legal advice documents fall within § 552(a)(2)(A) or (B), and that *none* of those advice documents are privileged.  It is difficult to see what basis the Court would have for making such determinations in the abstract, and in the absence of concrete and granular facts about the circumstances under which any given OLC legal advice document was prepared or what role it played in an agency's policymaking process." (emphasis in original)); *see also id.* ("CFA's claim is not ripe because it is not based on a concrete dispute over particular documents.").)  But to this Court's eye, a true prudential 'ripeness' defect has a remarkably different appearance.  It occurs, generally speaking, when the alleged *wrong* is insufficiently concrete—as a *factual* matter—to be capable of legal evaluation, without regard to how the plaintiff's complaint characterizes it.  This can arise where, for example, the plaintiff contends that the defendant has adopted an unlawful policy, but the challenged policy has not been directly applied to the plaintiff or has not yet come to fruition, and without that crucial context, the court is incapable of assessing whether the defendant has, in fact, violated the law.  *See, e.g.*, *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 812 (2003) (concluding that "further factual development would significantly advance our ability to deal with the legal issues presented" (internal quotation marks and citation omitted)).

In the instant case, by contrast, there can be no doubt that CfA's dispute with OLC, while exceedingly broad, is an actual dispute arising from the direct application of OLC's established policy of making available only certain of its legal opinions, and only at its own discretion.  (*See* Compl. ¶¶ 18, 25–26.)  CfA reached out to OLC,

asserting that it is obligated under the reading-room provision to make available any opinions that contain interpretations of law that are controlling within the Executive Branch (*see id.* ¶ 24), and OLC refused, citing its established policy (*see id.* ¶¶ 25–26; *see also* Letter from John E. Bies, Deputy Assistant Attorney General, to Anne L. Weisman (May 26, 2016)). Thus, CfA's legal action presents a question of law that is premised on the alleged fact that OLC has been applying a policy of not affirmatively publishing all of its controlling opinions, which CfA claims is unlawful because all of OLC's controlling opinions are subject to publication under section 552(a)(2). There is nothing abstract about this allegation. This Court knows exactly what the alleged wrong is (violation of section 552(a)(2)) and how it is allegedly occurring (through OLC's policy of withholding of records); *i.e.*, no further factual development is needed to ascertain the contours of the dispute. Moreover, there is nothing that prevents this Court from determining whether CfA is right or wrong when it boldly contends that "all" of the controlling legal opinions that OLC produces fit the (a)(2) criteria and thus are being wrongfully withheld. *See Susan B. Anthony List*, 134 S. Ct. at 2347 (finding no ripeness issue because the issue presented was "purely legal, and w[ould] not be clarified by further factual development" (internal quotation marks and citation omitted)).

What it appears that OLC is actually saying with its "ripeness" contention is that CfA cannot possibly mean what its complaint suggests—"that *all* of OLC's controlling legal advice documents fall within § 552(a)(2)(A) or (B)" (Mot. at 24 (emphasis in original))—and that if the truth lies somewhere short of that—*i.e.*, that *some* OLC opinions do—this Court cannot possibly identify which opinions must be made public

"in the absence of concrete and granular facts about the circumstances under which any given OLC legal advice document was prepared" (*id.*).  In this way, the government appears to fault CfA for seeking to advance a claim that is unduly categorical, when OLC's (a)(2) publication duties necessarily involve nuanced, contextual assessments of the various types of legal opinions that OLC renders and the circumstances under which it does so.  (*See id.*)  And *that* argument appears to identify a failure in CfA's pleading rather than the absence of a concrete underlying dispute.  *Cf. Irons*, 465 F.2d at 614 (suppl. op. on pet. for reh'g) (dismissing a reading-room claim as "too broad" because the complaint sought a category of documents that was "broader than the statutory limits of Section 552(a)(2)[,]" with no discussion of ripeness or jurisdiction).  Indeed, ultimately, the ripeness argument that the government seems to advance here hinges on precisely the same pleading failure as the government's Rule 12(b)(6) argument (*compare* Mot. at 23–25, *with id.* at 29–31), and this Court finds the Rule 12(b)(6) formulation persuasive, for the reasons explained below.

**B.      The Complaint Must Be Dismissed For Failure To State A Claim Because It Does Not Plausibly Articulate A Category Of OLC Opinions That Must Be Affirmatively Disclosed**

The Court now turns to the government's argument that CfA's complaint must be dismissed pursuant to Rule 12(b)(6) because CfA "does not identify any particular advice documents that it believes fall within § 552(a)(2)(A) or (B), but which OLC has failed to disclose."  (Mot. at 30.)  In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege sufficient facts that, taken as true, permit "the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  As explained in Part II.B above, to meet this standard in the context of a lawsuit seeking records under the FOIA's reading-room provision, a complaint must

identify ascertainable records or categories of records that are plausibly subject to the reading-room requirement and that the agency has failed to make publicly available.

In this case, CfA's complaint alleges that OLC is violating the reading-room requirement by not making available for public inspection "all final opinions made in the adjudication of cases and statements of policy and interpretations that have been adopted by the agency." (Compl. ¶ 32 (citing 5 U.S.C. § 552(a)(2)(A) and (B)— provisions that require agencies to make publicly available "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases," and "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register").) CfA's complaint gestures to various categories of legal opinions that CfA alleges OLC has consistently failed to make available in violation of the reading-room requirement—e.g., "those written opinions issued by OLC that provide controlling legal advice to executive branch officials and agencies on questions of law, whether formal or informal[;] those opinions that serve as precedent within OLC and the executive branch[;] and those opinions that serve as interpretive guides for the executive branch" (*id.* ¶ 35)—and, notably, CfA maintains that the "controlling" and "precedent[ial]" nature of such opinions are common to all, or virtually all, of the legal opinions that OLC issues to Executive Branch officials. (*See id.* ¶¶ 18–22.) But binding D.C. Circuit precedent makes clear that these features of an OLC legal opinion *do not* render it subject to the reading-room requirement, *see EFF*, 739 F.3d at 8–10, and in light of that precedent, CfA's complaint as currently framed fails to state a claim for relief.[11]

---

[11] CfA's indexing claim fails for the same reason, because the Court agrees with the government that that claim is "entirely derivative" of CfA's primary FOIA claim. (Mot. at 49; *see also* Opp'n at 22

At the Court's motion hearing, CfA suggested ways in which it could refine its claim, and as noted in Part III.B.2 below, the Court will provide CfA with an opportunity to do so. However, any amended complaint that CfA chooses to file must identify an ascertainable record or category of records that is plausibly subject to the reading-room requirement and that OLC has failed to make publicly available.

      1.   <u>CfA Has Not Plausibly Alleged That OLC Opinions, As A General Matter, Are Subject To The Reading-Room Provision</u>

It is important to keep in mind that the subsections of the reading-room provision that are at issue in this case encompass "(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases[,]" and "(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register[,]" 5 U.S.C. § 552(a)(2)(A)–(B)— in other words, agency documents with "the force and effect of law." *Sears*, 421 U.S. at 153 (internal quotation marks and citation omitted). In *Electronic Frontier Foundation v. Department of Justice*, the D.C. Circuit made clear that OLC opinions that contain OLC's legal advice to Executive Branch officials—even "controlling" legal advice—do not necessarily constitute the "working law" of the recipient agency, 739 F.3d at 9, and in light of the Circuit's analysis, it is clear to this Court that CfA has not identified records that OLC has failed to publicize and that plausibly fit within the reading-room provision.

_____

(arguing that, "having failed" in its argument about the substantive reading-room provisions, "DOJ *a fortiori* must fail in its defense of why it can ignore entirely the FOIA's indexing requirements").) That is, just as CfA's complaint fails to identify records that OLC was plausibly required to (but did not) make available to the public, so too has CfA failed to identify records that OLC was plausibly required to (but did not) index.

In *EFF*, a FOIA requester sought access to a legal opinion that OLC had prepared for the Federal Bureau of Investigation ("FBI") in connection with an inquiry into the FBI's information-gathering techniques. *See* 739 F.3d at 3–4. The D.C. Circuit determined that the Department of Justice had properly withheld the OLC opinion pursuant to the "deliberative process privilege" under FOIA Exemption 5, because it was "an 'advisory opinion, recommendation and deliberation comprising part of a process by which governmental decisions and policies are formulated[,]'" instead of a document reflecting a decision or policy already made. *Id.* at 4 (alterations omitted) (quoting *Klamath Water Users Protective Ass'n*, 532 U.S. at 8). In reaching that conclusion, the *EFF* court invoked a line of previous cases in which the Circuit had addressed whether agencies were required to produce various inter- and intra-agency communications, notwithstanding Exemption 5, on the grounds that they effectively constituted the agency's "working law." *See id.* at 7–8 (citing, e.g., *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865 (D.C. Cir. 2010)).

Given those cases, as well as the Supreme Court's decision in *Sears*, 421 U.S. 132, the *EFF* court reasoned that "the OLC Opinion could not be the 'working law' of the FBI unless the FBI 'adopted' what OLC offered[,]" because "OLC does not speak with authority on the FBI's policy[.]" *Id.* at 9; *see also id.* ("OLC does not purport, and in fact lacks authority, to make policy decisions. OLC's legal advice and analysis may inform the decisionmaking of Executive Branch officials on matters of policy, but OLC's legal advice is not itself dispositive as to any policy adopted." (quoting Decl. of Paul P. Colborn, Special Counsel, OLC)). The requester had argued that the OLC opinion at issue constituted the FBI's "working law" because it was "controlling" and

"precedential," but the *EFF* court rejected that argument, expressly stating that "these indicia of a binding legal decision do[] not overcome the fact that OLC does not speak with authority on the FBI's policy[,]" and that "[e]ven if the OLC Opinion describes the legal parameters of what the FBI is *permitted* to do, it does not state or determine the FBI's policy." *Id.* at 9–10 (emphasis in original).

The *EFF* court's conclusion that an OLC opinion does not constitute an agency's "working law" merely by virtue of being a "controlling" and "precedential" statement of the legal constraints on an agency's decision for Exemption 5 purposes is fatal to the allegations that CfA makes in the instant complaint. As the Supreme Court has explained, the reading-room requirement and Exemption 5's deliberative-process privilege are mirror images of each other; therefore, just as Exemption 5 does not encompass records "which embody the agency's effective law and policy," the reading-room provision requires disclosure of a loosely equivalent set of records—those "documents which have the force and effect of law." *Sears*, 421 U.S. at 153 (internal quotation marks and citation omitted); *see also id.* ("We should be reluctant, therefore, to construe Exemption 5 to apply to the documents described in 5 U.S.C. § 552(a)(2)[.]"). In line with this equivalency principle, *EFF*'s holding that an OLC opinion does not necessarily amount to an agency's own policy for purposes of Exemption 5 simply by virtue of its being a "controlling" and "precedential" statement of the applicable law, *see EFF*, 739 F.3d at 9–10, means that those qualities of OLC opinions do not necessarily render them "final opinions . . . made in the adjudication of cases" or "statements of policy and interpretations which have been adopted by the agency"—*i.e.*, documents embodying the law of the agency—for purposes of the

reading-room requirement. 5 U.S.C. § 552(a)(2)(A)–(B). Consequently, CfA cannot

state a plausible claim that OLC violated its obligation to make such reading-room

documents publicly available simply by pointing to OLC's failure to publicize all of its

opinions "that provide controlling advice to executive branch officials and agencies on

questions of law" and "that serve as precedent[.]" (Compl. ¶ 35.) Put another way, in

order to state a claim that OLC is violating the FOIA, CfA's complaint needs to identify

an ascertainable set of OLC opinions *that plausibly constitute the law or policy* of the

agency to which the opinion is addressed, and thus far, CfA's complaint fails to do so.

CfA attempts to resist the conclusion that the D.C. Circuit's *EFF* decision dooms

its reading-room claims in two primary ways, but neither is persuasive. First, CfA

suggests that several of the prior D.C. Circuit decisions that the *EFF* opinion

distinguishes are actually more closely analogous to the instant case than *EFF* itself.

(*See* Hrg. Tr. at 62 (referencing *Tax Analysts v. IRS* (*Tax Analysts I*), 117 F.3d 607

(D.C. Cir. 1997); *Tax Analysts v. IRS* (*Tax Analysts II*), 294 F.3d 71 (D.C. Cir. 2002);

and *Pub. Citizen*, 598 F.3d 865).) But in this regard, CfA glosses over critical aspects

of those cases that make them significantly different than this one. In *Public Citizen*,

for example, the Court held that Exemption 5 did not protect memoranda of the Office

of Management and Budget ("OMB") that "reflect[ed] OMB's formal or informal policy

on how it carries out its responsibilities[.]" 598 F.3d at 875. Similarly, in *Tax Analysts

I*, the court held that Exemption 5 did not apply to legal memoranda that the IRS's

Office of Chief Counsel had distributed to the agency's field offices, on the grounds

that they amounted to "considered statements of *the agency's* legal position." 117 F.3d

at 617 (emphasis added). And in *Tax Analysts II*, the court held that similar memoranda

33

from the IRS's Office of Chief Counsel did not qualify for Exemption 5 because the fact that they traveled "horizontally" to individual agency offices indicated that those statements actually represented the agency's "final legal position" on various matters. 294 F.3d at 81 (emphasis omitted).

In short, the documents at issue in those cases fell outside the scope of Exemption 5—and likewise qualified as "statements of policy and interpretations which have been adopted by the agency[,]" 5 U.S.C. § 552(a)(2)(B)—because the court determined that they reflected the position of *the agency* itself. CfA cannot rely on those cases to argue that the same is generally true of OLC opinions, when the D.C. Circuit in *EFF* not only addressed each of those cases, but also specifically held that an OLC opinion does *not* necessarily reflect the adopted policy of the agency that requests it. *See* 739 F.3d at 9; *cf. Tax Analysts II*, 294 F.3d at 81 (contrasting the memoranda at issue in that case with "documents that represent the final legal position of the [IRS's Office of Chief Counsel] and travel upward—for example, memoranda to the Commissioner of Internal Revenue advising him on legal issues"—which "may still be part of the agency's deliberative process and thus fall within Exemption 5" (emphasis omitted)).

CfA's second effort to sideline the *EFF* decision is also unavailing. At the Court's motion hearing, CfA appeared to argue that *EFF* was actually a narrow decision that pertained only to situations in which OLC advises agencies on their *policy* decisions, not situations in which OLC provides agencies with *legal interpretations*. (*See* Hrg. Tr. at 90 ("[W]hat was important in the *EFF* case is that they weren't talking about a controlling interpretation of law that was meant to bind the executive. They

34

were talking about policy advice.").)  This distinction is important, CfA argues, because OLC's position on legal issues is authoritative within the Executive Branch, even if its policy advice is not.  (*See id.*)  But in its valiant effort to differentiate the OLC opinion at issue in *EFF* from the OLC opinions that CfA says it is seeking in the instant case, CfA perceives a distinction where none exists.  This is because *all* of OLC's opinions constitute "the opinion of the Attorney General on questions of law[,]" 28 U.S.C. § 512; *see also id.* §§ 511, 513; therefore, OLC's opinions *always* advise on legal questions, even if the agency that receives an OLC opinion will use it to inform a policy decision. To be sure, the *EFF* case itself references OLC's lack of authority to determine the FBI's "policy," *see e.g.*, 739 F.3d at 9, but that decision also characterized the OLC opinion at issue in that case as one that "describe[d] the *legal* parameters of what the FBI [wa]s *permitted* to do," *id.* at 10 (first emphasis added).  Thus, CfA cannot escape the implications of *EFF* by suggesting that the OLC opinion at issue in that case did not render legal advice and that the D.C. Circuit's holding somehow only pertains to those OLC opinions that OLC issues in a diminished, policy-advisory role.

Ultimately, this Court reads the *EFF* decision to foreclose CfA's attempt to point to the 'controlling' and 'precedential' nature of certain OLC opinions as the identifying features of the category of records that OLC is wrongfully withholding because they are subject to the reading-room requirement.  (*See* Compl. ¶ 35.)  To the contrary, the *EFF* decision establishes that an OLC opinion does not become the "working law" of the agency that requested it merely by virtue of the fact that it espouses a "controlling" legal interpretation, 739 F.3d at 9, which, in this Court's view, makes it implausible

that OLC's 'controlling' legal opinions are subject to the reading-room provision on that basis.

2. The Sub-Categories Of OLC Opinions That CfA Articulated During The Hearing Are Not Present In Its Complaint

During the Court's motion hearing, CfA deftly refined its contentions regarding OLC's alleged violation of the reading-room requirement by identifying two discrete subsets of OLC opinions that, according to CfA, definitively constitute the recipient agency's final position, and consequently qualify as 'working law' for the purpose of section 552(a)(2), such that they must be made available to the public. (*See* Hrg. Tr. at 10 ("[T]here are two subsets of those opinions for which it is particularly clear that they are intended to be binding interpretations of law[.]").) Specifically, CfA highlighted (1) OLC opinions that resolve inter-agency disputes pursuant to an Executive Order that requires agencies to submit such disputes to the Attorney General, *see* Exec. Order No. 12,146, §§ 1-401 to 1-402, 3 C.F.R. 409 (1979), and (2) OLC opinions issued to independent agencies, for which OLC has a practice of requiring an up-front commitment from the agency "that it will conform its conduct to [OLC's] conclusion[,]" (Best Practices Memo at 3). These delineated categories of records do not appear in CfA's complaint as the basis for CfA's claims.[12] Therefore, CfA's oral assertion that, despite what the complaint alleges, *these* are the records that satisfy section 552(a)(2) cannot be the means by which CfA alleges a plausible violation of the reading-room provision. *See Tele-Commc'ns of Key West, Inc. v. United States*, 757

---

[12] The complaint does make a passing reference to OLC's role in resolving inter-agency disputes (*see* Comp. ¶ 16), but nowhere does the complaint suggest that OLC's opinions in such cases are the opinions that must be made available pursuant to section 552(a)(2).

F.2d 1330, 1335 (D.C. Cir. 1985) ("[A] Rule 12(b)(6) disposition must be made on the face of the complaint alone.").

Be that as it may, to the extent that CfA maintains that it will be able to cure the fatal pleading defect that the government and the Court have identified, the Court will permit CfA to amend its complaint to add allegations of specific, ascertainable categories of records that CfA believes are subject to the reading-room requirement and that OLC has failed to make publicly available. If CfA chooses to amend its pleading, it should keep in mind that it must allege that OLC has *withheld* the records that CfA has identified—it is not clear from the allegations in CfA's complaint as it currently stands, or from the Best Practices Memo, that OLC is not already making available all OLC opinions that have been issued in the context of inter-agency disputes or to independent agencies. Moreover, any amended complaint should clarify which portion of the reading-room provision OLC allegedly violates by withholding certain OLC opinions from the public.[13] Notably, this Court's grant of leave to amend the complaint (which is a matter of discretion in this context, *see Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1128–29 (D.C. Cir. 2015)) is unrestricted, insofar as it authorizes CfA to tender an amended complaint that alleges that OLC is violating the reading-room requirement with respect to additional discrete subsets of its opinions, aside from the two that CfA has already mentioned.

---

[13] In particular, if CfA chooses to allege that OLC's withholding of its opinions that resolve inter-agency disputes constitutes a violation of section 552(a)(2)(A), CfA should address whether those are opinions issued "in the adjudication of cases[,]" as that phrase is used in the FOIA. 5 U.S.C. § 552(a)(2)(A). Furthermore, if CfA chooses to allege that OLC's withholding of its opinions issued to independent agencies constitutes a violation of section 552(a)(2)(B), CfA should address whether the up-front commitment that OLC demands from the recipient agency amounts to anything more than a promise to treat OLC's opinion just as it would be treated by a non-independent executive agency.

## IV. CONCLUSION

In this lawsuit, CfA seeks to enforce the 'reading-room' provision of the FOIA, which requires agencies to make certain categories of records "available for public inspection[,]" and with respect to those records, to maintain and make available "current indexes[.]" 5 U.S.C. § 552(a)(2). For the reasons explained above, this Court concludes that it has subject matter jurisdiction to award a type of relief that CfA seeks: a broad, prospective injunction requiring that OLC affirmatively produce to CfA records that are subject to the reading-room requirement. But the Court also finds that, in order to state a claim that OLC has violated the reading-room provision of the FOIA, CfA needed to identify an ascertainable set of records that plausibly fits within one of the statutory categories and that OLC has failed to make publicly available and index. CfA has failed to do this, and as a result, with its Order of September 29, 2017, the Court both **GRANTED** the government's motion to dismiss, and **DISMISSED** CfA's complaint. The Order that issues today in conjunction with this Memorandum Opinion permits CfA to file an amended complaint that alleges that discrete subsets of OLC opinions are subject to the reading-room requirement, if it chooses to do so, and sets a deadline for both the submission of a new complaint and the government's response to that amended pleading.

DATE: October 6, 2017

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge