

**U.S. Department of Justice**

Office of Legal Counsel

---

Office of the Principal Deputy Assistant Attorney General  *Washington, D.C. 20530*

January 2, 2018

Alex Abdo
Jameel Jaffer
Knight First Amendment Institute at Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027

      Re:    **Campaign for Accountability v. U.S. Department of Justice**

Dear Messrs. Abdo and Jaffer:

      This letter further responds to the March 22, 2016 letter from your client, Campaign for Accountability ("CfA"), to the Principal Deputy Assistant Attorney General for the Office of Legal Counsel ("OLC"), as modified by the Amended Complaint filed in *Campaign for Accountability v. U.S. Dep't of Justice*, D.D.C. No. 1:16-cv-1068 (KBJ), ECF No. 22 (filed Oct. 27, 2017). Consistent with the District Court's recent Order, we "construe the amended complaint as a clarification of the demands that CfA articulated in its March 22, 2016 letter to OLC." Order Granting in Part Defendant's Motion to Stay Proceedings at 8, ECF No. 26 (filed December 1, 2017).

      Your client's March 2016 letter requested that OLC "make available for public inspection and copying on an ongoing basis all unpublished OLC opinions that provide controlling legal advice to executive branch agencies and a general index of all such opinions OLC issued," citing 5 U.S.C. § 552(a)(2). It further stated that this request "at a minimum, encompasses the formal written opinions OLC has issued and will issue using the process outlined in a July 16, 2010 memorandum to OLC attorneys from then-Acting Assistant Attorney General David J. Barron" but that it further sought to cover "OLC opinions . . . memorialized in emails and other forms of writing."

      The Amended Complaint has now narrowed the request: "[t]his lawsuit concerns only a single type [of opinions, memoranda, or advice]: formal written opinions issued to executive branch agencies or to executive branch officials other than the president." Amended Complaint, ¶ 33. The Amended Complaint also, for the first time, specifies five categories of records that you believe "are within the scope of the affirmative-disclosure provisions of FOIA even under [the District] Court's broad reading of *Electronic Frontier Foundation v. Department of Justice (EFF)*, 739 F.3d 1 (D.C. Cir. 2014)." *Id.* ¶ 34. These five categories are as follows:

        1. "Opinions resolving interagency disputes" (¶¶ 35–38),
        2. "Opinions issued to independent agencies" (¶¶ 39–40),
        3. "Opinions interpreting non-discretionary legal obligations" (¶¶ 41–44),

4. "Opinions finding that particular statutes are unconstitutional and that therefore agencies need not comply with them" (¶¶ 45–46), and
5. "Opinions adjudicating or determining private rights" (¶¶ 47–49).

Within with each category, you have provided a citation to an unpublished document, cited in a published OLC opinion, that you believe meets these criteria (*i.e.*, that you believe is a "formal written opinion" in the given category). *Id.* ¶ 38 n.36, ¶ 40 n.38, ¶ 44 n.41, ¶ 46 n.43, ¶ 49 n.45.

We have carefully considered the categories you have described, and we are considering for discretionary release the five specific records you identified. Of the cited records, we have so far determined that two are appropriate for release, in whole or in part, and we have enclosed them here. We are continuing the process of reviewing the remaining three records, and may determine that some or all of those are appropriate for release as well, in which event we would supplement this response.

## I.  OLC's Function and Responsibilities

Before explaining our position with respect to the particular advice documents implicated by your request, we first clarify OLC's function and responsibilities within the Executive Branch. As you know, this Office has discussed its role in various publicly available materials, including in the "Best Practices Memo" cited in the March 2016 letter and in declarations filed in FOIA litigation.

OLC's principal function is to assist the Attorney General in his role as legal adviser to the President of the United States and to departments and agencies of the Executive Branch. OLC provides advice and prepares opinions addressing a wide range of legal questions involving the operations of the Executive Branch. OLC does not purport, and in fact lacks authority, to make policy decisions. OLC's legal advice and analysis may inform the decision-making of executive branch officials on matters of policy, but OLC's legal advice is not itself dispositive with respect to any policy adopted.

As part of its regular practice, OLC reviews its formal legal opinions after they are issued to determine whether they may be appropriate for publication. This process involves consultation with affected agencies or offices. Similarly, as part of OLC's processing of FOIA requests, it considers whether to make discretionary releases of final legal analysis (again, after appropriate consultation with affected agencies or offices).

OLC's publication process and discretionary-release policy are separate from, and in addition to, any disclosure obligation imposed on OLC as a result of 5 U.S.C. § 552(a)(2). As discussed in this Office's prior correspondence in response to CfA's March 2016 letter, if OLC were to conclude at any time that the Department had an obligation under section 552(a)(2) to make a particular advice document publicly available, we would do so at that time.

Although OLC publishes some opinions and makes discretionary releases of others, much of the Office's legal advice must be kept confidential. One important reason OLC legal advice needs to stay confidential is that it often constitutes part of a larger deliberative process—a process that itself requires confidentiality to be effective. The Supreme Court long ago recognized that "efficiency of Government would be greatly hampered if, with respect to legal

and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'" *Environmental Protection Agency v. Mink*, 410 U.S.73, 87 (1973) (quoting S. Rep. No. 89-813, at 9 (1965)). These concerns apply with particular force at OLC, where attorneys are often asked to provide advice and analysis with respect to difficult and unsettled issues of law. Such issues arise in connection with highly complex and sensitive operations of the Executive Branch on matters that can be quite controversial. In order to ensure the candor of internal deliberations, so that executive branch officials may continue to request and rely on legal advice from OLC about such sensitive matters, it is essential that those giving and receiving legal advice not be inhibited by concerns about public disclosure.

A second reason that OLC legal opinions may need to remain confidential is to protect the relationship of trust between OLC and the clients seeking its legal advice. As the Supreme Court has observed, "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The law generally protects the special relationship of trust between a client and an attorney when the one seeks and the other provides independent legal advice. When a request for advice is made in confidence, both the request and the resulting advice are protected from compelled disclosure. *Id.* at 390 ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."). Protecting that relationship of trust is especially important in the governmental context, where a free and candid flow of information between agency decision-makers and their outside legal advisers promotes broad public interests in the rule of law and the administration of justice. *See In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (citing *Confidentiality of the Attorney General's Communications in Counseling the President,* 6 Op. O.L.C. 481, 495 (1982) (opinion of Assistant Attorney General Theodore B. Olson)).

While executive branch agencies have traditionally treated OLC's legal opinions as "binding" in the sense that an opinion's conclusion is customarily treated as an authoritative interpretation of the law within the Executive Branch, that label does not change the fundamental nature of OLC's legal advice. OLC opinions provide legal advice regarding the overall legal framework within which policymakers act as a predecisional part of government deliberative processes, but the opinions do not compel the ultimate policy decision reached or adopted by any agency. OLC does not have direct supervisory authority over its clients. Like any other client, a department or agency receives the opinion of its counsel, but then must bear the responsibility for making the final decision.

Finally, the authoritative nature of OLC's legal advice is not unique. In our experience, many agencies treat legal advice from their Offices of General Counsel as "binding," at least as a matter of custom and practice. These norms—which appropriately encourage executive branch policymakers to seek legal advice, and then to follow that advice consistent with rule-of-law interests—do not diminish the generally privileged nature of that legal advice, particularly with respect to the deliberative process privilege, which is a uniquely governmental privilege.

## II. The Five Particular Categories Mentioned in the Amended Complaint

As discussed above, the Amended Complaint has narrowed CfA's March 2016 letter to seek only five categories of OLC advice documents. In light of the foregoing background principles, none of the five categories of advice documents generally or categorically falls within the disclosure obligation under section 552(a)(2).

As an initial matter, the Amended Complaint asserts that all five categories constitute both "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases" and "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register." 5 U.S.C. § 552(a)(2)(A), (B). As discussed in the defendant's prior filings in this case, however, the statute's description of "final opinions . . . made in the adjudication of cases" refers to final dispositions of adversarial disputes involving private parties, and its description of "statements of policy and interpretations which have been adopted by the agency" refers to actual policy decisions, made by policymaking agencies, in connection with their regulation of the public. OLC advice documents—like other legal advice documents—qualify as neither. *See Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1, 9–10 (D.C. Cir.), *cert. denied*, 135 S. Ct. 356 (2014); *see also Vietnam Veterans of Am. v. Dep't of Navy*, 876 F.2d 164, 164–65 (D.C. Cir. 1989). We do not believe that any of the characteristics you identify render inapplicable the various privileges that apply to OLC documents providing legal advice. Nor do they render those documents subject to section 552(a)(2)'s provisions as a categorical or general matter.

### 1. Opinions Resolving Interagency Disputes

An opinion issued by OLC to resolve a legal disagreement between two executive branch agencies does not involve the "adjudication of [a] case[]." Rather, it concerns confidential legal advice provided to two agencies within the Executive Branch of the United States. OLC's opinion does not involve an adversarial dispute with a private party, does not determine the ultimate policy decisions facing the agencies requesting OLC's advice, and does not involve any circumstances that would waive the privileges otherwise applicable to OLC's advice.

For support, the Amended Complaint cites OLC's published opinion, *Payment of Back Wages to Alien Physicians Hired Under H-1B Visa Program*, 32 Op. O.L.C. 47 (Feb. 11, 2008). *See* Am. Compl. ¶ 37. That opinion concluded that the Department of Labor lacked certain authority with respect to the Department of Veterans Affairs. But the opinion did not purport to determine the rights of any private parties, nor did it determine either Department's ultimate policy on the situation. Indeed, the opinion specifically noted that the Department of Veterans Affairs could still voluntarily provide back wages to its former employees, and that the Department of Labor, even if it lacked one form of authority, might have other tools available to ensure that the Department of Veterans Affairs complied with the statute in the future. *See* 32 Op. O.L.C. at 54–55. Thus, it remained up to the agencies to determine their ultimate policy positions, consistent with the legal framework articulated by OLC.

The Amended Complaint also relies on OLC's published opinion, *The Authority of the Equal Employment Opportunity Commission To Order a Federal Agency To Pay a Monetary Award To Remedy a Breach of a Settlement Agreement*, 38 Op. O.L.C. __ (Aug. 13, 2014). *See*

Am. Compl. ¶ 36. But that opinion addressed only the scope of the EEOC's jurisdiction. It did not purport to resolve a dispute with a private party, nor did it determine the EEOC's policy. In fact, the opinion left open the possibility that the EEOC might be able to provide a remedy through alternate means. *See* slip op. at *14 & n.9.

Accordingly, opinions of this type do not fall within the terms of section 552(a)(2)(A) or (B) and are generally exempted from disclosure by the deliberative process and attorney-client privileges. To be sure, a policymaking agency might take certain actions that waive privilege or otherwise result in its becoming inapplicable (*e.g.*, if an agency expressly adopts an OLC opinion's conclusion and reasoning as its own statement of policy or interpretation). At that point, of course, any obligation to publish the document would fall on the adopting agency. At least as a general matter, however, the OLC documents are privileged and exempt from disclosure under FOIA.

### 2. Opinions Issued to Independent Agencies

The Amended Complaint asserts that formal opinions issued to independent agencies must be disclosed because "OLC's practice is to require the agency to confirm in writing that the agency will conform its conduct to the OLC's conclusion." Am. Compl. ¶ 39 (modifications omitted). Contrary to the District Court's instruction, however, you have not explained how this fact changes the analysis—*i.e.*, how this "up-front commitment . . . amounts to anything more than a promise to treat OLC's opinion just as it would be treated by a non-independent executive agency." ECF No. 19, at 37 n.13. Because this upfront commitment is indeed nothing more than an agreement by the independent agency to treat OLC's advice as "binding" in the same way a non-independent executive agency would, that feature of OLC's advice does not render it subject to section 552(a)(2).

### 3. Opinions Interpreting Non-Discretionary Legal Obligations

When OLC opines on the meaning of a statute that an agency is bound to implement, as is often the case, that does not determine an agency's policies nor does it adjudicate the rights of any private individuals. The Amended Complaint refers to OLC's published opinion, *Whether the Defense of Marriage Act Precludes the Nonbiological Child of a Member of a Vermont Civil Union From Qualifying for Child's Insurance Benefits Under the Social Security Act*, 31 Op. O.L.C. 243 (Oct. 16, 2007). *See* Am. Compl. ¶ 42. That opinion did not impose any non-discretionary legal obligation on the Social Security Administration, but simply concluded that "[t]he Defense of Marriage Act would not prevent the non-biological child of a partner in a Vermont civil union from receiving child's insurance benefits under the Social Security Act." 31 Op. O.L.C. at 243. Thus, the opinion did not itself entitle the child to any particular benefits. The Social Security Administration was still free to make its own policy decision concerning the child's overall eligibility, provided that the decision did not conflict with OLC's advice.

The Amended Complaint also refers to OLC's published opinion, *Whether Postal Employees Are Entitled To Receive Service Credit, for Purposes of Their Retirement Annuity Under The Federal Employees' Retirement System, for Periods of Employment during which the United States Postal Service Has Not Made Its Required Employer Contributions*, 36 Op. O.L.C. __, slip op. (Nov. 1, 2011). *See* Am. Compl. ¶ 43. But again, that opinion concluded only that

one potential policy option was unavailable; it did not determine the Office of Personnel Management's ultimate policy regarding how to address the situation. *See* slip op. at *16 ("We do not address the propriety of any other action OPM might take to address the Postal Service's failure to make the required contributions to the Fund."). Even when an OLC advice document sets the parameters within which policymakers must operate, that does not equate to determining the agency's ultimate policy decision.

Again, if any of the recipient agencies chose to adopt OLC's conclusion and reasoning as their own, that could alter the relevant privileges' applicability to the advice document. As a general matter, however, OLC advice documents remain privileged and not subject to disclosure under section 552(a)(2) even when they limit an agency's potential range of policy options.

### 4. Opinions finding that particular statutes are unconstitutional and that agencies therefore need not comply with them

The Amended Complaint asserts that OLC opinions involving constitutional questions should be treated differently from those involving solely statutory questions, but it does not provide a justification for that distinct treatment. *See* Am. Compl. ¶¶ 45–46. To the extent that OLC advises that the Constitution, rather than a statute, provides the operative legal principle, OLC is not providing any different kind of legal advice than when it seeks to reconcile a statute with the Constitution, or whether when it provides advice concerning a conflict between two particular statutes. In addition, when OLC opines that a particular statute conflicts with a particular constitutional provision, that advice does not dictate how the agency governed by the statute should address the situation; the agency might voluntarily comply with the statute, decline to comply with it on different grounds, or pursue a strategy of seeking repeal of the statute. Again, the legal advice is provided by OLC, but the ultimate policy decision remains the province of the client agency.

The Amended Complaint refers to OLC's published opinion, *Constitutionality of the Direct Reporting Requirement in Section 802(e)(1) of the Implementing Recommendations of the 9/11 Commission Act of 2007*, 32 Op. O.L.C. 27 (Jan. 29, 2008). *See* Am. Compl. ¶ 45. That opinion makes clear, however, that it does not determine an agency's policy, going so far as to note that, "*[i]f DHS establishes a policy* of declining to enforce section 802(e)(1) on the constitutional grounds set forth in this opinion, DHS should report that decision to Congress as required by statute." 32 Op. O.L.C. at 28–29 n.2 (emphasis added). In other words, the opinion belies the assertion that opinions of this type must be disclosed under FOIA.

### 5. Opinions adjudicating or determining private rights

As discussed above, OLC does not purport—nor does it have authority—to adjudicate or determine any private rights. Client agencies may rely upon OLC advice to assist *their* determinations about private rights. Ultimately though, OLC does not have any authority itself to make a decision determining private rights, and the client agencies bear responsibility for their decisions. At least as a general matter, therefore, OLC advice documents—even those prepared for agencies that must ultimately determine the rights of private individuals—do not themselves constitute "final opinions" or "statements of policy" covered by section 552(a)(2). Instead, they

are quintessential legal advice documents that often remain privileged under the deliberative process and attorney-client privileges.

### III. Five Specific Opinions Alleged Not to be Publicly Available

In addition to the five categories of opinions, the Amended Complaint identifies five specific documents that allegedly fall within the specified categories but have not been publicly disclosed. We do not agree with your assumption that these documents actually fall within the categories you have identified, or even that they are all "formal written opinions OLC has issued . . . using the process outlined in" the Best Practices Memo, as stated in the March 2016 letter and in the Amended Complaint. Nonetheless, OLC has reviewed each of the five documents for potential disclosure under section 552(a)(2) or OLC's discretionary-release policy.

We do not believe that section 552(a)(2) requires disclosure of any of the five documents. Nonetheless, OLC has determined that two are appropriate for discretionary release, in whole or in part, and we have enclosed them here. Note that in making these discretionary releases, as in most cases of discretionary release, OLC has determined in consultation with its clients to waive the applicable privileges over the documents as a matter of discretion. With respect to one of the documents, which was prepared by attorneys in the course of litigation, OLC has determined not to waive the protections of the attorney work product doctrine. Accordingly, that document is enclosed with limited redactions. OLC is continuing the process of reviewing and consulting about the three remaining records, and may determine that some or all of those are appropriate for discretionary release as well, in which event we would supplement this response. Those opinions that we have not released remain protected by the deliberative process and attorney-client privileges.

\* \* \*

As discussed above, we do not believe you have identified any categories of OLC advice documents plausibly subject to section 552(a)(2) as a general or categorical matter. To the extent you identify specific opinions you contend have not been disclosed, however, we will continue to consider those records on an individual basis for disclosure, publication, or discretionary release based on the specific facts and circumstances of those documents.

I hope this information is helpful.

Sincerely,

*Curtis E. Gannon*

Curtis E. Gannon
Principal Deputy Assistant Attorney General


cc:   Daniel Schwei, Trial Attorney
      Civil Division, Federal Programs Branch

7