# Memorandum



| | |
|---|---|
| **Subject**<br>Payment of Attorney's Fees under the Equal Access to Justice Act | **Date**<br>August 25, 1994 |
| **To**<br>Stephen R. Colgate<br>Assistant Attorney General<br>Justice Management Division | **From**<br>Richard Shiffrin<br>Deputy Assistant Attorney General<br>Office of Legal Counsel |

OLC was recently asked by the Civil Division to consider whether the Department of Justice, or some other agency, should be responsible for satisfying an award of attorney's fees and costs under the Equal Access to Justice Act ("EAJA") in the case of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. The Department of Justice, on behalf of the United States, intervened in that case, as well as in five other cases raising the identical issue, to challenge the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In each case, the courts have upheld the constitutionality of the Act; the ▇▇▇ court has awarded ▇▇▇ in attorney's fees and costs and EAJA applications are pending in the other cases.[1] We have concluded, based on the unique circumstances presented by this case, that the Department is indeed responsible for paying the ▇▇▇ award.

The Equal Access to Justice Act provides that fees awarded to a party "shall be paid from the agency over which the party prevails from any funds made available to the agency by appropriation or otherwise." We would like to request your assistance in determining which Department funds should be used to satisfy this award. Should you conclude that the funds should be drawn from one or more of the components of the Department involved in the decision to litigate this case, rather than from some general departmental fund, we have been advised by the Civil Division that the Attorney General, the Solicitor General, the Office of Legal Counsel, and the Civil Division all participated in some form. For example, the Office of Legal Counsel advised that the Act was unconstitutional, the Solicitor General authorized intervention by the United States, and the Civil Division litigated the case. The Solicitor General also made the decision not to appeal the ▇▇▇ judgment. Given the respective roles of each of the components and JMD's fiscal expertise, it seems most

---

[1] We have been advised by the Civil Division that there is a strong possibility that attorney's fees will not be assessed against the United States in the other five cases.

appropriate that you resolve this matter. If you have any questions, please contact Jennifer Collins in the Office of Legal Counsel at 514-4487 or Susan Rudy in the Civil Division at 514-2071.



U.S. Department of Justice

Office of Legal Counsel

Office of the Assistant Attorney General     Washington, D.C. 20530

March 23, 2001

MEMORANDUM FOR CHARLOTTE HARDNETT
 ACTING GENERAL COUNSEL
 SOCIAL SECURITY ADMINISTRATION

FROM:Daniel L. Koffsky  *DZK*
Acting Assistant Attorney General

RE:Applicability of 18 U.S.C. § 1913 to the Provision of Official Time to Employee
Union Representatives to Lobby Congress on Representational Issues

      This memorandum responds to your office's request for our opinion whether the provision of official time to employee union representatives for the purpose of allowing them to lobby members of Congress on representational issues would violate 18 U.S.C. § 1913. The original inquiry was supplemented, at our request, by a letter explaining your office's reasons for questioning the conclusion of the Federal Labor Relations Authority ("FLRA") in *Social Security Administration, Baltimore, Maryland and American Federation of Government Employees*, 54 F.L.R.A. 600 (1998) ("*SSA and AFGE*"), that the provision of official time for employee union representatives to lobby Congress on representational matters has been expressly authorized by Congress and therefore does not violate 18 U.S.C. § 1913 (1994).[1] *See* Letter for Beth Nolan,

---

[1] It is not our practice to issue a formal opinion reviewing the legal conclusions of an agency within the executive branch whose members are removable only for cause, such as the FLRA, when that agency has not indicated it will adhere to our opinion. *See* 5 U.S.C. § 7104(b) (1994) (members of the FLRA may be removed by the President "only for inefficiency, neglect of duty, or malfeasance in office"). Indeed, when a dispute arose in 1981 between the FLRA and the Civil Division of the Department of Justice regarding whether the FLRA had independent authority to litigate in Freedom of Information Act cases, we declined to play a role in resolving the dispute because of questions about requiring the FLRA to abide by our opinion. *Cf.* Exec. Order No. 12,146, § 1-4, *reprinted in* 28 U.S.C. § 509 note (1994) (encouraging executive agencies to submit legal disputes to the Attorney General but only requiring submission of certain legal disputes between agencies whose heads serve at the pleasure of the President). In fact, the Commissioner of Social Security is removable only for cause and the Social Security Administration ("SSA") has not formally agreed to be bound by our views. *See* 42 U.S.C. § 902(a)(3) (1994) (Commissioner may be removed "only pursuant to a finding by the President of neglect of duty or malfeasance in office").

      Nevertheless, the FLRA has given some indication that SSA should ask for our opinion. In *United States Department of the Army Corps of Engineers, Memphis District, Memphis, Tennessee and National Federation of Federal Employees Local 259*, 52 F.L.R.A. 920, 936 (1997) ("*Corps of Engineers*"), FLRA member Armendariz, dissenting in part, suggested that the FLRA seek an advisory opinion from this Office on the precise issue your office has raised. When declining to seek such an advisory opinion, the majority of the FLRA explained that it

Deputy Assistant Attorney General, Office of Legal Counsel, from Arthur J. Fried, General Counsel, Social Security Administration (Nov. 8, 1999) ("Fried-Nolan Letter").[2]

The Anti-Lobbying Act, 18 U.S.C. § 1913, provides:

> No part of the money appropriated by any enactment of Congress shall, *in the absence of express authorization by Congress*, be used directly or indirectly to pay for any personal service, advertisement, telegram, telephone, letter, printed or written matter, or other device, intended or designed to influence in any manner a Member of Congress, to favor or oppose, by vote or otherwise, any legislation or appropriation by Congress, whether before or after the introduction of any bill or resolution proposing such legislation or appropriation; but this shall not prevent officers or employees of the United States or of its departments or agencies from communicating to Members of Congress on the request of any Member or to Congress, through the proper official channels, requests for legislation or appropriations which they deem necessary for the efficient conduct of the public business.

(emphasis added). Although the Anti-Lobbying Act has not been the basis of any prosecutions since its enactment in 1919, a violation requires removal from office after notice and a hearing and imposition of fines or imprisonment of up to a year. *Id.*

In *SSA and AFGE*, the FLRA reaffirmed its earlier opinions finding that Congress has, within the meaning of 18 U.S.C. § 1913, given "express authorization" to agencies to grant official time to employee union representatives for representational lobbying of Congress and that the grant of official time for such purposes therefore does not violate the Anti-Lobbying Act. 54 F.L.R.A. at 607. The FLRA's reasoning for this determination is set out most comprehensively in *Corps of Engineers*. In *Corps of Engineers*, the FLRA pointed out that 5 U.S.C. § 7102 gives employees, acting in their representational capacities, the right to present the views of their labor organization to Congress. 52 F.L.R.A. at 932; *see* 5 U.S.C. § 7102(1) (1994) (each employee has the right "to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to . . . the Congress"). The FLRA then turned to 5 U.S.C. § 7131(d), which provides:

---

would not be "either necessary or prudent to expend Government resources and delay the disposition of this case . . . , especially when [SSA] was capable of seeking such an opinion and chose not to do so." *Id.* at 932 n.12. In any event, because the issue is the interpretation of a criminal statute that the Department of Justice enforces, our opinion will have the conclusive effect of identifying whether the activity in question is within the criminal prohibition.

[2] Unfortunately, we did not receive the letter explaining your office's reasons for questioning the FLRA's decision in *SSA and AFGE*, which was dated November 8, 1999, until it was sent to us by facsimile on December 8, 2000.

-2-

> Except as provided in the preceding subsections of this section [prohibiting use of official time for activities relating to the internal business of a labor organization] ... in connection with any other matter covered by this chapter [which includes § 7102], any employee in an appropriate unit represented by an exclusive representative, shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest.

5 U.S.C. § 7131(d) (1994). Reading § 7131(d) and § 7102(1) together, the FLRA concluded that Congress expressly authorized "using Federal funds to grant official time to employees to lobby Congress on representational matters, in such amount as the employing Federal agency and the exclusive representative agree," 52 F.L.R.A. at 933, and that, because of Congress's express authorization, such use of appropriated funds does not violate the Anti-Lobbying Act. *Id.*

Your office questioned the FLRA's conclusion that § 7131(d) and § 7102(1), taken together, constitute an "express authorization" by Congress within the meaning of the Anti-Lobbying Act. Fried-Nolan Letter at 2. In your office's view, "the mandate contained in 18 U.S.C. § 1913 of an 'express authorization' is self-defining and requires a more definitive expression of Congressional intent, such that there can be no doubt that the activity in question is specifically excepted from the scope of 18 U.S.C. § 1913." *Id.* Your office also argued that 18 U.S.C. § 1913 is more specific than 5 U.S.C. §§ 7131(d) and 7102(1).

We agree with the FLRA that, when read together, § 7131(d) and § 7102(1) constitute an "express authorization" by Congress within the meaning of the Anti-Lobbying Act. These provisions are both "definitive" and clear: in § 7131(d) Congress explicitly authorized the use of official time by employee union representatives to engage in matters covered by the Labor-Management Relations chapter of title 5, which include lobbying Congress. *See* 5 U.S.C. § 7102(1). In addition, while there is little precedent regarding the meaning of the phrase "express authorization by Congress" in 18 U.S.C. § 1913, the administrative practice also supports this conclusion. On some occasions, this Office has taken the position that the continued appropriation of funds by Congress for positions held by executive branch officials whose duties historically have included seeking support for the Administration's legislative program constitutes "express authorization" by Congress for the lobbying activities of these officials and therefore their activities are exempt from § 1913. *See Constraints Imposed by 18 U.S.C. § 1913 on Lobbying Efforts*, 13 O.L.C. 300, 303 (1989); *Legal Constraints on Lobbying Efforts in Support of Contra Aid and Ratification of the INF Treaty*, 12 O.L.C. 30, 32-33 (1988). The authorization to grant official time to employee union representatives to lobby Congress in § 7131(d) and § 7102(1) is a more explicit authorization by Congress than the continued appropriation of funds for certain positions. Furthermore, we do not believe that 18 U.S.C.

-3-

§ 1913 is more specific than the provisions of title 5. The title 5 provisions specifically refer to lobbying Congress and, unlike 18 U.S.C. § 1913, specifically deal with the grant of official time for union activities.[3]

Finally, in *Granite State Chapter v. FLRA*, 173 F.3d 25 (1st Cir. 1999), the First Circuit shed some light on this issue when it examined whether section 8015 of the 1996 Department of Defense ("DoD") Appropriations Act precluded the use of official time by union officials to lobby Congress.[4] The court concluded that the specific, unambiguous language of section 8015 prohibited the use of any funds made available by the DoD Appropriations Act for lobbying, but, in reaching that conclusion, assumed that absent § 8015 members of the union would have had a right under 5 U.S.C. § 7102 to lobby Congress on official time: "§ 8015 repealed the Union's right to lobby Congress on official time as otherwise guaranteed by 5 U.S.C. § 7102." 173 F.3d at 28; *cf. Association of Civilian Technicians, Silver Barons Chapter v. FLRA*, 200 F.3d 590, 592 (9th Cir. 2000) (section 8015 expresses the unambiguous, clear intent of Congress to repeal § 7131 and § 7102 of title 5 "as they are read to allow DOD employees to use official time to lobby Congress"). This language suggests that, in the court's view, 18 U.S.C. § 1913 would not prohibit employee union representatives from being granted official time to lobby Congress on representational issues.

---

[3] Because we believe that Congress has given "express authorization" for the use of official time by employee union representatives to lobby Congress, we need not decide whether the lobbying activities engaged in by such representatives are exempt from the prohibition in 18 U.S.C. § 1913 on any other ground.

[4] Section 8015 provided that "[n]one of the funds made available by this Act shall be used in any way, directly or indirectly, to influence congressional action on any legislation or appropriation matters pending before Congress." Pub. L. No. 104-61, 109 Stat. 636, 654 (1996).