UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


CAMPAIGN FOR ACCOUNTABILITY, :
                              :
          Plaintiff,          :        Docket No. CA 16-1068
                              :
     vs.                      :        Washington, D.C.
                              :        Friday, July 20, 2018
U.S. DEPARTMENT OF JUSTICE,   :           10:35 a.m
                              :
          Defendant.          :
----------------------------x


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE KETANJI B. JACKSON
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:      ALEXANDER ABDO, Esquire
                        GREG MARGOLIS, Esquire
                        JAMEEL JAFFER, Esquire
                        Knight First Amendment Institute
                        at Columbia University
                        475 Riverside Dr. Suite 302
                        New York, NY 10115


For the Defendant:      DANIEL SCHWEI, Esquire
                        ELIZABETH SHAPIRO, Esquire
                        U.S. Department of Justice
                        Civil Division
                        20 Massachusetts Avenue
                        Washington, DC  20001


Court Reporter:         CRYSTAL M. PILGRIM, RPR, FCRR
                        Official Court Reporter
                        United States District Court
                        District of Columbia
                        333 Constitution Avenue, NW
                        Washington, DC  20001

```
 1                      P-R-O-C-E-E-D-I-N-G-S

 2            THE DEPUTY CLERK:  Your Honor, this is civil action

 3   16-1068, Campaign for Accountability versus U.S. Department of

 4   Justice.

 5       Ask counsel to please approach the podium, identify

 6   yourselves for the record, introducing the parties at your

 7   table.

 8            MR. ABDO:  Good morning, Your Honor.  Alex Abdo from

 9   the Knights First Amendment Institute at Columbia University

10   here on behalf of the Campaign for Accountability.  I'm joined

11   at counsel table by my colleagues Jameel Jaffer and Greg

12   Margolis, the Executive Director of Campaign for

13   Accountability, Daniel Stevens.

14            THE COURT:  Good morning to all of you.

15            MR. SCHWEI:  Good morning, Your Honor.  Daniel Schwei

16   from the Department of Justice on behalf of the United States.

17   Joining me at counsel table is Elizabeth Shapiro also from the

18   Department of Justice.

19            THE COURT:  Good morning to you as well.

20       This is a hearing that the Court has scheduled in order to

21   permit the parties to provide oral argument concerning the

22   Department of Justice's second motion to dismiss with respect

23   to Campaign for Accountability's claim that opinions of the

24   Office of Legal Counsel must be affirmatively disclosed under

25   FOIA's Reading Room provision which is 5 U.S.C. 552(8)(a)(2).
```

1    I know a fair amount about this case having previously

2    written an opinion related to DOJ's first motion to dismiss.

3    And I suspect that the two of you know about my hearing

4    process.  I believe both of you argued the first motion.

5    I don't set time limits and I do encourage you to provide

6    whatever background detail you might think is necessary for me

7    to understand your arguments.  And I like to try to have a

8    discussion.

9    I have questions, I hope you will at least attempt to

10   answer them, but I'm also prepared to hear whatever remarks

11   you've previously prepared.

12   I think that what I will do in accordance with my standard

13   practice is to have Campaign for Accountability's counsel come

14   first even though it is the department's motion and to lay out

15   the amended complaint, perhaps highlighting what's new about

16   the claims that are being made to date.

17   And then I'll have the DOJ counsel explain why the

18   complaint as described by the plaintiff is from the

19   government's perspective still insufficient.  Then plaintiff's

20   counsel can respond and I will entertain any replies, all

21   right.

22   So with that, Mr. Abdo, can you please come forward.

23         MR. ABDO:  Thank you, Your Honor.  It's a pleasure to

24   be back.

25   Just so I understand the Court's instruction, I'll begin

1  and end with an explanation of the amended complaint, then

2  we'll proceed from there?

3             THE COURT:  Yes.

4             MR. ABDO:  So the amended complaint differs from the

5  original complaint in two primary ways.  The first is that it

6  takes up the Court's instruction from the first go round to

7  specifically identify categories of the Office of Legal

8  Counsel's formal written opinions that constitute working law

9  because they determine or constitute the law of the agencies.

10 And it describes or highlights four of those categories.

11     The first are opinions in which the Office of Legal

12 Counsel resolves interagency disputes.  Those are disputes

13 between agencies who are by statute -- excuse me -- who are by

14 executive order directed in some circumstances, encouraged in

15 others, to take those disputes to the Office of Legal Counsel

16 for resolution.

17     And the amended complaint argues that those opinions

18 determine policy because they resolve an ongoing policy dispute

19 between two agencies in favor of one agency or the other,

20 effectively establishing not just the working law of those

21 agencies but their working policy as well.

22     The second category that the amended complaint highlights

23 are opinions interpreting non-discretionary legal obligations

24 of federal agencies.

25             THE COURT:  All right, now I'm sorry, there was the

1    independent agency one, has that fallen off?

2            MR. ABDO:  That's right.  As we explained in the, our

3    opposition to the government's renewed motion to dismiss, we

4    have dropped that category because the Office of Legal Counsel

5    in responding to the amended complaint made clear that the

6    explicit statement that independent agencies make in soliciting

7    OLC advice that they will agree to conform the conduct to the

8    OLC's opinions is no different than the implicit understanding

9    of non-independent agencies in seeking, in seeking OLC's

10   opinions.  On that basis, we think there's no distinction

11   between those two categories for purposes of Your Honor's

12   original ruling.

13           THE COURT:  All right.

14           MR. ABDO:  That's why we dropped that category.

15           THE COURT:  So the second one is nondiscretionary

16   duties by statute?

17           MR. ABDO:  That's right.  Nondiscretionary legal

18   obligations.

19       The amended complaint sets out that those opinions

20   constitute the law of the agency soliciting them because the

21   agencies are under a nondiscretionary obligation to take

22   certain actions and the OLC defines what those actions must be

23   by statute.  In doing so, it sets the policy of those agencies.

24           THE COURT:  Let me be more precise.  The OLC

25   interprets the statute?

1            MR. ABDO:  Sometimes it's the statute, sometimes it

2    may be another nondiscretionary legal obligation that an agency

3    is under.  For example, it could be an executive order or even

4    a regulation, but I believe in the example that we've cited

5    they all concern statutes.

6            THE COURT:  I see.  Do you have a sense of how the

7    OLC gets involved in those situations?  I can ask them.

8            MR. ABDO:  My understanding from the Barron memo and

9    looking at the examples that we've attached in the complaint is

10   that an agency will have a question about its authority, the

11   statute or another authority that it is charged with

12   administering and seeks a conclusive resolution of what the

13   authority means from the OLC.

14           THE COURT:  All right.

15           MR. ABDO:  The third category of our opinions

16   adjudicating or determining private rights.  The amended

17   complaint sets out that those constitutes working law within

18   the meaning of FOIA because the OLC is directly defining the

19   scope of private rights.

20       Often those opinions come in the context of an actual

21   adversarial dispute between members of the public and an agency

22   about their rights.

23       So for example, the Department of Labor once in the course

24   of an administrative complaint determined that the Department

25   of Veterans Affairs had underpaid 11 specific physicians by

1   $230,000 in back wages and the Department of Labor entered an

2   order resolving that administrative complaint ordering the VA

3   to compensate those physicians.

4        THE COURT:  Let me ask you just by way of background.

5   I don't want to get too far afield from what you're engaged in

6   now.  It's just a description.

7        Is your position that even in that situation the

8   Department of Labor had no discretion to hear and understand

9   the opinion of OLC, but decided to do something else in the

10  context of that adjudication?

11       MR. ABDO:  After the OLC issued its opinion, the

12  Labor Department could not enforce its order against the VA to

13  pay back wages.  Now it might decide later on it wants to take

14  some course of action.  It may want to do something else with

15  respect to the VAs underpayment of those physicians.  In

16  deliberations regarding that future comment might very well be

17  protected by exemption by FOIA.  But the OLC's decision that

18  the Department of Labor could not enforce its order of back

19  wages bound the VA -- sorry, the Labor Department at that

20  moment and determined the Labor Department's policy with

21  respect to the 11 physicians' administrative complaint of

22  underpayment.

23       THE COURT:  All right.

24       MR. ABDO:  In that sense, in that context the OLC is

25  really no differently situated than an appeals board.  Two

1  agencies might have a dispute about the scope of individual

2  rights.  One of them may be adjudicating those rights and one

3  of them turned to the OLC for enforcement of resolution for the

4  decision of those rights.

5          THE COURT:  Doesn't it matter what the particular

6  form of agency action is being considered by the OLC?  I mean,

7  you could imagine a world in which the OLC is being consulted

8  in the context of a private dispute to give its opinion about

9  the answer, the law, but then for whatever reason the agency

10  decides to adopt a policy that's different than that.

11      You're suggesting that that can't happen.  Maybe it didn't

12  in the context of the 11 because of the way in which that

13  particular factual scenario played out, but I don't understand

14  why it couldn't.

15          MR. ABDO:  So maybe two responses.  One is that in

16  the sort of cases that we're talking about, the agencies come

17  to the OLC for a conclusive resolution of a legal question that

18  will resolve the dispute in front of the agency.  That's the

19  case for the opinion I just described, the Department of Labor

20  versus the VA.  It's also the case in the DOMA opinion that the

21  amended complaint attaches and several other opinions.

22      But even more broadly than that, it is true that the

23  agency could come to the OLC to seek true advice.  There are

24  other categories of opinions that the OLC issues.  It does in

25  fact issue a formal advice and formal opinions in other forms

1  of legal advice.  In fact, formal written opinions are a tiny

2  subset of what the OLC issues.  From 2010 to 2015 the OLC

3  issued about 3,000 legal opinions. Sixty of which were formal

4  written opinions.

5          THE COURT:  Is your complaint only in the realm of

6  formal written opinions?

7          MR. ABDO:  That's correct.

8          THE COURT:  All right.

9          MR. ABDO:  The amended complaint narrows the second

10  point that I was going to get to at the outset, the ways in

11  which the amended complaint differs from the original is it

12  focuses very narrowly on formal written opinions issued to

13  federal agencies or federal officials other than the President

14  of the United States.

15      And so in that broader category of opinions in which the

16  OLC has defined the scope of private rights.  The reason why

17  that dispute reaches the OLC in the context of a formal written

18  opinion is because there has effectively already been a policy

19  decision made by an agency and it wants conclusive legal

20  resolution of the relevant law.  That is when something matures

21  into a --

22          THE COURT:  Is there a regulation or a statute or

23  some legal vehicle by which that is always the case with

24  respect to formal opinions?  By which it must be the case.  You

25  come to us because you've made the policy determination of

1  whatever we say is going to become policy of the agency?

2       MR. ABDO:  That is what the Barron memo sets out.

3  Our position is not that it's 100 percent of formal written

4  opinions or advisement context, but the Barron memo which is in

5  Exhibit C of the amended complaint explains that when it comes

6  to formal written opinions, the OLC's practice is not to issue

7  mere advice.  It's mission is to resolve.  I'm going to

8  paraphrase here.  This is a partially correct quote.  I don't

9  have it in front of me, to resolve concrete and ongoing legal

10 disputes.  In other words, ones where a question of policy

11 turns on a question of law.

12      But again, our position is not that 100 percent of those

13 adheres to that.  It maybe the opinion in EFF; for example,

14 assuming it was a formal written opinion, does not appear to be

15 one of those opinions.  Does not appear to be one in which an

16 agency had  arrived at a final policy decision and submitted

17 the only legal question related to that policy decision to the

18 OLC.

19      THE COURT:  You think that's a distinction that

20 matters?

21      MR. ABDO:  Yes.

22      THE COURT:  You think that that's why EFF came out

23 this way versus --

24      MR. ABDO:  I think that's both why the opinion came

25 out that way and the only way in which to distinguish that

1  opinion on a principal basis from the D.C. Circuit previous

2  points.

3        THE COURT:  Even though the EFF court attempts to do

4  that internally in the context of the case, right?

5        MR. ABDO:  It does do that.  There is broad language

6  in that opinion and there's also narrow language.  The question

7  is how do you interpret that opinion consistently with past

8  precedent that the panel could not have and did not purport to

9  overrule.  And that past precedent all makes clear that legal

10 opinions can constitute working law even when they precede

11 policy interpretations.  In our view --

12        THE COURT:  Isn't that only under EFF because the

13 agency subsequently adopts them?

14        MR. ABDO:  No, I don't think that's right.

15     So for example, in the Coastal States case, nobody argued

16 in that case that the auditors, the energy department auditors

17 who had solicited Regional Counsel advice, nobody argued that

18 the auditors went through some process of adopting the legal

19 opinions of the Regional Counsel.

20     The argument was that the Regional Counsel opinions were

21 treated as a matter of custom as the working law of the agency.

22        THE COURT:  It doesn't have to be a formal adoption.

23 There has to be some indication that the opinion is not just

24 sitting out there somewhere, but the agency has taken it up in

25 some way.

1      MR. ABDO:  I do agree with that and what we think

2  qualifies is that that evidence or the five factors that we set

3  out in our opposition brief which explain that, what

4  differentiates advice from working law are a number of factors

5  that the D.C. Circuit has considered.  The D.C. Circuit to be

6  fair I think here that the working law analysis is not a formal

7  distinct one.  It is very much a functional one that turn on a

8  case by case assessment of the nature of the opinions and the

9  role they play within the agency.

10      THE COURT:  Which by the way I thought your first

11  point wasn't helpful.

12      MR. ABDO:  The second way in which the amended

13  complaint differs from the original is that it substantially

14  fleshes out the operation of the OLC based on historical

15  sources in scholarship and the opinions of past OLC heads and

16  OLC lawyers.  I think it presents a fuller picture of the

17  operation of the department as well as the function of its

18  formal written opinions.

19      THE COURT:  So you had three categories.  Maybe you

20  can just lay out the others.

21      MR. ABDO:  The fourth and final one for purposes of

22  the motion to dismiss are opinions that find particular

23  congressional statutes are unconstitutional and that agencies

24  therefore need not comply with them.

25      Now I want to distinguish this category from the other

1  three.  The first three categories that we've laid out are

2  opinions where there's no daylight between a legal decision and

3  a policy one where the, once the OLC issues the opinion, there

4  is but one course of action for an agency to take and is not

5  free to ignore the legal advice form the OLC.

6      This final category is a little bit different.  Our

7  position here is that the OLC's opinions finding statutes to be

8  unconstitutional are unique in that they countermand a

9  congressional policy determination.

10     Congress in enacting the statute has made a determination

11  about what the policy of the government should be with respect

12  to the obligations of the executive branch to follow a

13  particular statute.  And the OLC's opinions effectively

14  countermand that policy determination.

15         THE COURT:  As far as the working law analysis is

16  concerned, what difference is that?

17         MR. ABDO:  That's makes a difference because it sets

18  the policy of the executive branch.  Once the OLC issues that

19  opinion the policy of the executive branch is that that statute

20  does not reflect an actual legal obligation upon the executive

21  branch.

22         THE COURT:  In your view that means that no agency

23  has the authority to act otherwise, to continue to follow the

24  statute notwithstanding OLC's opinion?

25         MR. ABDO:  Depending on the statute it may continue

1    to follow it in their deliberations about whether to may very

2    well be privilege, but with respect to the policy that the OLC

3    is defining at that moment and going forward it is from that

4    moment on the policy of the executive branch, that the statute

5    --

6             THE COURT:  How could that possibly be squared to get

7    that? In the hypothetical world in which an agency says I hear

8    you OLC.  You said this statute is unconstitutional.  We

9    believe it to be in our purview to enforce it and we're going

10   to continue to do so.  If they have authority to do that then

11   clearly the agency has not adopted OLC's opinion from the

12   standpoint of having to disclose it as working law, right?

13            MR. ABDO:  Right.  That future decision might very

14   well be deliberative.  A future decision of the agency to

15   nonetheless undertake the obligations that Congress had at one

16   point made obligatory might be deliberative up until it matures

17   into a final policy decision.  But at the moment the OLC issues

18   its opinion, it is in the words of sears (sic), which do give

19   rise to the working law doctrine.  It has made a determination

20   that the statute no longer has the force and effect of law.  It

21   is admittedly a unique, may be entirely unique category of

22   working law.  If so, that's only because --

23            THE COURT:  I'm sorry, I just want to be clear and

24   then I'll let you continue.  So you're suggesting that with

25   respect to this particular category, it's not about whether or

1  not other agencies adopt it.  OLC is an agency in and of itself

2  and it can stand on the fact that it's adopting this position

3  and that's the basis for it to be considered working law?

4       MR. ABDO:  Partially.  Our position is that the OLC's

5  opinions constitute the law of the entire executive branch.

6  That is by delegation from the attorney general who has the

7  statutory authority to decide questions of law for the

8  executive branch as a whole and has exercised that authority

9  for two centuries and the OLC has had that delegated for the

10  last 50 or 60 years.

11       So it is not just that the OLC is setting policy for the

12  OLC.  It is that the OLC is setting policy for the entire

13  executive branch.

14       THE COURT:  You're simply conflating on policy.  I

15  get you that they have the ability to interpret the law

16  definitively for the entire executive branch, but there is in

17  EFF and elsewhere something of a distinction between

18  interpreting a statute, telling me what the law means, and

19  using the law in the context of policy making.

20       So what I'm trying to understand is your suggestion that

21  once OLC takes a stand regarding the constitutionality of a

22  statute and says unconstitutional that that somehow becomes the

23  working law even of agencies that say we disagree and therefore

24  we're still going to implement the statute in the context of

25  our policy making.

1          MR. ABDO:  To be clear an agency could not disagree,

2     that's the undisputed record.

3          For example, if the statute excused an agency from some

4     other obligation and the only basis for the agency to feel that

5     it was excused from this other obligation was the operation of

6     the statute that OLC had determined to be unconstitutional, the

7     agency would not be free to rely on that statute.

8          THE COURT:  But that's your discretionary duty part

9     of it.

10         What I'm trying to establish --

11         MR. ABDO:  Yeah.

12         THE COURT:  -- is an, and I misspoke and I thank you

13    for that correction.  They could not disagree meaning that the

14    Office of Legal Counsel within the agency couldn't say well,

15    the attorney general believes the statute means X, but I

16    believe it means Y and it's perfectly fine.  They could not do

17    that.

18         However, I'm trying to understand the extent to which they

19    could set aside the attorney general's definitive view of the

20    statute's constitutionality and continue to act --

21         MR. ABDO:  Right, right.

22         THE COURT:  -- anyway in enforcement of the statute.

23         MR. ABDO:  I will concede that this category of the

24    four that we've identified, I think the other three are quite

25    distinct from the issues in EFF.

1   This category is closest to the fact pattern EFF save for

2   the unique effect that an OLC opinion has when it finds a

3   statute to be unconstitutional.  It has a unique effect that

4   other agencies aren't invested with literally countermanding a

5   congressional policy determination.  And the policy

6   determination, the policy of the executive branch prior to an

7   OLC finding that a statute is unconstitutional is to treat the

8   statute that Congress has enacted as reflecting the policy of

9   the government as a whole.

10   OLC's opinion in this context have this unique and

11   singular effect of freeing the executive branch from that

12   policy, countermanding congressional policy.

13   Now as I acknowledged a moment ago, I think that is of

14   these four categories the closest to the EFF fact pattern, but

15   the category is unique for a number of reasons.

16             THE COURT:  All right, thank you.

17             MR. ABDO:  Thank you.

18             THE COURT:  Mr. Schwei.

19             MR. SCHWEI:  Schwei, Your Honor.

20             THE COURT:  Schwei, thank you.

21   So you've heard the description and obviously you've read

22   and briefed the issues.  Tell me why you think that this

23   complaint now that it has delineated categories of records that

24   the plaintiffs maintain must be disclosed under 552, 552 (a)

25   (2), why do you think that it still is insufficient?

1          MR. SCHWEI:  Absolutely, Your Honor.  I'm happy to

2    walk through each of the four categories, but if I could just

3    make two preliminary points up front to color all of the

4    categories and the entirety of plaintiff's claim.

5          The first is that although the amended complaint is

6    narrowed to only these four categories, at the end of the day

7    they are still seeking to compel OLC to affirmatively publish a

8    substantial portion of its confidential legal advice and I

9    think that's important for constitutional concerns and rule of

10   law values which we touch on in our brief.

11         THE COURT:  Doesn't that just beg the underlying

12   question? You say they are seeking to have OLC disclose its

13   confidential legal advice, but the issue on the table is

14   whether they are entitled to withhold such advice under certain

15   circumstances where it becomes the working law of an agency?

16   It's no longer considered legally confidential legal advice,

17   correct?

18         MR. SCHWEI:  I think when Your Honor evaluates

19   whether this is confidential legal advice, it is impermissible

20   consideration to think about what would happen if all of these

21   categories were required to be disclosed, what effect would

22   that have on agency's incentives to seek advice from OLC.  That

23   I think is what our argument is getting at.  Is that compelled

24   disclosure of these four categories of advice would be

25   substantial amounts of OLC advice and would imperil those rule

1   of law values.

2       I guess just to turn to the direct premise of the question

3   about is this actually confidential legal advice.  We think for

4   all of the four categories the plaintiff's theory is contrary

5   to the central premise of EFF and of this Court's prior

6   decision on the motion to dismiss which is that OLC's legal

7   advice does not establish the policy of client agencies.

8       I think Your Honor's comments reflect that there needs to

9   be a distinction between law and policy.  The plaintiff said

10  there is no daylight in their view between law and policy with

11  respect to the first three categories.  But I think that's

12  inconsistent with the OLC documents themselves and also

13  inconsistent with EFF.

14          THE COURT:  Well, before you go on, let me just ask

15  you a few questions.  First of all, is it your position that

16  none of OLC's opinions qualifies working law because they're

17  all advice documents?

18          MR. SCHWEI:  I don't think that issue is before this

19  Court because the question is simply has the plaintiff

20  plausibly alleged that these four types of OLC opinions must be

21  affirmatively disclosed at the moment that OLC --

22          THE COURT:  So I don't have to care about the broader

23  view of the agency.  I mean, you sort of, sort of teased me up

24  to getting there by suggesting that there was a broader policy

25  implication that we have to worry about because really OLC is

1   just offering confidential legal advice.  So I'm trying to

2   understand in response to that thrust, whether you're saying

3   all we do is give legal advice so it can never be working law

4   of the agency.

5         MR. SCHWEI:  I think what EFF establishes and what

6   this Court held in the first opinion is that as a general

7   matter OLC's formal opinions remain privileged, confidential,

8   predecisional legal advice.

9      We don't think the Court needs to go beyond that and say

10  in every circumstance OLC opinions are always privileged,

11  that's not necessary for a decision in this case.

12        THE COURT:  Right, okay, so I get that.  Let me just

13  before we get into the particular categories ask you about

14  something that opposing counsel just said that was interesting

15  to me and it is this.  EFF doesn't address OLC's formal written

16  opinions because that apparently was not the type of opinion

17  that was being analyzed in that case.  Is there something to

18  that distinction?

19     In other words, they're asking only for formal written

20  opinions.  They say off the top EFF isn't applicable in the

21  sense that the opinions that are being addressed in that

22  context don't qualify as this category of formal written

23  opinions.  In fact, they suggest that a formal written opinion

24  is only produced when the agency is being asked to resolve some

25  dispositive legal question.

1          Are they wrong about that?

2          MR. SCHWEI:  They are wrong about the premise of that

3     which is the OLC opinion at issue in EFF was indeed a formal

4     OLC opinion that was finalized pursuant to OLC's best practices

5     memo describing that whole process.

6          I think that is clear from the D.C. Circuit's opinion

7     itself which discusses the contours of the opinion and walks

8     through the OIG report describing the opinion.  I think going

9     into the record of EFF particularly looking at the declaration

10    filed by the OLC in the District Court from Mr. Colburn. He

11    describes it as an Opinion, capital O, OLC Opinion.  He

12    describes it as having been prepared consistent with the best

13    practices memo.

14         I would also note that the parties themselves before the

15    D.C. Circuit, the plaintiff in that case in its brief described

16    it as a formal OLC opinion.

17         THE COURT:  All right.  So there's no basis for

18    distinguishing as far as that's concerned you think?

19         MR. SCHWEI:  Correct.  Factually, it was a formal OLC

20    opinion.  Even if there was some doubt about it, we don't think

21    it would matter because the characteristics of the formal

22    opinion, the D.C. Circuit certainly describes that particular

23    opinion as having being controlling, presidential, being part

24    of OLC's internal system of precedent.  Those are the relevant

25    characteristics of the formal opinion that plaintiff relies on

1  again here and which the D.C. Circuit addressed and said none

2  of those are sufficient to bring it outside the framework of

3  predecisional legal advice.

4       THE COURT:  All right, so what do you read the D.C.

5  Circuit to be requiring in order for it to qualify as working

6  law?

7       I also did not read EFF to suggest that all such opinions

8  under all circumstances will never be considered working law.

9  So what do you think EFF is telling us with respect to when

10 such an opinion might qualify as working law?

11      MR. SCHWEI:  I would refer Your Honor to page 31 of

12 Your Honor's prior opinion.

13      THE COURT:  Of my own opinion?

14      MR. SCHWEI:  Yes, Your Honor, of the motion to

15 dismiss which at the bottom, these are quotes, several quotes

16 from the EFF decision itself which say the EFF Court reasoned

17 that the OLC opinion could not be the working law of the FBI

18 unless the FBI adopted what OLC offered because OLC does not

19 speak with authority on the FBI's policy.

20      I think that sets it out plain that because OLC does not

21 have policy making authority over client agencies, OLC does not

22 establish the working law of those agencies.

23      OLC opinions remain predecisional legal advice that are

24 communicated to those client agencies and then they may take

25 actions based on that predecisional legal advice and those

1    subsequent actions may regulate the public and may in some

2    circumstances meet the requirements of working law.

3           THE COURT:  What is your view on the meaning of

4    finding and controlling in that world?  I mean so fine, you are

5    suggesting that the attorney general and OLC are giving legal

6    advice.  Are these agencies free to have their own opinion of

7    the law in a circumstance in which OLC has issued a formal

8    legal opinion?

9           MR. SCHWEI:  So when OLC issues a formal legal

10   opinion, it is controlling in the sense that there is a long

11   standing executive branch tradition, custom and practice that

12   the recipient of the OLC opinion, the client agencies will act

13   consistent with the conclusion of the Office of Legal Counsel.

14   That is fundamentally different from saying the Office of Legal

15   Counsel itself has authority to establish policy governing the

16   public or has authority to regulate the public.

17       That's the difference I think between, that's the

18   difference that EFF focused on which is it is true that the

19   executive branch has developed traditions in which OLC advice

20   is considered controlling, but it also is true that OLC does

21   not have authority to speak on matters of policy for agencies

22   that regulate the public.

23           THE COURT:  Let me rephrase what I think you're

24   saying and tell me if I'm wrong abut this.

25       So to the extent that OLC is offering controlling or

1   binding legal advice, the Office of General Counsel within the

2   agency could not seek the OLC's legal advice regarding the

3   meaning of a statute; for example, and issue its own memorandum

4   saying I think it means something different?

5          MR. SCHWEI:  With a couple of caveats, Your Honor.

6      I think just to be precise --

7          THE COURT:  Yes.

8          MR. SCHWEI:  -- about the executive branch

9   expectation.  It is that agencies will act consistently with

10  the conclusion that OLC reaches.  They are not necessarily

11  required to follow every step in the chain of reasoning that

12  OLC went through to reach that conclusion.  But if OLC says the

13  statute means X, the expectation would be that the client

14  agency does not act in a way that directly contradicts X.

15         THE COURT:  When it makes policy or when it, or when

16  it thinks about, talks about what the law means?  I'm trying to

17  keep and honor your distinction between law and policy.  And

18  you're getting a little smooshed up when you say once the

19  attorney general through OLC says here's what the statute

20  means, the agency cannot act inconsistently.

21     I expected you to say the agency cannot formulate a

22  different view of what that statute means and then its policy

23  making shop will have to decide what it wants to do, but that's

24  a separate thing.

25         MR. SCHWEI:  Right.  It's a little difficult to

1    discuss in the abstract.

2              THE COURT:  Yes.

3              MR. SCHWEI:  So if I could use a concrete example of

4    what the plaintiff also discussed.

5              THE COURT:  Yes.

6              MR. SCHWEI:  Which is the Department of Labor and

7    Veterans Affairs opinion.  So in that opinion, OLC concluded

8    that sovereign immunity prevented the Department of Labor from

9    ordering the Department of Veterans Affairs to pay back wages

10   to these particular individuals. So that was the resolution of

11   the legal question.

12       Then the opinion went on to note that nothing about it

13   prevented the Department of Labor from doing something else

14   with respect to the situation and doing something else to

15   compel the Veterans Affairs to pay the appropriate wages going

16   forward.

17       The opinion also noted that the Department of Veterans

18   Affairs could voluntarily provide back wages to the

19   individuals.  And so I think the key difference between a legal

20   question and a -- so a legal question is simply what, what does

21   the law say.  But a policy question confronting a policy making

22   agency is how do we address the actual situation confronting

23   us?

24       So in that context, OLC's opinion established you could,

25   you the Department of Labor cannot order back wages paid by the

1  Department of Veterans Affairs.  That's a legal question being

2  answered.

3      But the policy questions are totally different.  The

4  policy questions that labor faces are, okay, if this option is

5  unavailable, what do we do instead?  And the department, the

6  policy question the Department of Veterans Affairs faces is

7  should we voluntarily provide back wages?

8      THE COURT:  I understand, but from my perspective

9  even pursuant to the EFF quote that you read I'm trying to

10 figure out at what point does the policy maker, given the

11 dynamic that you just laid out, adopt the OLC legal

12 interpretation.  Because assuming there is a world that you

13 don't want me to really focus on, but I'm trying to figure out

14 what's going on here.

15     Assuming there is a world in which the legal advice can

16 through the adoption of the agency become the working law of

17 the agency, I need to know when that happens.

18     MR. SCHWEI:  Absolutely.  If I could unpack that, but

19 also offer a preliminary observation which is that doesn't

20 really have anything to do with the plaintiff's claim here

21 because the claim that they're advancing is that at the outset

22 OLC's legal advice falls within (a)(2).

23     THE COURT:  Yes.  No, that was their original claim

24 in sort of the broad all of the opinions that I rejected in my

25 first opinion.  They've narrowed it down to certain categories

1   and in analyzing those categories now, I have to figure out

2   whether they made a plausible claim because under those four

3   different circumstances we might be in a world in which the

4   agency has no discretion to make policy that is any different

5   than the OLC's interpretation such that the OLC's

6   interpretation is adopted by the agency using the language of

7   Judge Edwards in EFF.

8          MR. SCHWEI:  Right.  So my point is that even if

9   there are circumstances in which agencies do adopt OLC

10  opinions, that happens after the fact.  That would not support

11  the plaintiff's claim here which is that OLC opinions

12  immediately upon issuance must affirmatively be disclosed under

13  (a)(2).

14         THE COURT:  You think that's what they're saying that

15  there's no world in which maybe it becomes apparent that this

16  is the working law of the agency at which point the obligation

17  is triggered?  You think it has to be on day one?

18         MR. SCHWEI:  I think that has to be their position.

19  Because if their claim is simply that the policy making agency

20  has adopted OLC's opinion, then the working law and publication

21  obligation runs to the policy making agency itself.  They are

22  the ones who would have adopted and made the predecisional

23  advice final.

24         THE COURT:  Yeah.

25         MR. SCHWEI:  Their claim is that OLC itself must

1   disclose it.  So I think that is what they're saying.

2       But just to address the circumstances regarding what

3   adoption really means, I think EFF itself lays out in the

4   second half of the opinion how high of a standard that is.  The

5   agency must expressly adopt both the reasoning and the

6   conclusion of the predecisional document as its own.  So simply

7   acting consistent with OLC's legal advice clearly does not meet

8   the standard for adoption.  That was held by the Supreme Court

9   in the Renegotiation Board case which I would urge Your Honor

10  to focus on because that case I think in combination with EFF

11  explains why the plaintiff's claims failed.

12      Just to think about it from a first principals point of

13  view, clients receive legal advice from attorneys all the time.

14  Hopefully they act consistently with it, but when they do act

15  consistently, that does not eliminate the privileged nature of

16  the legal advice.

17          THE COURT:  I understand, but we do have the whole

18  working law doctrine.  Your arguments are good, but sometimes

19  they prove too much.

20      Yes, fine, fine, but there is a world in the whole

21  exemption five working law scenario in which an agency can

22  adopt for the purposes of disclosure the opinions of the

23  agency.  And I'm was trying to figure out when that is.

24      You say they have to do something more than just act

25  consistently with OLC.  That's a good point.  Is there anything

1  else that they have to do?  I mean, let's get into the

2  categories.

3              MR. SCHWEI:  Right.

4              THE COURT:  So it seems to me that with respect to

5  category one we have not only the advice of OLC in the form of

6  a formal written opinion, but we have an executive order that

7  makes these agencies present their dispute to OLC for what is

8  presumably conclusive resolution.  We have a dispute between

9  agencies as to what the appropriate course of action is and OLC

10 is going to tell them.

11     Why isn't that enough to suggest that there is no daylight

12 as he says between the legal and the policy determination in

13 that category?

14             MR. SCHWEI:  So two responses, Your Honor.  The first

15 is that it's true that the executive order changes the way in

16 which the dispute reaches OLC.  But fundamentally the executive

17 order does not change the nature of what OLC does, which is to

18 exercise delegated authority for the attorney general to

19 provide legal advice.

20             THE COURT:  I understand, but your argument doesn't

21 rest on the nature of what OLC does. That's what he's trying to

22 do.  He is trying to say the nature of what OLC does is create

23 binding, controlling policy and that should be enough for the

24 Court to find it's the working law.

25     You're saying as I said in my previous opinion, that it

1    matters whether or not the agency adopts it.  And so what I

2    worry about is the suggestion that an executive order that

3    essentially makes these agencies adopt the outcome in this

4    particular context is not enough to indicate that they don't

5    have the ability to not do what OLC tells them to do.  At least

6    in that circumstance it would seem to me that he plausibly

7    states a claim.

8              MR. SCHWEI:  So a couple of responses.  Even if it is

9    true that the executive order were to require that agencies do

10   adopt what OLC says, I still think their claim would fail

11   because their claim is against OLC failing to publish their

12   advice, not the client agencies failing to publish the client

13   agency's own working law.

14       I think that's a critical difference particularly when one

15   considers the timing of it.  Because their claim is that as

16   soon as OLC puts pen to paper and finishes its legal opinion,

17   that has become working law and must be disclosed.  Their claim

18   does not depend in any way on what a client agency does after

19   the fact.

20             THE COURT:  But I'm telling you in this case there is

21   no second step.  In this case X anti, the President of the

22   United States has said what OLC said, you two have a dispute

23   and what OLC says about it is the resolution from a policy

24   perspective.

25       Why in that scenario would OLC finishes its opinion and

1   puts it out into world don't we have working law with respect

2   to that issue?

3          MR. SCHWEI:  Two responses, Your Honor.  The first is

4   that the example we were discussing earlier about the

5   Department of Labor and the Veterans Affairs example.  This is

6   the example that they rely on for this category one where there

7   is a dispute between agencies that is submitted to OLC for

8   resolution.

9     I think all of the reasons we discussed earlier why the

10  Office of Legal Counsel's resolution of a legal question does

11  not determine any particular agency's policy decision.

12         THE COURT:  Not on its own.  But if there's an

13  executive order that says that, why isn't that enough?  Not on

14  its own.  I hear you.  But I'm just trying to understand

15  doesn't the fact that we have this order make this scenario

16  different than perhaps any of the others?

17         MR. SCHWEI:  No, because I think what the executive

18  order does it simply govern the way in which the dispute is

19  presented to OLC.

20    And secondly, to the extent that the executive order makes

21  OLC's advice somehow more binding or not it doesn't really

22  matter under the D.C. Circuit's EFF decision.  Because the D.C.

23  Circuit specifically considered the controlling nature of OLC's

24  legal advice.

25         THE COURT:  No, not binding.  I'm talking about going

1   to policy.  I consider binding, controlling all of that going

2   to the legal authority in this sort of your legal bucket,

3   right.  This is binding, we can't take a different view of the

4   law.  We have to follow what the law says in this way, but

5   policy says do we have to act at all?

6         Can we act in a different way?  Can we look at that

7   binding legal authority and choose to be, you know, behave in

8   some other way?  That's what you told me at the beginning,

9   right?  They were deciding whether or not to do this in a

10  different way in light of that, fine.

11        So it's not that the executive order speaks to the binding

12  nature.  It speaks to the policy prescription once OLC issues

13  its opinion, does it not?

14        MR. SCHWEI:  I think it, this just goes to the

15  distinction between a legal question and a policy decision.

16        I think the resolution of a legal question does not

17  determine how any client agency chooses to address the

18  situation it is confronting.  I think the plaintiff's version

19  where resolution of a legal question does determine policy is

20  contrary to the holding of EFF because EFF there the OLC

21  opinion said the FBI is allowed to rely on a particular

22  authority to obtain certain records in certain circumstances.

23  That's the resolution of the legal question.  But then the

24  policy question --

25        THE COURT:  What if in EFF we had a presidential

1  executive order that said when, once OLC decides whether or not

2  the FBI is allowed to do this, you FBI must act accordingly.

3  You must implement regulations or whatever that facilitate or

4  implement that decision.

5      Then don't we have an executive order that has created the

6  policy which is dependent upon the binding legal interpretation

7  of OLC?

8          MR. SCHWEI:  I think that mischaracterizes the

9  question in the OLC opinion itself which is do we have the

10  authority to do something, not should we do something.

11          THE COURT:  No, I'm positing a hypothetical in which

12  the authority is coming from the President.  The authority is

13  being created by the executive order that is saying once OLC

14  tells us what the answer is, you must enact policy that

15  implements that or that reflects that.

16          MR. SCHWEI:  If there were an executive order from

17  the President saying when OLC tells you FBI that you have the

18  authority to do something, then you must do it.  I think that

19  is a top down classic example of working law.

20      I think the OLC opinion may then need to be disclosed by

21  the FBI when they receive the OLC opinion and they make the

22  policy decision that we are going to do this consistent with

23  the President's directives.

24          THE COURT:  You still don't think in that working law

25  scenario that the issuer of the law in the sense that the OLC

1    would have the obligation under 552 (a)(2)?

2           MR. SCHWEI:  Correct.  Because I think it has to be

3    analyzed over a chronology.  Step one is OLC issues the

4    predecisional legal advice.

5       Step two is agencies do something with that predecisional

6    legal advice.  It is certainly possible at step two that an

7    agency could expressly adopt the reasoning and conclusion of

8    OLC as its own in which case they would have created working

9    law and they would have obligations to publish under 552

10   (a)(2).

11      But the plaintiff's claim here is that step one, that as

12   soon as OLC issues its legal advice that must be disclosed by

13   OLC.

14           THE COURT:  In this one circumstance.  Let me ask you

15   about the non-discretionary duties which may have a similar

16   character, right.  In scenario one we had an executive order

17   that presumably or at least arguably created the obligation to

18   enact policy on the basis of OLC's opinion.

19      What if we were in a world in which there is some sort of

20   non-discretionary duty on the part of an agency either by

21   statute or in some other form and OLC is consulted to provide a

22   legal opinion regarding what that means the agency has to do.

23           MR. SCHWEI:  I think that is, that still hinges on

24   their conception of the legal decision being the exact same as

25   the policy decision.  The example --

1          THE COURT:  Right, and the reason why is because the

2     duty is non-discretionary.  You don't have the discretion to

3     hear OLC and say thank you very much, but to do something else

4     because the duty itself under the law is to do whatever the law

5     says and OLC is just telling us what that means.

6          MR. SCHWEI:  And the example of the opinion I think

7     still shows why that conception is incorrect because the

8     opinion they use as an example is a situation where OPM wanted

9     to deny retirement credit to Postal Service employees for the

10    times in which the Postal Service had failed to make the

11    required contributions to the retirement fund.

12         The OLC opinion said OPM you cannot do that.  The

13    employees are still entitled to it, but we're not telling you,

14    we're not opining on the many other options you may have

15    available to you about how to address the situation of the

16    Postal Services' failure to make the required contributions.

17         So the OLC opinion there had, it is true that it said one

18    potential option is unavailable to you.

19         THE COURT:  I'm sorry, you're interpreting that as

20    saying you don't have the ability to withhold the payments?

21         MR. SCHWEI:  We're saying that what the opinion

22    itself said was that OPM cannot deny credit time in the

23    retirement benefit calculations for these, for the time in

24    which the Postal Service failed to make the required

25    contributions to the fund.

1          THE COURT:  So stated the other way, they have to

2    give the people credit for that, correct?

3          MR. SCHWEI:  But the important thing is that when OLC

4    puts pen to paper and issues that opinion, that does not

5    adjudicate anyone's benefits.  It does not entitle anyone to

6    benefits.  The act of OLC finalizing its legal advice does not

7    establish any private rights or obligations.  It's no different

8    than any other type of predecisional --

9          THE COURT:  Yes, but that argument goes too far

10   because it suggests that you can never have working, that it

11   could never be considered working law in a way that would

12   obligate OLC to release its opinions which I guess has been

13   your opinion from the beginning.

14         MR. SCHWEI:  If OPM said we expressly adopt the OLC's

15   reasoning and conclusion as our own for the reason why we

16   cannot do this particular policy option, they may have their

17   own obligation to release that opinion.

18         THE COURT:  Are they allowed to by the way?  Is there

19   some agreement?  Does OLC when it gives its formal opinions it

20   becomes the clients and they can do whatever they want to

21   including putting up on their website?

22         MR. SCHWEI:  Traditionally as the best practices memo

23   explains there's a process for how OLC and the executive branch

24   make decisions about whether to release certain OLC opinions.

25         I would note that there are 1300 of them available, so

1 there have been circumstances where OLC does make public view.

2          THE COURT:  I understand.  But you're now focused,

3 really focused on who has the obligation to release the opinion

4 should it become working law because it's adopted by the

5 agency.

6     What I'm just trying to ask is whether the agency is free

7 to actually put it up on the website after having formally,

8 formally or even informally adopted it?  Does the agency

9 itself, client agency make that decision or not?

10          MR. SCHWEI:  I think the expectation is that it would

11 be made in consultation with others in the executive branch as

12 spelled out in the OLC best practices memo.

13          THE COURT:  Does OLC have control over its work

14 product in this way?  Do they get to decide ultimately whether

15 or not the agency can put it up?

16          MR. SCHWEI:  I think OLC functions as any outside

17 attorney does which is it does not have supervisory authority

18 over its clients.  There are expectations that the executive

19 branch has developed about how things will happen.  But at the

20 end of the day OLC does not have supervisory authority over

21 their clients.

22     I think that's really the key point that I'm trying to

23 focus on and why I think even the four categories are still

24 governed by EFF.  Because the rationale of EFF was OLC does not

25 have policy making authority over the FBI.  Even when OLC tells

1  the FBI it can do something, the FBI still must act.

2       I think that's equally true for even the OPM example.  OLC

3  does not have policy making authority over OPM.  They can tell

4  OPM we believe you must do this.  We believe you cannot do

5  this.

6       But OPM in order to give any legal effect, OPM still has

7  to take an independent action.  There's always an intermediary

8  of a client agency.  And just to return to the Supreme Court's

9  --

10      THE COURT:  Can I just ask you is it really

11  independent if the law says you have to follow what OPM says,

12  whether it's through executive order or the non-discretionary

13  nature of a statute?

14      You keep suggesting that there's always a client

15  intervening discretionary determination as to whether or not

16  we're going to follow OLC's advice.  And I think at least with

17  respect to the three, first three categories, plaintiff's

18  suggestion is that there's a world in which that's not the

19  case.

20      MR. SCHWEI:  But there is always an intermediate

21  step.  There is always a policy making agency whose action is

22  required to give legal effect to a decision and that's exactly

23  the circumstance that the Supreme Court addressed in

24  Renegotiation Board where the documents at issue there the

25  plaintiff had tried to analogize to District Court opinions.

1    That's exactly what the plaintiff here has done by trying to

2    analogize OLC opinions to Court like opinions.

3            THE COURT:  They're not.

4            MR. SCHWEI:  I completely agree, Your Honor.

5        And the reason why they are not at least for purposes of

6    the working law framework is because District Court decisions

7    as soon as they are issued have operative legal effect.

8    There's nothing more that needs to be done in order for those

9    decisions to have binding consequences.

10       That is not the case with respect to OLC.  Even if OLC

11   tells OPM you must do this or you cannot do this, the issuance

12   of that opinion has no legal effect whatsoever until OPM, the

13   agency with policy making authority, actually does something.

14   And that is the precise, the precise characteristic that the

15   Supreme Court focused on in Renegotiation Board and it's also

16   what the D.C. Circuit focused on in EFF.

17       There is a difference between a lawyer telling someone

18   this is what you must or cannot do, but having no authority to

19   actually give that legal effect.  It is the policy making

20   agencies that have the authority to make those decisions and

21   that's when something could become working law.

22       I think at least for the first three categories of the

23   plaintiff's claim that is why they fail.

24           THE COURT:  I think I understand.  I think I

25   understand the issue or your argument.  Let me just ask you one

1   quick thing.  It is with respect to sort of a practical way in

2   which you see this playing out.

3        Let's say in a world in which an agency clearly adopts,

4   expressly adopts, formally adopts the advice of OLC.  Is 552

5   (a)(2) triggered and, if so, whose responsibility is it to make

6   sure that the opinion is affirmatively disclosed?

7             MR. SCHWEI:  So if the agency has adopted something

8   that governs private rights.

9             THE COURT:  That's the other piece of this.  Why that

10  limitation?  Why that limitation?  I don't understand.  Where

11  does that come from?

12            MR. SCHWEI:  So it comes from 552 (a)(2) itself.  It

13  comes from the way the courts up to and including the Supreme

14  Court have interpreted the purpose of (a)(2) which is that that

15  subsection is about requiring agencies to disclose the

16  materials that govern private individuals and govern

17  interactions between agencies and individuals.

18       And I think the textual proof of that within (a)(2) itself

19  is the sanction of (a)(2) where it says if an agency fails to

20  disclose a document covered by (a)(2), then it cannot rely on

21  that as a precedent in a dispute with someone other than an

22  agency.

23            THE COURT:  Yes.  If that context exists, that

24  doesn't mean that the only circumstance in which they are

25  required to make a disclosure is one in which a member of the

1  public is affected.

2      In fact, I found the argument very bizarre in the context

3  of FOIA which is clearly as an overall statute and

4  unequivocally about the public's right to understand what

5  agencies are doing.  Whether the agency is actually

6  adjudicating something in their own context or not.  Every FOIA

7  opinion I have ever written I start by quoting that language

8  that talks about this is about whether or not, the people's

9  right to understand what agencies are doing.

10      So it seems to me that to suggest that (a)(2) is somehow

11  only triggered in the context of a particular private

12  adjudication where the agency is resolving individual rights is

13  inconsistent with the entirety of the sort of FOIA perspective.

14      MR. SCHWEI:  I agree with Your Honor that FOIA as a

15  whole has broad purposes, many of which are carried out through

16  the (a)(3) provision.  But when looking at (a)(2) specifically

17  and looking at the courts that have construed the purpose of

18  that, I think it's clear that it's focused on private rights.

19      In the text of each of those categories bears this out;

20  552(a)(2)(A) is about final opinions including concurring and

21  dissenting opinions made in the adjudication of cases which

22  clearly signals that they are talking about agencies actually

23  adjudicating private rights. 552 (a)(2)(B) --

24      THE COURT:  Before you depart.  Are you suggesting in

25  that interpretation that the OLC has to be the one who is

1   issuing its opinion in light of that particular case or what if

2   the agency is adjudicating a case and they have a legal

3   question and they reach out to the OLC?  Does that fit your

4   view of this has to be about private adjudication?

5          MR. SCHWEI:  I think a policy making agency their

6   decision adjudicating a case between private parties would need

7   to be, would generally need to be disclosed under (a)(2)(A).  I

8   think all of the predecisional things that go into the

9   formulation of that agency decision remain privileged.

10         THE COURT:  I'm sorry, I'm assuming in this part of

11  our discussion that we have working law.  The agency has said

12  here we are, the reason why we're going to you OLC is because

13  we are trying to figure out whether the farmers get subsidies

14  or whether the VA, whatever it is, some private decision.

15         But we have this legal question and we'd like to know what

16  you think.  And you give the formal opinion and then they say

17  oh, great, this is perfect.  This is exactly what we needed.

18  We agree with you, every word, we're adopting it.  This is

19  going to be our policy not only in this case, but moving

20  forward, right.  Working law, I say under EFF and the Supreme

21  Court precedent.

22         The question is where does your private adjudication come

23  in?  Does that count because the agency was in the process of

24  dealing with the private adjudication?  Does that have to be

25  disclosed?

1          MR. SCHWEI:  Well, so the agency has working law in

2    the hypothetical.  It meets the (a)(2) requirements.  If the

3    agency has adopted the OLC opinion, then yes, the agency would

4    need to disclose that OLC opinion as part of its (a)(2)

5    resolution.  I think that is not the claim the plaintiffs --

6          THE COURT:  No, I understand.  I'm trying to

7    understand your argument.

8        Setting aside for the moment what plaintiff's position is,

9    I just want to know where you're going with this notion that it

10   has to be something about the adjudication of private rights.

11       So under (a)(2)(A) that would be a final opinion made in

12   the adjudication of cases and we have working law because the

13   agency has adopted OLC's interpretation of the law for the

14   purpose of that adjudication.

15         MR. SCHWEI:  Right.

16         THE COURT:  What about (a)(2)(B) which says

17   statements of policy and interpretations which have been

18   adopted by the agency and are not published in the federal

19   register.  Why does that have anything to do with private

20   adjudication?

21         MR. SCHWEI:  So that's slightly different than

22   private adjudication.  But it is clearly, still has the outward

23   looking focus on private parties because it's statements of

24   policy or interpretations adopted by the agency which govern,

25   which are going to be the end product of federal

1    administration.

2         That's what all of the cases say (a)(2) is about.  It is

3    not about the predecisional document that go into creating the

4    policies and interpretations.

5             THE COURT:  I understand that distinction, but we

6    take care of that in our working law definition.  I don't

7    understand what this other element that you seem to be focused

8    on that this is about outward facing.

9         What if it's not about outward facing.  What if the agency

10   just says we're thinking about doing something.  We would like

11   to do this thing.  We don't know whether or not it is okay.

12   Let's check in with OLC.

13        They go to OLC.  OLC writes a lovely opinion.  They read

14   it and the agency says we adopt this.  And the opinion is don't

15   do it, don't do it.  All right, so the agency doesn't.

16        It's not outward facing.  It hasn't really affected

17   anybody other than the agency.  Does that have to be disclosed

18   or not?

19            MR. SCHWEI:  I mean, I'm struggling to understand the

20   specific contours of the hypothetical.  But I think one way to

21   think about it would be just as every time an agency asks their

22   internal in-house counsel should we do something and the

23   in-house counsel says no, don't do it.  That does not need to

24   be disclosed in the federal register every single time under

25   (a)(2).  I think OLC's legal advice functions no differently.

1          THE COURT:  But it's adopted by the agency.  What

2    you're saying under that scenario unless the agency ultimately

3    takes the advice and does something that impacts private

4    parties, then it can't qualify as working law.

5          MR. SCHWEI:  I think that's consistent with the way

6    courts have construed the working law doctrine.

7          THE COURT:  It's not consistent with the language of

8    (a)(2)(B).

9          MR. SCHWEI:  I think the statements, the statements

10   of policy and interpretations adopted by the agency, that's

11   adopted by the agency is really going to the core of it which

12   is adopted by the agency in its dealings with the public.

13      I think reading all three categories together in light of

14   the sanction within 552 (a)(2) demonstrates consistent with the

15   legislative history and the numerous Court decisions that what

16   (a)(2) is really about is ensuring that the public knows how

17   agencies are going to determine their rights and liabilities.

18      In the hypothetical where an agency is not determining

19   private rights, I'm not sure why (a)(2) would require

20   disclosure of that.  That is --

21          THE COURT:  So we can know what the government is

22   doing.  So we can know what the decision making they are

23   undertaking even when it results in a non action.

24          MR. SCHWEI:  I think that is what (a)(3) is directed

25   at fulfilling the broad purposes of FOIA.  But (a)(2) which

1   predated much of the legislative history talking about the

2   broad purpose of FOIA, (a)(2) is much narrower.

3       It is about the working law which is as the Supreme Court

4   talked about it in Sears as the D.C. Circuit has talked about

5   it repeatedly in each of those cases, it has always been in the

6   context of private rights and obligations.

7       The one exception that the plaintiff points to is the

8   Public Citizen v. OMB case.  I think that case is entirely

9   different because the discussion of working law was in the

10  context of rejecting OMB's arguments that all of its documents

11  are always privileged and the particular documents there were

12  not really privileged in the first instance.  But in each of

13  the foundational working law cases, they are always about

14  private rights and obligations.

15          THE COURT:  I have to let plaintiffs come back in

16  here.  But let me just ask you what the impact of that

17  observation is on the viability of any of their claims?

18      So fine, if you're right what does that mean about why

19  they haven't stated a claim?

20          MR. SCHWEI:  So I think for some of the categories

21  they are expressly not about private rights and obligations.

22          THE COURT:  Which ones?

23          MR. SCHWEI:  So for example, category number one

24  adjudicating a dispute between two executive branch agencies.

25          THE COURT:  Even if that dispute is about how we're

1  going to treat members of the public or what people can do?

2        MR. SCHWEI:  So I think it is certainly possible that

3  opinions could involve members of the public that would fall

4  within categories one, two, or four.

5        THE COURT:  Is that all they need to be able to

6  surmount the argument that you just made?  It's plausible that

7  these categories could involve private rights so even if you

8  are right that private rights is required, doesn't this case go

9  on?

10        MR. SCHWEI:  No, Your Honor, it wouldn't.

11     So the private rights argument I think it would be

12  captured -- it would be captured by category three which is

13  expressly about opinions adjudicating private rights.  So one,

14  two, and four would drop out.

15     Category three would be all that's left for decision.

16  Obviously we think even that category still fails under EFF and

17  Renegotiation Board and all of the other cases, but I think

18  that is the only category that would need to go on in light of

19  the limitation of 552 (a)(2).

20        THE COURT:  I see what you're saying.  Thank you.

21     Mr. Abdo.

22        MR. ABDO:  Thank you, Your Honor.

23     I have a list of --

24        THE COURT:  I know, perhaps too long.  I'm sorry.

25        MR. ABDO:  No, I understand, but I also want to be

1    responsive to the Court's questions.

2         Maybe I could start out by being very, very clear about

3    the overall nature of our claims.

4         So there are two claims at the highest level that the

5    amended complaint makes.  I want to make sure that the

6    difference between them is clear.

7         The first argument that the amended complaint makes is

8    that the formal written opinions of the OLC are binding,

9    presidential and meant to guide future conduct and for that

10   reason alone constitute working law.

11        If the OLC concludes that an agency may not do X, that

12   decides, the agency is no longer free at that point to take a

13   different view on the law of X or the policy X.  For that

14   reason alone, consistent with the D.C. Circuit opinions

15   constitutes working law.

16        The second overarching argument that the complaint makes

17   is much narrower, relates to the four categories we've been

18   talking about as deciding policy by virtue of their legal

19   determinations and by virtue of the unique circumstances of

20   those four categories.

21        In other words, our view is that those four categories

22   constitute working law even accepting Your Honor's prior

23   interpretation of the EFF.

24             THE COURT:  Yes, I did interpret both the complaint,

25   the amended complaint and your opposition brief to be

1 requesting that I reconsider my view of EFF and that's all

2 bound up in your first --

3          MR. ABDO:  That's right.

4          THE COURT:  -- argument.

5          MR. ABDO:  I just want to make absolutely clear if it

6 wasn't already, nothing about our argument with respect to the

7 categories turns on --

8          THE COURT:  Yes.

9          MR. ABDO:  -- on taking a different view of EFF.

10     So with respect to the categories, I want to make just a

11 couple of points.  The government's argument appears to be that

12 law can never decide policy because there's always a gap

13 between law and policy.  We just think there are three

14 fundamental problems with that argument.

15     First, as an empirical matter is that it simply isn't

16 true.  If you look at the examples of OLC opinions that we've

17 attached to the amended complaint, there are very clear

18 circumstances in which the OLC's resolution of a legal question

19 itself at the moment of issuance resolves a policy question.  I

20 want to tell you two of the opinions.

21          THE COURT:  As you gear up to do that, so you do

22 concede that your request is that the OLC put these out at the

23 moment of issuance?

24          MR. ABDO:  That's correct.

25          THE COURT:  All right.

1       MR. ABDO:  So two quick opinions.  The Department of

2   Labor opinion that we've been discussing decided at that

3   moment, the moment it was issued, it rejected an order that the

4   Department of Labor had issued.

5       The Department of Labor was not haggling over what policy

6   to embrace.  They had embraced a policy.  They had issued an

7   order requiring the Department of Veteran Affairs to pay back

8   wages to 11 specific physicians in the course of their

9   administrative adjudication.

10      The OLC's opinion reversed that order.  No different than

11  a judicial opinion reversing that order.  So I respectfully

12  disagree with  Mr. Schwei's position that an OLC opinion can

13  never be judicial or quasi judicial in nature.  The opinion in

14  that case reversed the Department of Labor's order.

15      Now it is true that the opinion went on to say this

16  opinion does not bind the Department of Labor or the VA in

17  making future decisions consistent with this opinion.  And it

18  may very well be.

19          THE COURT:  I'm sorry, I'm just trying to situate

20  this discussion in the two big categories you just laid out in

21  terms of the nature of your claims.  I thought we were talking

22  about the four categories.

23          MR. ABDO:  We are, that's right.

24          THE COURT:  But I sort of see the argument you just

25  made as actually fitting into the first conceptual bucket

1  insofar as you seem to be persistently and consistently

2  rejecting EFF's suggestion that no matter what the legal

3  opinion is, whether it's binding and controlling or not it only

4  becomes the working law when it is adopted.

5       So fine, Department of Labor rejects.  They overrule, you

6  can't issue that order.  Some would interpret EFF to say that

7  unless and until DOL acts pursuant to that decision of the OLC,

8  you can't have working law in the way that you've articulated.

9            MR. KLAYMAN:  I don't think that's what EFF said.  I

10  don't think you have to agree with our full interpretation of

11  EFF to accept that.  At most EFF drew a distinction between law

12  that doesn't dictate policy and law that does.  And in the

13  context of the four categories we've identified, we believe

14  that the legal determinations of the OLC dictate policy.

15            THE COURT:  But the policy has to then be adopted.

16  Even if the law, this is where he keeps going back to your why

17  does it have to go up on the website at the moment of issuance.

18       Fine, the law gives the agency essentially no choice but

19  to enact policy consistent with it.  But one could read EFF as

20  indicating that they have to actually do it in order for that

21  to be the critical moment of it becomes working law.

22            MR. ABDO:  Respectfully, I don't think you can read

23  EFF that way for two reasons.  One, to read EFF that way would

24  suggest that the Supreme Court's opinions in many context don't

25  actually decide policy disputes.

1    So in the example we cite in our opposition brief, it's

2  the Ledbetter case.  Goodyear v. Ledbetter.  On the

3  government's interpretation, the Supreme Court's decision that

4  Ms. Ledbetter could not recover; did not decide any policy

5  question because Goodyear might later decide in the under

6  related context and nonetheless give her relief.

7         THE COURT:  You seem to be elevating the status of

8  OLC to battle the Supreme Court in a way that I'm not sure it

9  is.

10        MR. ABDO:  Internally it is and it's entirely

11  undisputed that within the executive branch the OLC's opinions

12  have the force and effect of the Supreme Court opinion.

13  There's no dispute about that.  That's the extensive history

14  that's set out in the amended complaint and the government does

15  not dispute that.  They do not dispute that within the

16  executive branch, OLC opinions have the force and effect of

17  Supreme Court opinions unless they're overruled either by the

18  President or the courts.

19        THE COURT:  Here's where I'm struggling, right.  I'm

20  looking at EFF.  I hear your statements.  I think you may have

21  a point until I'm at page 7 where the D.C. Circuit is

22  interpreting Sears; saying that the Supreme Court decision in

23  Sears explain -- I mean the FOIA agencies must disclose their

24  working law.  And it talks about how an agency is not permitted

25  to develop a body of secret law.  And then referencing it's

1  own, this is the D.C. Circuit's own I guess Schlefer opinion.

2       MR. ABDO:  Right.

3       THE COURT:  The D.C. Circuit says; therefore, an

4  agency must disclose quote, "binding agency opinions and

5  interpretations" end quote, but then this is the key, that the

6  agency actually applies in cases before it.

7       So your position makes sense to me if it just said an

8  agency must disclose binding agency opinions and

9  interpretations, but it doesn't.  It says that the agency

10  actually applies in cases before it which seems to give some

11  life to the government's argument that we have to have action

12  on the part of the agency in order to have a policy

13  determination in a way that means they don't have to issue

14  their opinions as soon as they're written.

15       MR. ABDO:  So again, maybe two observations in

16  response.  One is that in the categories that we've identified

17  an agency has no choice, but to take that conduct.  So in the

18  context of the Department of Labor opinion, the OLC's opinion

19  effectively reversed that order.  The Department of Labor had

20  no choice.  So that's observation one.

21       The second one is that I don't think you can give that

22  sentence the interpretation Your Honor is suggesting without

23  making nonsense of half a dozen D.C. Circuit opinions that made

24  clear, expressly multiple times over the course of decades,

25  that a legal determination can constitute working law even when

1    it precedes a working determination.

2          THE COURT:  It's not about the timing.  It's not

3    about the timing.  You keep suggesting that there's a conflict

4    or that my interpretation is inconsistent with the D.C.

5    Circuit's precedence because they have said that you can have

6    working law because the opinion comes before.  I accept that.

7    The opinion can come before.

8       The question is has an agency actually applied it and then

9    the way I read this, the way I understand EFF, is that you have

10   to have some adoption by the agency of that opinion in order

11   for it to be working law.

12         MR. ABDO:  Again, I would just, I don't think you can

13   reconcile that view with the past D.C. Circuit opinions.

14      In Schlefer itself; for example, the maritime

15   administration opinions that were issued, nobody argued that

16   the agency had gone through some process of adopting those

17   opinions.  The analysis --

18         THE COURT:  Again I'm not talking about process.  I'm

19   talking about whether the agency ultimately acts consistently

20   with it such that they're either implicitly or explicitly

21   adopting that view.

22         MR. ABDO:  Or even acted on them.  In Schlefer and in

23   the other cases the D.C. Circuit made clear that it's not

24   relevant that a futuristic decision maker --

25         (Court Reporter's computer malfunctioned, recess taken

1   at 12:10 a.m.)

2        (Proceedings resumed at 12:26 p.m.)

3        THE COURT:  You were explaining to me why I was

4   putting too much stock into the quote from Schlefer.

5        MR. ABDO:  That's right, thank you, Your Honor.

6        I think the quote was I'm not sure it was Schlefer or

7   Sterling Drug.  I don't think that quote can be read for the

8   proposition that for a final legal determination you have to

9   wait until an agency actually applies it in a particular case

10  for it to be considered working law.

11       I think the upshot of that quote and I think I'll read

12  from another D.C. Circuit opinion in a moment to corroborate

13  it.  The question is whether the opinion has operative legal

14  effect.

15       If you look at the Tax Analyst One case.  I think it's an

16  important case in this respect.  There the D.C. Circuit was

17  considering field service advice memoranda issued by the Office

18  of Chief Counsel to IRS field officers.  This is what the D.C.

19  Circuit said.

20       It said the field officers may make initial decisions with

21  respect to individual taxpayers and those decisions may not

22  necessarily agree with the conclusions contained in the field

23  service advice memoranda.  But the structure and purpose of the

24  FFA systems reveal that the national office in issuing this

25  memoranda is attempting to develop a body of coherent,

1  consistent interpretations of the federal tax laws nationwide,

2  and that was held to be enough.

3       I would note something else in that case.  The OCC in that

4  case occupied similar structural positions to the OLC in  this

5  one.  The government has made a lot of the fact that the OLC is

6  a separate agency from the agencies it is issuing this advice

7  to.

8       We don't think that matters for a number of reasons

9  including the fact that the OLC's legal opinions are supreme

10  even to the legal determinations of an agency general counsel

11  or even the agency head.  But to the extent that you think that

12  separation matters, that same separation was the case in Tax

13  Analyst One.

14       THE COURT:  What does EFF say about Tax Analyst One?

15  I'm just a few paragraphs later from the quote that I focused

16  on before.  They addressed this very case.  So it's not a

17  situation as though the D.C. Circuit was unaware of your

18  interpretation.  And they seem to suggest that the memoranda in

19  that case was advisory, but it revealed that the national

20  office in issuing these memoranda is attempting to develop a

21  body of coherent and consistent interpretations of federal tax

22  law, that the agency itself was using the memoranda in that.

23       MR. ABDO:  But I want to be clear about that case.

24  The OCC, the Office of Chief Counsel in that case was not

25  actually part of the IRS and the D.C. Circuit opinion makes

1  that clear.

2      The Office of Chief Counsel is a formal independent body

3  from the IRS, but the IRS relied on the opinions that the

4  Office of Chief Counsel issued in precisely the same way that

5  every federal agency relies on.  And has in fact been bound to

6  rely on for decades.

7          THE COURT:  How do you know that?  Isn't that the

8  very point I'm making that they have to actively rely on them

9  in order to be counted as adopted for the purpose of being the

10  agency's working law?

11          MR. ABDO:  In a categorical matter federal agencies

12  when they get a formal written opinion cannot disregard it.  It

13  resolves the dispute before them.  They have no choice, but to

14  consider them, to consider them their final legal position.

15  But I want to make --

16          THE COURT:  Let me just say if you are right, then

17  why did EFF come out the way that it did?

18          MR. ABDO:  I think there are a couple of ways of

19  distinguishing EFF.  Some of these fall on the line of, on the

20  side of our overall argument and some of them fall on the side

21  of our narrow argument with respect to the categories.

22      So with respect to our broader argument that the OLC's

23  formal written opinions constitute working law, I think that

24  the best way to understand EFF is as having turned on the

25  unique characteristics of the opinion in front of it; as having

1    been an opinion that examined a legal question that was only

2    relevant with respect to retrospective conduct, not forward

3    looking.

4        If you look at working law cases especially the Schlefer

5    case.  It makes clear that a critical factor in deciding

6    whether something is working law is whether it is meant to

7    guide future agencies.

8            THE COURT:  Let me tell you why that doesn't make

9    sense to me conceptually.  This whole world of Exemption 5 and

10   deliberative process is all about protecting predecisional

11   conduct.

12       So to the extent that you're characterizing the memo that

13   they protected in this case as only being about retrospective

14   discussion, that's inconsistent with what we understand to the

15   very items that are suppose to be protected in this world.

16   Given that these things are being generated to inform future

17   deliberations because that's what makes them entitled to

18   protection under Exemption 5.

19           MR. ABDO:  Let me be clear about what I mean by

20   retrospective in the context of that particular opinion.  The

21   FBI, the opinion of the FBI solicited in the EFF case.  The FBI

22   solicited that opinion not because it was considering relying

23   on some surveillance authority in the future.  They did not

24   solicit it to guide their future conduct as to the conduct of

25   surveillance.

1    They solicited it to respond to a retrospective inquiry

2 into past conduct that the Inspector General thought might have

3 been illegal.

4         THE COURT:  For what purpose?

5         MR. ABDO:  To respond.  This is clear on the record

6 in that case.

7         THE COURT:  To develop a response, you say.

8         MR. ABDO:  To develop a response to the IG inquiry.

9         THE COURT:  There was no world in which that was

10 going to inform how they proceeded with respect to this issue

11 in the future.

12    The purpose of the IG report, one could argue, was to

13 inform that the agency as to what it had done wrong and

14 therefore needed to correct.  So, yes, they wanted to respond

15 to it, but the suggestion that that had nothing to do with the

16 agency's own thoughts about how it was going to behave in the

17 future seems a little far fetched.

18         MR. ABDO:  I don't think that's right.  The working

19 law doctrine turns heavily on the specific context at every

20 opinion.  The D.C. Circuit has made clear that an identical

21 opinion might be working law or might not be depending on for

22 example the direction in which it flows.

23    That the exact same opinion if it flows upward to, for

24 example from a general counsel to an agency head, who has

25 ultimate authority to reject that advice.  That even if the

1   exact same opinion that might in other context flow downward to

2   field officers, who would have no choice but to implement it,

3   that that would decide whether it's working law.

4           THE COURT:  Why does that undermine rather than help

5   your position.

6       The flow argument is about the extent to which it's being

7   used to inform policy.

8           MR. ABDO:  I don't think that's right.  In the D.C.

9   Circuit, the past D.C. Circuit cases the operative question was

10  does it, does it flow from a body charged with interpreting law

11  to one charged with implementing it.  That's the same with

12  respect to the OLC.  There is no --

13          THE COURT:  I'm sorry.  So what, if it flows from a

14  body interpreting law to one that is implementing it, then it

15  is or is not?

16          MR. ABDO:  It is or may be working law.

17          THE COURT:  It may be.

18          MR. ABDO:  Right.

19          THE COURT:  It may be, but then there are other

20  factors that determine whether it is.

21          MR. ABDO:  There are other factors.  The primary

22  factors if you look at the cases and these are the factors we

23  list in our brief.  Whether it's binding, whether it forms a

24  system of precedence, whether it flows downward in the way that

25  I just described, whether it's meant to guide conduct in the

1  future, as opposed to being for example retrospective in the

2  way that the opinion in the EFF case was, and also just reading

3  the tone of the opinion.

4       THE COURT:  Why don't you have as a factor whether

5  the agency ultimately adopts it?  That's 15 times EFF says

6  that.  Your factors all relate to the nature of the opinion

7  which is fine, definitely something people look at.  But

8  there's no question that there's something about whether or not

9  the particular opinion is being issued by an agency that has

10  the authority to establish the policy for the other agency.

11       MR. ABDO:  So again, two points.  I think adoption

12  was relevant in EFF because the opinion was retrospective.

13       It was not meant to guide future conduct in the way that

14  the formal written opinions that we're talking about are.  If

15  it had been, if it had been an opinion that was issued exactly

16  like the Coastal States opinions, exactly like the opinions in

17  past One and Two, which there was no active adoption.  They

18  were issued and field officers could rely on them.  They might

19  even disagree with them in those cases, but they were

20  understood why it needs to be the law of the agency.  Then

21  that's why that is relevant in EFF.

22       Even if you --

23       THE COURT:  So you're saying in a world where it's

24  retrospective and it was generated just to talk about a

25  response to an OIG opinion, no one ever foresaw that it was

1  going to be used for future policy.  Then you have to adopt it

2  in order for it to be working law?

3        MR. ABDO:  Because then at the moment of issuance

4  it's not working law.  At the moment of issuance it's something

5  else. It is in fact confidential advice.

6      But I want to make, if I can, make clear that you don't

7  have to agree with that point to agree with us on the

8  categories.  The categories and I think there's a conceptual

9  disagreement between the government and us about this.

10 Especially with respect to the opinion issued deciding private

11 rights.

12     There's no meaningful distinction between those opinions

13 and a high level administrative review.  In the Department of

14 Labor for example, in that case, the Department of Labor issues

15 an order and that order might, you know, ordering the VA to pay

16 back wages to these 11 physicians.  That order might or might

17 not actually be applied in the future.  There's no question

18 that it might be.  There's no question that at that moment it

19 was issued the Department of Labor had the authority to decide

20 that question and did, at that moment constitute working law.

21     There's no distinction between that process and OLC's

22 involvement in which it is asked to resolve conclusively the

23 legal rights of the 11 individuals in front of them.  The

24 moment it issues its opinion --

25        THE COURT:  Isn't that only just a function of the

1  fact that it was reviewing an action already taken by the

2  agency?

3          MR. ABDO:  Well, I think that's emblematic of that

4  category.  That's why these categories we think are --

5          THE COURT:  Which category are we talking about?

6          MR. ABDO:  That's the category of deciding private

7  rights.  In that category, in the other first three that we've

8  been discussing, that is true for all of those where there's

9  no, as I said before, no daylight between the legal decision

10 and a policy one and the agency is not at liberty to disregard

11 the legal conclusion and act differently.

12     So at the moment it is issued --

13         THE COURT:  Do they have to act at all?  What if the

14 question on the table before OLC pertains to the agency's

15 determination if they're going to act in some way or not?  We

16 would like to do X says the agency.  Maybe it's in the context

17 of a private adjudication.

18     Mr. Schwei said that there are lots of policy

19 determinations.  Sometimes OLC only speaks to the ability to do

20 one.  There's lots of different options on the table before the

21 policy makers, so hypothetically the policy makers say to OLC

22 we would like to do this then and they ask for an opinion.

23         MR. ABDO:  I don't think those opinions would be

24 formal written opinions of the OLC or fit within the categories

25 we've been discussing because the Barron memo makes clear that

1   the OLC considers a request for a formal written opinion only

2   if there's a concrete and ongoing legal dispute.  I don't have

3   the memo in front of me, but they won't consider one as a

4   general matter where an agency policy maker might decide to go

5   in a different direction.

6        They resolve those questions as a general matter when the

7   agency has already made a policy determination.  That is even

8   more clear in the context of these four categories where there

9   is a concrete policy dispute presented to the OLC for

10  resolution on the basis of a legal disagreement.

11            THE COURT:  So you're saying these categories and the

12  world of formal opinions apply only to the resolution of

13  disputes.  Not to informing policy makers outside of the

14  context of the dispute?

15            MR. ABDO:  With respect to the categories, yes.  With

16  respect to the broader argument about formal written opinions,

17  our position is not that the OLC -- the OLC in the Barron memo

18  doesn't say one hundred percent of its formal written opinions

19  are issued in that context, but they say that that is -- they

20  clearly say that's the general rule of the OLC in deciding

21  whether to issue a formal written opinion.

22       There very well may be examples where an OLC formal

23  written opinion wouldn't constitute written law under our

24  understanding of written law.

25       We're not asking the OLC to process those pursuant to

1   FOIA.  But as a general matter, if you look at the examples

2   you've cited and the Barron memo, that is the rule of the OLC's

3   consideration.

4        If I could turn for a moment to a related point.  The

5   government, Mr. Schwei made the argument that the OLC's

6   opinions but for the possibility that there might be working

7   law are attorney client privilege.  I think that's wrong.

8        If you look at the actual opinions it becomes very and you

9   look at the Barron memo, it becomes very clear that the OLC is

10  acting not as an advocate, but as an arbiter.  The relationship

11  it has with the agency's soliciting advice is not one of an

12  attorney client nature.

13       In an attorney client relationship, the client owns

14  confidentiality.  That is an ethical obligation of lawyers

15  representing clients.  But when you go to the OLC, the OLC's

16  memo, the Barron memo makes it very clear that the OLC itself

17  decides whether something becomes public and, in fact, has the

18  presumption of publishing what it considers in its sole

19  determination to be worthy of publication.

20            THE COURT:  Yes, I understand.  I'm not so interested

21  in this because attorney client is another basis.

22       I'm thinking about deliberative process and the extent to

23  which that has become a basis in the law under Exemption 5 that

24  mirrors reverse of our question that we have here today.

25            MR. ABDO:  So let me step back for one moment and

1    talk about EFF and where our two theories fit into possible

2    interpretations of EFF.

3              THE COURT:  All right.

4              MR. ABDO:  I think there are three ways you can

5    interpret EFF.  The first is the way that the government

6    interprets EFF which is a holding that legal determinations can

7    never constitute working law because they can't decide policy.

8    That interpretation of EFF I think cannot be correct because it

9    directly contradicts the prior D.C. Circuit opinion in which

10   legal determinations did constitute working law even if later

11   policy makers could disregard them.

12        It's broad interpretation would reverse cases like Coastal

13   States, Tax Analyst One, Tax Analyst Two and Schlefer quite

14   directly.  So I don't think you can adopt that interpretation

15   of EFF.

16        The second interpretation of EFF is what I understood this

17   Court to be articulating in its decision which is that a legal

18   decision may constitute working law, but only if it in fact

19   determines or constitutes policy.

20        We disagree with that for the reason we explain in the

21   brief and I've discussed this morning and early afternoon, but

22   even if you adhere to that understanding of EFF, we think the

23   four categories that we've highlighted are ones in which legal

24   determinations do determine or do constitute policy because

25   there is no daylight between the legal determination and the

1    policy outcome.

2        And you might think of it this way.  The government says

3    if you take a single option off the table, if a legal opinion

4    takes a single option off the table, but multiple ones remain

5    that doesn't constitute working law.  But in these four

6    categories, the OLC isn't taking a single option off the table.

7    They're leaving only one option on the table.

8            THE COURT:  I understand.  I get the thrust.  The

9    third is --

10           MR. ABDO:  The third is the one that we think is

11   consistent with the previous D.C. Circuit opinions which is

12   that working law even if it doesn't directly determine

13   implementation for policy can constitute -- sorry let me start

14   over.

15       Legal opinions even if they do not directly determine

16   policy, can constitute working law when they exhibit the five

17   characteristics that we think emerge from the working law

18   cases; when they're binding, when they're presidential, when

19   they flow downward; when they guide conduct in the future and

20   when they're written in a conclusive conditional tone.

21           THE COURT:  Isn't the sixth perspective?  Was that in

22   there?

23           MR. ABDO:  Four was guide future conduct.  That was

24   my other way of saying perspective.

25           THE COURT:  Sorry.

1          MR. ABDO:  And if you adhere to your original

2    interpretation of EFF, we think the four categories still

3    qualify.  If you agree with our interpretation of EFF, then we

4    think the OLC's formal written opinions more broadly also

5    qualify.

6       I want to be clear that our position isn't that the

7    reading room provision requires the OLC to disclose all of its

8    formal written opinions.  It has to process them pursuant to

9    FOIA.  There may be other exemptions which apply.

10          THE COURT:  Yes, no, I understand.  Let me ask you

11   about the government suggestion that even if you are right with

12   respect to their, with respect to the working law analysis.

13   The real defending the interest is the agency that received

14   their opinion.  Why aren't you suing them?  Don't you have to?

15   Aren't they the ones that have the 552(a)(2) obligation?

16          MR. ABDO:  I don't think so.

17       The question is whether the document in the possession of

18   OLC is or is not working law and we think that the formal

19   written opinion that we've asked for including especially the

20   categories are the working law of the government and therefore

21   must be disclosed.

22       If you want doctrinal support for that, I think the

23   closest case is Tax Analyst One in which the requestor, Tax

24   Analyst sued the IRS for opinions of the Office of Chief

25   Counsel.  Even though there's this gap in the relationship, the

1  D.C. Circuit held that they were working law.

2          THE COURT:  I'm sorry, but they sued the IRS, right?

3  That's their point.

4          MR. ABDO:  I'm sorry, the Treasury Department.  Maybe

5  I had my facts wrong.  Let me go back and look at that.

6          THE COURT:  I guess my question is why don't you have

7  to sue the recipient agency rather than the OLC?

8          MR. ABDO:  Simply because the documents are working

9  law when they're issued by the OLC and they're working law

10  today in the possession of the OLC and that should be enough.

11          THE COURT:  All right.

12          MR. ABDO:  I want to make maybe two more points with

13  the Court's indulgence.

14          THE COURT:  Yes.

15          MR. ABDO:  The first is with respect to private, the

16  government's interpretation of (a)(2) as applying only to

17  private parties.

18      First, that interpretation is inconsistent with the text

19  of (a)(2) which in (a)(2)(A) and (a)(2 (B) do not mention the

20  limitation that the government proposes; (a)(2)(C) mentions a

21  related limitation to --

22          THE COURT:  (a)(2)(A) has the thing about

23  adjudicating cases.  Why isn't that what they're talking about?

24          MR. ABDO:  It does, but I don't think that language

25  refers to private parties either.

1    The only opinion we have on point on what final opinions

2  made in the adjudication of cases means is the American

3  Immigration Lawyers Association case from the D.C. Circuit in

4  2016 in which the D.C. Circuit held that opinions may qualify

5  as such if an outside party has a right to trigger an agency

6  process and the process that results is an adjudicative one

7  resulting in a final opinion.

8    Here we think outside parties do, meaning the other

9  federal agencies have a right to trigger profit both by statute

10  and by executive order.  There's an executive order we have

11  been talking about which directs agencies with disputes to the

12  OLC.  There's also 28 U.S.C. 512 which entitles agencies to

13  require an opinion of the attorney general and that's the

14  general statutory authority under which --

15        THE COURT:  I see and so you interpret that as to the

16  extent the outside person is triggering that that's going to be

17  an adjudication of case.  It doesn't have to involve private

18  rights?

19        MR. ABDO:  That need not involve private rights.

20        THE COURT:  Need not.

21        MR. ABDO:  Need not.  The D.C. Circuit used the

22  phrase outside party.  We think that's consistent with the APA

23  which is where FOIA falls and the parties, for purposes of the

24  APA, includes a federal agency and you can look at the

25  definition of party under APA.

1          THE COURT:  All right.

2          MR. ABDO:  But even if you adopt, we think it's also

3    consistent with the case law.  The Sears and Coastal States for

4    example make clear that the purpose of the working law doctrine

5    is not just to force agencies to disclose secrete law made in

6    its dealings with the public, but also and this is in the

7    language of Coastal States; secret law used by it to discharge

8    of its regulatory duties.  That makes obvious sense.  Because

9    agencies, as Your Honor point out, I'm sorry.  The public, as

10   Your Honor pointed out earlier, have a very obvious interest in

11   understanding how agencies interpret the statutes that they're

12   charged with implementing or that obligate them to take on

13   certain duties.

14       It's also inconsistent with public citizen in which the

15   D.C. Circuit applied the working law doctrine to the Office of

16   Management and Budgets Legislative preclears policies which had

17   absolutely nothing to do with private rights, but just with the

18   question of whether agencies had to submit their budgets to

19   Congress for preclearance.

20       And finally even if you think that (a)(2) is limited to

21   private parties, many of the OLC opinions that we've pointed to

22   do arise in adjudication of private rights.  They arise in the

23   context in which an agency is adjudicating a private right and

24   much like this Court might in some circumstances certify a

25   question of law to a state court, the agency certifies a

1   question of law to the OLC that has the effect of defining the

2   scope of private rights in that adjudication.  And the OLC's

3   opinion in that context is properly understood an opinion made

4   in the adjudication of a case.

5        None of that ultimately, nothing ultimately turns on the

6   language of (a)(2)(A) in particular though because we think all

7   of the OLC  opinions formal written ones that we've been

8   talking about constitute statements of policy.

9              THE COURT:  So you are really under (a)(2)(B)?

10             MR. ABDO:  We think they all fall under (a)(2)(B) and

11  we think maybe many also qualify under (a)(2)(A).

12             THE COURT:  Under both of your categories, not just

13  the four categories, under your overall theories, all of the

14  formal opinions you think are (a)(2)(B) too?

15             MR. ABDO:  That's correct.

16             THE COURT:  Okay.

17             MR. ABDO:  One final point.  The government argues

18  that the consequences would be negative for government decision

19  making if the Court were to rule that OLC's opinions must be

20  processed for disclosure pursuant to the renew provision and I

21  don't think that's right.

22       An order recognizing that the OLC's opinions in the

23  context we've been describing are working law would serve the

24  critical purposes of FOIA exposing final government decisions

25  to public scrutiny.

1      The government's view appears to be that even disclosing

2   those final legal opinions would threaten the interest, but

3   that's the very argument that Sears itself rejected.  In Sears,

4   the Supreme Court said for truly deliberative documents there's

5   an interest in confidentiality.  But once an agency arrives at

6   a final legal position or a final working law position, the

7   public's interest in disclosure overrides the government's

8   interest in secrecy.

9          THE COURT:  No, I understand, but your position on

10   the three possibilities of interpretation of EFF would be that

11   the agencies themselves have made such a final determination

12   essentially through OLC that OLC speaks for them with respect

13   to this issue whatever it is.

14          MR. ABDO:  As a factual matter, the OLC does speak

15   for the federal agency.  It is supreme to the General Counsel's

16   agency and to the agency head him or herself in deciding legal

17   questions.  The OLC's views are supreme and the government

18   doesn't dispute that.

19          THE COURT:  How is that flow working with your

20   criteria number 4?

21          MR. ABDO:  It's downward.

22          THE COURT:  It's downward.

23          MR. ABDO:   It's downward.  To me downward from an

24   entity with the legal authority to decide the legal question

25   presented and that the same relationship of flow as the

1    opinions in Tax Analyst One and Two and Coastal States.

2         I also point out that nothing in a ruling in our favor

3    would prevent agencies from actually obtaining confidential

4    legal advice.  The reason why agencies seek a formal written

5    opinion from the OLC as opposed to informal advice or as

6    opposed to confidential legal advice from their own general

7    counsel.  The reason why they seek a formal written opinion is

8    because a formal written opinion carries with it certain

9    benefits for the agencies.

10        For one, it removes the accountability from the agency

11   from having to decide on a legal question.  The OLC takes on

12   the responsibility for resolving the legal question and the

13   agency can rely on that in its dealings with Congress, in

14   defending its actions or the other executive branch agencies.

15        THE COURT:  And your point is it doesn't have to,

16   that it becomes working law from the moment of issuance.  We

17   don't have to wait until the agency actually relies on it in

18   order for it to be characterized as such?

19        MR. ABDO:  That's right.

20        THE COURT:  All right.

21        MR. ABDO:  By virtue of soliciting it, the agency has

22   taken on the obligation of conforming its conduct to the

23   opinion that results.

24        THE COURT:  But you do concede, maybe you don't, that

25   there is some, through the Barron memo criteria that the OLC

1   itself applies in determining whether or not it would give such

2   a formal written opinion?

3         MR. ABDO:  That's right.  The OLC has standards for

4   deciding whether something is appropriate for a formal written

5   opinion versus something else. And the standards resemble case

6   for controversy requirement.  If you read the opinion what

7   emerges from the three paragraphs dedicated to this, it's

8   something akin to an Article 3 case for controversy requirement

9   where there's an actual policy dispute either between agencies

10  or within an agency that turns on a legal one.

11        Our understanding is that if a dispute or a request does

12  not rise to that level, the OLC doesn't issue a formal written

13  opinion.  It may issue informal advice and, you know, that

14  informal advice, as we understand it, is not, does not form

15  part of the same system or precedent the OLC maintains in its

16  formal written opinions.  It's not cited in future formal

17  written opinions as the precedent of the OLC or the precedent

18  of the executive branch.

19        And the agencies have that option if they want truly

20  confidential legal advice that's meant to be advisory, but not

21  binding and respectively controlled in the way that the formal

22  written opinions are.

23        THE COURT:  I understand, thank you.

24      Mr. Schwei, I'll give you the last word.

25        MR. SCHWEI:  Thank you, Your Honor.  I'll try to be

1    brief.

2         I do think it's important to clarify exactly what the

3    government's view is of the working law framework and how that

4    matches up with the D.C. Circuit's cases.

5         My colleague described our position as being the legal

6    interpretations can never decide policy.  He says that would be

7    inconsistent with Tax Analyst One, Two and other cases.  That

8    is not our position.

9         Our position is that agencies with policy making authority

10   and offices within those agencies that have decision making

11   authority can still decide things that become working law.

12   That's the situation of Tax Analyst One and Two and Sterling

13   Drug.  But that is fundamentally different than what OLC does.

14   Because OLC lacks that decision making authority or policy

15   making authority and the reason we know that is the D.C.

16   Circuit's EFF decision where it says quote:  This is from 739

17   F.3d 8.  Quote, "OLC did not have the authority to establish

18   the working law of the FBI.  OLC, therefore, did not explain

19   and apply established policy."

20        So the distinction that we see that the D.C. Circuit drew

21   in EFF between all of the prior cases is whether OLC actually

22   has policy making authority.  They said OLC did not and that's

23   what distinguishes OLC from the types of opinions at issue in

24   all of the other cases which came from offices within those

25   agencies or within sort of the structure, big picture structure

1  of those agencies that actually had decision making authority

2  and that's exactly what this Court held in its prior opinion in

3  interpreting EFF.

4      So respectfully, I think the three sets of options that my

5  colleague set up are not accurate because they're --

6          THE COURT:  I don't really appreciate the distinction

7  between what you just said and his option one; that to the

8  extent that you read EFF as essentially foreclosing the

9  opportunity for OLC to create the working law of an agency by

10  virtue of its role as mere legal adviser; isn't that what he

11  said you say?

12      In other words, I wrote down legal determinations cannot

13  be working law because they can't decide policy is what he

14  characterized your opinion to be and I sort of felt like that's

15  what you just said.

16          MR. SCHWEI:  I guess I'm drawing distinction between

17  OLC as compared to the component within agencies like Tax

18  Analyst One and Tax Analyst Two that provided advice.  Because

19  the key distinction from the advice provided by those offices

20  was that they had actual authority to set the agency's policy

21  and so their interpretation could become working law.

22          THE COURT:  Even the outside one?  He's been very

23  focused on his Tax Analyst One which I don't have before me,

24  but he says the Office of Chief Counsel was not inside the tax.

25          MR. SCHWEI:  I think it's a little complicated

1  because the office viewed itself as independent, but I think

2  big picture they were all within the same umbrella of the

3  Treasury Department.  I'm not a hundred percent sure, but I

4  don't think it really matters whether it's inside or outside.

5      The Renegotiation Board case makes clear that because b(5)

6  talks about interagency memoranda, it also contemplates

7  privileged documents from one outside agency to another.  The

8  key distinction that we see between Tax Analyst One and OLC is

9  that in Tax Analyst One that office had actual authority to set

10  the agency's policy.

11      That's how the D.C. Circuit in EFF itself described Tax

12  Analyst One and then went on to say that case is not

13  dispositive here because OLC lacks that same decision making

14  authority.  That same policy making authority.

15      So that's the distinction I would draw between OLC as an

16  entity and the entities at issue in Tax Analyst One, Two and

17  Sterling Drug.

18          THE COURT:  So you read EFF to the extent that there

19  is no agency that OLC has the authority to establish the policy

20  for.  You read EFF as taking OLC completely out of the working

21  law business?

22          MR. SCHWEI:  I think it is correct that OLC does not

23  create working law.  OLC provides predecisional advice.  OLC

24  does not have supervisory authority over client agencies and

25  does not determine how those agencies actually act.

1    There will always be an intermediate step where the policy

2  making agency must do something to give operative legal effect

3  which is what the Supreme Court focused on in Renegotiation

4  Board and why the comparison between a court and OLC is inapt

5  because judicial decision have immediate operative effect.  OLC

6  opinion have no effect until a policy making agency actually

7  does something.

8         THE COURT:  Can a policy making agency act anti

9  giving effect to an OLC opinion?  Isn't that what's suggested

10  at least with respect to the three categories; that we have a

11  world in which somehow the policy makers have indicated from

12  day one that OLC decides and with respect to this particular

13  dispute it's going to be what we implement?

14         MR. SCHWEI:  I think at most that would simply

15  establish that OLC's advice is controlling on the agencies, but

16  that the exact feature of OLC advice that the D.C. Circuit in

17  EFF said was not sufficient to bring it outside the

18  deliberative process framework.

19    I think OLC does not speak for federal agencies in the way

20  that the plaintiff is construing it.  OLC provides legal advice

21  to agencies.  The executive branch has developed since the

22  Judiciary Act of 1789 traditions and expectation that client

23  agencies will follow OLC's advice, but at the end of the day

24  OLC does not have supervisory authority over those policy

25  making agencies.  It cannot direct the policy making agency to

1   do something and that's really what working law is about.  It's

2   about directives to do something and all they can hang their

3   hat on as to how OLC has decisional authority are those customs

4   and traditions that the D.C. Circuit in EFF were insufficient

5   and frankly are designed to promote rule of law values and to

6   protect important constitutional values.

7         And I say that because we are construing here the scope of

8   the deliberative process privilege which is a uniquely

9   governmental privilege and I think it would be odd to construe

10  that privilege in a way that would discourage the creation of

11  these norms for OLC to be, for their legal advice to be treated

12  as binding on the executive branch.

13        THE COURT:  But Mr. Abdo down plays the concern.  He

14  says this is not a real risk because to the extent that you,

15  the Court, would be ruling in our favor in this case.  We're

16  only asking for formal written opinions which are being

17  solicited in a very particular context.  It's not one in which

18  you're seeking the kind of advice that you say is going to be

19  discouraged by a ruling in his favor.

20        So what do you say to that?

21        MR. SCHWEI:  I think the way they have framed the

22  scope of their complaint is an artificial construct.  The

23  feature that they argue as bringing the OLC opinions outside

24  the framework of the deliberative process privilege would be

25  true for many OLC opinions beyond the category of formal OLC

1  opinions.  There are informal advice documents that are also,

2  for which client agencies are also expected to comply with

3  OLC's conclusion.

4      So the limitation to only those formal opinions is really

5  only a feature of the way they pled their case.  It is

6  certainly not a feature of the scope of their legal argument

7  which would reach far broader than they contemplate here.

8           THE COURT:  Interesting.  All right, any other final

9  points?

10          MR. SCHWEI:  The last thing I would note is that they

11  construed the OLC opinion in EFF as retrospective.  We

12  addressed that subject on pages 5 and 6 of our reply quoting

13  the OLC declarant itself, certain phrases in the D.C. Circuit

14  opinion.  But I think as Your Honor's questioning pointed out,

15  it is fundamentally inconsistent with the D.C. Circuit's

16  holding that that document was predecisional to describe it as

17  addressing only retrospective conduct.

18     So I think the OLC opinion at issue in EFF is exactly the

19  type of opinion that they argue needs to be disclosed even in

20  their four categories.

21          THE COURT:  All right, thank you very much.

22          MR. SCHWEI:  Thank you.

23          THE COURT:  Interesting case.  I will take the motion

24  under advisement.

25          (Proceedings adjourned at 1:03 p.m.)

1                          CERTIFICATE

2        I certify that the foregoing is a true and correct

3   transcript, to the best of my ability, of the above pages, of

4   the stenographic notes provided to me by the United States

5   District Court, of the proceedings taken on the date and time

6   previously stated in the above matter.

7        I further certify that I am neither counsel for, related

8   to, nor employed by any of the parties to the action in which

9   this hearing was taken, and further that I am not financially

10  nor otherwise interested in the outcome of the action.

11  _____    _____

12  /s/ Crystal M. Pilgrim, RPR, FCRR    Date: October 30, 2018

13

14

15

16

17

18

19

20

21

22

23

24

25