

U.S. Department of Justice

Office of Legal Counsel

---

Office of the Assistant Attorney General     Washington, D.C. 20530

July 16, 2010

## MEMORANDUM FOR ATTORNEYS OF THE OFFICE

*Re: Best Practices for OLC Legal Advice and Written Opinions**

  By delegation, the Office of Legal Counsel (OLC) exercises the Attorney General's authority under the Judiciary Act of 1789 to provide the President and executive agencies with advice on questions of law. OLC's core function, pursuant to the Attorney General's delegation, is to provide controlling advice to Executive Branch officials on questions of law that are centrally important to the functioning of the Federal Government. In performing this function, OLC helps the President fulfill his or her constitutional duties to preserve, protect, and defend the Constitution, and to "take Care that the Laws be faithfully executed." It is thus imperative that the Office's advice be clear, accurate, thoroughly researched, and soundly reasoned. The value of OLC advice depends upon the strength of its analysis. OLC must always give candid, independent, and principled advice—even when that advice is inconsistent with the aims of policymakers. This memorandum reaffirms the longstanding principles that have guided and will continue to guide OLC attorneys in all of their work, and then addresses the best practices OLC attorneys should follow in providing one particularly important form of controlling legal advice the Office conveys: formal written opinions.

### I. Guiding Principles

  Certain fundamental principles guide all aspects of the Office's work. As noted above, OLC's central function is to provide, pursuant to the Attorney General's delegation, controlling legal advice to Executive Branch officials in furtherance of the President's constitutional duties to preserve, protect, and defend the Constitution, and to "take Care that the Laws be faithfully executed." To fulfill this function, OLC must provide advice based on its best understanding of what the law requires—not simply an advocate's defense of the contemplated action or position proposed by an agency or the Administration. Thus, in rendering legal advice, OLC seeks to provide an accurate and honest appraisal of applicable law, even if that appraisal will constrain the Administration's or an agency's pursuit of desired practices or policy objectives. This practice is critically important to the Office's effective performance of its assigned role, particularly because it is frequently asked to opine on issues of first impression that are unlikely to be resolved by the courts—a circumstance in which OLC's advice may effectively be the final word on the controlling law.

---

* This memorandum updates a prior memorandum, "Best Practices for OLC Opinions," issued May 16, 2005.

In providing advice, the Office should focus intensively on the central issues raised by a request and avoid addressing issues not squarely presented by the question before it. As much as possible, the Office should be attentive to the particular facts and circumstances at issue in the request, and should avoid issuing advice on abstract questions that lack the concrete grounding that can help focus legal analysis. And regardless of the Office's ultimate legal conclusions, it should strive to ensure that it candidly and fairly addresses the full range of relevant legal sources and significant arguments on all sides of a question. To be sure, the Office often operates under severe time constraints in providing advice. In such instances, the Office should make clear when it needs additional time to permit proper and thorough review of the relevant issues. If additional time is not available, the Office should make clear that its advice has been given with only limited time for review, and thus that more thorough consideration of the issue has not been possible.

On any issue involving a constitutional question, OLC's analysis should focus on traditional sources of constitutional meaning, including the text of the Constitution, the historical record illuminating the text's meaning, the Constitution's structure and purpose, and judicial and Executive Branch precedents interpreting relevant constitutional provisions. Particularly where the question relates to the authorities of the President or other executive officers or the allocation of powers between the Branches of the Government, precedent and historical practice are often of special relevance. On other questions of interpretation, OLC's analysis should be guided by the texts of the relevant documents, and should use traditional tools of construction in interpreting those texts. Because OLC is part of the Executive Branch, its analyses may also reflect the institutional traditions and competencies of that branch of the Government. For example, OLC opinions should consider and ordinarily give great weight to any relevant past opinions of Attorneys General and the Office. The Office should not lightly depart from such past decisions, particularly where they directly address and decide a point in question, but as with any system of precedent, past decisions may be subject to reconsideration and withdrawal in appropriate cases and through appropriate processes.

Finally, OLC's analyses may appropriately reflect the fact that its responsibilities also include facilitating the work of the Executive Branch and the objectives of the President, consistent with the law. As a result, unlike a court, OLC will, where possible and appropriate, seek to recommend lawful alternatives to Executive Branch proposals that it decides would be unlawful. Notwithstanding this aspect of OLC's mission, however, its legal analyses should always be principled, forthright, as thorough as time permits, and not designed merely to advance the policy preferences of the President or other officials.

## II. Opinion Preparation

While the Office frequently conveys its controlling legal advice in less formal ways, including through oral presentations and by e-mail, the best practices for preparing the Office's formal written opinions merit particular attention. These opinions take the form of signed memoranda, issued to an Executive Branch official who has requested the Office's opinion.

**A. *Evaluating opinion requests*.** Each opinion request is assigned initially to at least one Deputy Assistant Attorney General and one Attorney-Adviser, who will review the question

presented and any relevant primary materials, prior OLC opinions, and leading cases to determine preliminarily whether the question is appropriate for OLC advice and whether it appears to merit a signed written opinion. The legal question presented should be focused and concrete; OLC generally avoids providing a general survey of an area of law or issuing broad, abstract legal opinions. There should also be a practical need for the written opinion; OLC should avoid giving unnecessary advice, such as where it appears that policymakers are likely to move in a different direction. A written opinion is most likely to be necessary when the legal question is the subject of a concrete and ongoing dispute between two or more executive agencies. If we are asked to provide an opinion to an executive agency the head of which does not serve at the pleasure of the President (*e.g.*, an agency head subject to a "for cause" removal restriction), our practice is to issue our opinion only if we have received in writing from that agency an agreement that it will conform its conduct to our conclusion. As a prudential matter, OLC generally avoids opining on questions likely to arise in pending or imminent litigation involving the United States as a party (although the Office may provide assistance to Justice Department divisions engaged in ongoing litigation). Finally, the opinions of the Office should address legal questions prospectively; OLC avoids opining on the legality of past conduct (though from time to time we may issue prospective opinions that confirm or memorialize past advice or that necessarily bear on past conduct in addressing an ongoing legal issue).

**B. *Soliciting the views of interested agencies*.** Before we proceed with an opinion, our general practice is to ask the requesting agency for a detailed memorandum setting forth the agency's own analysis of the question; in many cases, we will have preliminary discussions with the requesting agency before it submits a formal opinion request to OLC, and the agency will be able to provide its analysis along with the opinion request. (A detailed analysis is not required when the request comes from the Counsel to the President, the Attorney General, or one of the other senior management offices of the Department of Justice.) In the case of an interagency dispute, we will ask each side to submit such a memorandum. We expect the agencies on each side of a dispute to share their memoranda with the other side, or permit us to share them, so that we may have the benefit of reply comments, when necessary. When appropriate and helpful, and consistent with the confidentiality interests of the requesting agency, we will also solicit the views of other agencies not directly involved in the opinion request that have subject-matter expertise or a special interest in the question presented. We will not, however, circulate a copy of an opinion request to third-party agencies without the prior consent of the requesting agency.

**C. *Researching, outlining, and drafting*.** A written OLC opinion is the product of a careful and deliberate process. After reviewing agency submissions and relevant primary materials, including prior OLC opinions and leading judicial decisions, the Deputy and Attorney-Adviser should meet to map out a plan for researching the issues and preparing an outline and first draft of the opinion. The Deputy and Attorney-Adviser should set target deadlines for each step in the process and should meet regularly to review progress on the opinion. Consultation with others in the Office is encouraged, as are meetings, as needed, with other Deputies and the Assistant Attorney General (AAG). An early first draft often will help identify weaknesses or holes in the analysis requiring greater attention than initially anticipated. As work on the opinion progresses, it will generally be useful for the Deputy and the Attorney-Adviser to meet from time to time with the AAG to discuss the status and direction of the draft opinion.

The Office must strive in our opinions for clear and concise analysis and a balanced presentation of arguments on each side of an issue. If the opinion resolves an issue in dispute between executive agencies, we should take care to consider fully and address impartially the points raised on both sides. In doing so, we generally avoid characterizing agencies with differing views as the "prevailing" and "losing" parties. OLC's obligation is to provide its view of the correct answer on the law, taking into account all reasonable counterarguments, whether provided by an agency or not.

**D.** *Review of draft opinions.* Before an OLC opinion is signed it undergoes rigorous review within OLC. When the primary Deputy and the Attorney-Adviser responsible for the opinion are satisfied that the draft opinion is ready for secondary review, they should provide the draft opinion to a second Deputy for review. Along with the draft opinion, the Attorney-Adviser should provide to the second Deputy copies of any key materials, including statutes, regulations, important cases, relevant prior OLC opinions, and the views memoranda received from interested agencies. Once the second Deputy review is complete and the second Deputy's comments and proposed edits have been addressed, the primary Deputy should circulate the draft opinion for final review by the AAG, the remaining Deputies (though it is not necessary in each case for each of them to review an opinion), and any other attorneys within the Office with relevant expertise.

Because OLC issues opinions pursuant to the Attorney General's delegated authority, the Office keeps the Office of the Attorney General and the Office of the Deputy Attorney General apprised of its work through regular meetings and other communications. This practice ensures that the leadership offices are kept informed about OLC's work, and also permits OLC to benefit from suggestions about additional interests OLC should consider or views OLC should solicit before finalizing its opinions, which are nevertheless based on its own independent analysis and judgment. The Office also keeps the Office of the Counsel to the President appropriately apprised of its work.

Consistent with its tradition of providing advice that reflects its own independent judgment, OLC does not ordinarily circulate draft opinions outside the Office. However, as part of our process, we may share an aspect of a draft opinion's analysis with the requestor or others who will be affected by the opinion, particularly when their submissions have not addressed issues that arise in the draft. In some other cases, OLC may share the substance of an entire draft opinion or the opinion itself within the Department of Justice or with others, primarily to ensure that the opinion does not misstate any facts or legal points of interest.

**E.** *Finalizing opinions.* Once all substantive work on an opinion is complete, it must undergo a thorough cite-check by our paralegal staff to ensure that all citations are accurate and that the opinion is consistent with the Office's rules of style. After all cite-checking changes have been approved and implemented, the final opinion should be printed on bond paper for signature. Each opinion ready for signature should include a completed opinion control sheet signed by the primary and secondary Deputies and the Attorney-Adviser. If the opinion is unclassified, after it is signed and issued to the requesting agency it must be loaded into our ISYS database and included in the Office's unclassified Day Books. A separate file containing a copy of the signed opinion, the opinion control sheet, and copies of key materials not readily

available, such as the original opinion request, the views memoranda of interested agencies, and obscure sources cited in the opinion, should also be retained in our files for future reference.

### III. Opinion Publication and Other Public Disclosure

Pursuant to Executive Order 12146 and directives from the Attorney General, OLC has a longstanding internal process in place for regular consideration and selection of significant opinions for official publication. At the first stage of the process, the attorneys who have worked on an opinion and the front-office personnel who have reviewed it are asked for a recommendation about whether the opinion should be published. After these recommendations are collected, the opinion is forwarded to an internal publication review committee, made up of attorneys from the front office, as well as at least one career attorney. If the committee makes a preliminary judgment that the opinion should be published, the opinion is circulated to the requesting Executive Branch official or agency and any other agencies that have interests that might be affected by publication, to solicit their views on whether there are reasons why the opinion should not be published. Taking this input into account, the publication committee then makes a final judgment about whether the Office should publish the opinion. After the Office makes a final decision to publish an opinion, the opinion is rechecked and reformatted for online publication; a headnote is prepared and added to the opinion; and the opinion is posted to the Department of Justice Web site at www.usdoj.gov/olc/opinions.htm. All opinions posted on the Web site as published opinions of the Office are eventually published in OLC's hardcover bound volumes.

In deciding whether an opinion is significant enough to merit publication, the Office considers such factors as the potential importance of the opinion to other agencies or officials in the Executive Branch; the likelihood that similar questions may arise in the future; the historical importance of the opinion or the context in which it arose; and the potential significance of the opinion to the Office's overall jurisprudence. In applying these factors, the Office operates from the presumption that it should make its significant opinions fully and promptly available to the public. This presumption furthers the interests of Executive Branch transparency, thereby contributing to accountability and effective government, and promoting public confidence in the legality of government action. Timely publication of OLC opinions is especially important where the Office concludes that a federal statutory requirement is invalid on constitutional grounds and where the Executive Branch acts (or declines to act) in reliance on such a conclusion. In such situations, Congress and the public benefit from understanding the Executive's reasons for non-compliance, so that Congress can consider those reasons and respond appropriately, and so that the public can be assured that Executive action is based on sound legal judgment and in furtherance of the President's obligation to take care that the laws, including the Constitution, are faithfully executed.

At the same time, countervailing considerations may lead the Office to conclude that it would be improper or inadvisable to publish an opinion that would otherwise merit publication. For example, OLC will decline to publish an opinion when disclosure would reveal classified or other sensitive information relating to national security. (Declassification decisions are made by the classifying agency, not OLC.) Similarly, OLC will decline to publish an opinion if doing so would interfere with federal law enforcement efforts or is prohibited by law. OLC will also

5

decline to publish opinions when doing so is necessary to preserve internal Executive Branch deliberative processes or protect the confidentiality of information covered by the attorney-client relationship between OLC and other executive offices. The President and other Executive Branch officials, like other public- and private-sector clients, sometimes depend upon the confidentiality of legal advice in order to fulfill their duties effectively. An example is when an agency requests advice regarding a proposed course of action, the Office concludes it is legally impermissible, and the action is therefore not taken. If OLC routinely published its advice concerning all contemplated actions of uncertain legality, Executive Branch officials would be reluctant to seek OLC advice in the early stages of policy formulation—a result that would undermine rule-of-law interests. Some OLC opinions also may concern issues that are of little interest to the public or others besides the requesting agency. OLC's practice of circulating opinions selected for publication to the requesting Executive Branch official or agency and any other agencies that have interests that might be affected by publication helps ensure that the Office is aware of these competing considerations. In cases where delaying publication may be sufficient to address any of these concerns, OLC will reconsider the publication decision at an appropriate time.

OLC also receives a large number of Freedom of Information Act (FOIA) requests for its unpublished legal opinions. The volume of such requests has increased substantially in recent years, particularly with respect to opinions concerning national security matters. By definition, these requests seek disclosure of documents that the Office has not yet chosen to release pursuant to its own internal publication procedures. In responding to these requests, OLC is guided by President Obama's January 21, 2009 FOIA Memorandum and Attorney General Holder's March 19, 2009 FOIA memorandum. As the Attorney General's memorandum observes, various FOIA exemptions protect "national security, . . . privileged records, and law enforcement interests." OLC will consult with relevant agencies in determining whether particular requested documents fall within and should be withheld under any applicable FOIA exemptions. If a requested document does not fall within an exemption, OLC will disclose it promptly. In addition, OLC will consider disclosing documents even if they technically fall within the scope of a FOIA exemption. As the Attorney General also stated in his March 19, 2009 memorandum, "an agency should not withhold information simply because it may do so legally." In particular, consistent with President Obama's directions, the Office will not withhold an opinion merely to avoid embarrassment to the Office or to individual officials, to hide possible errors in legal reasoning, or "because of speculative or abstract fears."

OLC has a unique mission, and a long-established tradition—sustained across many administrations—as to how its work should be carried out. The Office depends not only upon its leadership but also upon each of its attorneys to ensure that this tradition continues.

David J. Barron
Acting Assistant Attorney General