UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMPAIGN FOR ACCOUNTABILITY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>Defendant. | No. 1:16-cv-1068 (Calendar Committee) |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
PURSUANT TO LOCAL CIVIL RULE 7(h)(1)**

**I.   History and Nature of the OLC**

1.   The Office of Legal Counsel ("OLC") is a component of the Department of Justice ("DOJ") that provides controlling legal advice to executive agencies by rendering formal written opinions that resolve questions of law upon the request of one or more agencies. Stip. ¶¶ 1, 3–5, ECF No. 56.

2.   In performing this function, the OLC exercises the delegated authority of the attorney general under the Judiciary Act of 1789. *Id.*

3.   The Judiciary Act of 1789 requires the attorney general to issue opinions on questions of law when requested to do so by the heads of executive departments. Stip. ¶ 2.

4.   In 1849, then–Attorney General Reverdy Johnson explained that the attorney general's opinions issued under the Judiciary Act "should be considered as law." Declaration of Stephanie Krent ("Krent Decl.") Ex. 1, *Opinions of Attorneys General and Decisions of Auditors*, 5 Op. Att'y Gen. 97, 97 (1849).

1

5.      In 1854, then–Attorney General Caleb Cushing stated that the attorney general's opinions "officially define the law, in a multitude of cases, where his decision is in practice final and conclusive" and that the opinion-writing function is "quasi judicial." Krent Decl. Ex. 2, *Office and Duties of Attorney General*, 6 Op. Att'y Gen. 326, 333–34 (1854).

6.      In 1893, then–Attorney General Richard Olney wrote that, in passing the Judiciary Act, Congress "contemplates that the official opinions signed or [e]ndorsed in writing by the Attorney-General shall have some actual and practical force. Congress's intention cannot be doubted that administrative officers should regard them as law until withdrawn by the Attorney-General or overruled by the courts . . . ." Krent Decl. Ex. 3, *Comptroller – Solicitor of the Treasury – Attorney-General*, 20 Op. Att'y Gen. 654, 659 (1893).

7.      The office now known as the OLC originated in 1925, when the attorney general delegated his opinion-writing authority to the Office of the Solicitor General. Stip. ¶ 3. In 1950, the responsibility for the Justice Department's opinion-writing was transferred to a newly created office, then known as the Executive Adjudications Division. *Id*. Renamed as the Office of Legal Counsel in 1953, the Office is headed by an assistant attorney general that reports directly to the deputy attorney general. *Id*.

8.      The OLC's currently operative Best Practices Memo explains that formal written opinions issued by the OLC frequently provide "the final word on the controlling law." Stip. Ex. A, Memorandum from David J. Barron, Acting Assistant Attorney General to Attorneys of the Office of Legal Counsel, *Best Practices for OLC Legal Advice and Written Opinions* (July 16, 2010) (the "Best Practices Memo") at 1, ECF No. 56-1.

## II.    OLC Opinions Resolving Interagency Disputes

9.      The OLC often issues opinions that resolve legal disputes between two or more agencies. Stip. ¶ 7.

10. Executive Order 12,146, issued in 1979 by then–President Carter, requires that all executive agencies whose heads "serve at the pleasure of the President" submit interagency disputes to the attorney general for resolution. Stip. ¶ 8. Independent agencies are also encouraged to submit their disputes to the attorney general. *Id.* By regulation, the role of resolving disputes between two or more agencies has been delegated to the OLC. *Id.*

11. In 1989, then–Attorney General Richard Thornburgh wrote a letter to Congress that explained the unique role that opinions resolving interagency disputes play within the executive branch: "OLC has long performed this role, which is reflected in Executive Order 12146 (enclosed), issued during the Carter Administration and continued in effect ever since. As you can see, its purpose was to authorize the Attorney General, and, hence, OLC, to resolve legal disputes within the Executive Branch. Without the ability to issue binding opinions, OLC's review function would have less effect in resolving disputes and maintaining a consistent legal position within the Administration." Krent Decl. Ex. 6, *FBI Authority to Seize Suspects Abroad: Hearing Before the Subcomm. on Civil and Const. Rights of the H. Comm. on the Judiciary*, H.R. Rep. No. 101-134, at 122 (1989) (Letter from Richard Thornburgh, Att'y Gen. of the United States).

12. Then–Attorney General William P. Barr likened the OLC's resolution of interagency disputes to judicial review in 1992: "Because each agency has its own staff of lawyers, disputes between them come before the Attorney General with legal positions already well-established. Each agency will usually have legal authority or good arguments to support its view. The Office of Legal Counsel requires each side to come in with briefs, just as if it were a judicial proceeding. Deciding among the positions being taken requires the Attorney General—or in most cases the Office of Legal Counsel—to function as a judge." *See* Krent Decl. Ex. 5, William P.

Barr, *Attorney General's Remarks, Benjamin N. Cardozo School of Law, November 15, 1992*, 15 Cardozo L. Rev. 31, 37 (1993).

13. The OLC may become aware of interagency disputes in multiple ways. Stip. ¶ 10. The agencies with conflicting legal positions may jointly submit a request for OLC to resolve their dispute. *Id*. A single agency may also notify the OLC that it is involved in a dispute with another agency. *Id*. Finally, a dispute between agencies may emerge during the course of the OLC's opinion-writing when the agencies submit differing views of the law to the OLC. *Id*.

14. The OLC is not aware of any instance in which it declined to resolve an interagency dispute when the agencies in the dispute maintained their conflicting legal positions. Stip. ¶ 7. The issuance of a formal written opinion is also most likely to be necessary when the OLC is acting in its dispute-resolution role. Best Practices Memo at 3.

15. The following are examples of OLC opinions resolving interagency disputes:

   a. *Application of the Endangered Species Act of 1972 to the Sale of Sperm Whale Oil by the General Services Administration* (1974). Krent Decl. Ex. 7.

   b. *Whether Reservists Must Exhaust Available Leave Under 5 U.S.C. § 6323(b) Before Taking Leave Under 5 U.S.C. § 6323(a)*, 36 Op. O.L.C. 129 (2012). *Id.* Ex. 8.

   c. *EEOC Authority to Order Federal Agency to Pay for Breach of Settlement Agreement*, 38 Op. O.L.C. 1 (2014). *Id.* Ex. 9.

   d. *Authority of the Department of Labor to Control the Disclosure of Federal Employees' Compensation Act Records Held by the United States Postal Service*, 36 Op. O.L.C. 217 (2012). *Id.* Ex. 10.

   e. *Payment of Back Wages to Alien Physicians Hired Under H-1B Visa Program*, 32 Op. O.L.C. 47 (2008). *Id.* Ex. 11.

f. *Administrative Assessment of Civil Penalties Against Federal Agencies Under the Clean Air Act*, 21 Op. O.L.C. 109 (1997). *Id.* Ex. 12.

g. *Authority of the Equal Employment Opportunity Commission to Impose Monetary Sanctions Against Federal Agencies for Failure to Comply with Orders Issued by EEOC Administrative Judges*, 27 Op. O.L.C. 24 (2003). *Id.* Ex. 13.

h. *Obligating Carryover Funds in Violation of OMB Zero-Dollar Apportionment Rule*, 40 Op. O.L.C. 90 (2016). *Id*. Ex. 14.

i. *Service Credit for Retirement Annuities of USPS Employees When USPS Has Not Made Required Contribution*, 35 Op. O.L.C. 181 (2011). *Id.* Ex. 15.

j. *Obligation of Federal Agencies to Pay Stormwater Assessments Under the Clean Water Act*, 35 Op. O.L.C. 1 (2011). *Id.* Ex. 16.

k. *Disposition of Proceeds from the Sale of Government Buildings Acquired with Social Security Trust Funds*, 34 Op. O.L.C. 263 (2010). *Id.* Ex. 17.

l. *Application of the Davis-Bacon Act to Urban Development Projects that Receive Partial Federal Funding*, 11 Op. O.L.C. 92 (1987). *Id.* Ex. 18.

**III.    The OLC's Process for Resolving Interagency Disputes**

16. When resolving interagency disputes, OLC attorneys follow the process outlined in the Best Practices Memo. Stip. ¶ 13; *see also* Best Practices Memo at 1.

17. The OLC solicits detailed memoranda from each agency involved in the dispute, which explain each agency's analysis of the legal questions at issue. Best Practices Memo at 3. The OLC may also solicit memoranda from additional agencies who may have subject-matter expertise or a special interest in the question presented. *Id*.; Stip. ¶¶ 15–16.

18. The OLC may also request that one or more agencies submit reply memoranda responding to the arguments made by other agencies. Best Practices Memo at 3.

19. The OLC ensures that all agencies who submit memoranda share them with all other agencies who are involved in the dispute. Stip. ¶ 17.

20. When drafting an opinion, OLC attorneys are instructed to fully consider each point raised in agencies' memoranda, as well as traditional sources of constitutional and statutory meaning, including the relevant textual provision, the text's structure and purpose, and judicial and executive branch precedent. Best Practices Memo at 2, 4.

21. OLC attorneys are also instructed to focus their analysis on the central legal dispute presented by an opinion request, to avoid opining on abstract questions, and to address the arguments raised by each party to the interagency dispute. Best Practices Memo at 2, 4.

22. Before an opinion is signed and finalized, it undergoes what the OLC considers a "rigorous review" process. Best Practices Memo at 4. The attorney assigned to draft a formal written opinion and the primary deputy responsible for the opinion may exchange several drafts of an opinion. *Id*. Once they are satisfied the opinion is ready for secondary review, they provide the draft opinion to a second deputy attorney general. *Id*. Once that review is complete and all comments and edits have been addressed, the opinion is next circulated to the assistant attorney general in charge of the OLC, all remaining deputy attorney generals, and any other attorneys within the OLC who have relevant expertise. *Id*.

23. During the review process, the OLC may also discuss the opinion or share a draft opinion with the Office of the Attorney General, the Office of the Deputy Attorney General, or the agencies involved in the dispute. Best Practices Memo at 4. The OLC may also share a draft with other executive agencies, particularly when the draft relates to an agency's area of expertise or its

operations. Stip. ¶ 18. The OLC does not require the consent of the agencies involved in the dispute before sharing drafts in this manner. *Id*.

24. Once an opinion is completed and cite-checked, it is printed on bond paper and signed by the attorney who drafted the opinion. Best Practices Memo at 4. Completed unclassified opinions are added to the OLC's database and included in its "day books." *Id*. The OLC also maintains separate files of all signed opinions, opinion control sheets, and copies of the original request, the submissions of interested agencies, and any obscure sources cited in the opinion so that future OLC attorneys may refer back to the opinion and its underlying sources. *Id*. at 4–5.

25. Although the OLC does not currently store or identify its opinions resolving interagency disputes separately from other formal opinions, it has the capacity to maintain records that would identify opinions resolving interagency disputes in the future. Stip. ¶ 12.

26. After they are finalized, OLC opinions resolving interagency disputes are accorded precedential weight. Best Practices Memo at 2. OLC attorneys may cite past completed opinions in the way they would cite a judicial opinion, and may not depart from a past opinion's holding unless it has been formally withdrawn. *Id*.

27. OLC opinions resolving interagency disputes may be shared with other agencies in the executive branch without the prior consent of the agencies involved in the dispute. Stip. ¶ 18.

28. The OLC publishes a subset of its formal written opinions to members of the public in bound volumes. Stip. ¶ 19. In the foreword to the first volume of published OLC opinions, then–Attorney General Griffin Bell explained that the opinions' "value as precedents and as a body of executive law on important matters would be enormously enhanced by publication and distribution in a manner similar to those of the formal opinions of the Attorney General." *Id*.

29. The OLC has never published all of its formal written opinions. *Id*. ¶ 20. Its internal publication review committee decides whether to publish opinions on a case-by-case basis, taking into account the views of the requesting agencies and the attorneys within the OLC who drafted or reviewed the opinion. Best Practices Memo at 5; Stip. ¶ 21.

August 12, 2021                                                    Respectfully submitted,

                                                   /s/ *Alex Abdo*
Alex Abdo (*Pro Hac Vice*)
Stephanie Krent (*Pro Hac Vice*)
Jameel Jaffer (MI0067)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
T: 646.745.8500
alex.abdo@knightcolumbia.org

*Counsel for Plaintiff*