# EXHIBIT 8

# Whether Reservists Must Exhaust Available Leave Under 5 U.S.C. § 6323(b) Before Taking Leave Under 5 U.S.C. § 6323(a)

A reservist who performs military service that qualifies for leave under 5 U.S.C. §§ 6323(a) and 6323(b) may elect to take leave under section 6323(a) without first using all of his or her available leave under section 6323(b).

April 3, 2012

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF VETERANS AFFAIRS

The Department of Veterans Affairs ("VA") has asked whether a federal employee who performs military service that qualifies for leave under both 5 U.S.C. § 6323(a) (2006) and 5 U.S.C. § 6323(b) (2006 & Supp. IV 2010) must exhaust available leave under section 6323(b) before taking leave under section 6323(a). Letter for Eric Holder, Attorney General, from Will A. Gunn, General Counsel, VA at 6 (Apr. 1, 2011) ("Opinion Request"). In our view, the statute does not impose such an exhaustion requirement. An employee who otherwise qualifies for leave under both section 6323(a) and section 6323(b) may elect to take leave under section 6323(a) even if the employee has unused leave under section 6323(b).

As we explain in detail below, the text of section 6323(a), which entitles an employee to military leave under specified conditions, does not require that an employee first exhaust available military leave under section 6323(b). Nor does anything in the text of section 6323(b) suggest that exhaustion of the leave it provides is a prerequisite to an employee's use of leave under section 6323(a). We do not find section 6323(a) and (b) ambiguous with respect to exhaustion. Indeed, had we found any ambiguity in these leave provisions, we would have construed them in favor of those who perform military service. *See Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1206 (2010).

The conclusion that exhaustion is not required is also supported by the legislative and drafting history of section 6323(b), which demonstrates that this provision was enacted to supplement the existing leave provided by section 6323(a), not to displace or restrict it. Our reading of section 6323(a) and (b) is also consistent with the provisions of, and practice under, other federal leave statutes: Some of these statutes use language

129

similar to that in section 6323, yet they generally do not oblige an employee to use one type of leave before or instead of another when the employee qualifies for multiple types of leave. Finally, reading an exhaustion requirement into section 6323(b) would frustrate Congress's purposes in enacting the statute, which included expansion of existing military leave and alleviation of the financial hardship of employees who perform military service. If exhaustion were required, some employees who perform military service would be worse off than they were before the statute's enactment.

Some agencies appear to have concluded that a 1996 amendment to the statute, which clarified that employees may elect to use *annual leave* or *compensatory time* instead of leave under section 6323(b), indicates that section 6323(b) leave must be exhausted before military leave may be taken under section 6323(a). That inference is unwarranted. The 1996 amendment does not address whether employees may use leave under section 6323(a) before or instead of section 6323(b) leave, and the amendment is consistent with the conclusion that they may.

For all of these reasons, we conclude that employees are not required to exhaust military leave under section 6323(b) before using the military leave conferred by section 6323(a).

## I.

A federal employee (as defined by 5 U.S.C. § 2105 (2006)) who is a member of the National Guard or another reserve component of the armed forces ("reservist") is entitled to two overlapping types of paid leave from his or her civilian job for military service. The first and most longstanding type of military leave is conferred by section 6323(a). That provision states that a reservist is "entitled to leave without loss in pay, time, or performance or efficiency rating for active duty, inactive-duty training . . . , funeral honors duty . . . , or engaging in field or coast defense training." 5 U.S.C. § 6323(a). Thus, reservists may use section 6323(a) leave for both annual training exercises, *see* 10 U.S.C. § 10147 (2006); 32 U.S.C. § 502 (2006), and active duty, which generally includes all "full-time duty in the active military service of the United States," 10 U.S.C. § 101(d)(1) (2006), including service to assist in civil law enforcement or to perform traditional military operations. *See* Opinion Request at 3; *Leave of Absence—Civilians on Military Duty—Excess*

*Leave*, 47 Comp. Gen. 761, 762 (1986). Section 6323(a) leave accrues at the rate of 15 days per fiscal year, and a reservist may carry forward up to 15 days of accumulated leave into the next fiscal year. *Id*. A reservist taking section 6323(a) leave receives his or her full civilian salary as well as military pay.

Section 6323(a) leave is nearly a century old. It originated with Public Law 65-11, 40 Stat. 40, 72 (1917), which provided

> [t]hat all officers and employees of the United States or of the District of Columbia who shall be members of the Officers' Reserve Corps shall be entitled to leave of absence from their respective duties, without loss of pay, time, or efficiency rating, on all days during which they shall be ordered to duty with troops or at field exercises, or for instruction, for periods not to exceed fifteen days in anyone calendar year.

In its original form, as today, section 6323(a) provided leave for both training ("field exercises" or "instruction") and active duty ("duty with troops"). *Id*. By the mid-1960s, section 6323(a) had evolved to closely resemble its current version and provided that covered reservists were "entitled to leave without loss of pay, time, or performance or efficiency rating for each day, not in excess of 15 days in a calendar year," devoted to "active duty" or "field or coast defense training." 5 U.S.C. § 6323(a) (Supp. II 1966).[1]

Beginning around the mid-1960s, the government increasingly began to call upon reservists to perform active-duty military service, particularly in aid of civil law enforcement, for significant periods of time. Due to those additional demands, the 15 days of leave provided by section 6323(a)

---

[1] Congress has made few substantive changes to section 6323(a) since that time. In 1970, Congress expanded section 6323(a) to cover all reservists, eliminating an exception for certain postal field service employees. *See* Postal Reorganization Act, Pub. L. No. 91-375, § 6(c)(18), 84 Stat. 719, 776. In 1980, the statute was revised to provide that leave would accrue on a fiscal year basis and that employees could carry over up to 15 days of accrued leave into the next fiscal year. *See* Pub. L. No. 96-431, § 1, 94 Stat. 1850, 1850 (1980). In 1999, Congress added inactive-duty training as a qualifying form of military service, *see* National Defense Authorization Act for Fiscal Year 2000, Pub. L. No. 106-65, § 1106(a), 113 Stat. 512, 777; and, in 2001, Congress added funeral honors duty, *see* National Defense Authorization Act for Fiscal Year 2002, Pub. L. No. 107-107, div. A, § 563, 115 Stat. 1012, 1120.

often proved insufficient to cover all of a reservist's military service. *See* H.R. Rep. No. 90-1560, at 3, 4–5 (1968); S. Rep. No. 90-1443, at 2 (1968). Reservists frequently would use up the leave provided by section 6323(a) while performing service in aid of law enforcement and therefore would be forced to use annual leave, or to go on military furlough without civilian pay, for their remaining military service, including their training. *See* H.R. Rep. No. 90-1560, at 2–3; 114 Cong. Rec. 11,114 (1968) (statement of Rep. Machen).

Members of Congress viewed the "personal inconvenience" and "financial hardship" caused by the inadequacy of section 6323(a) leave as an "inequity" in need of correction. H.R. Rep. No. 90-1560, at 3–4; 114 Cong. Rec. at 11,114 (statement of Rep. Machen); 114 Cong. Rec. at 19,390 (same). Consequently, in 1968, Congress enacted a second type of military leave, now codified in section 6323(b), to provide "additional" leave that would supplement the 15 days of military leave already provided by section 6323(a). H.R. Rep. No. 90-1560, at 2, 6; S. Rep. No. 90-1443, at 1.[2] That supplemental leave was, however, less expansive and somewhat less advantageous to reservists than the basic leave provided under section 6323(a). As originally enacted, section 6323(b) stated that a covered reservist who performed either federal service "for the purpose of providing military aid to enforce the law" or "full-time military service for his State, the District of Columbia," or a federal territory was, except as provided in 5 U.S.C. § 5519, "entitled, during and because of such service, to leave without loss of, or reduction in, pay, leave to which he otherwise [was] entitled, credit for time or service, or performance or efficiency rating." Pub. L. No. 90-588, § 2(a), 82 Stat. 1151 (1968).[3] Section 6323(b) did not provide additional leave for all types of active duty covered by section 6323(a) leave, but instead provided extra leave for only the specific kind of military service—service in aid of civil law

---

[2] As originally enacted, the new provision was denominated section 6323(c). Pub. L. No. 90-588, § 2(a), 82 Stat. at 1151. It was re-designated as section 6323(b) in 1979. Pub. L. No. 96-54, § 2(a)(40), 93 Stat. 381, 383 (1979). We refer to the provision as section 6323(b) throughout this opinion.

[3] The reservists covered by section 6323(b) originally included all federal employees under 5 U.S.C. § 2105 except certain employees of the postal field service. Congress eliminated the exception for postal employees in 1970, at the same time that it eliminated the parallel exception under section 6323(a). Postal Reorganization Act § 6(c)(18), 84 Stat. at 776; *supra* note 1.

*Whether Reservists Must Exhaust Available Leave Under 5 U.S.C. § 6323(b)*

enforcement—that had created problems with the adequacy of existing leave. Congress also limited section 6323(b) leave to "22 workdays in a calendar year" and did not permit reservists to carry over any unused section 6323(b) leave to the following year. *Id*. In addition, in section 5519, Congress required that the military pay received by a reservist while on leave under section 6323(b) be credited against his or her civilian pay (so that a reservist taking leave under section 6323(b) would receive the higher of his or her military or civilian pay, but not both). *See* 5 U.S.C. § 5519 (2006).

In 1969, the United States Civil Service Commission, the predecessor agency to the Office of Personnel Management ("OPM"), requested the Comptroller General's views on several interpretative questions concerning section 6323(b). In responding to that request, the Comptroller General opined that an employee who performs military duty qualifying for leave under section 6323(b), and who has available leave under that provision, (1) may not "involuntarily be charged annual leave or any other type of leave" for the time spent performing military duty and (2) "may not elect to use" annual or other available leave. *To Chairman, United States Civil Service Commission*, 49 Comp. Gen. 233, 237 (1969) ("1969 CG Opinion"). The Comptroller General stated that this conclusion followed from the language in section 6323(b) admonishing that an employee is entitled to leave "without loss of[,] or reduction in[,] . . . leave to which he otherwise is entitled." *Id.* at 236 (quoting section 6323(b)).

The 1969 CG Opinion provoked no immediate response from Congress. Beginning with the appropriations act for the Department of Defense for fiscal year 1991, however, Congress began including in the Defense Department appropriations acts language making clear that reservists could use annual leave instead of leave under section 6323(b) if they so requested. *See* Pub. L. No. 101-511, § 8086, 104 Stat. 1856, 1895–96 (1990); Pub. L. No. 102-172, § 8068, 105 Stat. 1150, 1187 (1991); Pub. L. No. 102-396, § 9064, 106 Stat. 1876, 1916–17 (1992); Pub. L. No. 103-139, § 8047, 107 Stat. 1418, 1450–51 (1993); Pub. L. No. 103-335, § 8042, 108 Stat. 2599, 2627 (1994).

In 1996, Congress amended section 6323(b) to make that clarification permanent. The 1996 amendment added the following language to the end of the subsection:

36 Op. O.L.C. 129 (2012)

> Upon the request of an employee, the period for which an employee is absent to perform service [that qualifies for leave under this subsection] may be charged to the employee's accrued annual leave or to compensatory time available to the employee instead of being charged as leave to which the employee is entitled under this subsection. The period of absence may not be charged to sick leave.

National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, § 516(a), 110 Stat. 186, 309 ("NDAA for FY 1996"). The 1996 amendment thus only addressed the relationship between section 6323(b) leave and annual leave, compensatory time, and sick leave, not the relationship between section 6323(b) leave and any other type of leave, including leave under section 6323(a).

Apart from the 1996 amendment, the only other changes that Congress has made to section 6323(b) have been expansions in the types of military service that qualify for leave. In 1991, Congress added, as qualifying service, military service "for the purpose of providing assistance to civil authorities in the protection or saving of life or property or the prevention of injury." National Defense Authorization Act for Fiscal Years 1992 and 1993, Pub. L. No. 102-190, div. A, sec. 528, § 6323(b)(2), 105 Stat. 1290, 1364. And, in 2003, Congress added "full-time military service as a result of a call or order to active duty in support of a contingency operation." National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, div. A, sec. 1113(a), § 6323(b)(2)(B), 117 Stat. 1392, 1635.[4] Those expansions in the types of active duty that qualify for leave under section 6323(b) have increased the overlap between section 6323(b) leave and section 6323(a) leave. At the same time, Congress has retained the provisions that make section 6323(b) leave less advanta-

---

[4] A "contingency operation" is

a military operation that—

(A) is designated by the Secretary of Defense as an operation in which members of the armed forces are or may become involved in military actions, operations, or hostilities against an enemy of the United States or against an opposing military force; or

(B) results in the call or order to, or retention on, active duty of members of the uniformed services . . . during a war or during a national emergency declared by the President or Congress.

10 U.S.C. § 101(a)(13) (2006).

134

*Whether Reservists Must Exhaust Available Leave Under 5 U.S.C. § 6323(b)*

geous to reservists than section 6323(a) leave, most notably the provision limiting a reservist's pay while on section 6323(b) leave to the higher of his military or civilian pay.

As explained in its letter requesting our opinion, the VA sees nothing in section 6323 that requires a reservist to exhaust available leave under section 6323(b) before taking leave under section 6323(a), and the VA therefore believes that its reservist employees may elect, at their option, to use military leave under section 6323(a) rather than section 6323(b). Opinion Request at 2. OPM has adopted a contrary interpretation of the statute, citing the 1969 CG Opinion. *See* OPM, *OPM Policy Guidance Regarding Reservist Differential Under 5 U.S.C. 5538* at 5–6 (Apr. 13, 2011) ("*Reservist Differential Policy Guidance*"). The VA, however, maintains that neither the text nor the legislative history of section 6323 supports an exhaustion requirement. *See* Opinion Request at 3–4. The VA believes that the 1996 amendment to section 6323(b) has undermined the reasoning in the 1969 CG Opinion. *See id.* at 5. The VA also contends that OPM's interpretation is inconsistent with an OPM regulation implementing the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301–4334 (2006 & Supp. IV 2010), and that OPM's interpretation would, in some instances, force employees to forfeit accrued leave under section 6323(a). Opinion Request at 5–6.

In response to the VA's opinion request, we solicited the views of OPM, which adhered to the position expressed in its policy guidance that a reservist is required to exhaust available leave under section 6323(b) before using leave under section 6323(a). Letter for John E. Bies, Deputy Assistant Attorney General, Office of Legal Counsel, Department of Justice, from R. Alan Miller, Associate General Counsel, United States Office of Personnel Management at 7 (Sept. 2, 2011) ("OPM Views Letter"). We also requested the views of the Department of Defense ("DoD"), which informed us that it considers the question a close one but agrees with OPM. Letter for John E. Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from Jeh Charles Johnson, General Counsel, Dep't of Defense, at 2 (Nov. 10, 2011) ("DoD Views Letter").

36 Op. O.L.C. 129 (2012)

## II.

We have carefully considered the text, context, legislative history, and purposes of section 6323, as well as the interpretations of the agencies whose views we solicited. In light of these factors, and cognizant of the principle that statutes providing benefits to individuals engaged in military service should be construed in the beneficiaries' favor, we conclude that a reservist need not exhaust his or her available leave under section 6323(b) before using leave under section 6323(a).

## A.

Section 6323 does not contain an express exhaustion requirement, and we can identify no basis for reading the text to include such a requirement. As described above, section 6323(a) states that an employee "is entitled to leave" under that provision "for active duty, inactive-duty training . . . , funeral honors duty . . . , or engaging in field or coast defense training . . . as a Reserve of the armed forces or a member of the National Guard." Nothing in that language suggests that leave under section 6323(a) is contingent on an employee's first using leave available under other provisions. Instead, Congress's use of the word "entitled" indicates that an employee has a right to leave under that provision so long as he or she performs certain military activities as a Reserve or National Guard member. The ordinary meaning of the word "entitled," in legal and general usage, is "give[n] a right or title to," "qualif[ied] . . . for," or "furnish[ed] with proper grounds for seeking or claiming something." *Webster's Third New International Dictionary* 758 (1993) ("*Webster's Dictionary*"); *accord Random House Dictionary of the English Language* 649 (2d ed. 1987) ("*Random House Dictionary*"); *see Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs, Dep't of Labor*, 519 U.S. 248, 255–56 (1997). The statute does not condition the employee's right to leave on satisfaction of additional prerequisites, such as exhaustion of other available types of leave.

Similarly, nothing in the text of section 6323(b) indicates that exhaustion of the leave it provides is a prerequisite to an employee's use of leave under section 6323(a). Section 6323(b) states that an employee who "(1) is a member of a reserve component of the Armed Forces . . . or the National Guard" and (2) performs one of three specified types of military

136

*Whether Reservists Must Exhaust Available Leave Under 5 U.S.C. § 6323(b)*

service "is entitled, during and because of such service, to leave without loss of, or reduction in, pay, leave to which he otherwise is entitled, credit for time or service, or performance or efficiency rating." As discussed above, use of the word "entitled" makes clear that the employee has "a right" to leave under section 6323(b) if he or she satisfies the listed conditions. It does not suggest that the employee is required to take section 6323(b) leave, much less that the employee is required to take section 6323(b) leave before using a different type of leave to which the employee has a right under another statutory provision.

We have found no reason to depart from the plain meaning of section 6323 and to import into the statute a requirement that employees exhaust section 6323(b) leave before using section 6323(a) leave. On the contrary, as explained below, reading section 6323 to contain an exhaustion requirement would be in tension with its legislative and drafting history, would be inconsistent with the interpretation of other leave statutes, and would undermine Congress's purposes in enacting section 6323(b), which included improving the financial situation of reservists by supplementing the military leave already available to them. *See infra* Part II.B–D.

OPM advances two textual arguments in support of an exhaustion requirement. First, OPM observes that sometimes when a statute provides that an individual is "entitled" to a certain benefit, the individual is required to accept that benefit. OPM Views Letter at 2. For example, OPM notes, employees who are "entitled" to pay under various statutory provisions must accept that pay and cannot chose to waive it. *Id*. (citing 5 U.S.C. §§ 5334(b), 5363, 5534, 5562 (2006); 5 U.S.C. §§ 5551, 5595 (2006 & Supp. IV 2010)). OPM thus contends that "the word 'entitled' in section 6323(b) should be interpreted as meaning 'required.'" *Id*. at 3.

OPM is correct that federal employees are prohibited from waiving pay to which they are statutorily entitled, but the basis for that prohibition is not that the word "entitled" means "required." Instead, the prohibition derives from the principle, first recognized in *Glavey v. United States*, 182 U.S. 595 (1901), that allowing a federal employee to agree to accept a salary lower than the one set by Congress would violate public policy. *See Employment of Retired Army Officer as Superintendent of Indian School*, 30 Op. Att'y Gen. 51, 56 (1913). Such salary waivers are against public policy because permitting them would effectively cede to the Executive Branch Congress's power to fix the salaries of federal

officials and would disadvantage those individuals who are unable or unwilling to work for less than the salary prescribed by the legislature. *See Glavey*, 182 U.S. at 609. We are not aware of any comparable public policy that requires federal employees to use all of the leave for which they qualify. On the contrary, employees may donate annual leave to other employees, 5 U.S.C. § 6332 (2006), or forfeit leave by not using it, *see, e.g., id.* § 6304 (2006 & Supp. IV 2010). In any event, reading the word "entitled" to mean "required" would not support a rule that employees must use leave under section 6323(b) before they may use leave under section 6323(a), because section 6323(a) also states that employees are "entitled" to leave under its provisions. Thus, the word "entitled" provides no basis for requiring an employee to exhaust section 6323(b) leave before using leave under section 6323(a).[5]

Second, OPM (along with DoD) contends that an exhaustion requirement is mandated by section 6323(b)'s admonition that leave under its provisions is "without loss of, or reduction in, pay, leave to which [the employee] otherwise is entitled, credit for time or service, or performance or efficiency rating." 5 U.S.C. § 6323(b); *see* OPM Views Letter at 3; DoD Views Letter at 2. OPM and DoD maintain that requiring an employee to use all available leave under section 6323(b) before using leave under section 6323(a) is necessary to prevent "loss of" or "reduction in" section 6323(a) leave, which is "leave to which [the employee] otherwise is entitled." OPM Views Letter at 3; DoD Views Letter at 2. That position, however, is based on the faulty premise that a reservist loses or suffers a reduction in section 6323(a) leave by taking that leave.

The use of leave is not a loss of leave. The word "loss" means a "deprivation" or a "decrease in amount, magnitude, or degree." *Webster's Dictionary* at 1338; *accord Random House Dictionary* at 1137. Similarly, the word "reduction" generally means "a decrease in size, amount, extent, or number," a "diminution," a "limitation in scope," or some other "restriction." *Webster's Dictionary* at 1905; *accord Random House Dic-*

---

[5] OPM also points out that entitlements may be conditioned on the satisfaction of statutory prerequisites, so that even though section 6323(a) states that an employee is "entitled" to leave, the employee may not be able to take that leave unless he or she satisfies certain conditions, such as first exhausting other available leave. OPM Views Letter at 3. We agree that entitlements may be conditional, but, as discussed above, nothing in the text of section 6323 conditions the use of leave under section 6323(a) on exhaustion of leave under section 6323(b).

*tionary* at 1618. An employee's voluntary decision to take leave under section 6323(a) for the purposes for which it is provided is not a "deprivation" of, "diminution" in, or other "limitation" or "restriction" on that leave. Thus, just as an employee does not suffer a "loss of" or "reduction in" annual leave when the employee chooses to take such leave to go on vacation, an employee does not suffer a "loss of" or "reduction in" section 6323(a) leave when the employee chooses to take that leave, rather than leave under section 6323(b), to perform military service.

In fact, a requirement that employees use section 6323(b) leave before using section 6323(a) leave may itself contravene the prohibition against loss of, or reduction in, other leave. Requiring an employee to exhaust available leave under section 6323(b) before using leave under section 6323(a) can be viewed as a "reduction in" section 6323(a) leave. The exhaustion requirement can be seen as a "limitation" or "restriction" on section 6323(a) leave because it mandates that employees first use another, less desirable form of leave. Moreover, at least in some cases, an exhaustion requirement might result in an employee's actual "loss of" section 6323(a) leave. As the VA points out, reservists are permitted to carry forward no more than 15 days of section 6323(a) leave into the next fiscal year. Opinion Request at 6. Thus, if 15 days before the end of the fiscal year a reservist with a leave balance under section 6323(a) of 30 days were called to participate in active duty that qualified for leave under both section 6323(a) and section 6323(b), and the reservist were required by the exhaustion requirement to use section 6323(b) leave for those 15 days, the reservist would forfeit 15 days of section 6323(a) leave. *Id.* Absent an exhaustion requirement, the reservist could use those 15 days of section 6323(a) leave rather than forfeiting them.

Even assuming the existence of some ambiguity about whether section 6323's text imposes an exhaustion requirement, we would resolve that ambiguity by declining to read the statute to contain such a requirement. Section 6323 provides benefits for federal employees who perform military service, and it is well established that "provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *Henderson*, 131 S. Ct. at 1206 (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220–21 n.9 (1991)); *see also, e.g.*, *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) (observing that the Selective Training and Service Act of 1940 should "be liberally construed for the benefit of those who left private life to serve their coun-

139

try in its hour of great need"). Accordingly, we conclude that the statutory text does not require that employees exhaust leave under section 6323(b) before using leave under section 6323(a).

## B.

The legislative and drafting history of section 6323(b) confirms our interpretation of the statute's text. The committee reports and floor statements accompanying section 6323(b)'s enactment make clear that it was intended to supplement existing leave under section 6323(a), not to displace or restrict it. The committee reports and individual Members of Congress consistently described section 6323(b) as providing "additional" leave, above and beyond the military leave already provided by section 6323(a). *See, e.g.*, H.R. Rep. No. 90-1560, at 2, 6; S. Rep. No. 90-1443, at 1; 114 Cong. Rec. at 19,388 (statement of Rep. Henderson); 114 Cong. Rec. at 19,389 (statement of Rep. Corbett); 114 Cong. Rec. at 22,496 (description of legislation by Senate's Assistant Legislative Clerk); 114 Cong. Rec. at 27,321 (statement of Rep. Dulski); 114 Cong. Rec. at 29,633 (statement of Sen. Mansfield).

The House Committee Report explained that, although reservists were already "entitled to leave, not in excess of 15 days in a calendar year, for active duty," "[t]he 15 days generally [were] sufficient to cover only the statutory required participation during each year by such employees in training." H.R. Rep. No. 90-1560, at 3. As a result, reservists who were called to perform further military duties—for example, to help quell the civil disturbances in the spring of 1968—were forced to take annual leave or leave without civilian pay for some of their military service. *See id.* at 2–3; 114 Cong. Rec. at 11,114 (statement of Rep. Machen) ("A number of members of the Maryland National Guard who are Federal employees informed me that because of their activation for civil disturbance duty they would be forced to take annual leave later this year when they go into their 2-week annual training periods."). Section 6323(b) was enacted to provide "more military leave" in order to "correct this inequity." 114 Cong. Rec. at 19,390 (statement of Rep. Machen); *id.* at 11,114 (same); *see* H.R. Rep. No. 90-1560, at 2–4 (stating that the "additional leave" provided by section 6323(b) would alleviate the "personal inconvenience" and "financial hardship" caused by the inadequacy of existing military leave).

*Whether Reservists Must Exhaust Available Leave Under 5 U.S.C. § 6323(b)*

The legislative history's discussion of the language "without loss of, or reduction in, . . . leave to which [the employee] otherwise is entitled," 5 U.S.C. § 6323(b), in no way suggests that this language was intended to impose a requirement that employees exhaust other available leave before using leave under section 6323(b). The sole reference to the language appears in the House Committee Report, which stated that

> [t]he leave to be granted under [section 6323(b)] is to be granted without loss or reduction in pay; leave to which [the employee] otherwise is entitled, whether annual leave, sick leave, or military training leave; credit for time or service; or performance or efficiency rating.

H.R. Rep. No. 90-1560, at 6. The phrasing in the Report suggests that the prohibition on loss of or reduction in leave becomes relevant only once leave is "granted" and thus does not impose a requirement that an employee request section 6323(b) leave whenever entitled to it or before using other leave. In addition, the Report suggests that the qualification "without loss of, or reduction in," applies to leave in the same manner that it applies to pay, credit for time or service, and performance or efficiency rating, and the concept of exhaustion makes no sense with respect to the latter items. For these reasons, the Report supports the conclusion drawn from the statutory text—that the phrase is best and most naturally read as protecting employees from being deprived of other leave (or being otherwise penalized) when they use leave under section 6323(b).

This interpretation of the statutory language is confirmed by the drafting history of section 6323(b). An earlier version of the legislation did not contain language prohibiting loss of or reduction in "leave to which [the employee] otherwise is entitled" but stated only that section 6323(b) leave would be "without loss of pay, time, or efficiency rating." H.R. 2635, 90th Cong. (1967). The Civil Service Commission recommended various technical changes to that version of the bill, including modifications to "mak[e] clear that leave provided by it is *in addition to* military leave provided by [section 6323(a)]." H.R. Rep. No. 90-1560, at 12 (Letter for L. Mendel Rivers, Chairman, House Committee on Armed Services, from John M. Macy, Jr., Chairman, Civil Service Commission (Apr. 19, 1968)) (emphasis added). The House Committee on the Post Office and Civil Service subsequently reported a new version of the legislation, which for the first time contained the phrase "without loss of or reduction in . . .

141

leave to which [the employee] otherwise is entitled." *Id*. at 6. The Committee Report explained that the Civil Service Commission's recommendations had been "embodied" in the changes that the Committee had made to the bill. *Id*. at 2. Thus, the drafting history suggests that the phrase "without loss of, or reduction in, . . . pay to which [the employee] otherwise is entitled" was intended to clarify that section 6323(b) leave is supplemental to other available leave, not to impose an exhaustion requirement.

OPM and DoD maintain that the legislative history supports the inference of an exhaustion requirement because, at the end of its discussion of the provisions added by the 1968 legislation, the House Committee Report states that "[t]he granting of leave and the reduction in civilian pay under these provisions are mandatory, and neither the agency nor the employee will have any discretion in this regard as to the application of the provisions involved." H.R. Rep. No. 90-1560, at 7; *see* OPM Views Letter at 4–5; DoD Views Letter at 2. In our view, this passage does not suggest that section 6323(b) contains an exhaustion requirement or make the "requesting" of leave mandatory. It states that the "granting" of leave is mandatory, which indicates only that an agency must grant leave if an employee requests it. The passage also says that "neither the agency nor the employee will have any discretion in this regard as to the application of the provisions involved." H.R. Rep. No. 90-1560, at 7 (emphasis added). But the statement that the employee lacks discretion appears to refer to the fact that an employee who chooses to take section 6323(b) leave must accept "the reduction in civilian pay" mandated by section 5519, not to require employees to request leave whenever they are entitled to it. Accordingly, the legislative and drafting history does not suggest that section 6323(b) contains an exhaustion requirement.

## C.

Related statutory provisions also support the conclusion that section 6323(b) does not contain an exhaustion requirement. Generally, other statutes providing for leave do not require an employee to use one type of leave before, or instead of, another if the employee's activity qualifies for multiple types of leave.

For example, employees are "entitled" to annual leave under 5 U.S.C. § 6303 (2006) and sick leave under 5 U.S.C. § 6307 (2006). When an

*Whether Reservists Must Exhaust Available Leave Under 5 U.S.C. § 6323(b)*

employee qualifies for both annual and sick leave for the same time period, the employee is not required to exhaust one type of leave before using the other. *See* 5 C.F.R. § 630.401(a) (2011) (stating that an employing agency "must" grant sick leave if an employee meets specified criteria); General Accounting Office, GAO/OGC-96-6, *Civilian Personnel Law Manual, Title II—Leave* at 2-15 (4th ed. 1996) (noting that "[a]n absence which is otherwise chargeable to sick leave may be charged to annual leave if the employee so requests and the agency agrees").

The same interpretation and practice are followed under statutes that, like section 6323(b), state that leave under their provisions is "without loss of, or reduction in, . . . leave to which [the employee] otherwise is entitled."[6] For example, 5 U.S.C. § 6323(d)(1) (2006) provides that a military reserve technician

> is entitled at such person's request to leave without loss of, or reduction in, pay, leave to which such person is otherwise entitled, credit for time or service, or performance or efficiency rating, for each day, not to exceed 44 workdays in a calendar year, in which such person is on active duty without pay . . . for participation in operations outside the United States, its territories and possessions.

DoD guidance, with which OPM has expressed its agreement, makes clear that a military reserve technician may choose to use other forms of leave, including annual leave and leave under section 6323(a), before using section 6323(d)(1) leave. *See* Memorandum for Human Resources Offices and Civilian Personnel Offices from Earl T. Payne, Director, Civilian Personnel Management Service, DoD, *Subject: Military Leave* att. 2, at 2–3 (Apr. 2, 1996) ("1996 DoD Memorandum"); Memorandum to Directors of Personnel from Office of Compensation Policy, OPM, *Subject: Military Leave* (Apr. 24, 1996). That conclusion is confirmed by

---

[6] Many of these provisions, unlike section 6323(b), do not entail a concomitant reduction in pay. An employee therefore has little or no incentive to substitute another type of leave for the leave provided, as he or she does in the case of section 6323(b) leave. In our view, however, the salient fact about these provisions is that an employee retains the right to make such a substitution notwithstanding the fact that the provisions contain the same admonition as section 6323(b) that the leave provided is "without loss of, or reduction in," other types of leave.

section 6323(d)(1)'s text, which states that leave under its provisions is "at [the technician's] request."[7]

Similarly, 5 U.S.C. § 6326 (2006), which was enacted by the same law as section 6323(b), *see* Pub. L. No. 90-588, §§ 1(a), 2(a), 82 Stat. at 1151, provides that an employee is

> entitled to not more than three days of leave without loss of, or reduction in, pay, leave to which he is otherwise entitled, credit for time or service, or performance or efficiency rating, to make arrangements for, or attend the funeral of, or memorial service for, an immediate relative who died as a result of wounds, disease, or injury incurred while serving as a member of the Armed Forces in a combat zone.

OPM guidance on section 6326 does not require that an employee exhaust available section 6326 leave before using annual leave or another applicable type of leave. *See* OPM, *Leave for Funerals and Bereavement, Funeral Leave for Combat-Related Death of an Immediate Relative*, http://opm.gov/oca/leave/HTML/Funeral.asp (last visited ca. Apr. 2012). Moreover, OPM's regulations suggest that an employee may use other types of leave before, or instead of, taking leave under section 6326, because the regulations provide that section 6326 leave shall be granted "as is needed and requested by" the employee. 5 C.F.R. § 630.804 (2011).[8]

---

[7] Although, unlike section 6323(d)(1), section 6323(b) does not expressly state that its leave is "at [the employee's] request," the absence of that language does not imply that section 6323(b) leave is mandatory. Section 6323(b) and section 6323(d)(1) were enacted by separate laws, 28 years apart. *Compare* Pub. L. No. 90-588, § 2(a), 82 Stat. at 1151 (originally enacting what is now section 6323(b), as amended), *with* NDAA for FY 1996, § 1039, 110 Stat. at 432–33 (originally enacting section 6323(d)(1)). In those circumstances, the presumption that Congress acts intentionally when it includes language in one section of a statute but omits it in another section of the same act does not apply. *See Johnson v. United States*, 130 S. Ct. 1265, 1272–73 (2010). Moreover, leave statutes generally do not include language stating that leave is "at [the employee's] request" even when the leave provided is voluntary rather than mandatory. *See, e.g.*, 5 U.S.C. § 6303 (annual leave); 5 U.S.C. § 6307 (sick leave).

[8] OPM guidance on 5 U.S.C. § 6328 (2006)—which provides that "[a] Federal law enforcement officer or a Federal firefighter may be excused from duty without loss of, or reduction in, pay or leave to which such officer is otherwise entitled, or credit for time or service, or performance or efficiency rating, to attend the funeral of a fellow Federal law

*Whether Reservists Must Exhaust Available Leave Under 5 U.S.C. § 6323(b)*

OPM guidance on 5 U.S.C. § 6327 (2006) also suggests that an employee may choose which type of applicable leave he or she wants to use. That statute provides that an employee is "entitled to leave without loss of or reduction in pay, leave to which [the employee is] otherwise entitled, credit for time or service, or performance or efficiency rating, for the time," up to certain annual limits, "necessary to permit such employee to serve as a bone-marrow or organ donor." *Id.* OPM's guidance states that an employee "may," rather than "must," use section 6327 leave and that such leave "is in addition to annual leave and sick leave." OPM, Bone Marrow or Organ Donor Leave, http://www.opm.gov/oca/leave/html/DONOR.asp (last visited ca. Apr. 2012).[9]

_____

enforcement officer or Federal firefighter, who was killed in the line of duty"—also gives no indication that section 6328's funeral leave must be used instead of annual leave or other applicable types of leave. *See* OPM, *Leave for Funerals and Bereavement, Funeral Leave for First Responders*, http://opm.gov/oca/leave/HTML/Funeral.asp (last visited ca. Apr. 2012).

[9] We are aware of only one leave statute that may not permit employees to choose among multiple available types of leave. Under 5 U.S.C. § 6322 (2006), an employee is "entitled to leave without loss in, or reduction in, pay, leave to which he otherwise is entitled, credit for time or service, or performance or efficiency rating" for jury service or service as a witness in certain cases to which the government is a party. OPM's guidance on section 6322 does not state that an employee must use leave under that section rather than other applicable leave, *see* OPM, *Court Leave*, http://www.opm.gov/oca/leave/HTML/courtlv.asp (last visited ca. Apr. 2012), but the Comptroller General has concluded that, where applicable, leave under section 6322 must be used, rather than annual leave. *See, e.g.*, *Mr. Thomas*, B-119969, 1969 WL 4324, at *2 (Comp. Gen. Mar. 21, 1969) ("1969 CG Letter"); *Richard A. Gresham*, B-119969, 1955 WL 1962, at *1 (Comp. Gen. Mar. 3, 1955) ("1955 CG Letter"); *Witnesses; Jurors—Government Employees—Compensation, etc.*, 27 Comp. Gen. 83, 87–88 (1947). The Comptroller General based that conclusion, however, on analyses of earlier, different versions of the statute, which also differed from section 6323(b). *See* 1955 CG Letter at *1 (quoting section 1 of Public Law 76-676, 54 Stat. 689, 689, which provided that time for jury service "shall not . . . be deducted from the time allowed for any leave of absence authorized by law"); 1969 CG Letter at 2 (quoting 5 U.S.C. § 6322 (Supp. IV 1968), which provided that "[t]he period of absence for jury service is without deduction from other leave of absence authorized by statute"). We have found no Comptroller General guidance attempting to reconcile this interpretation of section 6322 with the current statutory language. In fact and to the contrary, a 1981 Comptroller General opinion concluded that section 6322's prohibition on "loss of, or reduction in, . . . leave to which [the employee] otherwise is entitled" "specifically prohibited" a forfeiture of annual leave that resulted when an agency required an employee to use leave under section 6322 instead of "use it or lose it" annual leave. *George J. DiGiulio—Restoration of Forfeited*

145

36 Op. O.L.C. 129 (2012)

In sum, we believe that Congress expected that, like most leave statutes, section 6323(b) would be interpreted to allow employees to choose between using leave under its provisions and using other applicable types of leave.

## D.

Interpreting section 6323(b) to contain an exhaustion requirement would also be contrary to the purposes underlying the statute. As discussed above, Congress enacted section 6323(b) to supplement the existing 15 days of military leave provided in section 6323(a) and to alleviate the financial hardship of employees who were being forced to take leave without civilian pay when they performed military duty in excess of those 15 days. *See supra* Part II.B (discussing legislative history). Requiring employees to exhaust section 6323(b) leave before using leave under section 6323(a) would frustrate those purposes in two ways.

First, interpreting section 6323(b) to contain an exhaustion requirement would undermine Congress's intent to supplement the leave granted under section 6323(a). An exhaustion requirement would reduce the value of section 6323(a) leave by making it subject to an additional limitation— that it may not be used until after an alternative, less favorable form of leave has been used. Moreover, as described above, an exhaustion requirement could cause some employees to forfeit section 6323(a) leave that they could otherwise have used. *See supra* p. 139. Those consequences would conflict both with Congress's intent that section 6323(b) supplement existing leave and with the specific statutory admonition that section 6323(b) not trigger any "loss of, or reduction in" other leave to which employees are entitled.

Second, reading section 6323(b) to contain an exhaustion requirement would undermine Congress's intent to alleviate the financial hardship faced by employees who perform military duty, because it would put some of those employees in a worse financial position than before section 6323(b) was enacted. For employees whose military pay exceeds their

---

*Annual Leave*, B-201093, 1981 WL 22549, at *2–3, *4 (Comp. Gen. July 15, 1981). In any event, the Comptroller General's construction of section 6322 would not determine the proper interpretation of section 6323(b).

civilian pay, taking section 6323(b) leave does not provide a significant financial advantage over taking leave without civilian pay, because, in either scenario, the employees receive only military pay.[10] Taking section 6323(a) leave, in contrast, provides a significant financial advantage over taking leave without civilian pay, because employees on section 6323(a) leave receive both civilian pay and military pay. As a result, a requirement that employees exhaust section 6323(b) leave before using section 6323(a) leave could increase the financial hardship of some employees whose military pay exceeds their civilian pay. For example, before section 6323(b) was enacted, if such employees were called to active duty to aid in law enforcement for 20 days, they could receive both military and civilian pay for the first 15 days and then military pay alone for the five remaining days (while on leave without civilian pay). If section 6323(b) were interpreted to contain an exhaustion requirement, those employees would now be required to use section 6323(b) leave for the entire 20 days, during which time they would receive only military pay.[11] It is doubtful that Congress intended that result.

### E.

In support of their view that section 6323(b) contains an exhaustion requirement, OPM and DoD rely in significant part on developments subsequent to the statute's original enactment. *See* OPM Views Letter at 5–6; DoD Views Letter at 2–3. In particular, they point to the statutory language added in 1996, which states that, at an employee's request, an absence that qualifies for leave under section 6323(b) may instead "be

---

[10] In some situations, if an employee's military service is of especially long duration, taking leave under section 6323(b) might provide a slight financial advantage because extended periods of leave without pay can adversely affect an employee's right to benefits. *See* OPM, *Effect of Extended Leave Without Pay (LWOP) (or Other Nonpay Status) on Federal Benefits and Programs*, http://www.opm.gov/oca/leave/html/LWOP_eff.asp (last visited ca. Apr. 2012).

[11] If those employees also performed their 15 days of annual training later in the same fiscal year, then the financial disadvantage would be minimal, because the employees would have to use leave without civilian pay, rather than section 6323(a) leave, for the training period. Even in that situation, however, an exhaustion requirement would deprive the employees of the opportunity to choose which ordering of leave was most advantageous in light of all their financial and other personal circumstances.

charged to the employee's accrued annual leave or to compensatory time available to the employee," but "[t]he period of absence may not be charged to sick leave." 5 U.S.C. § 6323(b) (as amended by the NDAA for FY 1996, § 516(a), 110 Stat. at 309). OPM and DoD reason that, by adding this language, which makes clear that employees need not exhaust section 6323(b) leave before using annual leave or compensatory time, Congress must have intended that employees be required to exhaust leave under section 6323(b) before using any type of leave not specified in the amendment, including leave under section 6323(a). *See* OPM Views Letter at 5–6; DoD Views Letter at 2–3.

We do not believe, however, that it is appropriate to draw that negative inference from the 1996 amendment. Although the 1996 amendment expressly permits use of annual leave or compensatory time instead of section 6323(b) leave without mentioning section 6323(a) leave, the amendment likewise expressly prohibits use of sick leave instead of section 6323(b) leave without mentioning section 6323(a) leave. As a result, one could draw a negative inference from the amendment in either direction—that using section 6323(a) leave in lieu of section 6323(b) leave is not permitted, because of the express permission granted for annual leave, or that using section 6323(a) leave is not prohibited, because of the express prohibition regarding sick leave. Because it is not possible to draw *both* of those contradictory inferences, we think it is not appropriate to draw either. Moreover, inferring from Congress's silence a requirement that reservists must exhaust section 6323(b) leave before using section 6323(a) leave would be contrary to the well-established principle, discussed above, that provisions governing benefits for individuals who perform military service must be construed in the beneficiaries' favor. Accordingly, the 1996 language should be read to mean only what it says: Reservists may choose to use annual leave or compensatory time in lieu of section 6323(b) leave, and they may not choose to use sick leave. The 1996 amendment simply does not address whether reservists may use other types of leave, such as section 6323(a) leave, instead of or before using section 6323(b) leave.

OPM and DoD nonetheless suggest that, because the Comptroller General had interpreted section 6323(b) to require exhaustion before use of all other types of leave, and the 1996 amendment addressed only whether exhaustion is required before use of annual leave and compensatory time,

*Whether Reservists Must Exhaust Available Leave Under 5 U.S.C. § 6323(b)*

Congress's failure to address whether exhaustion is required before use of other types of leave, including leave under section 6323(a), should be construed as ratifying the exhaustion requirement as applied to those types of leave. *See* OPM Views Letter at 5; DoD Views Letter at 2. Although the Supreme Court has sometimes found that Congress has ratified or acquiesced in a prior judicial or administrative interpretation by reenacting the statutory language on which that interpretation was based, that principle does not apply here.

Recent Supreme Court cases make clear that the concept of congressional acquiescence in prior statutory interpretations must be applied "with extreme care" and that courts should conclude that Congress has ratified a prior administrative interpretation only if there is "overwhelming evidence of acquiescence" in the agency's interpretation. *Solid Waste Agency v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 169–70 & n.5 (2001). The circumstances surrounding the 1996 amendment to section 6323(b) do not present "overwhelming" evidence of congressional ratification. Indeed, several requirements for congressional ratification identified in the Court's recent cases are not satisfied.

First, ratification occurs only when Congress has reenacted without change the precise language that was the subject of the prior interpretation. *See Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 349 (2005); *United States v. Wells*, 519 U.S. 482, 495–96 (1997); *Estate of Cowart v. Nicklas Drilling Co.*, 505 U.S. 469, 478 (1992). The 1996 amendment did not reenact the language on which the Comptroller General based his 1969 interpretation ("without loss of, or reduction in, . . . leave to which he otherwise is entitled"); instead, the amendment added new language making clear that exhaustion of section 6323(b) leave is not required before use of annual leave or compensatory time, a result that is inconsistent with the reasoning in the Comptroller General's opinion.

Second, the Court's cases indicate that courts should find ratification only when "the record of congressional discussion preceding reenactment makes" some "reference" to the prior interpretation or there is "other evidence to suggest that Congress was . . . aware of" that interpretation. *Brown v. Gardner*, 513 U.S. 115, 121 (1994); *see also Solid Waste Agency*, 531 U.S. at 169 n.5 (suggesting that the legislative record must show that Congress considered the "precise issue"). Nothing in the legislative

history of the 1996 amendment, however, indicates that Congress was aware of a requirement that employees exhaust leave under section 6323(b) before using leave under section 6323(a).[12] The relevant committee reports simply state that, under the amendment, employees could "elect, when performing public safety duty, to use either military leave, annual leave, or compensatory time to which they are otherwise entitled." S. Rep. No. 104-112, at 241 (1995); H.R. Rep. No. 104-406, at 803 (1995); H.R. Rep. No. 104-450, at 794 (1996) (Conf. Rep.).[13]

---

[12] DoD notes that it had consistently interpreted the statute to contain such a requirement, and it presumes that Congress was aware of its interpretation. *See* DoD Views Letter at 2. But we have not been able to locate any DoD articulation of its interpretation predating the 1996 amendment. On the contrary, shortly before the amendment's enactment, DoD published its regulations implementing USERRA, one of which stated that "[a]n employee performing service with the uniformed services must be []permitted, upon request, to use any accrued annual leave (or sick leave, if appropriate), or military leave during such service." 5 C.F.R. § 353.208 (1996). That regulation seems inconsistent with the proposition that section 6323(b) contains an exhaustion requirement, because the regulation states that an employee performing military service "must be []permitted, upon request, to use any . . . military leave during such service," *id.*, and "military leave" includes section 6323(a) leave in addition to section 6323(b) leave. OPM asserts that the regulation does not override the statutory conditions that generally apply to the various leave types and therefore would not displace any exhaustion requirement imposed by section 6323(b). *See* OPM Views Letter at 7. But even assuming that the regulation is not actually inconsistent with an exhaustion requirement, it provides no indication that such a requirement exists.

[13] As DoD notes, the 1996 amendment essentially made permanent language that had been included in appropriations legislation for the several preceding fiscal years. *See* DoD Views Letter at 2. Nothing in the text or history of those appropriations acts shows congressional awareness of a requirement that an employee exhaust leave under section 6323(b) before using leave under section 6323(a). We know of only one document arguably suggesting that some in Congress may have been aware of an administrative policy requiring such exhaustion. During 1990 hearings held by a subcommittee of the House Appropriations Committee, Gen. Donald Burdick, Director of the Army National Guard, and Maj. Gen. Philip G. Killey, Director of the Air National Guard, stated, in response to questions about whether military technicians could be assigned to drug interdiction missions in Active Duty for Special Work status, that they could, "exhausting first their law enforcement leave and then election of either annual leave, compensatory time, leave without pay or unused military leave." *Dep't of Def. Appropriations for 1991: Hearings Before the Subcomm. on the Dep't of Def. of the H. Appropriations Comm.*, pt. 3, 101st Cong. 405, 506 (1990). If the phrase "law enforcement leave" was intended to refer to leave under section 6323(b), and the phrase "military leave" was intended to refer to leave under section 6323(a), then Gen. Burdick's and Maj. Gen. Killey's remarks may

*Whether Reservists Must Exhaust Available Leave Under 5 U.S.C. § 6323(b)*

Finally, congressional ratification occurs only when the statutory language can reasonably be read to embody the prior administrative or judicial interpretation. *See Brown*, 513 U.S. at 121 ("[w]here the law is plain, subsequent reenactment does not constitute an adoption of a previous administrative construction" (quoting *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991) (internal quotation marks omitted))). As explained above, the text of section 6323(b) cannot be read to impose an exhaustion requirement. *See supra* Part II.A. The language stating that an employee is entitled to section 6323(b) leave "without loss of[,] or reduction in[,] . . . leave to which he otherwise is entitled," 1969 CG Opinion at 236 (quoting section 6323(b)), fails to support, and is arguably inconsistent with, an exhaustion requirement. *See supra* p. 138.[14]

At most, in the 1996 amendment, Congress failed to reject the Comptroller General's interpretation of section 6323(b) as applied to leave types other than annual leave and compensatory time. Such "[c]ongressional inaction lacks persuasive significance because several equally tenable inferences [about Congress's intent] may be drawn

---

have reflected their belief that reservists were required to exhaust section 6323(b) leave before using section 6323(a) leave. Neither witness, however, explained which statutory provisions they were referring to, and leave under both subsections (a) and (b) of section 6323 is commonly called "military leave." We think it very unlikely that any legislators who heard or read this testimony would have understood it to articulate the legal position that reservists must exhaust section 6323(b) leave before using section 6323(a) leave or would have retained awareness of the testimony when a different Congress amended section 6323(b) six years later.

[14] The Supreme Court has accepted ratification arguments in only three cases over the past 20 years, each involving circumstances very different from those presented here. In *Forest Grove School District v. T.A.*, 557 U.S. 230, 239–40 (2009), Congress had reenacted the precise language that the Supreme Court had previously interpreted. In *Barnhart v. Walton*, 535 U.S. 212, 220 (2002), Congress had "frequently amended or reenacted the relevant provisions without change," and the Court viewed those reenactments only as "further evidence" for giving deference to the agency's longstanding construction of its statute under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). In *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143–56 (2000), the Court concluded that Congress had ratified the agency's longstanding interpretation by enacting six pieces of legislation that were inconsistent with the agency's recent attempt to alter that interpretation. Indeed, even cases from an earlier era more hospitable to claims of congressional ratification generally involved enactment of the precise language on which the prior interpretation was based, coupled with specific evidence that Congress was aware of the interpretation. *See, e.g.*, *Lorillard v. Pons*, 434 U.S. 575, 580–82 (1978).

36 Op. O.L.C. 129 (2012)

from" it. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994) (internal quotation marks omitted).[15]

### III.

For these reasons, we conclude that section 6323(b) does not contain an exhaustion requirement. A reservist who performs military service that qualifies for leave under both section 6323(a) and section 6323(b) may elect to take leave under section 6323(a) without first using all of his or her available leave under section 6323(b).

VIRGINIA A. SEITZ
*Assistant Attorney General*
*Office of Legal Counsel*

---

[15] OPM and DoD do not argue that their interpretation of section 6323(b) is entitled to deference. Nonetheless, we considered whether, if the statute were ambiguous, their view would receive deference from a court under either *Chevron* or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). But neither OPM nor DoD has "express congressional authorization[] to engage in the process of rulemaking or adjudication," as is generally required for an agency to receive deference under *Chevron. See United States v. Mead Corp.*, 533 U.S. 218, 229 (2001). Nor would OPM and DoD's interpretation receive significant weight under *Skidmore.* Neither OPM nor DoD is charged with administering section 6323, and neither OPM's *Reservist Policy Differential Guidance* nor the 1996 DoD Memorandum articulates a thorough analysis of the exhaustion issue confronted here. Instead, both rely almost exclusively on the 1969 CG Opinion. *See Reservist Policy Differential Guidance* at 5–6; 1996 DoD Memorandum. In any event, traditional tools of statutory construction demonstrate that section 6323(b) does not contain an exhaustion requirement. *See Chevron*, 467 U.S. at 842–43 (deference to agency is overcome where Congress has resolved the issue).