# EXHIBIT 9

# EEOC Authority to Order Federal Agency to Pay for Breach of Settlement Agreement

Based on principles of sovereign immunity, the Equal Employment Opportunity Commission lacks authority to order the Social Security Administration to pay a monetary award as a remedy for breach of a settlement agreement entered to resolve a dispute under Title VII of the Civil Rights Act of 1964.

August 13, 2014

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
SOCIAL SECURITY ADMINISTRATION

This memorandum responds to your letter of March 28, 2013, requesting our views on the authority of the Equal Employment Opportunity Commission ("EEOC") to order the Social Security Administration ("SSA") to pay a monetary award as a remedy for breach of a settlement agreement entered to resolve a dispute under Title VII of the Civil Rights Act of 1964.[1] We conclude, based on principles of sovereign immunity, that EEOC lacks authority to order SSA to pay such a monetary award for breach of the settlement agreement.

## I.

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, and national origin. 42

---

[1] Memorandum for Virginia A. Seitz, Assistant Attorney General, Office of Legal Counsel ("OLC"), from David Black, General Counsel, SSA, *Re: Equal Employment Opportunity Commission's Monetary Award Authority* (Mar. 28, 2013). In considering SSA's request, we received additional views from that agency. *See* E-mail for OLC from Andrew Maunz, Office of the General Counsel, SSA, *Re: Additional Questions* (June 14, 2013) ("Maunz E-mail"); E-mail for OLC from Jay Ortis, Director, Labor and Employment Division, Office of General Law, SSA, *Re: Fwd: Solicitation of Views* (July 17, 2013, 9:58 AM). We also obtained the views of EEOC and the Civil Division of the Department of Justice. *See* Letter for John E. Bies, Deputy Assistant Attorney General, OLC, from Peggy R. Mastroianni, Legal Counsel, EEOC, *Re: Social Security Administration Request for OLC Opinion* (July 2, 2013); E-mail for OLC from Gary Hozempa, Office of Legal Counsel, EEOC, *Re: EEOC Breach of Settlement Decisions re Social Security Administration* (July 23, 2013, 2:16 PM); E-mail for OLC from Kerry A. Bollerman, Civil Division, Department of Justice, *Re: Solicitation of Views* (May 14, 2013, 5:20 PM).

*EEOC Authority to Order Federal Agency to Pay for Breach of Settlement Agreement*

U.S.C. § 2000e-2(a) (2012). A provision of Title VII extends this prohibition to employment by the federal government. Title VII's federal-sector provision states that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." *Id.* § 2000e-16(a). Congress authorized EEOC "to enforce the provisions of [section 2000e-16(a)] through appropriate remedies, including reinstatement or hiring of employees with or without back pay." *Id.* § 2000e-16(b). In addition, Congress authorized EEOC to "issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under [section 2000e-16]." *Id.*

Title VII and EEOC regulations set out a procedure for the filing, processing, and adjudication of complaints of unlawful discrimination in federal employment. The regulations, however, reflect a preference for voluntary settlement of discrimination complaints, *see* 29 C.F.R. § 1614.603 (2013), and treat settlement agreements as binding on the parties, *id.* § 1614.504(a). If a complainant believes that the respondent agency has failed to comply with the agreement, the regulations allow the complainant to "request that the terms of the settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased." *Id.* If EEOC determines that the agency is not in compliance with the settlement agreement, the regulations provide that EEOC may "order . . . compliance with the . . . settlement agreement, or, alternatively, . . . order that the complaint be reinstated for further processing from the point processing ceased." *Id.* § 1614.504(c). The regulations further provide that "allegations that subsequent acts of discrimination violate a settlement agreement shall be processed as separate complaints . . . rather than [through actions to enforce the settlement]." *Id.*

In 1995, a group of African-American male employees working in the Baltimore, Maryland headquarters of SSA filed a class complaint alleging that the agency had discriminated against them with respect to promotions, awards, bonuses, and other personnel decisions. EEOC certified the class in 1998. The parties subsequently decided to settle their dispute and entered into an agreement under which the class members received monetary and non-monetary relief in exchange for dismissing their complaint.

23

38 Op. O.L.C. 22 (2014)

*See* Settlement Agreement, *Burden v. Barnhart*, EEOC Case No. 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X (Jan. 11, 2002) ("Settlement Agreement"). The Settlement Agreement made clear that it did not "represent an admission of liability by [SSA]." *Id.* at 20.

Pertinent here, Provision III.D of the Settlement Agreement, which appears under the heading "Non-Monetary Relief," reads in relevant part:

> [SSA] agrees that its policies and practices for granting performance awards and Quality Step Increases will be fair and equitable and consistent with merit principles. [SSA] agrees that it will correct any misapplications of its policies for granting performance awards and Quality Step Increases to ensure fair and equitable distribution of such awards, consistent with merit principles. At [SSA's] discretion, an expert may be retained to recommend ways to assess these policies and practices and to ensure compliance with relevant statutes, regulations, EEO principles, and applicable collective bargaining agreements in [SSA's] awards process. Any corrections [SSA] implements will be made after providing a 30-day notice and comment period to the Oversight Committee. [SSA] will provide a report to the Administrative Judge within 6 months of the Effective Date of this agreement of the actions it has taken to comply with this paragraph.

*Id.* at 10. The Settlement Agreement provided that the Administrative Judge ("AJ") would "retain jurisdiction over this matter for a period of 4 years" to monitor compliance with the agreement. *Id.* at 6.

In 2005, the class contended that SSA had not fulfilled its obligation to correct "misapplications of its policies for granting performance awards and Quality Step Increases." The class accordingly requested that the agency provide a "corrective action plan." Letter for John E. Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from Peggy R. Mastroianni, Legal Counsel, EEOC, *Re: Social Security Administration Request for OLC Opinion* at 2 (July 2, 2013) ("EEOC Letter"). SSA responded that the expert analysis on which the class premised its request was flawed, and promised to hire another expert. *Id.*

SSA delivered a second expert report to the class in 2006. That report showed underrepresentation of African-American males in the distribution of Quality Step Increases ("QSIs"), cash awards, and honor awards in

certain SSA offices. In a September 2006 letter, SSA set forth a plan to address the areas of concern identified in the report and to prevent future disparities.

The class subsequently requested that the AJ find that SSA was not in compliance with the Settlement Agreement, arguing that the agency had not offered a plan to correct all of the disparities revealed in the second expert report. *See Jefferson v. Astrue*, Hearing No. 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X, slip op. at 11 (Apr. 28, 2011) ("OFO Decision"). The judge denied the motion as moot because SSA had provided the statistical information the class demanded. *Id.* at 12.

The complainants appealed the AJ's decision to EEOC's Office of Federal Operations ("OFO"). In their appeal, the class members requested specific implementation of Provision III.D, which, they argued, included retroactive awards and QSIs for class members who had been unfairly denied those benefits. Class Brief in Support of Appeal at 13–14, *Burden v. Astrue*, EEOC Case No. 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X (May 20, 2008) ("Class Brief in Support of Appeal"). SSA, on the other hand, took the position that implementation of Provision III.D did not include retroactive awards and QSIs. The Settlement Agreement, the agency contended, did not authorize prospective relief for any alleged breach; while SSA had agreed to ensure that its policies for awarding promotions and other honors would be fair and equitable and to correct any misapplications of its policies, it had not agreed that the distribution of such benefits would be mathematically exact, or that the class members would be entitled to relief in the event they disagreed with the distribution of awards. Agency's Response to Class's Brief on Appeal at 8–10, *Burden v. Astrue*, EEOC Case No. 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X (May 20, 2008) ("Agency's Response to Class's Brief on Appeal").

OFO, acting on behalf of the Commission, reversed the AJ's decision. Relying on the 2006 expert report, OFO found that "the Agency did not ensure that its policies and practices for granting performance awards and QSIs were fair and equitable between April 1, 2003 and September 30, 2005." OFO Decision at 18. OFO further found that SSA had failed to correct misapplications of its policies to ensure fair and equitable distribution of awards. OFO explained that there was no evidence to show that the policies and procedures described in SSA's September 2006 letter had been implemented or that the agency had effectively corrected

25

the misapplication of its policy for granting performance awards and QSIs. *See id.* at 19.

Based on these conclusions, OFO determined that the complaining class members were "entitled to specific enforcement of the class settlement agreement." *Id.* OFO then ordered that "all African-American males working for the Agency's Headquarters Office in Baltimore, Maryland from April 1, 2003, through September 30, 2005, [be] presumptively entitled to the average honor award, monetary award, and QSI received during the relevant time." *Id.* OFO added that "the presumption of entitlement to the average honor award, monetary award, and QSI can be rebutted if the Agency can establish by clear and convincing evidence that an employee is not entitled to this relief." *Id.* OFO remanded the case to an administrative judge to oversee the processing of relief, including calculating the total and individual amounts due. *Id.* at 20.

SSA sought reconsideration of the decision, arguing that the relief awarded exceeded the scope of EEOC's authority. OFO denied the motion. *Jefferson v. Astrue*, Hearing No. 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X (Dec. 18, 2012). SSA then submitted its request for the views of this Office on whether EEOC had authority to order the agency to pay a monetary award for breach of a settlement agreement, contending that the absence of an applicable waiver of sovereign immunity precludes EEOC from ordering SSA to pay such a monetary award.

## II.

### A.

The question whether EEOC has authority to issue a monetary award to remedy a breach of a settlement agreement by a federal agency turns on the doctrine of sovereign immunity, which bars suit against the federal government except to the extent it has consented. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Consent to suit must be provided by Congress explicitly, in clear statutory language; ambiguous statements will not suffice. *See Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also United States v. Shaw*, 309 U.S. 495, 500–01 (1940) (explaining that "without specific statutory consent, no suit may be brought against the United States. No officer by his action can confer jurisdiction"). Waivers of sovereign

immunity are "strictly construed, in terms of [their] scope, in favor of the sovereign." *Lane*, 518 U.S. at 192. Waivers for one type of relief, such as injunctive relief, do not thereby waive immunity for other forms of relief, such as money damages. *See id.* at 195–96; *United States v. Nordic Vill.*, 503 U.S. 30, 34–37 (1992) (relying on sovereign immunity principles to construe statutory waiver of sovereign immunity to permit equitable but not monetary claims); *cf. Library of Congress v. Shaw*, 478 U.S. 310, 317–19 (1986) (statutory waiver of immunity from attorney's fees does not thereby waive immunity from interest on those fees). Rather, "[t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Lane*, 518 U.S. at 192. We have previously explained that a statutory provision "does not waive sovereign immunity for monetary claims" where the provision can plausibly be read in a manner that would not authorize monetary relief. *Authority of the Equal Employment Opportunity Commission to Impose Monetary Sanctions Against Federal Agencies for Failure to Comply with Orders Issued by EEOC Administrative Judges*, 27 Op. O.L.C. 24, 26–27 (2003) ("Navy Opinion") (citing *Availability of Money Damages Under the Religious Freedom Restoration Act*, 18 Op. O.L.C. 180, 180 (1994)). The rule that suit is permitted only on the terms Congress has authorized extends as well to matters of forum; a waiver of immunity for suits in one forum does not necessarily constitute a waiver in all forums. *See Shaw*, 309 U.S. at 501 ("Even when suits [against the United States] are authorized[,] they must be brought only in designated courts.").

As we observed in a prior opinion, "[a]lthough most of the sovereign immunity case law arises in the context of suits before federal district courts, these principles apply with equal force to agency adjudications." Navy Opinion, 27 Op. O.L.C. at 27. "In our view, there can be no doubt that normal sovereign immunity presumptions apply" to the question whether an agency can itself grant a particular form of relief against the government. *Id.* at 28.[2]

---

[2] In *West v. Gibson*, 527 U.S. 212 (1999), the Supreme Court suggested in dicta that "ordinary sovereign immunity presumptions" may not apply to the question whether an agency may grant relief against the government when Congress has unambiguously waived sovereign immunity with respect to that form of relief for claims brought in district court. *Id.* at 217. In our 2003 opinion, we disagreed with that suggestion,

27

38 Op. O.L.C. 22 (2014)

In 2003, we considered whether the statute conferring authority on EEOC to enforce Title VII's federal-sector provision through "appropriate remedies," 42 U.S.C. § 2000e-16(b), supplied the requisite waiver of sovereign immunity to support an order of attorney's fees against an agency as a sanction for failure to follow an administrative judge's orders. We concluded that it did not. We observed that section 2000e-16(b) waives federal agencies' immunity from suits seeking remedies for unlawful discrimination, but "[a]ttorney's fees imposed as a sanction for failure to comply with AJ orders relating to the adjudicatory process . . . are not a remedy for any act of discrimination." Navy Opinion, 27 Op. O.L.C. at 29. We further explained that "neither section 2000e-16(b), nor any other statute, contains a provision that even pertains to violations of AJ orders, much less provides an explicit waiver of the government's immunity to monetary sanctions for violations of such orders." *Id.* Finally, we rejected EEOC's argument that the Federal Rules of Civil Procedure supplied the necessary waiver. "[E]ven if Congress had waived sovereign immunity for violations of the Federal Rules of Civil Procedure in federal court," we explained, "it would not follow that it has also waived immunity for arguably analogous (though formally distinct) violations before an entirely different body where these rules do not apply." *Id.* at 31. "Indeed, . . . the doctrine of sovereign immunity requires the exact opposite presumption." *Id.*

### B.

Within this framework, we consider EEOC's authority to award the monetary relief at issue in this case. Our 2003 opinion, SSA argues, compels the conclusion that EEOC may not issue such an award absent an express waiver of sovereign immunity. No such waiver exists, the agency urges, because Title VII waives the government's immunity only for damages awards upon a finding of unlawful discrimination, and the Settlement Agreement included no admission of liability. Memorandum for Virginia A. Seitz, Assistant Attorney General, Office of Legal Counsel, from David Black, General Counsel, SSA, *Re: Equal Employment Oppor-*

---

observing that "'[i]t is settled law that a waiver of sovereign immunity in one forum does not effect a waiver in other forums.'" Navy Opinion, 27 Op. O.L.C. at 27–28 (quoting *West*, 527 U.S. at 226 (Kennedy, J., dissenting)).

28

*tunity Commission's Monetary Award Authority* at 3 (Mar. 28, 2013) ("SSA Memorandum").

EEOC responds that our 2003 opinion is inapposite because the Commission did not impose sanctions on SSA for failing to comply with an AJ's order. Rather, "the relief awarded . . . pertains only to SSA's breach of an EEOC settlement agreement." EEOC Letter at 10. In the past, EEOC observes, we have held that "an agency can award through a settlement agreement any relief which a court could order if a finding of prohibited discrimination were made." *Id.* (citing *Proposed Settlement of* Diamond v. Department of Health and Human Services, 22 Op. O.L.C. 257, 262 (1998) ("Diamond Opinion")); *see also Authority of USDA to Award Monetary Relief for Discrimination*, 18 Op. O.L.C. 52, 53 (1994) ("USDA Opinion"). In EEOC's view, it follows that, "when an agency breaches an EEO settlement, EEOC can order as relief whatever a court could award upon a finding of a breach." EEOC Letter at 10. Hence, the Commission asserts, if a court may order monetary relief upon finding that an agency has breached a Title VII settlement, so too can EEOC.

EEOC does not appear to dispute that the waiver of sovereign immunity in Title VII applies only to claims of unlawful discrimination and does not extend to monetary claims against the government for breach of a Title VII settlement. *See* EEOC Letter at 5 & n.2. Rather, EEOC argues that courts may award money damages for breach of a settlement agreement under the Tucker Act, which waives the government's sovereign immunity with respect to claims "founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). EEOC notes that in *Holmes v. United States*, 657 F.3d 1303 (Fed. Cir. 2011), the Federal Circuit determined that the Court of Federal Claims may exercise jurisdiction under the Tucker Act over suits alleging breach of a Title VII settlement, provided that the agreement itself contemplates money damages in the event of a breach. *Id.* at 1311–15. The agreement at issue in this matter, EEOC argues, contemplates money damages in the manner *Holmes* requires. Therefore, in EEOC's view, the Tucker Act's waiver applies, and sovereign immunity poses no bar to the Commission's order of the monetary relief at issue in this matter.

EEOC further contends that "the fact that the waiver [of sovereign immunity]" is found in the Tucker Act rather than Title VII "is not

29

significant vis-à-vis EEOC's authority to award back pay." EEOC Letter at 11. In *West v. Gibson*, 527 U.S. 212 (1999), EEOC notes, the Supreme Court held that EEOC may award compensatory damages as an "appropriate remed[y]" for a violation of Title VII, 42 U.S.C. § 2000e-16(b), even though the provision authorizing that form of relief is found in a 1991 Title VII amendment that expanded the remedial authority of courts without explicitly referring to EEOC proceedings. 527 U.S. at 217. Similarly, here, EEOC argues that the Commission has authority to award money damages for breach of a Title VII settlement agreement because of the waiver of immunity contained in the Tucker Act. A contrary conclusion, EEOC contends, would "strip EEOC's authority to enforce Title VII against agencies through appropriate remedies, and rob it of the ability to ensure that an agency complies with its Title VII settlement promises." EEOC Letter at 11 (internal quotation marks omitted).

### III.

#### A.

We are not persuaded by EEOC's arguments. EEOC's reliance on the Tucker Act is misplaced because the Tucker Act confers jurisdiction only on the Court of Federal Claims to hear contractual claims against the United States exceeding $10,000. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.").[3] That limited waiver of sovereign immunity does not authorize EEOC to provide a forum for such disputes. *See Shaw*, 309 U.S. at 501 ("Even when suits [against the United States] are authorized[,] they must be brought only in designated courts."); *cf. Minnesota v. United States*, 305 U.S. 382, 388

---

[3] Section 1346 of title 28, known as the "Little Tucker Act," confers jurisdiction on United States district courts for claims founded "upon any express or implied contract with the United States" that do not exceed $10,000.

(1939) ("[I]t rests with Congress to determine not only whether the United States may be sued, but in what courts the suit may be brought.").

### 1.

In *Holmes*, on which EEOC places principal reliance, the Federal Circuit determined that Title VII posed no bar to the Court of Federal Claims' exercise of jurisdiction under the Tucker Act to adjudicate a claim that an agency breached a Title VII settlement agreement, notwithstanding Title VII's comprehensive remedial scheme and its conferral of jurisdiction on federal district courts. 657 F.3d at 1312–13.[4] In so holding, the court relied on the Supreme Court's decision in *Kokkonen v. Guardian Life Insurance*, 511 U.S. 375 (1994), which held that a court with jurisdiction over an underlying dispute does not necessarily also have jurisdiction over claims that parties have breached an agreement settling that dispute. *Id.* at 381. Rather, the Court ruled, an independent basis of jurisdiction is generally needed for a federal court to adjudicate such breach of settlement claims. *Id.*; *see Holmes*, 657 F.3d at 1312–13. Following *Kokkonen*, the Federal Circuit explained that, "although the [settlement agreement] arose out of Title VII litigation, [the plaintiff's] suit for breach of contract is just that: a suit to enforce a contract with the government." 657 F.3d at 1312. The court therefore held that the case was properly heard in the Court of Federal Claims under the Tucker Act, rather than in the federal district courts authorized to hear claims under Title VII.

Conversely, federal courts with jurisdiction over Title VII claims have held that they may *not* adjudicate claims for damages resulting from a federal agency's breach of a Title VII settlement agreement. *See Taylor v. Geithner*, 703 F.3d 328, 334 (6th Cir. 2013); *see also Munoz v. Mabus*, 630 F.3d 856, 861–64 (9th Cir. 2010); *Frahm v. United States*, 492 F.3d 258, 262–63 (4th Cir. 2007); *Lindstrom v. United States*, 510 F.3d 1191,

---

[4] Neither party challenges this aspect of the Federal Circuit's decision; we therefore assume that it is correct for purposes of this opinion. As it is irrelevant to our resolution of the question presented, we likewise take no position on the parties' dispute over whether the contract at issue contemplates money damages. *Compare* EEOC Letter at 6–8 *with* Maunz E-mail, *supra* note 1.

31

38 Op. O.L.C. 22 (2014)

1194–96 (10th Cir. 2007). Those courts have explained that the waiver of sovereign immunity in Title VII, which authorizes suits against federal agencies for unlawful discrimination, "does not expressly extend to monetary claims against the government for breach of a settlement agreement that resolves a Title VII dispute." *Frahm*, 492 F.3d at 262. And while the waiver of sovereign immunity in the Tucker Act does extend to such claims, "invoking the Tucker Act is a non sequitur" in federal district court, "because where . . . a suit involves a claim for money damages over $10,000, the Act waives the government's immunity only in the Court of Federal Claims." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014); *see id.* at 1056 ("[T]he Tucker Act does not contain a waiver of sovereign immunity *in the district court* for breach of a Title VII settlement agreement seeking damages in excess of $10,000." (emphasis added)); *accord Munoz*, 630 F.3d at 864 ("Because [the plaintiff's] breach of settlement agreement claim is essentially a contract action against the federal government whose resolution requires no interpretation of Title VII itself, his claim cannot seek jurisdictional refuge in Title VII and belongs, if anywhere, in the Court of Federal Claims.").[5]

This case law highlights why, even if we were to accept EEOC's position that it "can order as relief whatever a court could award upon a finding of a breach," EEOC Letter at 10, that standard does not help its case. The waiver of sovereign immunity in the Tucker Act is limited to cases heard in the Court of Federal Claims. It does not waive the federal government's immunity, either in federal district court or in EEOC proceedings, for claims arising from breach of a settlement agreement. As explained above, waivers of sovereign immunity are to be "strictly construed, in terms of [their] scope, in favor of the sovereign." *Lane*, 518 U.S. at 192. Consequently, the Tucker Act provides no authority for EEOC to award money damages to remedy a federal agency's breach of a Title VII settlement.

---

[5] Notably, "unlike the district courts, . . . the [Court of Federal Claims] has no general power to provide equitable relief against the Government or its officers." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 313 (2011). And the Federal Circuit has found that "[e]xcept in strictly limited circumstances . . . there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief." *Massie v. United States*, 226 F.3d 1318, 1321 (2000).

*EEOC Authority to Order Federal Agency to Pay for Breach of Settlement Agreement*

### 2.

The Supreme Court's decision in *West* does not compel a contrary result. In that case, the Supreme Court construed the provision granting EEOC authority to enforce Title VII "through appropriate remedies," 42 U.S.C. § 2000e-16(b), as including the power to order remedies Congress deemed appropriate for enforcing Title VII's substantive provisions in a later Title VII amendment. 527 U.S. at 218. Because Congress determined that compensatory damages are an appropriate remedy for victims of discrimination by federal agencies in the Civil Rights Act of 1991, the Court concluded, section 2000e-16(b) authorizes EEOC to afford such relief in its enforcement proceedings. *Id.* at 218–19.

*West* provides no support for construing the limited waiver of sovereign immunity in the Tucker Act to apply to breach-of-settlement proceedings before EEOC. Unlike the Civil Rights Act of 1991, which amended Title VII itself, the Tucker Act is an unrelated statute that predated Title VII by several decades and as such says nothing about the remedies Congress considered suitable to effectuate the aims of Title VII. *Cf. id.* at 218 ("[I]n context the word 'appropriate' most naturally refers to forms of relief that *Title VII itself authorizes*." (emphasis added)). More fundamentally, this matter does not concern the scope of EEOC's authority to award "appropriate remedies" for workplace discrimination, but its authority to award remedies for a federal agency's breach of a settlement agreement. *See Frahm*, 492 F.3d at 262–63 (section 2000e-16(b) waives the government's sovereign immunity with respect to substantive Title VII claims but "does not expressly extend to monetary claims against the government for breach of a settlement agreement that resolves a Title VII dispute"). The Court's interpretation of the term "appropriate remedies" as it appears in Title VII provides no basis for reading the limited waiver of sovereign immunity in the Tucker Act to authorize EEOC to award monetary relief for a federal agency's breach of a Title VII settlement agreement.

### B.

In addition to considering EEOC's argument that the Tucker Act allows it to order a compensatory remedy for breach of a settlement agreement, we have also considered whether EEOC's award of monetary relief is authorized by Title VII itself insofar as the award constitutes an order to

33

perform on promises SSA made in the Settlement Agreement—in particular, promises to "distribute performance awards on a fair and equitable basis, consistent with merit principles" and "to take corrective action if it did not keep this promise." *See* EEOC Letter at 12 ("SSA promised to distribute performance awards on a fair and equitable basis, consistent with merit principles. It also promised to take corrective action if it did not keep this promise. OFO found that SSA breached these promises. As relief, EEOC ordered SSA to take corrective action, the very corrective action which SSA promised to, but did not, take.").

As EEOC notes, this Office has repeatedly recognized that Title VII's waiver of sovereign immunity means that an agency may settle an administrative Title VII complaint by awarding monetary relief to a complainant, even without admitting liability for the alleged discrimination. USDA Opinion, 18 Op. O.L.C. at 52–54; *see* Diamond Opinion, 22 Op. O.L.C. at 261 & n.6 (quoting *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 515 (1986)). As long as the intended relief does not exceed the scope of remedies available in court, the government's consent to be sued for violations of Title VII ordinarily permits voluntary settlement of a complaint alleging such violations. *See* Diamond Opinion, 22 Op. O.L.C. at 261–62 & n.6; *see also* USDA Opinion, 18 Op. O.L.C. at 53 (explaining that, under appropriations law, "agencies have authority to provide for monetary relief in a voluntary settlement of a discrimination claim only if the agency would be subject to such relief in a court action regarding such discrimination brought by the aggrieved person").

It might follow from this principle that EEOC has authority in certain circumstances to enforce a settlement agreement by ordering an agency to perform on its promises, even if those promises include a commitment to pay money to a complainant. If, for example, the agency had settled a Title VII claim by promising to provide a particular amount of back pay or other monetary relief and the complainant requested specific performance of that promise, EEOC might be able to order that relief without violating the doctrine of sovereign immunity. In such a circumstance, one could argue that the dispute is not, in essence, a contract dispute with the federal government, but rather a continuation of the same Title VII proceeding that gave rise to the settlement itself. Consequently, the same waiver of sovereign immunity that permitted the agency to resolve

*EEOC Authority to Order Federal Agency to Pay for Breach of Settlement Agreement*

the Title VII complaint by voluntary settlement might also permit EEOC to compel the agency to make good on its promise.[6]

But whatever effect the waiver of sovereign immunity in Title VII might have on EEOC's authority to award monetary relief in other circumstances, we do not believe it authorizes the monetary award at issue here. The award at issue was not an order to perform on an agreement that provided back pay or other specific monetary relief to settle an underlying Title VII claim alleging past misconduct. Rather, it was an order to perform on a promise to take corrective action in the future to remedy any failure to distribute performance awards and QSIs on a "fair and equitable basis." EEOC Letter at 12. Based on two principal considerations, we conclude that, for purposes of the sovereign immunity analysis, the dispute at issue here cannot fairly be characterized as merely a continuation of the same Title VII proceeding that gave rise to the settlement itself. Accordingly, the remedy EEOC awarded is not authorized by the waiver of sovereign immunity that allowed SSA to settle the class complaint and provide relief to the claimants in the first place.

The nature of the present dispute over the meaning and application of Provision III.D illustrates that the dispute was not merely a continuation of the Title VII claim that gave rise to the settlement, but rather a distinct proceeding beyond the scope of the waiver of sovereign immunity upon which the settlement rested. First, the present dispute does not concern a specific settlement term that imposes clear obligations on the SSA—such as an agreement to provide a particular sum in back pay—but instead concerns SSA's alleged failure to comply with a non-specific prospective promise to "correct any misapplications of its policies for granting performance awards and Quality Step Increases to ensure fair and equitable distribution of such awards, consistent with merit principles." Settlement Agreement at 10. As SSA points out, in agreeing to this provision, it neither expressly consented to a particular numerical distribution of awards and QSIs, nor expressly agreed that the class members would be entitled to monetary relief in the event that they were dissatisfied with the number of awards and promotions received. Agency's Response to

---

[6] Editor's Note: The text of this footnote has been redacted. It includes privileged information and addresses an issue not necessary for the discussion here.

38 Op. O.L.C. 22 (2014)

Class's Brief on Appeal at 8–10. Provision III.D, SSA observes, "contains no discussion of a monetary component and neither memorializes nor evidences a meeting of the minds between the parties that all class members could receive the average monetary award, or any monetary award for that matter, for the oversight period." SSA Memorandum at 3–4. Rather, in SSA's view, the disputed settlement term simply required compliance with merit principles and active oversight of its policies for issuing promotions and performance awards. *See* Maunz E-mail, *supra* note 1 ("[S]pecific enforcement [of Provision III.D] could include an ordered review of the agency's policies, perhaps even by an expert."). As a consequence, the proceedings regarding the enforcement dispute at issue required not only extensive debate over the meaning of SSA's promise to distribute awards and QSIs on a "fair and equitable basis" and to "correct any misapplications of its policies," but also extensive fact-finding regarding SSA's post-settlement conduct to determine whether the relevant standards had been met. *See* OFO Decision at 16–19.[7]

---

[7] Although OFO characterized its order as "specific enforcement" of the Settlement Agreement, we note that OFO's order appears more akin to a legal remedy for breach than the equitable remedy of specific performance as that term is generally understood in contract law. The Supreme Court has observed that specific performance requires an agreement that is "certain, fair, and just in all its parts." *Dalzell v. Dueber Watch-Case Mfg. Co.*, 149 U.S. 315, 325 (1893). "'The contract which is sought to be specifically executed ought not only to be proved,'" the Court explained, "'but the terms of it should be so precise as that neither party could reasonably misunderstand them.'" *Id.* at 326 (quoting *Colson v. Thompson*, 15 U.S. (2 Wheat.) 336, 341 (1817)). Accordingly, "'[i]f the contract be vague or uncertain . . . a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy.'" *Id.* (quoting *Colson*, 15 U.S. (2 Wheat.) at 341); *see also* Restatement (Second) of Contracts § 368 (1981) ("Specific performance . . . will not be granted unless the terms of the contract are sufficiently certain to provide a basis for an appropriate order.").

In determining that the class members were presumptively "entitled to the average honor award, monetary award, and QSI" (a number unknown at the time of decision), we do not believe that OFO enforced a term "'so precise as that neither party could reasonably misunderstand [it].'" *Dalzell*, 149 U.S. at 326 (quoting *Colson*, 15 U.S. (2 Wheat.) at 341); *cf. TAS Distrib. Co., Inc. v. Cummins Engine Co.*, 491 F.3d 625, 637 (7th Cir. 2007) (rejecting claim that district court abused its discretion in refusing to order defendant to specifically perform on its "obligation to make 'all reasonable efforts' to manufacture and market the subject technology").

*EEOC Authority to Order Federal Agency to Pay for Breach of Settlement Agreement*

Second, the present dispute does not concern monetary remedies for the alleged Title VII violations underlying the settlement, but monetary remedies for failure to comply with a settlement term governing SSA's *future* conduct, i.e., SSA's failure to distribute performance awards and QSIs on a "fair and equitable" basis after the settlement was reached. That is apparent from the extensive fact-finding required to determine SSA's compliance with Provision III.D—if the monetary remedy awarded to the class members in the present dispute rested on the conduct that gave rise to their initial Title VII claims, there would have been no need for such additional fact-finding because those claims were resolved by the Settlement Agreement. It is, at a minimum, questionable whether the waiver of sovereign immunity in Title VII that permitted SSA to enter the Settlement Agreement in the first place would also permit SSA to promise to provide a monetary remedy in the event it failed to abide by a promise to refrain from particular conduct in the future. We have previously observed that, consistent with limitations on agencies' ability to compromise or abandon claims made against the United States in litigation, "settlement of a discrimination claim should be based on the agency's good faith assessment of the litigation risk that a court might find complainants entitled to relief" based on the claims raised in their complaint. Diamond Opinion, 22 Op. O.L.C. at 262. An agreement to provide monetary relief in the event of future noncompliance with a term of the settlement agreement would arguably be an impermissible agreement to compensate complainants for injuries not alleged in their complaint. Such conduct would not be at issue if the complainants were to proceed to court on their original claim. As such, an agreement to provide monetary compensation for future noncompliance would raise significant questions about whether the agency had acted in a manner consistent with its obligation to provide settlement remedies based on a "good faith assessment" of the complainants' likely recovery from the pending complaint.[8]

---

[8] We do not suggest that an agency is precluded from including in a settlement its promise not to discriminate in the future. Title VII explicitly authorizes courts to enjoin agencies from engaging in unlawful employment practices. 42 U.S.C. § 2000e-5(g)(1). And we have recognized that "an appropriate remedy under Title VII . . . may include relief, including injunctive relief, that will make the plaintiff whole, prevent future violations of the act, and prevent retaliation against complainants." Diamond Opinion, 22 Op. O.L.C. at 263. Because agencies may settle a discrimination claim and award any

37

38 Op. O.L.C. 22 (2014)

For both of these reasons, taken together, we conclude that the dispute at issue was not merely a continuation of the underlying Title VII proceedings that resulted in the Settlement Agreement, and that the waiver of sovereign immunity upon which the settlement rested therefore cannot be said to authorize the award EEOC provided to remedy SSA's alleged failure to comply with Provision III.D of the Settlement Agreement.[9]

### IV.

We conclude that the doctrine of sovereign immunity precludes the monetary relief ordered in this case.

JOHN E. BIES
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

relief that would be available in court, a promise to refrain from discriminatory behavior in the future would be entirely proper.

[9] As noted in Part I, EEOC's regulations provide that "allegations that subsequent acts of discrimination violate a settlement agreement shall be processed as separate complaints . . . rather than [through actions to enforce the settlement]." 29 C.F.R. § 1614.504(c). In proceedings before OFO, SSA argued that this provision precluded the class from receiving relief on their claims that the agency's unequal post-settlement distribution of awards violated the Settlement Agreement. We express no view on this question, and do not address the scope of EEOC's regulations. Rather, we consider the fact that EEOC effectively compensated the class members for discrimination that followed the settlement only insofar as that fact informs our view that the Commission's award is barred by the doctrine of sovereign immunity.