# EXHIBIT 10

# Authority of the Department of Labor to Control the Disclosure of Federal Employees' Compensation Act Records Held by the United States Postal Service

The Federal Employees' Compensation Act gives the Department of Labor the authority to control and limit the disclosure of FECA records held by the United States Postal Service, and DOL's FECA regulations prohibit USPS from disclosing FECA records in a manner inconsistent with DOL's Privacy Act routine uses.

The Department of Labor's regulatory regime for FECA records is consistent with and furthers the purposes of the Privacy Act.

Neither the Postal Reorganization Act nor the National Labor Relations Act authorizes USPS to control the disclosure of FECA records.

November 16, 2012

MEMORANDUM OPINION FOR THE SOLICITOR
DEPARTMENT OF LABOR

The U.S. Department of Labor ("DOL"), through its Office of Workers' Compensation ("OWCP"), is responsible for administering the Federal Employees' Compensation Act ("FECA" or the "Act"). *See* Letter for Virginia Seitz, Assistant Attorney General, Office of Legal Counsel, from M. Patricia Smith, Solicitor of Labor, DOL at 1 (Jan. 23, 2012) ("Request Letter"). DOL has established a government-wide system of records that contains all records created in the process of filing and resolving FECA claims, including those held by other agencies. It has asserted control over those records and provided that they will generally be kept confidential. DOL has also published a notice pursuant to the Privacy Act of 1974 that enumerates the circumstances in which FECA records may be disclosed. (These circumstances are known as "routine uses.") The United States Postal Service ("USPS" or "Postal Service") is the largest federal agency whose employees are covered by FECA. *Id.* Like other agencies covered by FECA, USPS maintains certain records related to the FECA claims its employees file. USPS has taken the position that it has authority to control the FECA records in its possession, and it has published its own Privacy Act notice listing routine uses that would permit it to disclose its FECA records when DOL's regulations would not. In light of this conflict, you asked whether DOL has authority

217

to control and limit the disclosure of FECA records held by the Postal Service. Request Letter at 1.[1]

We conclude that FECA gives DOL such authority, and that DOL's FECA regulations prohibit USPS from disclosing FECA records in a manner inconsistent with DOL's routine uses. We further conclude that DOL's regulatory regime for FECA records is consistent with and furthers the purposes of the Privacy Act. USPS thus may not establish routine uses for FECA records that result in disclosures that would not be permitted under DOL's regulations. Finally, we disagree with USPS's arguments that the Postal Reorganization Act and the National Labor Relations Act ("NLRA") provide it with authority to control the disclosure of FECA records.

## I.

Two statutory schemes are particularly relevant to our analysis: FECA and the Privacy Act. Initially passed in 1916, FECA is now codified in chapter 81 of title 5 of the United States Code.[2] It "provides a comprehensive system of compensation for federal employees who sustain work-related injuries." *United States v. Lorenzetti*, 467 U.S. 167, 168 (1984). FECA grants the Secretary of Labor or her designee exclusive authority to "administer[] and decide all questions arising under" FECA. 5 U.S.C. § 8145 (2006); *see Mathirampuzha v. Potter*, 548 F.3d 70, 81 (2d Cir. 2008) ("Congress has vested the Secretary of Labor or her delegate with exclusive authority to 'administer[] and decide all questions arising under the FECA.'" (quoting 5 U.S.C. § 8145) (alteration in original)). The Secretary has delegated this authority to OWCP. *See* Delegation of Authorities and Assignment of Responsibilities to the Director, Office of Workers' Compensation Programs, 74 Fed. Reg. 58,834, 58,834 (Nov. 13, 2009). FECA also authorizes the Secretary to

---

[1] The request for this opinion came solely from DOL, and USPS declined to offer its views when contacted by this Office. However, both DOL and USPS submitted extensive views letters on this dispute to the Office of Management and Budget in October 2010, and DOL provided those letters to us. We considered those letters in preparing this opinion.

[2] *See* Pub. L. No. 64-267, 39 Stat. 742 (1916). FECA's text frequently references its subchapters. Because only the first subchapter is relevant here, we refer to that subchapter as "FECA" for ease of reading.

"prescribe rules and regulations necessary for the administration and enforcement of [the Act]." 5 U.S.C. § 8149 (2006).

FECA and the accompanying DOL regulations establish a process through which federal employees can submit claims of workplace-related injury or disease to DOL for adjudication and compensation. Generally, the process involves submission of a notice of a covered injury or disease accompanied by a claim form with supporting evidence, followed by investigation and adjudication of the claim by OWCP. If a claim is accepted, the employee receives relief in the form of benefits and possible reassignment. *See generally id.* §§ 8101–8152 (2006 & Supp. V 2011); Questions and Answers about the Federal Employees' Compensation Act (FECA), http://www.dol.gov/owcp/dfec/regs/compliance/DFECfolio/q-and-a.pdf (last visited Nov. 13, 2012).

Two features of this process are significant here. First, while DOL manages much of the claims process, a claimant's employing agency is also required to participate. For example, the statute requires injured employees to provide notice of and information about their injuries to their "immediate superior[s]," 5 U.S.C. § 8119, and instructs that, "immediately after an injury to an employee which results in his death or probable disability, his immediate superior shall report to the Secretary of Labor," *id.* § 8120. *See also, e.g.*, 20 C.F.R. § 10.100 (2012) (describing employee procedure for notifying supervisor of traumatic injury); *id.* § 10.110 (describing employing agency responsibilities when employees file such notices). Employing agencies, including USPS, also contribute to the fund through which injured employees are compensated. *See* 5 U.S.C. § 8147(b) (requiring agency contributions to a general compensation fund); 39 U.S.C. § 2003(g) (2006) (regulating timing of mandatory USPS deposits in the general fund).

Second, during the claims process, both the claimant and the employing agency create and submit numerous records documenting the employee's compensation claim. The Secretary has substantial control over the information included in these records. For example, in addition to giving the Secretary broad general authority to administer and regulate FECA, the statute specifically permits the Secretary to determine the required content in the immediate superior's report of an employee injury, and to require the filing of supplementary reports. *See* 5 U.S.C. § 8120. The statute also instructs covered employees to submit their FECA claims "on a form

approved by the Secretary . . . [that] contain[s] all information required by the Secretary." *Id.* § 8121. DOL regulations further prescribe the forms that initiate claims for compensation, the respective responsibilities of the employer and employee in filling out these forms, and the timing and manner of their transmittal. *See, e.g.*, 20 C.F.R. §§ 10.7, 10.111, 10.102. The regulations also permit employees and employing agencies to submit additional relevant evidence, such as medical reports or other investigative materials. *See, e.g.*, *id.* § 10.115. In addition, during claim adjudication, an employing agency must submit any relevant facts in its possession, may contest facts submitted by the claimant, and may conduct certain independent assessments of the claimed injury or disability. *See id.* §§ 10.117, 10.118.

DOL has explained orally that, as a result of its involvement in the FECA claims process, employing agencies typically have physical custody of certain FECA records, including the records the employing agency gathers or creates when an employee files a claim. In addition, during claim adjudication, DOL may provide employing agencies with records it obtains from an injured employee. According to DOL, employing agencies are given access to FECA records because those agencies play a significant role in the submission and adjudication of FECA claims and are generally responsible for their payment. *See* 5 U.S.C. § 8147(b).

The Privacy Act of 1974, 5 U.S.C. § 552a, is the second statutory scheme relevant to this dispute. It was passed "to protect the privacy of individuals identified in information systems maintained by Federal agencies," and governs the "collection, maintenance, use, and dissemination of information by such agencies." Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896, 1896 (1974). The Privacy Act applies to any "record" kept in an agency "system of records." The Act defines a "record" as any information maintained by an agency pertaining to an individual and linked to that individual through some means of specific identification. *See* 5 U.S.C. § 552a(a)(4) (2006). It defines a "system of records" as any group of records under the control of an agency from which information is retrieved through use of an individual's name or other identifying information. *See id.* § 552a(a)(5). To promote transparency, the Privacy Act requires agencies to publish a notice in the *Federal Register* announcing the establishment or revision of their systems of records (commonly called a "system-of-records notice") and providing detailed information about the characteristics of each system, including the sources and catego-

*Authority of DOL to Control FECA Records Held by USPS*

ries of the records the systems contain and the agency's procedures governing their use. *See id.* § 552a(e)(4).

As a general matter, the Privacy Act prohibits agencies from disclosing any record contained in a system of records absent the written request or written consent of the person to whom the record pertains. *See id.* § 552a(b). There are exceptions to this general rule, including an exception permitting disclosures for a "routine use." *Id.* § 552a(b)(3). "Routine use" of a record is defined as "the use of such record for a purpose which is compatible with the purpose for which it was collected." *Id.* § 552(a)(7). To employ the "routine use" exception, an agency must describe all routine uses under which the agency will disclose records in the relevant system-of-records notice. *See id.* § 552a(e)(4)(D). The requirement that a published routine use be compatible with the purpose for which the record was collected is known as the Privacy Act's "compatibility requirement."

To fulfill its obligations under the Privacy Act, DOL has published a system-of-records notice covering FECA records. This notice, entitled "DOL/GOVT-1, Office of Workers' Compensation Programs, Federal Employees' Compensation Act File" ("DOL/GOVT-1"), describes the records DOL/GOVT-1 covers and the routine uses for which they may be disclosed. Records covered by DOL/GOVT-1 may include, for example, DOL forms filed in connection with a FECA claim, underlying medical records, payment records, hearing transcripts, demographic information, investigative material, and consumer credit reports. *See* Publication of Five New Systems of Records; Amendments to Five Existing Systems of Records, 77 Fed. Reg. 1728, 1738 (Jan. 11, 2012) (republishing DOL/GOVT-1 with amendment providing for an additional routine use). The DOL/GOVT-1 system-of-records notice expressly states that DOL/GOVT-1 includes FECA records in the possession of other agencies. *See id.* at 1738 (DOL/GOVT-1 includes "[c]opies of claim forms and other documents" and in some instances "original forms" related to FECA claims that are "maintained by the employing agency"); *see also* Publication in Full of All Notices of Systems of Records Including Several New Systems, 67 Fed. Reg. 16,816, 16,823 (April 8, 2002) ("It is presumed that most, if not all, federal agencies maintain systems of records comprising a portion of [DOL/GOVT-1]."); Use and Disclosure of Federal Employees' Compensation Act Claims File Material, 63 Fed. Reg. 56,752, 56,753 (Oct. 22, 1998) ("When . . . claim forms are submitted to the

221

36 Op. O.L.C. 217 (2012)

OWCP . . . all materials relating to that claim or injury, whether in the possession of the OWCP or the agency, are covered by DOL/GOVT-1, and thus subject to OWCP's exclusive control.").

DOL has established twelve universal routine uses for records maintained in any of its systems of records, and has supplemented that basic list with seventeen routine uses specifically applicable to DOL/GOVT-1. 77 Fed. Reg. at 1729–30 (universal routine uses); *id.* at 1739–40 (DOL/GOVT-1 routine uses). DOL/GOVT-1 further specifies that FECA records cannot be disclosed under a specific routine use unless "the purpose of the disclosure is both relevant and necessary and is compatible with the purpose for which the information was collected." *Id.* at 1739.

Like DOL, USPS has published a system-of-records notice for the FECA records in its possession, entitled "Office of Workers' Compensation Programs (OWCP) Record Copies." This system of records overlaps with the system created by DOL/GOVT-1. It includes FECA records related to claims filed by USPS employees, such as "[r]ecords and supporting information related to the claim, including copies of Department of Labor forms, postal forms and correspondence, and automated payment and accounting records." Privacy Act of 1974, System of Records, 70 Fed. Reg. 22,516, 22,530 (Apr. 29, 2005) (notice 100.850). This USPS system-of-records notice incorporates nine of the routine uses that USPS applies to all of its systems of records. *See id.* at 22,521. There are substantial differences between the disclosures allowed by DOL's and USPS's routine uses, and USPS's routine uses conflict with the routine uses in DOL/GOVT-1 because they allow some disclosures that would not be permitted under DOL/GOVT-1.

## II.

We first address whether FECA gives DOL exclusive authority to regulate the disclosure of all FECA records—and therefore bars USPS from regulating the disclosure of its FECA records in a manner that is inconsistent with DOL regulations—or whether USPS's status as a uniquely independent establishment in the federal government gives it authority to control disclosure of the FECA records in its possession. We then consider whether USPS's regulation of FECA record disclosure is barred by, or is inconsistent with, the purposes of the Privacy Act. Finally, we address whether USPS's information disclosure obligations under the NLRA give

*Authority of DOL to Control FECA Records Held by USPS*

it the authority to establish a routine use permitting disclosure of FECA records to labor unions when such disclosure is necessary for collective bargaining.

## A.

DOL and USPS disagree about which agency has authority over FECA records in the custody of the Postal Service and thus the responsibility to establish routine uses for those records under the Privacy Act. *See* Request Letter at 1. DOL contends that "it alone has authority over . . . FECA records for Privacy Act purposes," and that, as a result, "OWCP's regulations and Privacy Act System of Records Notice listing the routine uses of FECA file information extend government-wide and cover the Postal Service." *Id.* USPS, however, argues that it has exclusive authority over FECA records in its custody. *See* Statement of the United States Postal Service in Support of Its Authority to Release Copies of OWCP Records at 2–7 (Oct. 6, 2010) ("USPS Statement") (attached to Request Letter). USPS asserts that it is an agency with a uniquely independent status in the federal government, "free from many facets of the federal bureaucracy," including many federal record-keeping statutes. *Id.* at 3. On this basis, it claims that it has authority to control the disclosure of FECA records in its possession, even where disclosure would not be permitted under DOL/GOVT-1's routine uses. *Id.*

In our view, FECA gives DOL authority to control the disclosure of FECA records in USPS's possession. As set forth above, *see supra* pp. 218–219, FECA gives the Secretary of Labor exclusive authority to administer the FECA program, 5 U.S.C. § 8145, and to "prescribe rules and regulations necessary for the administration and enforcement of [FECA]," *id.* § 8149. Although the text of FECA does not explicitly address the maintenance and disclosure of FECA records, it does create a claims process that expressly contemplates the creation of records related to FECA claims, including by employing agencies, *see supra* pp. 218–220, and gives DOL broad authority to prescribe the rules and regulations necessary to administer that process, *see id.* For many years, DOL has held—and its regulations have reflected—the view that its authority to regulate the FECA process includes authority to control access to and disclosure of FECA records. We believe this is a reasonable reading of the statute.

36 Op. O.L.C. 217 (2012)

DOL's predecessor, the United States Employees' Compensation Commission, long ago determined that its authority to administer and enforce FECA includes the authority to regulate the maintenance and disclosure of the records the FECA process generates, and further determined that regulating such disclosure was an important part of administering FECA. Decades before Congress restricted disclosure of personally identifiable information through the Privacy Act, the Compensation Commission relied on FECA's broad grant of regulatory authority to promulgate regulations making FECA records confidential. *See* 20 C.F.R. § 1.1 (1938) ("[FECA] authorizes the [United States Employees' Compensation] Commission to make necessary rules and regulations for the enforcement of the Act and to decide all questions arising under the Act."); *see also id.* § 1.21(a) (1938) ("[Employment compensation] records and papers pertaining to any . . . injury or death are confidential and no official or employee of a Government establishment . . . shall disclose information from or pertaining to such records to any person."); 20 C.F.R. § 1.21 (1974) (same). DOL and other predecessor entities have promulgated and enforced similar regulations ever since.

At present, DOL has two regulations that address the confidentiality, custody, and control of FECA records. The first, 20 C.F.R. § 10.10, is entitled "Are all documents relating to claims filed under the FECA considered confidential?"[3] It provides:

> All records relating to claims for benefits, including copies of such records maintained by an employer, are considered confidential and may not be released, inspected, copied or otherwise disclosed except as provided in the Freedom of Information Act ["FOIA"] and the Privacy Act of 1974 or under the routine uses provided by DOL/GOVT-1 if such release is consistent with the purpose for which the record was created.

The second regulation, 20 C.F.R. § 10.11, is entitled "Who maintains custody and control of FECA records?" It provides:

---

[3] The FECA regulations were amended to their current interrogative form in 1997 to make them easier to use. *See* Claims for Compensation under the Federal Employees' Compensation Act, 62 Fed. Reg. 67,120, 67,120 (Dec. 23, 1997) (proposed rule to be codified at 20 C.F.R. pt. 10).

224

*Authority of DOL to Control FECA Records Held by USPS*

All records relating to claims for benefits filed under the FECA, including any copies of such records maintained by an employing agency, are covered by the government-wide Privacy Act system of records entitled DOL/GOVT-1 (Office of Workers' Compensation Programs, Federal Employees' Compensation Act File). This system of records is maintained by and under the control of OWCP, and, as such, all records covered by DOL/GOVT-1 are official records of OWCP. The protection, release, inspection and copying of records covered by DOL/GOVT-1 shall be accomplished in accordance with the rules, guidelines and provisions of this part [i.e., DOL's FECA regulations], as well as those contained in 29 CFR parts 70 and 71 [i.e., DOL's FOIA and general Privacy Act regulations], and with the notice of the system of records and routine uses published in the *Federal Register*. All questions relating to access/disclosure, and/or amendment of FECA records maintained by OWCP or the employing agency, are to be resolved in accordance with this section.

As DOL explains, these regulations reflect the "careful control over the disclosure of documents from [FECA] case files" that OWCP has maintained for "decades." DOL's Position Statement at 1 (Oct. 1, 2010) ("DOL Statement") (attached to Request Letter). Consistent with this view, a DOL notice of final rulemaking announcing a revision to an earlier version of 20 C.F.R. § 10.11 notes that DOL "considers all records collected because a claim was filed seeking benefits under FECA[] to be official records of the Department and, with one limited exception, covered by DOL/GOVT-1." Use and Disclosure of Federal Employees' Compensation Act Claims File Material, 63 Fed. Reg. 56,752, 56,753 (Oct. 22, 1998).[4] The notice further asserts that all materials covered by DOL/GOVT-1 are "subject to OWCP's exclusive control." *Id.* DOL reaffirmed this view when it finalized the regulation in its current form. *See* Claims for Compensation Under the Federal Employees' Compensation Act, 63 Fed. Reg. 65,284, 65,286 (Nov. 25, 1998).

Under the two regulations reproduced above, the Postal Service lacks authority over the disclosure of FECA records in its possession. Both

---

[4] The "limited exception" referenced in the notice permits agencies to retain FECA forms in the personnel folders of employees, in accordance with guidelines issued by the Office of Personnel Management, if those forms were not submitted to OWCP. 63 Fed. Reg. at 56,753.

regulations expressly cover "copies" of FECA records maintained by employing agencies other than DOL; and both make clear that FECA records are confidential, and that "routine use" disclosure is permissible *only* "under the routine uses provided by DOL/GOVT-1." 20 C.F.R. § 10.10; *id.* § 10.11.[5] The plain text of these regulations thus bars USPS from disclosing FECA records under a "routine use" that is inconsistent with the DOL/GOVT-1 notice.[6]

These regulations constitute a valid exercise of DOL's statutory authority under FECA. As noted above, FECA grants the Secretary broad authority to "administer[] and decide all questions arising under" FECA, and to "prescribe rules and regulations necessary for the administration and enforcement of [FECA]." 5 U.S.C. §§ 8145, 8149. And FECA records are an integral part of the FECA process. As DOL explains, "[t]he records maintained in [DOL/GOVT-1] are created as a result of and are necessary to" DOL's statutory duties of "processing and adjudicating claims" for federal workers' compensation. 67 Fed. Reg. at 16,827. In light of the importance of FECA records to the processing and adjudication of claims, DOL reasonably concluded that the question of when and how to disclose FECA records "aris[es] under" FECA, and falls within the Secretary's jurisdiction. 5 U.S.C. § 8145; *cf. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984) (an agency's reasonable construction of a statute it is charged with administering is entitled to deference). The reasonableness of DOL's conclusion is supported by DOL's consistent guarantee of the confidentiality of FECA records since 1938. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993) (the "consistency of an agency's position is a factor in assessing the weight that the position is due"); *see also supra* p. 224 (describing history).

---

[5] Because the DOL–USPS disagreement at issue does not concern disclosures of FECA records under FOIA or provisions of the Privacy Act other than the routine use exception, we do not address those issues. *Cf.* 5 U.S.C. § 552a(b)(1)–(2), (4)–(12), (d) (2006) (providing for disclosure of Privacy Act records other than through a "routine use").

[6] Even if the regulations were ambiguous, we would defer to DOL's reasonable interpretation of them. *See Auer v. Robbins*, 519 U.S. 452, 461–62 (1997) (the Secretary of Labor's interpretation of a DOL regulation, advanced in a legal brief, is "controlling unless plainly erroneous or inconsistent with the regulation" (internal quotation marks omitted)).

*Authority of DOL to Control FECA Records Held by USPS*

It was likewise reasonable for DOL to conclude that regulations protecting the confidentiality and restricting the disclosure of FECA records are "necessary" for the Act's administration. 5 U.S.C. § 8149; *cf. Chevron*, 467 U.S. at 843–44. FECA records often contain sensitive medical and health information, *see, e.g.*, 20 C.F.R. § 10.115(f) (requiring submission of medical report), and disclosure of such information may implicate significant individual privacy interests, *cf. Plain Dealer Publ'g Co. v. Dep't of Labor*, 471 F. Supp. 1023, 1026 (D.D.C. 1979) (protecting documents in an active OWCP claims file under FOIA exemption for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"). Protecting the confidentiality of such information, except where DOL has determined that disclosure is consistent with the purposes of FECA, serves those privacy interests. And prohibiting other agencies from disclosing FECA records outside of DOL's framework ensures that these confidentiality interests are protected wherever the records are physically maintained.

DOL's protection of FECA records is also consistent with its efficient implementation of the Act. If DOL cannot ensure the confidentiality of FECA records, employees may be deterred from submitting all information necessary to evaluate their claims, to the detriment of DOL's adjudication process. *Cf. id.* (describing the serious harm that would result from public release of an OWCP claims file); *see also* DOL Statement at 8 ("DOL does not want to risk an employee being less than forthcoming in his workers' compensation claim because he fears the information will . . . not be held close[ly] by OWCP or that the information may somehow be used against him in another, unrelated, proceeding.").

In its submission to the Office of Management and Budget ("OMB"), USPS challenges DOL's control of the FECA records in its possession, claiming that DOL control over the Postal Service's copies of FECA records would "improperly ignore[] the Postal Service's unique independence from many federal statutes and regulations." USPS Statement at 1. USPS contends that DOL's exercise of authority over its FECA records would be burdensome, requiring USPS to seek DOL's permission every time it wishes to disclose a FECA record, and would intrude on the Postal Service's statutory independence. *Id.* at 2–4. In making these arguments, USPS relies on 39 U.S.C. § 410(a) (2006), a provision of the Postal Reor-

ganization Act of 1970, *as amended*, 39 U.S.C. §§ 101–5605 (2006 & Supp. V 2011) ("PRA"). That provision states that, "[e]xcept as provided in subsection (b) of this section, and except as otherwise provided in this title . . . no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds . . . shall apply to the exercise of the powers of the Postal Service." *Id.* § 410(a). USPS notes that it views all records in its possession as USPS "property," and has therefore historically relied on section 410(a) as authority for its independence from statutes regulating records (e.g., the Federal Records Act, 44 U.S.C. §§ 3101–3107 (2006)). USPS Statement at 3–4.

We agree that the Postal Service has a unique status within the federal government. But it has no general characteristic that exempts its FECA records from DOL's regulatory regime. Instead, the question whether the Postal Service is subject to the burdens and obligations imposed by FECA is a matter of statutory interpretation. And here, Congress, through the PRA, expressly subjected USPS to FECA, and thus to DOL's control of FECA records.

Although the PRA relieved USPS from its obligation to comply with "many . . . statutes governing federal agencies," it also "specifically subjected [USPS] to some others." *U.S. Postal Serv. v. Flamingo Indus. (USA), Inc.*, 540 U.S. 736, 741 (2004). Indeed, the PRA provision USPS cites, section 410(a), states that the Postal Service is exempt from various federal laws "*except as otherwise provided in this title*." 39 U.S.C. § 410(a) (emphasis added). Another provision of the relevant title, 39 U.S.C. § 1005(c) (2006), expressly provides that "[o]fficers and employees of the Postal Service shall be covered by subchapter I of chapter 81 of title 5, relating to compensation for work injuries." And subchapter I of chapter 81 of title 5 codifies the FECA statute, including (among other things) the Secretary of Labor's authority to enforce and administer FECA. 5 U.S.C. § 8149. Thus, under the PRA's plain language, USPS officers and employees are "covered" by FECA, including the provisions authorizing the Secretary of Labor to issue regulations governing FECA records. 39 U.S.C. § 1005(c).[7] Far from exempting USPS from DOL's

_____

[7] By stating that FECA benefits will be provided to USPS "officers and employees," the PRA necessarily subjects USPS to the obligations that FECA imposes on employers, including the obligation to abide by DOL's regulations regarding disclosure of FECA records.

*Authority of DOL to Control FECA Records Held by USPS*

authority to administer FECA, the PRA clarifies that USPS falls within the ambit of DOL's FECA authority.[8]

## B.

DOL also suggests that the Privacy Act independently gives it authority to control the disclosure of FECA records through DOL/GOVT-1. *See* DOL's Reply to USPS at 1–2 (undated) ("DOL Reply") (attached to Request Letter). Specifically, DOL notes that OMB, the agency with authority to oversee implementation of the Privacy Act, has issued guidance that would forbid USPS from either creating a system of records that overlaps with DOL's government-wide system of FECA records or establishing inconsistent routine use exceptions. USPS counters that OMB's guidance does not apply to it. *See* USPS Statement at 4–6.

We agree that OMB's guidance suggests that DOL's assertion of exclusive control over the disclosure of FECA records under its government-wide system-of-records notice is consistent with and furthers the purposes of the Privacy Act. However, for the reasons explained below, we decline to resolve whether OMB's guidance actually binds USPS in this situation.

The Privacy Act gives OMB the authority to "develop and, after notice and opportunity for public comment, prescribe guidelines and regulations for the use of agencies in implementing [the Privacy Act]," and to "provide continuing assistance to and oversight of the implementation of [the

---

[8] In its views letter for OMB, USPS cites a 2002 statement in which DOL asserted that it has "control over [the FECA system of records] to the same extent as the Office of Personnel Management ['OPM'] has control over systems of records containing federal employee personnel records." USPS Statement at 5 (quoting Publication of All Notices of Systems of Records, 67 Fed. Reg. 16,816, 16,823 (Apr. 8, 2002)) (internal quotation marks omitted). USPS then notes that OPM specifically disclaims authority over USPS personnel files, and contends that, by comparing its control over FECA records to OPM's control over personnel records, DOL must have been conceding that its control over FECA records does not extend to USPS files. *Id.* But DOL plainly has not disclaimed authority over FECA records in USPS's possession. Instead, in its 2002 statement, DOL appears to be pointing out that its authority over the FECA system of records is generally similar to OPM's authority over personnel records, and (in particular) that its authority extends to files held by other agencies. *See* 5 C.F.R. § 293.301 (2012). Furthermore, OPM disclaims authority over USPS personnel files because USPS has an independent personnel system. *See* 39 U.S.C. § 410(a). In contrast, USPS does not have an independent employee compensation system, but rather is subject to FECA.

229

Privacy Act].” 5 U.S.C. § 552a(v) (2006). One OMB Privacy Act guidance document recognizes the category of government-wide systems of records, and directs other agencies not to publish their own systems of records that duplicate such government-wide systems:

> *Governmentwide Systems of Records*. Certain agencies publish systems of records containing records for which they have governmentwide responsibilities. The records may be located in other agencies, but they are being used under the authority of and in conformance with the rules mandated by the publishing agency. . . . Agencies should not publish systems of records that wholly or partly duplicate existing governmentwide systems of records.

OMB Circular A-130, Transmittal No. 1, Management of Federal Information Resources, 58 Fed. Reg. 36,068, 36,078 (July 2, 1993). Under this guidance, agencies may not publish—and therefore cannot utilize—separate routine uses for records that are part of a government-wide system maintained by another agency. *See* 5 U.S.C. § 552a(b)(3) (permitting routine uses as “described under subsection (e)(4)(D),” which requires their publication in systems-of-records notices). OMB’s guidance thus seeks to ensure that the only routine use disclosures of records in government-wide systems will be those established in the relevant system-of-records notice.

OMB expanded on this guidance in a later document implementing a presidential memorandum issued by President Clinton on May 14, 1998, which directed heads of executive departments and agencies to conduct, “in accordance with instructions to be issued by [OMB],” a variety of tasks related to Privacy Act requirements. *Memorandum on Privacy and Personal Information in Federal Records* (May 14, 1998), 1 Pub. Papers of Pres. William J. Clinton 759, 759 (1998). OMB’s subsequent instructions stated in part:

> [A]gency systems of records should not duplicate or be combined with those systems which have been designated as “government wide systems of records.” A government wide system of records is one for which one agency has regulatory authority over records in the custody of many different agencies. . . . Such government-wide systems ensure that privacy practices with respect to those records are carried out in accordance with the responsible agency’s regula-

tions uniformly across the federal government. For example, a civilian agency subject to the personnel rules of the Office of Personnel Management should manage its official personnel folders in accordance with the government wide notice published by OPM for those records, OPM/GOVT-1. The custodial agency need not, and should not, publish a system of records which covers the same records.

Memorandum for Heads of Departments and Agencies from Jacob J. Lew, Director, OMB, *Re: Instructions on Complying with President's Memorandum of May 14, 1998, "Privacy and Personal Information in Federal Records"* att. B (Jan. 7, 1999) ("Memorandum 99-05").

These OMB documents demonstrate that DOL's assertion of authority over FECA records is consistent not only with FECA, but also with the purposes of the Privacy Act, as interpreted by OMB in Circular A-130 and Memorandum 99-05. DOL's designation of DOL/GOVT-1 as a government-wide system of records, *see supra* pp. 224–225; 67 Fed. Reg. at 16,825, comports with OMB's definition, *see* Memorandum 99-05, att. B (defining government-wide system of records as a system including records for which a single agency has government-wide responsibilities). Thus, under the terms of OMB's guidance, DOL/GOVT-1 should be the sole system that includes FECA records, in order to ensure uniform privacy protection for such records across the government. *See* Memorandum 99-05, att. B ("[G]overnment-wide systems ensure that privacy practices with respect to those records are carried out in accordance with the responsible agency's regulations uniformly across the federal government."). DOL's FECA regulations further these Privacy Act objectives.

We do not determine here, however, whether OMB's guidance either binds USPS or provides an independent source of authority for DOL's exclusive control over FECA records. As USPS points out, while the Privacy Act itself applies to the Postal Service, "no regulation issued under [the Privacy Act] shall apply to the Postal Service unless expressly made applicable." 39 U.S.C. § 410(b). According to USPS, the OMB guidance fails this test. USPS Statement at 4. In our view, it is unclear whether either Circular A-130 or Memorandum 99-05 has been "expressly made applicable" to the Postal Service. Although the relevant portion of Circular A-130, appendix I, does not mention USPS by name, it defines "agency" by express cross-reference to the Privacy Act, which includes

36 Op. O.L.C. 217 (2012)

USPS within its definition of "agency." *See* 5 U.S.C. § 552a(a)(1).[9] Circular A-130 also states that it "applies to *all agencies subject to the Act*." 58 Fed. Reg. at 36,075 (emphasis added). Memorandum 99-05, for its part, likewise uses the term "agency" without specifically mentioning USPS, but does so while discussing Privacy Act obligations, which (given the Privacy Act's inclusion of USPS in its definition of "agency") might include USPS. Memorandum 99-05, att. B. It is thus not immediately apparent whether the guidance in either document has been made "expressly applicable" to USPS. As set forth in Part II.A above, however, FECA by itself gives DOL the authority to control the disclosure of FECA records held by USPS. Accordingly, we need not decide whether OMB's regulations independently give DOL the same authority.[10]

## C.

USPS's final argument is that the NLRA requires it to maintain a routine use permitting disclosure of FECA records to labor unions. USPS points out that it is the "only federal entity subject to the National Labor Relations Act," a statute that governs certain aspects of the employer-employee relationship, including collective bargaining. USPS Statement at 7.[11] USPS argues that the NLRA requires it "to provide unions with otherwise confidential information"—including FECA records—"when that information is relevant to the unions' role in collective bargaining."

---

[9] The Privacy Act's definition of "agency" cross-references and incorporates by reference the FOIA definition of "agency" in 5 U.S.C. § 552(e), which, after amendment, is now contained in 5 U.S.C. § 552(f)(1) (2006). *See* Pub. L. No. 99-570, § 1802(b), 100 Stat. 3207, 3207-49 (1986); Pub. L. No. 104-231, § 3, 110 Stat. 3048, 3049 (1996). There is no dispute that FOIA's definition of "agency" covers USPS.

[10] DOL also devotes a substantial portion of its OMB submission to arguing that, under the Privacy Act's compatibility requirement, "routine use" disclosures are permissible only for purposes closely related to the purpose for which records were collected, and that some of USPS's routine uses—including the one providing for disclosures of FECA records related to collective bargaining—do not meet this standard. *See* DOL Statement at 6. Our conclusion that FECA gives DOL authority to control disclosure of FECA records means that, whether or not USPS's routine uses satisfy the compatibility requirement, USPS may not promulgate its own routine uses for FECA records. Thus, we need not resolve this issue here.

[11] Other federal entities are covered by the Federal Service Labor-Management Relations Act, 5 U.S.C. §§ 7101–7135 (2006 & Supp. V 2011).

*Id.* at 8. USPS thus concludes that it must be authorized to establish a routine use permitting, "[a]s required by applicable law," disclosure of OWCP records "to a labor organization when needed by that organization to perform its duties as the collective bargaining representative of Postal Service employees." 70 Fed. Reg. at 22,521; *see* USPS Statement at 9.

For two reasons, we do not believe that the NLRA gives USPS authority to establish a routine use permitting disclosure to labor unions for purposes related to collective bargaining. First, as set forth above, FECA gives DOL broad authority over the FECA process, including the power to control disclosure of FECA records. The NLRA, in contrast, does not directly address the disclosure of FECA records, and nothing in its text suggests that it should be read to displace DOL's authority over the government-wide FECA system of records. As a result, the best way to harmonize DOL's broad authority over FECA records with the possibility that the NLRA (or some other statute) might sometimes require those records' disclosure is to presume that the entity with control of the records—DOL—will authorize the disclosure of FECA records when and if disclosure is in fact required. *See infra* note 14. USPS's potential disclosure obligations under the NLRA, in other words, do not give rise to an inference that USPS must have independent authority to promulgate routine uses for FECA records.

Second, as a practical matter, the potential for conflict between USPS's obligations under the NLRA and FECA is insufficient to support an inference that Congress intended to authorize USPS to control disclosure of the FECA records in its possession. It is true that the NLRA imposes on employers a duty to "bargain collectively," 29 U.S.C. § 158(a)(5) (2006), which includes a broad obligation "to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative." *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 303 (1979); *see also* USPS Statement at 8. But this duty requires the provision of *information*, not particular documents, and it is not absolute. *See, e.g.*, *Detroit Edison*, 440 U.S. at 318 (the duty to disclose information can be outweighed by legitimate privacy interests in the requested information); *cf. NLRB v. U.S. Postal Serv.*, 841 F.2d 141, 146 (6th Cir. 1988) ("*NLRB I*") (applying *Detroit Edison* to evaluate privacy interests involved in disclosure of records covered by USPS collective bargaining routine use); *NLRB v. U.S. Postal Serv.*, 660 F.3d 65, 66 (1st

233

Cir. 2011) ("*NLRB II*") (USPS employees have a "legitimate and substantial privacy interest in their test scores," which the NLRB must balance against the union's interests); *id.* at 77 (USPS's routine use authorizing disclosure of certain records neither mandates disclosure nor "defeat[s] all expectations of privacy" in the covered information).[12] To be sure, employers cannot simply refuse to give unions sensitive information; rather, employers must accommodate a union's reasonable request for information while protecting the privacy interests involved by, for example, obtaining employee consent to disclosure, redacting records, or submitting records in a summary format. *See, e.g.*, *Detroit Edison*, 440 U.S. at 317 (consent); *Oil, Chem. & Atomic Workers, Local Union No. 6 v. NLRB*, 711 F.2d 348, 363 (D.C. Cir. 1983) (redaction); *U.S. Testing Co. v. NLRB*, 160 F.3d 14, 21 (D.C. Cir. 1998) (redaction); *Pa. Power & Light Co.*, 301 N.L.R.B. 1104, 1107 (1991) (summary).

Relevant here, the privacy interests in FECA records, which often include medical reports, are substantial. *See* DOL Statement at 7; *see also, e.g.*, *U.S. Testing*, 160 F.3d at 21; *Oil, Chem. & Atomic Workers*, 711 F.2d at 363. And, in most (if not all) cases, a union's need for information about FECA claims in collective bargaining will not require receipt of individual FECA records of a given employee, but instead will be capable of satisfaction through a compilation, summary, or aggregation of anonymized information concerning one or more employees.[13] It thus seems

---

[12] USPS itself has recognized that the NLRA's disclosure obligation is not absolute. *See NLRB II*, 660 F.3d at 68 (referencing USPS argument that the NLRA did not require it "to release employee test scores unconditionally under the routine use exception"). The cases USPS cites in its OMB submission are not to the contrary. Three of those cases recognize that the NLRA's disclosure obligations are not absolute. *See NLRB v. U.S. Postal Serv.*, 888 F.2d 1568, 1572 & n.3 (11th Cir. 1989) (the NLRA's disclosure obligations do not absolutely require disclosure of all relevant information in all cases); *NLRB I*, 841 F.2d at 146 ("[T]he union's right to disclosure of relevant information is not absolute."); *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 9 F.3d 138, 144 (D.C. Cir. 1993) ("*Letter Carriers*") (noting the *Detroit Edison* exception to the NLRA's disclosure requirement); *id.* at 149–50 (Randolph, J., dissenting) (same). The fourth case denied enforcement of an NLRB order requiring disclosure of certain personnel files on the grounds that they were not needed for collective bargaining, and thus did not consider *Detroit Edison* balancing. *See NLRB v. U.S. Postal Serv.*, 128 F.3d 280, 283–85 (5th Cir. 1997).

[13] There may be circumstances in which a specific FECA record is essential to determination of an employee's individual grievance; and because an employer's obligation to

*Authority of DOL to Control FECA Records Held by USPS*

likely that the balance between privacy interests and the union's need for information would not generally require the disclosure of the records under *Detroit Edison*. *Cf.* 440 U.S. at 319 (weighing the "sensitive nature" of the information requested in that case against the "minimal burden" that a privacy-protecting accommodation would have placed on the union).[14] The very limited potential for conflict between USPS's NLRA obligations and DOL's FECA regulations is a further reason why we would not treat Congress's decision to apply the NLRA to USPS as an

_____

provide information extends through the term of any collectively bargained agreement, *see NLRB v. Acme Indus. Co.*, 385 U.S. 432, 436 (1967), the NLRA might require disclosure of the record to a union assisting an employee with his or her grievance. However, the Privacy Act authorizes the disclosure of FECA records to a union in that setting with employee consent. *See* 5 U.S.C. § 552a(b).

[14] If a situation did arise in which the *Detroit Edison* balance tipped in favor of disclosure of a FECA record, DOL would have to consider how best to reconcile the NLRA with the Privacy Act. The NLRA might be interpreted as either (i) requiring DOL to create a routine use permitting disclosure in such circumstances (if concerns about the Privacy Act's compatibility requirement could be overcome); or (ii) in effect creating a statutory exception to the Privacy Act's general confidentiality requirement, a kind of legislatively created routine use, permitting disclosure in those circumstances. *Cf.* Privacy Act Guidelines, 40 Fed. Reg. 28,949, 28,954 (July 9, 1975) (disclosures expressly required by laws other than FOIA are "in effect congressionally-mandated 'routine uses'"); *Letter Carriers*, 9 F.3d at 143 (opinion of Silberman, J.) (USPS could have an obligation under the NLRA to publish a routine use); *Dep't of Def. v. FLRA*, 510 U.S. 487, 506 n.3 (1994) (Ginsburg, J., concurring) (suggesting that agencies have discretion to publish their routine uses, but noting possibility of obligatory routine uses raised in *Letter Carriers*). On the other hand, it may be that under the PRA, the NLRA would not in fact require USPS to disclose FECA records to a union if doing so would violate DOL's FECA regulations. The PRA states that USPS's "[e]mployee-management relations shall . . . be subject to" the NLRA *only* "to the extent not inconsistent with the provisions of [title 39]." 39 U.S.C. § 1209(a) (2006); DOL Reply at 3. Title 39, in turn, subjects USPS to both the Privacy Act and FECA. The PRA might thus be interpreted to require USPS to comply with the NLRA generally, but to make an exception to the extent that the NLRA required a disclosure barred under the Privacy Act or FECA. *Cf. Letter Carriers*, 9 F.3d at 147 (Williams, J., concurring) (noting possibility that the PRA may require NLRA disclosures only to the extent not barred by the Privacy Act). While the application of OMB's Privacy Act guidance to USPS is uncertain, *see supra* Part II.B, FECA, as administered by DOL pursuant to its statutory authority, plainly prohibits USPS from disclosing FECA records in contravention of DOL's FECA regulations. Accordingly, under the PRA, USPS is arguably not required to disclose FECA records in contravention of DOL's FECA regulations promulgated under FECA. This is, however, another issue we are not required to resolve.

36 Op. O.L.C. 217 (2012)

indicator that USPS must have authority to regulate the disclosure of the FECA records in its possession.[15]

### III.

In sum, we conclude that DOL has authority to control the disclosure of FECA records, including those in the possession of USPS, and that DOL's exercise of this authority is consistent with and furthers the purposes of the Privacy Act. We further conclude that USPS is not separately authorized to control the disclosure of FECA records by virtue of its independent status within the federal government, or by the NLRA.

VIRGINIA A. SEITZ
*Assistant Attorney General*
*Office of Legal Counsel*

---

[15] USPS also claims that it may be required to disclose FECA records in proceedings before the United States Equal Employment Opportunity Commission ("EEOC") and the United States Merit Systems Protection Board ("MSPB"), and that limiting disclosure in such proceedings would be "unworkable and contrary to Congressional intent." USPS Statement at 6–7. However, USPS does not point to any provision in the statutes establishing the EEOC or the MSPB that would confer disclosure authority on USPS, let alone override the authority conferred on DOL by FECA. We further note that DOL has already published a routine use that allows the production of otherwise private records to a "court or adjudicative body" where such disclosure is necessary. 77 Fed. Reg. at 1730. It may be that the EEOC and the MSPB would constitute "adjudicative bod[ies]" and therefore that such disclosures are already authorized.

236