# EXHIBIT 11

# Payment of Back Wages to Alien Physicians Hired Under the H-1B Visa Program

The statute authorizing the H-1B visa program does not waive the federal government's sovereign immunity. Therefore, an administrative award of back wages to alien physicians hired by the Department of Veterans Affairs under the program is barred by sovereign immunity.

February 11, 2008

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF VETERANS AFFAIRS
AND THE SOLICITOR
DEPARTMENT OF LABOR

The Department of Labor ("DOL") has determined that the Department of Veterans Affairs ("VA") failed to pay the required prevailing wage to eleven alien physicians employed by VA hospitals pursuant to the H-1B visa program. VA requested our opinion regarding its statutory authority to pay back wages pursuant to the DOL order. DOL also provided its views on this issue. Before resolving the merits of this dispute, we requested additional views from both agencies regarding whether sovereign immunity bars the award of such monetary relief in an administrative proceeding. We now conclude that the statute authorizing the H-1B program does not waive the federal government's sovereign immunity, and the award of back wages is therefore barred.

## I.

The H-1B visa program (which takes its name from the paragraph of the Immigration and Nationality Act ("INA") in which it is codified) allows aliens to enter the United States on a temporary basis to perform certain specialty occupations, including the practice of medicine. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b) (2000). In order to obtain an H-1B visa, the alien's prospective "employer" (a term not defined in the Act) must submit a "labor condition application" to the Secretary of Labor. As part of that application, the employer must agree to pay wages that are at least "the actual wage level paid by the employer" to similarly situated employees or "the prevailing wage level" in the area, whichever is greater. *Id.* § 1182(n)(1)(A) (2000). The INA charges the Secretary of Labor with investigating and resolving any complaints over the employer's compliance with those conditions. *See id.* § 1182(n)(2)(A). Should the Secretary find, after a hearing, that "an employer has not paid wages at the wage level specified under the application," then the Secretary "shall order the employer to provide for payment of such amounts of back pay as may be required to comply." *Id.* § 1182(n)(2)(D).

Two VA hospitals submitted labor condition applications and hired eleven physicians under the H-1B program. The hospitals set the physicians' pay based

on VA's government pay scale. *See* 38 U.S.C. § 7404(b) (Supp. V 2005). Most of the physicians also received additional pay pursuant to VA's special pay authorities. *See id.* §§ 7431–7433 (Supp. V 2005). Several years later, the physicians filed administrative complaints asserting that the hospitals had failed to pay them the prevailing wages for the areas in which they were employed. The DOL Administrative Review Board ruled in the complainants' favor and ordered the VA to pay approximately $230,000 in back wages.

## II.

The principles governing sovereign immunity are well-established. As the Supreme Court has recognized, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent."). Sovereign immunity bars any action against the United States if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal quotation marks and citation omitted). The Executive Branch has no authority to waive the federal government's sovereign immunity; rather, that authority rests solely with Congress. *See, e.g.*, *United States v. Shaw*, 309 U.S. 495, 500–01 (1940) (explaining "that without specific statutory consent, no suit may be brought against the United States. No officer by his action can confer jurisdiction."); *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 660 (1947) ("It has long been settled that officers of the United States possess no power through their actions to waive an immunity of the United States."). And the terms of any statutory waiver must be unambiguous, both as to the nature of relief that may be ordered and the forum in which the relief may be sought. *See, e.g.*, *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Because Congress has the sole authority to set the terms of any waiver, an administrative agency has no more authority to prosecute or adjudicate a claim against the federal government than does a federal court. The federal courts accordingly have applied the same sovereign immunity principles in reviewing administrative adjudications as they have in federal court suits. *See, e.g.*, *United States v. Nordic Village, Inc.*, 503 U.S. 30, 37 (1992) (applying sovereign immunity principles to bankruptcy proceedings); *Ardestani v. INS*, 502 U.S. 129, 137 (1991) (holding that sovereign immunity bars fee award to prevailing party in INS proceeding); *Foreman v. Dep't of Army*, 241 F.3d 1349, 1352 (Fed. Cir. 2001) (applying sovereign immunity principles to conclude that the Merit Systems Protection Board lacks authority to impose monetary damages); *cf. Fed. Mar.*

*Payment of Back Wages to Alien Physicians Hired Under the H-1B Visa Program*

*Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760–61 (2002) (state sovereign immunity applies in federal administrative proceeding).[1]

This Office likewise has recognized that sovereign immunity principles "apply with equal force to agency adjudications." *Authority of the Equal Employment Opportunity Commission to Impose Monetary Sanctions Against Federal Agencies for Failure to Comply With Orders Issued by EEOC Administrative Judges*, 27 Op. O.L.C. 24, 27 (2003) ("EEOC Opinion"). For instance, we recently concluded that sovereign immunity prevents the EEOC from imposing an attorney's fee award against the federal government during an administrative adjudication. *Id*. at 33. We also found that the USDA generally lacks the authority to award monetary relief to individuals whom it finds to have been discriminated against in USDA programs. *See Authority of USDA to Award Monetary Relief for Discrimination*, 18 Op. O.L.C. 52 (1994) ("USDA Opinion"). And we found that the Special Counsel for Immigration Related Unfair Employment Practices may not bring administrative employment claims against a federal agency because the anti-discrimination statute in question did not expressly include the federal government within its ambit. *See Enforcement Jurisdiction of the Special Counsel for Immigration Related Unfair Employment Practices*, 16 Op. O.L.C. 121 (1992) ("Special Counsel Opinion"); *see also Waiver of Sovereign Immunity With Respect to Whistleblower Provisions of Environmental Statutes*, 29 Op. O.L.C. 171, 174 (2005) (concluding that Clean Water Act whistleblower provision does not waive federal government's sovereign immunity).

Notwithstanding these decisions, DOL contends that sovereign immunity should not apply to enforcement actions between two federal agencies. In support, DOL relies principally upon our opinion in *EPA Assessment of Penalties Against Federal Agencies for Violation of the Underground Storage Tank Requirements of the Resource Conservation and Recovery Act*, 24 Op. O.L.C. 84 (2000) ("EPA Opinion"), where, in concluding that the statute at issue clearly granted the EPA the authority to assess administrative penalties against federal agencies, we observed that "the doctrine of sovereign immunity does not apply to enforcement actions by one federal government agency against another." *Id.* at 88. In another opinion, we observed that with respect to a dispute between two agencies, a sovereign immunity issue "would only arise if the judicial enforcement aspect of the enforcement scheme were found applicable." *Authority of Department of Housing and Urban Development to Initiate Enforcement Actions Under the Fair Housing Act Against Other Executive Branch Agencies*, 18 Op. O.L.C. 101, 104 n.4 (1994) ("HUD Opinion").

---

[1] Cases addressing state sovereign immunity may provide some guidance, as the Supreme Court has applied similar principles in the state and federal sovereign immunity contexts. *See, e.g., Nordic Village*, 503 U.S. at 37.

These opinions suggest that an administrative action, consisting of a dispute between two federal agencies, and resolved entirely within the Executive Branch, would not constitute a "suit" against the United States. *See* Special Counsel Opinion, 16 Op. O.L.C. at 124 n.3 ("We assume *for purposes of this opinion* that sovereign immunity would not bar administrative proceedings in which one executive agency would press charges against another executive agency and final decisional authority would be vested in the Executive.") (emphasis added). In such a context, the resulting administrative penalty would neither "expend itself on the public treasury or domain," *Dugan*, 372 U.S. at 620, nor result in a judicial order requiring or prohibiting agency action. Instead, the administrative penalty would amount simply to the transfer of money from one part of the federal government to another. *See* Special Counsel Opinion, 16 Op. O.L.C. at 124 n.4 ("The assessment of a civil penalty against a federal agency in a sense would not expend itself upon the fisc, because it would not have any net effect on the Treasury balance.").

Although some language in the EPA and HUD Opinions may be in tension with our subsequent recognition that sovereign immunity principles "apply with equal force to agency adjudications," EEOC Opinion, 27 Op. O.L.C. at 27, we need not resolve that tension here, because the dispute between DOL and VA does not fall wholly within the Executive Branch. Rather, DOL's order follows an administrative adjudication brought at the behest, and on behalf, of private parties—namely, the H-1B physicians. In the VA cases, DOL has ordered the payment of back pay awards that would go directly to the physicians in question—relief that clearly would "expend itself on the public treasury," *Dugan*, 372 U.S. at 620. As the D.C. Circuit has recognized, sovereign immunity applies to actions like these, which are "brought by a government official acting for the benefit of private parties." *Dep't of Army v. FLRA*, 56 F.3d 273, 276 (D.C. Cir. 1995); *see also Hubbard v. MSPB*, 205 F.3d 1315, 1317 (Fed. Cir. 2000) (affirming MSPB's holding that sovereign immunity barred its award of back pay against EPA).

DOL disagrees with this characterization and maintains that it should not be regarded as "acting for the benefit of private parties," but rather should be seen as representing the public interest in enforcing the conditions on the H-1B program. DOL points out that the prevailing wage provisions of the H-1B program are not primarily intended to reward alien physicians, but rather to protect the wages of American workers from cheaper foreign competition. This may be so, but the argument does not bear on the sovereign immunity question. Federal agencies may represent the public interest through a wide variety of actions, but they do not have the authority to permit private parties to bring judicial or administrative suits against the government, or to order another federal agency to pay money judgments to private parties, unless Congress has unambiguously waived sovereign immunity.

*Payment of Back Wages to Alien Physicians Hired Under the H-1B Visa Program*

### III.

We consider then whether Congress waived sovereign immunity for DOL administrative proceedings brought against federal employers under section 212(n)(2) of the INA. *See* 8 U.S.C. § 1182(n)(2). The Supreme Court has made clear that any waiver of the federal government's sovereign immunity "must be unequivocally expressed in statutory text . . . and will not be implied." *Lane*, 518 U.S. at 192 (citations omitted); *see also Nordic Village*, 503 U.S. at 37 (a reading of a statute that imposes monetary liability on the government will not be adopted unless it is "unambiguous"). Waivers of immunity are "construed strictly in favor of the sovereign and not enlarged beyond what the language requires." *Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (internal quotation marks, citations, and alterations omitted). If an alternative reading of a statutory provision is available, then Congress has not waived sovereign immunity. *See Nordic Village*, 503 U.S. at 37.

In this regard, we take it as a given that the fact that a VA hospital may qualify as an employer under the H-1B visa program does not conclusively establish that Congress waived sovereign immunity. Federal agencies may well be subject to substantive obligations when participating in a particular statutory program without falling subject to the statute's remedial provisions. *See, e.g.*, *Dep't of Energy*, 503 U.S. at 623 (distinguishing among "substantive and procedural requirements" of statute, "administrative authority," and "process and sanctions"); *see also* USDA Opinion, 18 Op. O.L.C. at 72 (concluding that although antidiscrimination provisions of both Fair Housing Act and Rehabilitation Act expressly apply to the federal government, these statutes do not waive sovereign immunity for monetary relief); *Shaw*, 309 U.S. at 500–01 (sovereign immunity may be waived only by Congress through statute, not by actions of Executive Branch officers). In the Eleventh Amendment context, the Supreme Court has held that states do not waive their constitutional immunity merely by participating in a federal program, even though the relevant statutes expressly contemplate that states fall within the class of beneficiaries. *See, e.g.*, *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 245–47 (1985) (although Rehabilitation Act applies to states, state does not waive Eleventh Amendment immunity by participating in program); *Edelman v. Jordan*, 415 U.S. 651, 673–74 (1974) (mere fact that state participated in federal aid program does not waive Eleventh Amendment immunity, which bars retroactive award of benefits). Accordingly, the question is not whether federal agencies, such as VA, may hire workers through the H-1B visa program, but whether Congress has unambiguously determined that those agencies shall be subject to DOL's remedial authority to adjudicate administrative complaints under the H-1B program and to award back pay.

We are unable to find such an unambiguous waiver in this case. Congress did not expressly address the federal government's sovereign immunity anywhere in the H-1B program. Nor did Congress clearly provide that a federal employer

would be subject to DOL's remedial authority under section 212(n)(2) of the INA. *See* 8 U.S.C. § 1182(n)(2). Section 212(n)(2) does not contain a definition of "employer," nor is the term otherwise defined for purposes of the H-1B program. We have recognized that general terms such as "employer" or "person" "should not be read to include federal agencies in the absence of affirmative evidence that Congress intended that they be included." Special Counsel Opinion, 16 Op. O.L.C. at 124; *see also United States v. United Mine Workers*, 330 U.S. 258, 270 (1947) (declining to construe "employer" under the Norris-LaGuardia Act to include the United States "where there is no express reference to the United States and no evident affirmative grounds for believing that Congress intended to withhold an otherwise available remedy [obtaining a restraining order] from the Government").[2] That rule of construction would preclude the finding of an "unambiguous" waiver of sovereign immunity, unless some other provision of the INA made clear that federal agencies must be included under the back pay provisions of section 212(n)(2).[3]

Seeking to identify such provisions, DOL points to several that it asserts show Congress's expectation that federal agencies would fall within the scope of the term "employer" for purposes of section 212(n)(2). The first provision, 8 U.S.C. § 1184(*l*)(1) (2000), allows an "interested Federal agency" to request the waiver of a foreign residence requirement for alien graduate students who, following their education, seek to remain in the United States for employment at a health care facility. The statute specifically addresses "the case of a request by the Department of Veterans Affairs" for a waiver on behalf of an alien who "agrees to practice primary care or specialty medicine." *Id*. § 1184(*l*)(1)(D)(i) (Supp. V 2005). This provision, however, does not apply only to applicants for H-1B visas, but also to aliens seeking other types of immigration benefits. The provision likewise does not directly refer to DOL's remedial authority under section 212(n)(2). According-

---

[2] The Secretary of Labor has defined "employer" by regulation to mean "a person, firm, corporation, contractor, or other association or organization in the United States that has an employment relationship with H-1B . . . nonimmigrants and/or U.S. worker(s)." 20 C.F.R. § 655.715 (2007); *see also* 8 C.F.R. § 214.2(h)(4)(ii) (2007) (similar definition in Department of Homeland Security regulations). This regulatory definition could not waive the federal government's sovereign immunity, because the waiver "must be unequivocally expressed in statutory text." *Lane*, 518 U.S. at 192. We note, however, that like the statute, this regulatory definition is ambiguous as to whether federal agencies fall within its ambit, because neither "person" nor "other association or organization in the United States" clearly includes federal agencies. *See, e.g.*, *Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 780 (2000) (noting "longstanding interpretive presumption that 'person' does not include the sovereign").

[3] The lack of an explicit waiver in the H-1B statute contrasts sharply with other statutes expressly authorizing one federal agency to enforce the statute's requirements against another federal agency. *See, e.g.*, 42 U.S.C. § 2000e-16(b) (2000) (authorizing EEOC to enforce antidiscrimination provisions of Title VII against federal agencies in administrative proceedings, including through award of back pay); *id.* § 6903(15) (2000) (defining "person" to "include each department, agency, and instrumentality of the United States" for purposes of DOL's administrative enforcement of whistleblower provisions of Solid Waste Disposal Act).

*Payment of Back Wages to Alien Physicians Hired Under the H-1B Visa Program*

ly, we cannot regard this provision as an unequivocal waiver of sovereign immunity for the award of back pay.

DOL also points to a 1998 amendment to the INA prescribing special rules for an H-1B employer that is "an institution of higher education . . . or a related or affiliated nonprofit entity; or . . . a nonprofit research organization, or a Governmental research organization," 8 U.S.C. § 1182(p)(1) (2000). With respect to institutions and organizations covered by this provision, "the prevailing wage level shall only take into account employees at such institutions and organizations in the area of employment." *Id*. In addition, such employers are exempt from paying the H-1B filing fee, *id*. § 1184(c)(9)(A) (Supp. V 2005), and from the annual numerical limitations on H-1B visas, *id*. § 1184(g)(5). DOL reasons that Congress's efforts to prescribe special rules for "Governmental research organizations" demonstrates an understanding that federal agencies as a class would be H-1B employers. The statute does not define the term "Governmental research organization," however.[4] Even assuming that this term includes certain federal government entities such as the National Institutes of Health, it could not be read unambiguously to waive sovereign immunity for all federal agencies under section 212(n)(2). The 1998 amendment demonstrates that Congress did address one way in which the prevailing wage requirement might impact universities, nonprofit organizations, and some government research entities.[5] Congress spoke with no such clarity, however, as to whether federal agencies generally could be subject to administrative complaints and the award of monetary relief.

Finally, section 212(j)(2) of the INA permits an H-1B nonimmigrant who is a medical school graduate, but who has not fulfilled certain licensing requirements, to teach or conduct research for "a public or nonprofit private educational or research institution or agency in the United States." 8 U.S.C. § 1182(j)(2) (2000). Once again, this phrase is ambiguous. An "educational or research institution or agency *in* the United States" does not clearly include federal agencies. Even if this phrase does signal that a federal agency may be an employer under the H-1B program, the phrase neither appears in the definition portion of the statute, nor in the remedial provisions. Insofar as a waiver of sovereign immunity "must be unequivocally expressed in statutory text . . . and will not be implied," *Lane*, 518

---

[4] DOL regulations define this term to mean "a United States Government entity whose primary mission is the performance or promotion of basic research and/or applied research." 20 C.F.R. § 656.40(e)(1) (2007).

[5] The legislative history of this provision indicates that Congress recognized a distinction between private entities and the nonprofit or government entities in question. The Senate Report on a bill containing an earlier version of this provision noted that it "separates the prevailing wage calculations between academic and research institutions and other nonprofit entities and those for for-profit businesses. . . . The bill establishes in statute that wages for employees at colleges, universities, nonprofit research institutes, and other nonprofit entities must be calculated separately from industry." S. Rep. No. 105-186, at 29–30 (1998).

U.S. at 192, we cannot read this provision as an express waiver of sovereign immunity.

We agree with DOL that these provisions, taken together, suggest that Congress contemplated that certain federal entities may file applications as employers under the H-1B program, but we do not regard these suggestions as the unambiguous text required to subject the United States to liability for back pay judgments. The Supreme Court has demanded a "clear statement" of waiver so as to ensure that Congress directly considers the consequences of exposing the federal government to suit and potential financial liability. As the initial dispute between DOL and VA demonstrates, it is hardly clear that Congress gave such consideration in enacting the INA provisions governing the H-1B program. Indeed, the INA makes no provision for the potential conflict between the INA's "prevailing wage" require- ment and the pay scales established by the federal civil service laws. Nor did Congress address this conflict in 1998, when it created certain exceptions to the H- 1B rules for educational and research entities, but made no express provision for federal agencies other than "Governmental research organizations."

The present dispute between VA and DOL itself constitutes evidence that Congress did not directly consider the consequences of applying the H-1B program to federal employers, much less that it considered the consequences of waiving sovereign immunity and exposing the VA hospitals to financial liability. VA originally requested our advice as to whether it had the statutory authority to depart from civil service pay scales and pay a prevailing wage. The uncertainty over that question reflects the fact that in contrast to other federal laws, here, Congress did not clearly address the impact of the H-1B program on federal pay statutes. *See, e.g.*, 10 U.S.C. § 2164(e) (2000) (authorizing Secretary of Defense to appoint school staff "without regard to the provisions of any other law relating to the number, classification, or compensation of employees" based on consideration of compensation paid to comparable employees by local educational agencies in the State in which the military installation is located); 42 U.S.C. § 288-4(c)(3) (2000) (authorizing Director of National Institutes of Health to appoint certain individuals "without regard to the provisions of title 5 relating to appointment and compensation"). Congress's silence on this issue demonstrates why a clear statement of a waiver is required and further supports the conclusion that the INA does not constitute an "unambiguous" waiver of sovereign immunity.

## IV.

DOL requests that if we find that the administrative awards of back pay are barred by sovereign immunity, we nonetheless clarify that VA must comply with the prevailing wage requirements in future cases. We agree that VA should not file a labor condition application seeking DOL approval under the H-1B program unless VA is able, under its statutory pay authorities, to honor the prevailing wage requirements of that application. Although VA has no authority to pay an H-1B

*Payment of Back Wages to Alien Physicians Hired Under the H-1B Visa Program*

employee compensation beyond what is authorized by its pay statutes, *see, e.g.*, *Kizas v. Webster*, 707 F.2d 524, 535–37 (D.C. Cir. 1983), VA's special pay authorities do appear to provide it with sufficient flexibility to enable the Department to pay the prevailing wage in many instances. Should VA determine that it underpaid employees wages to which they were entitled under the law, we agree with DOL that VA may correct that error to the extent that it could have paid the higher wage in the first instance. *See, e.g.*, 3 General Accounting Office, *Principles of Federal Appropriations Law* 12-5 (2d ed. 1994) (recognizing that an agency has authority to pay an employee money erroneously not paid). In the absence of a clear waiver of sovereign immunity, however, VA may neither be required to defend itself in an administrative proceeding nor compelled to pay back wages as a result of that administrative proceeding.[6]

Congress, of course, provided an additional mechanism for ensuring compliance with these requirements by granting DOL the authority to review labor condition applications in advance and to deny any that do not meet the statutory requirements. *Cf. In re Hunter Holmes McGuire Veterans Affairs Med. Ctr.*, No. 94-INA-00210, 1996 WL 616606, at *1 (Bd. Alien Labor Cert. App. Oct. 7, 1996) (affirming denial of labor certification where VA hospital was unable under federal law to offer prevailing wage to anesthesiologist; finding "that the labor certification regulations do not provide an exception, either express or implied, for a Federal wage schedule"). It is true that the statute permits DOL to review applications "only for completeness and obvious inaccuracies." 8 U.S.C. § 1182(n). Still, an employer's failure to list an acceptable source of prevailing wage data, as we understand occurred with respect to the applications submitted by some of the VA hospitals in question, would seem to fall within the scope of that review. Congress's failure to waive sovereign immunity may limit DOL's ability to enforce the H-1B requirements retrospectively, but DOL retains authority to ensure compliance at the front-end through its review of these applications before an alien may receive an H-1B visa.

STEVEN A. ENGEL
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[6] We note in this regard that sovereign immunity does not apply simply to awards of retrospective relief, such as back pay. Rather, sovereign immunity also would prevent a private party from bringing an administrative action against VA under the INA's retaliation provision, 8 U.S.C. § 1182(n)(2)(C)(iv), or requiring VA to reinstate an employee after such a proceeding. *See, e.g.*, *Dugan*, 372 U.S. at 620 (sovereign immunity bars an action against the United States "if the effect of the judgment would be to restrain the Government from acting, or to compel it to act").