# EXHIBIT 12

# Administrative Assessment of Civil Penalties Against Federal Agencies Under the Clean Air Act

The Clean Air Act authorizes the Environmental Protection Agency administratively to assess civil penalties against federal agencies for violations of the Act or its implementing regulations.

Separation of powers concerns do not bar EPA's exercise of this authority, because it can be exercised consistent with the Constitution.

July 16, 1997

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
ENVIRONMENTAL PROTECTION AGENCY
AND
THE GENERAL COUNSEL
DEPARTMENT OF DEFENSE

You have asked for our opinion resolving a dispute between the Environmental Protection Agency ("EPA") and the Department of Defense ("DOD") concerning whether the Clean Air Act ("the Act"), 42 U.S.C. §§ 7401–7671q (1994), authorizes EPA administratively to assess civil penalties against federal agencies for violations of the Act or its implementing regulations, and if so, whether this authority can be exercised consistent with the Constitution.[1] Applying the "clear statement" rule of statutory construction, which is applicable where a particular interpretation or application of an Act of Congress would raise separation of powers concerns, we conclude that the Act does provide EPA such authority. We also conclude that these separation of powers concerns do not bar EPA's exercise of this authority because it can be exercised consistent with the Constitution.

I.

A.

EPA's authority to initiate enforcement proceedings under the Clean Air Act is set forth in section 113 of the Act, entitled "Federal Enforcement," 42 U.S.C.

---

[1] *See* Letter for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Jonathan Z. Cannon, Assistant Administrator (General Counsel), EPA (Oct 3, 1995), enclosing *Memorandum on Assessment of Administrative Penalties Against Federal Facilities under the Clean Air Act* (Sept 11, 1995) ("EPA Memorandum"), Letter for Walter Dellinger, from Judith A Miller, General Counsel, DOD (Dec 15, 1995), enclosing *DOD Response Memorandum· Assessment of Administrative Penalties Against Executive Branch Agencies Under Section 113(d) of the Clean Air Act* (Dec 15, 1995) ("DOD Response"), Letter for Christopher Schroeder, Acting Assistant Attorney General, Office of Legal Counsel, from Jonathan Z Cannon (Oct 18, 1996), enclosing *EPA Memorandum in Reply to Department of Defense Concerning Administrative Assessment of Civil Penalties Against Federal Facilities Under the Clean Air Act* (Sept. 16, 1996) ("EPA Reply")

109

§ 7413 (1994). As summarized in section 113(a)(3),[2] section 113 provides that when EPA finds that "any person has violated, or is in violation of" the Act or its implementing regulations, EPA may issue an administrative penalty order or a compliance order, bring a civil action, or request the Attorney General to commence a criminal action. The questions presented to us are whether the Act authorizes EPA to issue an administrative penalty order to a federal agency under section 113(d), and if so, whether that authority can be exercised consistent with the Constitution.[3]

The Act authorizes EPA to issue two kinds of administrative penalty orders. Section 113(d)(1) authorizes EPA to "issue an administrative order against any person assessing a civil administrative penalty of up to $25,000, per day of violation" when EPA "finds that such person" has violated the Act or its implementing regulations. 42 U.S.C. § 7413(d)(1). Such a penalty may be assessed only after opportunity for a hearing on the record in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 554, 556 (1994). 42 U.S.C. § 7413(d)(2).

In addition, section 113(d)(3) authorizes EPA to implement a field citation program under which "persons" who commit minor violations of the Act or the regulations may receive field citations assessing civil penalties not to exceed $5,000 per day. *Id.* § 7413(d)(3). Field citations may be issued without a hearing, but persons who have received citations may request a hearing. "Such hearing shall not be subject to [the APA], but shall provide a reasonable opportunity to be heard and to present evidence." *Id.* The Act provides for the two types of administrative penalty orders to be litigated in the courts in a variety of ways. Persons against whom either kind of penalty is imposed may seek judicial review in federal district court, and in any such proceeding the United States may seek an order requiring that the penalties be paid. *Id.* § 7413(d)(4). In addition, if a person fails to pay any penalty after receiving an order or assessment from EPA, "the Administrator shall request the Attorney General to bring a civil action in an appropriate district court to enforce the order or to recover the amount ordered or assessed." *Id.* § 7413(d)(5).

B.

EPA presents a straightforward position that section 113(d) authorizes EPA to assess administrative penalties against federal agencies. That subsection authorizes EPA to assess penalties against "persons." Although the term "person" is not

---

[2] *See* 42 U.S.C § 7413(a)(3) (where it finds a violation, EPA may "(A) issue an administrative penalty order in accordance with subsection (d) of this section, (B) issue an order requiring such person to comply with such requirement or prohibition, (C) bring a civil action in accordance with subsection (b) of this section or section 7605 of this title, or (D) request the Attorney General to commence a criminal action in accordance with subsection (c) of this section")

[3] We intend that our resolution of the questions concerning section 113(d) will also apply to the comparable authority provided to EPA with respect to mobile sources by sections 205(c) and 211(d)(1) of the Act, 42 U.S.C. §§ 7524(c), 7545(d)(1) (1994). *See* EPA Memorandum at 2–3.

*Administrative Assessment of Civil Penalties Against Federal Agencies Under the Clean Air Act*

defined in section 113, which is the Act's federal enforcement section, the term is defined in the Act's general definitions section, section 302(e), which provides that the term includes "any agency, department, or instrumentality of the United States and any office, agent or employee thereof." 42 U.S.C. § 7602(e) (1994). EPA concludes that "[s]ince federal facilities expressly fall within the Act's definition of person, [section 113(d)] unambiguously demonstrate[s] that EPA has authority to issue administrative penalties against federal facilities." EPA Memorandum at 3.

DOD argues in response that EPA's interpretation would raise significant separation of powers concerns, because it would authorize civil litigation proceedings between federal agencies, and therefore it can be adopted only if there is an express statement of congressional intent to provide such authority that is sufficient to meet the high standard applied by the courts and this Office with respect to statutory interpretation questions involving separation of powers concerns.[4] DOD argues that "[s]ection 113(d) fails to provide clear and express authority for EPA to impose administrative penalties against Executive Branch agencies." DOD Response at 4. DOD rejects EPA's argument that the inclusion of federal agencies in the Act's general definition of "person" constitutes "a sufficiently express statement to allow [EPA] to exercise enforcement authority against other Executive Branch agencies." *Id.* at 5.

II.

We agree with DOD that the interpretation of the Clean Air Act advanced by EPA — that EPA is authorized to initiate enforcement proceedings under section 113(d) against federal agencies — raises substantial separation of powers concerns, thus warranting application of the clear statement principle.

In 1994, this Office was asked whether the Department of Housing and Urban Development ("HUD") has the authority under the Fair Housing Act to initiate enforcement proceedings against other federal agencies. We concluded that such an interpretation of the Fair Housing Act would raise substantial separation of powers concerns "relat[ing] to both the President's authority under Article II of the Constitution to supervise and direct executive branch agencies and the Article III limitation that the jurisdiction of the federal courts extends only to actual cases and controversies." Fair Housing Act Opinion, 18 Op. O.L.C. at 105. We stated that "[w]ith respect to the Article III issue, this Office has consistently said that 'lawsuits between two federal agencies are not generally justiciable,'" *id.* at 106

---

[4] *See* DOD Response at 4 ("The assessment of administrative penalties against Executive Branch agencies by EPA is based on a statutory scheme that contemplates judicial intervention into what should be a purely Executive Branch function, thus raising significant constitutional separation of powers concerns, warranting the high standard of review") (citing *Authority of Department of Housing and Urban Development to Initiate Enforcement Actions Under the Fair Housing Act Against Other Executive Branch Agencies*, 18 Op O L C 101 (1994) ("Fair Housing Act Opinion")

111

*Opinions of the Office of Legal Counsel in Volume 21*

(quoting *Constitutionality of Nuclear Regulatory Commission's Imposition of Civil Penalties on the Air Force*, 13 Op. O.L.C. 131, 138 (1989) ("NRC Opinion")), and that "[w]ith respect to Article II, we have indicated that construing a statute to authorize an executive branch agency to obtain judicial resolution of a dispute with another executive branch agency implicates 'the President's authority under Article II of the Constitution to supervise his subordinates and resolve disputes among them.'" *Id.* (quoting *Review of Final Order in Alien Employer Sanctions Cases*, 13 Op. O.L.C. 370, 371 (1989)).

We observed in our Fair Housing Act opinion that these separation of powers concerns

> are the essential backdrop for our analysis of whether the Fair Housing Act authorizes HUD to initiate enforcement proceedings against other executive branch agencies. Like the Supreme Court, we are "loath to conclude that Congress intended to press ahead into dangerous constitutional thickets in the absence of firm evidence that it courted those perils."

*Id.* at 106–07 (quoting *Public Citizen v. Department of Justice*, 491 U.S. 440, 466 (1989)). Accordingly, we applied a clear statement rule and concluded that the statute did not provide HUD this authority:

> Applying the standard the Supreme Court has used when a particular interpretation or application of an Act of Congress would raise separation of powers or federalism concerns, we believe that because substantial separation of powers concerns would be raised by construing the Act to authorize HUD to initiate enforcement proceedings against other executive branch agencies, we cannot so construe the Act unless it contains an express statement that Congress intended HUD to have such authority. Because the Act does not contain such an express statement, we conclude that it does not grant HUD this authority.

*Id.* at 101.

Our insistence in the Fair Housing Act Opinion that the statute must "contain[ ] an express statement that Congress intended HUD to have such authority" was consistent with a long line of opinions of the Supreme Court and this Office that require a clear statement of congressional intent when separation of powers or federalism concerns would be raised. Many of these opinions are cited in an opinion that we issued subsequent to the Fair Housing Act Opinion. *See Application of 28 U.S.C. §458 to Presidential Appointments of Federal Judges*, 19 Op. O.L.C. 350 (1995) (concluding that 28 U.S.C. §458 (1994), which prohibits appointment or employment of relatives of judges in same court, does not apply

to presidential appointments of judges). We stated in that opinion that "[g]iven the central position that the doctrines of federalism and separation of powers occupy in the Constitution's design, [the clear statement rule] serves to 'assure[ ] that the legislature has in fact faced, and intended to bring into issue, the critical matters' of the balance of power among the three branches of the federal government, in the context of separation of powers, and between the federal and state governments, in the context of federalism." *Id.* at 352 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991)). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989); *United States v. Bass*, 404 U.S. 336, 349 (1971).

III.

Based on the foregoing discussion, we must find a clear statement of congressional intent before we can conclude that the Clean Air Act authorizes EPA to initiate enforcement proceedings against other executive branch agencies. As discussed below, we believe that the statutory text provides a very strong basis for finding a clear statement of such intent and that this conclusion is fully supported by the legislative history of the Act, particularly the 1977 amendment of the definition of "person" to include federal agencies.

A straightforward review of the relevant provisions of the Clean Air Act's statutory text supports EPA's position that the statute gives EPA authority to assess civil penalties against federal agencies administratively. EPA's authority under section 113(d) is available with respect to "persons" who violate the Act.[5] The term "person" is defined in section 302(e): "When used in [the Clean Air Act] . . . [t]he term 'person' includes an individual, corporation, partnership, association, State, municipality, political subdivision of a State, and *any agency, department, or instrumentality of the United States* and any officer, agent, or employee thereof." 42 U.S.C. § 7602(e) (emphasis added).

EPA rests its argument on the plain meaning of these two provisions. EPA does so with good justification, because read together sections 113(d) and 302(e) expressly provide that EPA may issue administrative penalty assessments against federal agencies. We have also reviewed the evolution of the relevant provisions of the Clean Air Act as reflected by various amendments to the Act over the years. As discussed below, that history fully supports the conclusion that Congress contemplated EPA enforcement against other federal agencies.

---

[5] Section 113(d)(1) provides for assessment of civil penalties against "persons". "The Administrator may issue an administrative order against any person " 42 U S C § 7413(d)(1) Section 113(d)(3) achieves the same result, but uses indirect language "The Administrator may implement a field citation program . . . [under] which field citations may be issued by officers or employees designated by the Administrator Any person to whom a field citation is assessed may .   elect to pay the penalty assessment or to request a hearing on the field citation " *Id.* § 7413(d)(3). The plain language of these provisions refutes DOD's position that this language "cannot fairly be read to constitute an affirmative grant of authority to issue a field citation against 'any person '" DOD Response at 5.

*Opinions of the Office of Legal Counsel in Volume 21*

The administrative enforcement provisions set forth in section 113(d) were enacted as part of the Clean Air Act Amendments of 1990 ("the 1990 Amendments"), Pub. L. No. 101–549, § 701, 104 Stat. 2399, 2677–79. We have reviewed the legislative history of the 1990 Amendments and have found no discussion of the application of those provisions to federal agencies. We have not limited our legislative history review to the 1990 Amendments, however, because the administrative enforcement authorities provided by those amendments merely supplemented the enforcement authorities EPA already had with respect to "persons" under the other provisions of section 113. Thus, Congress's intent in providing EPA those other authorities is controlling.

EPA's other enforcement authorities under section 113 originated with the Clean Air Act Amendments of 1970 ("the 1970 Amendments"), Pub. L. No. 91–604, § 4(a), 84 Stat. 1676, 1686–87. As with the current version of section 113, the 1970 version authorized federal enforcement against "persons." However, at that time the Act's definition of "person" did not include agencies of the federal government.[6] The 1970 Amendments also revised section 118 of the Act to make federal agencies subject to the substantive requirements of the Act: "[Federal agencies] shall comply with Federal, State, interstate, and local requirements respecting control and abatement of air pollution to the same extent that any person is subject to such requirements." *Id.* § 5, 84 Stat. at 1689.[7] Thus, the 1970 version of section 118 referred only to federal agencies complying with substantive requirements; it did not contain any language subjecting federal agencies to enforcement authority.

In 1977, the definition of "person" was expanded to include "any agency, department, or instrumentality of the United States." Clean Air Act Amendments of 1977 ("the 1977 Amendments"), Pub. L. No. 95–95, § 301(b), 91 Stat. 685, 770. This amendment was contained in the House-passed version of the 1977 Amendments, which was accepted by the conference committee. *See* H.R. 6161, § 113(d), 95th Cong., 1st Sess. (1977) ("House Bill"); H.R. Conf. Rep. No. 95–564, at 137, 172 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1502, 1517–18, 1552–53. The committee report accompanying the House Bill expressly stated that the specific purpose of the expansion of the definition of "person" was to make it clear that section 113 enforcement was available with respect to federal agencies:

---

[6] "Person" was limited to "an individual, corporation, partnership, association, State, municipality, and political subdivision of a State " Pub. L No 88–206, § 9(e), 77 Stat 392, 400 (1963)

[7] The previous version of section 118, enacted in 1959, merely requested federal agencies to "cooperate" with air pollution enforcement control agencies *See* Act of Sept. 22, 1959 ("the 1959 Amendments"), Pub. L No 86–365, § 2, 73 Stat 646 ("It is hereby declared to be the intent of the Congress that any Federal department or agency . . shall, to the extent practicable and consistent with the interests of the United States and within any available appropriations, cooperate with the Department of Health, Education, and Welfare, and with any interstate agency or any State or local government air pollution control agency in preventing or controlling the pollution of the air . . . ").

> Finally, in defining the term "person" for the purpose of section 113 of the act to include Federal agencies, departments, instrumentalities, officers, agents, or employees, the committee is expressing its unambiguous intent that the enforcement authorities of section 113 may be used to insure compliance and/or to impose sanctions against any Federal violator of the act.

H.R. Rep. No. 95–294, at 200 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1077, 1279 ("House Report").[8]

In sum, the expansion of the definition of "person" to include federal agencies, together with the statement in the House Report that the definitional change was for the express purpose of subjecting federal agencies to EPA enforcement under section 113, leave no room for doubt that Congress clearly indicated in 1977 its intent to authorize EPA to use its section 113 enforcement authorities against federal agencies.

### IV.

EPA takes the position that its authority under the Clean Air Act to assess civil penalties against federal agencies administratively can be exercised consistent with Articles II and III of the Constitution. EPA bases its position on the view that the Act

> provides sufficient discretion to the affected parties so that complete resolution of the dispute may occur within the Executive Branch, up to and including referral to the President of any issues that are not otherwise resolved, and the President is not deprived of his opportunity to review the matter in dispute.

EPA Memorandum at 1. We agree with EPA's position. We will discuss the Article II and Article III issues separately.

### A.

EPA asserts that it can exercise its administrative enforcement authority under the Act in a way that is consistent with the President's supervisory authority under Article II. EPA emphasizes that the Act

> provides a federal facility with the right to a hearing before final assessment of a penalty, and therefore . . . provides federal facili-

---

[8] The quotation from the House Report indicates that the House Bill "defin[ed] the term 'person' for the purpose of section 113." The House Bill accomplished that purpose by amending the Act's general definition of "person," not by creating a special definition applicable only to section 113. *See* H R 6161, *supra*, § 113(d).

*Opinions of the Office of Legal Counsel in Volume 21*

>   ties with sufficient opportunity to raise any dispute to the President where considered appropriate. Nothing in the Act would prevent a federal facility from exercising this opportunity to raise any dispute to the President.

*Id.* at 5 (footnote omitted). Nor are federal agencies limited to using the hearing process to raise a dispute to the appropriate level within the executive branch: federal agencies will have the opportunity to consult with the EPA Administrator before any assessment is final, *see id.*, and the Attorney General could seek to resolve the matter if either EPA or the respondent federal agency sought to litigate the matter, *see id.* at 6.

The critical point for constitutional purposes is that the Act does not preclude the President from authorizing any process he chooses to resolve disputes between EPA and other federal agencies regarding the assessment of administrative penalties. "[I]t is not inconsistent with the Constitution for an executive agency to impose a penalty on another executive agency pursuant to its statutory authority so long as the President is not deprived of his opportunity to review the matter." NRC Opinion, 13 Op. O.L.C. at 136–37.

DOD attempts to distinguish our NRC Opinion, which concluded that the administrative enforcement authority of the Nuclear Regulatory Commission ("NRC") under the Atomic Energy Act, *see* 42 U.S.C. § 2282 (1994), could be exercised against federal agencies consistent with Article II. DOD suggests that the statutory regimes are different, arguing principally that they differ with respect to the Attorney General's authority to resolve a dispute. It notes that the Atomic Energy Act contains an express authorization to the Attorney General, in circumstances where the NRC has requested that the Attorney General institute a civil action to collect a penalty, "to compromise, mitigate, or remit such civil penalties." 42 U.S.C. § 2282(c). *See* DOD Response at 10–11. DOD then asserts that the Clean Air Act is different because it "limits the discretion of the Attorney General to compromise, mitigate or remit a penalty assessment." *Id.* DOD apparently bases that assertion on the language in section 113(d)(5) stating that in any civil action "the validity, amount, and appropriateness of such order or assessment shall not be subject to review." 42 U.S.C. § 7413(d)(5).

DOD's assertion that the Clean Air Act limits the Attorney General's discretion is incorrect. Section 113(d)(5) acts as a limitation only on the authority of the courts in any action that is brought before the courts. It is not a limitation on the Attorney General, acting under Executive Order No. 12146 or any litigation review process, or—more to the point—the President acting through whatever executive branch process he may authorize. The absence of any limitation on the President's discretion is the dispositive factor for constitutional purposes, and in that respect the two statutory regimes are the same. Neither statute precludes reso-

*Administrative Assessment of Civil Penalties Against Federal Agencies Under the Clean Air Act*

lution within the executive branch, including resolution by the President, of disputes between the enforcement agency and other federal agencies.[9]

B.

EPA acknowledges that the civil action provisions contained in sections 113(d)(4) and 113(d)(5) of the Act, *see* 42 U.S.C. §§ 7413(d)(4), 7413(d)(5), "raise the possibility of one executive branch agency suing another in federal court over the administrative penalty," EPA Memorandum at 9, but it takes the position that "[t]he constitutional concerns . . . could be avoided by an interpretation that the general reference to review in federal district court reasonably means only judicial review that was otherwise constitutional." *Id.* In particular, EPA emphasizes that "nothing in the Clean Air Act mandates that two executive branch agencies end up in federal court. There is at most an opportunity for any agency to seek judicial review, and a requirement that EPA 'request' that the Attorney General file a collection action." *Id.* EPA concludes that "the mere possibility that an interagency lawsuit might result does not invalidate an agency's ability to assess civil penalties against another executive branch agency, where the Attorney General has adequate discretion to control the filing of such a lawsuit." *Id.* at 10.

As stated in Section II of this opinion, "this Office has consistently said that 'lawsuits between two federal agencies are not generally justiciable.' " Fair Housing Act Opinion, 18 Op. O.L.C. at 106 (quoting NRC Opinion, 13 Op. O.L.C. at 138). "We have reasoned that federal courts may adjudicate only actual cases and controversies, that a lawsuit involving the same person as both plaintiff and defendant does not constitute an actual controversy, and that this principle applies to suits between two agencies of the executive branch." *Id.* We agree with EPA, however, that this Article III barrier to use of the civil action remedies of section 113(d) is not a barrier to EPA's exercise of its administrative enforcement authority under the Act. Put another way, we agree that the administrative authority can be exercised consistent with Article III. The Act does not require that civil actions be brought in the event of a dispute of an assessment by EPA; it merely authorizes the bringing of such actions.

Thus, as is the case with the comparable provisions contained in the Atomic Energy Act, which we concluded in our NRC opinion could be applied consistent with Article III, "this constitutional issue need not arise, because the framework

---

[9] Nor does the Clean Air Act's citizen suit provision operate to preclude resolution within the executive branch Section 304 provides that "any person may commence a civil action on his own behalf . . against any person (including   the United States   ) who is alleged   to be in violation of .   (B) an order issued by [EPA] with respect to [an emission] standard or limitation" under the Act. 42 U S C. § 7604(a)(1) (1994) The filing of a citizen suit during the pendency of a dispute between EPA and a federal agency would not prevent the President from directing EPA to suspend, withdraw or modify the order it had issued to the agency. Such direction could be provided specifically in individual cases or generally by operation of a standing directive setting forth procedures for resolution of enforcement proceedings under section 113.

*Opinions of the Office of Legal Counsel in Volume 21*

of the Act clearly permits [a] dispute over civil penalties to be resolved within the executive branch, and without recourse to the judiciary." NRC Opinion, 13 Op. O.L.C. at 141.[10] To the extent that the civil action provision of the two statutes are parallel, in that the Attorney General rather than the enforcement agency has control over whether to bring the civil action, our analysis in the NRC Opinion is directly controlling here:

> It is therefore clear that the Attorney General may exercise [her] discretion to ensure that no lawsuits are filed by [EPA] against other agencies of the executive branch. If the Attorney General and the President determine that no civil penalties should be collected, the Attorney General may simply refrain from bringing a lawsuit. If the Attorney General determines that certain civil penalties are appropriate, however, the Attorney General would still not bring a lawsuit because of the constitutional problems noted above. Rather, procedures internal to the executive branch are adequate to resolve the dispute through the determination that [the federal agency responsible for the federal facility] is liable.

*Id.* at 143.

The only difference between the two statutes that is relevant to the Article III question is that section 113(d)(4) of the Clean Air Act would also authorize the agency responsible for the federal facility to initiate a civil action to contest an EPA administrative order. *See* 42 U.S.C. § 7413(d)(4). The difference is not significant for constitutional purposes, however, because, as we have explained, the Act is permissive only and does not require any federal agency to bring a civil action. Moreover, the Attorney General and the President possess the authority to forestall litigation between executive branch entities. The Attorney General is responsible for conducting litigation on behalf of most federal agencies and therefore can ensure that no civil action is filed by those agencies against another federal entity. We would expect that the relatively few federal agencies that have relevant independent litigating authority similarly would decline to file civil actions, consistent with the conclusions set forth in this memorandum. In any event, the President could direct the agency head not to bring an action or to withdraw any action that might be filed.

DAWN E. JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[10] *See also id.* at 143 ("We thus conclude that a lawsuit between two agencies of the executive branch would involve substantial constitutional problems, but that the statutory scheme permits resolution of the interagency dispute within the executive branch.").