# EXHIBIT 13

# Authority of the Equal Employment Opportunity Commission to Impose Monetary Sanctions Against Federal Agencies for Failure to Comply With Orders Issued by EEOC Administrative Judges

The doctrine of sovereign immunity precludes the Equal Employment Opportunity Commission from imposing monetary sanctions against federal agencies for violations of orders of EEOC administrative judges.

January 6, 2003

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF THE NAVY
AND
ACTING DEPUTY GENERAL COUNSEL
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

The Department of the Navy ("the Navy") has asked our opinion as to whether the Equal Employment Opportunity Commission ("EEOC") has authority to impose attorney's fees against federal agencies as a sanction for failure to comply with the orders of EEOC administrative judges ("AJs") in connection with hearings before AJs. In the past, for example, AJs have assessed such sanctions against federal agencies for failures to comply with discovery orders. *See* Letter for Randolph Moss, Assistant Attorney General, Office of Legal Counsel, from Ellen J. Vargas, Legal Counsel, United States Equal Employment Opportunity Commission at 3 n.4 (Jan. 9, 2001) ("EEOC Letter"). EEOC, of course, maintains that it may impose such sanctions. We agree with the Navy that, pursuant to basic principles of sovereign immunity, EEOC lacks authority to impose monetary sanctions (such as attorney's fees) on federal agencies for failure to comply with AJ orders.

## I. Jurisdiction

Before reaching the merits, we address EEOC's concerns that this matter is not appropriate for resolution by the Office of Legal Counsel. *See* EEOC Letter at 1. We agree with the Navy that it is entitled to our opinion on this issue pursuant to Executive Order 12146, 3 C.F.R. § 409 (1979) ("EO 12146").[1] As presented to us by the Navy, this is a dispute between two executive agencies on a question of law and therefore comes within the terms of section 1-401 of EO 12146, among other provisions. The fact that one agency (here, EEOC) sits in an adjudicatory posture

---

[1] EO 12146 authorizes the Attorney General to resolve certain legal disputes between agencies. The Attorney General has delegated that function to this Office. *See* 28 C.F.R. § 0.25 (2002).

with respect to an agency requesting our opinion (here, the Navy) does not alter this conclusion, and we have previously resolved such disputes. *See, e.g.*, *Authority of the General Services Board of Contract Appeals to Order Reimbursement of the Permanent Judgment Fund for Awards of Bid Protest Costs*, 14 Op. O.L.C. 111 (1990).

Further, neither the fact that EEOC has authority to enforce Title VII in the federal workplace nor the fact that agencies "shall comply" with EEOC rules and orders, *see* 42 U.S.C. § 2000e-16(b) (2000), divests us of authority to issue this opinion. The Navy contends that EEOC has exceeded its statutory authority. If that is the case—and we conclude that it is—EEOC has no power to impose monetary sanctions on federal agencies for failure to comply with AJ orders. At its base, the present dispute is whether EEOC has exceeded its own jurisdiction; the dispute is therefore entirely appropriate for resolution by this Office. *See* EO 12146, § 1-401 (listing questions of agency jurisdiction among the issues for resolution under that section); s*ee also* Memorandum for Henry L. Solano, Solicitor, Department of Labor, and Leigh A. Bradley, General Counsel, Department of Veterans Affairs, from Randolph D. Moss, Assistant Attorney General, Office of Legal Counsel, *Re: The Effect of Veterans' Health Administration Nurses' Additional Pay for Sunday and Night Duty on Calculation of Workers' Compensation Benefits* (Jan. 19, 2001).

## II. Sovereign Immunity

Because the resolution of this dispute hinges on the doctrine of sovereign immunity, we begin by explaining its basic principles. Most fundamentally, the federal government may not be sued without its consent, *see, e.g.*, *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411–12 (1821). The absence of consent bars proceeding against the government. *See Meyer*, 510 U.S. at 475. The authority to consent to suit—to waive sovereign immunity—does not rest with the Executive Branch, *see, e.g.*, *United States v. Shaw*, 309 U.S. 495, 500–01 (1940) (explaining "that without specific *statutory consent*, no suit may be brought against the United States"; "[n]o *officer* by his action can confer jurisdiction") (emphases added); *Munro v. United States*, 303 U.S. 36, 41 (1938); *United States v. Horn*, 29 F.3d 754, 761 (1st Cir. 1994), or with the courts, *see, e.g.*, *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990); *Shaw*, 309 U.S. at 502, but solely with Congress.

Accordingly, waivers of the "Federal Government's sovereign immunity must be unequivocally expressed *in statutory text*." *Lane*, 518 U.S. at 192 (emphasis added); *see also United States v. Nordic Village*, 503 U.S. 30, 37 (1992). Furthermore, waivers must be "strictly construed, in terms of [their] scope, in favor of the sovereign." *Lane*, 518 U.S. at 192. It follows that waivers of immunity with respect to one type of relief do not thereby waive immunity with respect to other

forms of relief. Thus, although the Clean Water Act and the Resource Conservation and Recovery Act waived the immunity of federal agencies with respect to "coercive fines" designed to insure compliance with the statutes, those statutes did not render such agencies liable for "punitive fines" for past violations. *See Dep't of Energy v. Ohio*, 503 U.S. 607, 614–20 (1992) (concluding that the statutes do not contain a "clear and unequivocal waiver of anything more" than the coercive fines and declining to infer "a broader reading"). And statutes that clearly waive the government's immunity from attorney's fees do not thereby waive immunity from interest on those fees, even if private parties would be liable for interest. *See, e.g., Library of Cong. v. Shaw*, 478 U.S. 310, 317–19 (1986). Instead, the government's sovereign immunity must be clearly and specifically waived with respect to each form of relief claimed. *See id.* at 314, 321; *see also Nordic Village*, 503 U.S. at 34 (recognizing that a provision of the bankruptcy code waived sovereign immunity from monetary claims in two settings but declining to find such a waiver in a third setting); *cf. Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999).[2]

The presumption against waivers of sovereign immunity is especially strong in the context of monetary claims; it "operates on the broadest possible level" and "stands as an obstacle to *virtually all direct assaults against the public fisc*, save only those incursions from time to time authorized by Congress," *Horn*, 29 F.3d at 761 (emphasis added). "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Lane*, 518 U.S. at 192 (citing *Nordic Village*, 503 U.S. at 34). As we have previously explained, a statutory provision does not waive sovereign immunity for monetary claims if there exists any plausible reading that would not authorize monetary relief. *See Availability of*

---

[2] On close examination, several cases that may appear to be narrow exceptions to the traditional sovereign immunity canons are actually consistent with them. The Court, for example, has held that equitable tolling generally applies to suits against the government for which Congress has waived immunity. *See Irwin*, 498 U.S. at 95–96. To reach this result, however, the Court first concluded that application of equitable tolling "amounts to little, if any, broadening of the congressional waiver," because "[f]ederal courts have typically extended equitable relief only sparingly," *id.* at 95–96. Even so, the Court has shown great reluctance to extend *Irwin*. *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 543 (2002) (declining to extend *Irwin* to the context of state sovereign immunity). And although the Court has sustained attorney's fee awards for representation in administrative proceedings under part of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) (2000) (providing for such awards to a "prevailing party . . . *in any civil action* . . . for judicial review of agency action") (emphasis added), it did so only after first finding that the administrative proceedings at issue were "so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award." *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989); *see id.* at 885 (emphasizing that the judicial review provision at issue entailed "a degree of interaction between a federal court and an administrative agency alien to traditional review of agency action under the Administrative Procedure Act"). In any event, the Court has stressed that such cases "do not . . . eradicate the traditional principle that the Government's consent to be sued must be construed strictly in favor of the sovereign and not enlarge[d] beyond what the language required." *Nordic Village*, 503 U.S. at 34 (alteration in original) (quotations and citations omitted).

*Money Damages Under the Religious Freedom Restoration Act*, 18 Op. O.L.C. 180, 180 (1994).

It follows that attorney's fees may not be imposed against the United States absent an express statutory waiver. In fact, such claims are treated more strictly than other monetary claims because of, among other things, the so-called "American Rule." Under the American Rule, even "the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *see also Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001). Moreover, prevailing-party requirements are often read into fee-recovery statutes that do not explicitly require such. *See, e.g.*, *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 686, 694 (1983) (holding that "a fee claimant must 'prevail' before it may recover attorney's fees," despite a provision of the Clean Air Act, 42 U.S.C. § 7607(f) (2000), allowing the district court to "award costs [and attorney's fees against the United States] whenever it determines that such an award is appropriate"). Further, the Supreme Court narrowly construes who qualifies as a prevailing party. *See, e.g.*, *Buckhannon*, 532 U.S. at 600 (concluding that a plaintiff who secures the desired relief because a lawsuit induced the defendant *voluntarily* to change its conduct is not a "prevailing party"). Finally, even prevailing-party status may be insufficient. *See, e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (concluding that "[i]n some circumstances, even a plaintiff who formally 'prevails' under [42 U.S.C.] § 1988 should receive no attorney's fees at all"). Thus, multiple canons of construction come into play in considering the imposition of attorney's fees against the United States, all of which presume that such awards are unavailable.

Although most of the sovereign immunity case law arises in the context of suits before federal district courts, these principles apply with equal force to agency adjudications. This follows most immediately, we believe, from the fact that, as discussed above, Congress—not the Executive Branch—controls the terms of any waiver of sovereign immunity. Moreover, any other rule would undermine Congress's ability to waive immunity in a specific forum to the exclusion of another, *see, e.g.*, *McElrath v. United States*, 102 U.S. 426, 440 (1880), and more generally, to control the terms under which the United States would be liable to private parties. And, unsurprisingly, the courts have applied the sovereign immunity canons to proceedings before agencies and non-Article III courts. *See, e.g.*, *Ardestani v. INS*, 502 U.S. 129, 137 (1991) (holding that sovereign immunity bars fee award to prevailing party in INS proceeding); *Nordic Village*, 503 U.S. at 30 (holding sovereign immunity presumptions applicable in Bankruptcy Court); *Foreman v. Dep't of Army*, 241 F.3d 1349, 1352 (Fed. Cir. 2001) (applying sovereign immunity principles to conclude that the Merit Systems Protection Board lacks authority to impose monetary damages). *Cf. United States v. Sherwood*, 312 U.S. 584, 587–88 (1941) (noting that "[e]xcept as Congress has consented there is no jurisdiction in the Court of Claims [a legislative court] more

than in any other court to entertain suits against the United States"). This Office has likewise opined that sovereign immunity principles govern agency awards of monetary relief. *See Authority of USDA to Award Monetary Relief for Discrimination*, 18 Op. O.L.C. 52 (1994).

Finally, we note that the Supreme Court has raised the question whether "ordinary sovereign immunity presumptions" apply to the question whether an agency may itself grant a specific form of relief against the government when Congress has clearly waived immunity from such relief in suits brought before the district courts. *West v. Gibson*, 527 U.S. 212, 222 (1999). The Court explicitly declined to decide this question, however, concluding in that case that sufficient evidence of a waiver before the agency existed under the traditional presumptions. *See id*. In our view, there can be no doubt that normal sovereign immunity presumptions apply even to the question of how "the waived damages remedy is to be administered," *id*. *See also id*. at 224–28 (Kennedy, J., dissenting). As the dissent in *West* pointed out, "[i]t is settled law that a waiver of sovereign immunity in one forum does not effect a waiver in other forums." *Id*. at 226 (Kennedy, J., dissenting) (citing *McElrath*, 102 U.S. at 440; *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 & n.6 (1944); and *Case v. Terrell*, 78 U.S. (11 Wall.) 199, 201 (1870)). But, in any event, there is no suggestion in *West* that the *existence* of a waiver should be ascertained differently in the administrative context than it would be in an Article III court. It is also worth observing that the Court recently declined to distinguish between "court-like administrative tribunals" and Article III proceedings for purposes of state sovereign immunity. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 759–60 (2002).

### III. Analysis

Against this backdrop, we turn to EEOC's arguments in support of its power to impose attorney's fees on federal agencies for failure to comply with AJ orders. EEOC appears to put forth two main arguments supporting its authority to impose such fees upon the government. First, EEOC contends that both its statutory mandate to eliminate discrimination from the federal workplace "through appropriate remedies," 42 U.S.C. § 2000e-16(b), and the Federal Rules of Civil Procedure suffice to waive the federal government's sovereign immunity from the type of sanctions at issue here. Second, EEOC maintains that it has inherent power, as an adjudicatory body, to impose these sanctions against federal agencies. The doctrine of sovereign immunity forecloses both arguments.

*Authority of EEOC to Impose Monetary Sanctions Against Federal Agencies*

### A. No Express Waiver Allows EEOC to Impose Monetary Sanctions on Federal Agencies in the Absence of a "Prevailing Party" Determination

EEOC cites 42 U.S.C. § 2000e-16(b) as evidence that Congress has waived the federal government's immunity from the sanctions at issue here. That section empowers EEOC to enforce the prohibition on discrimination in the federal workplace "through appropriate *remedies*," *id*. (emphasis added). Attorney's fees imposed as a sanction for failure to comply with AJ orders relating to the adjudicatory process (such as discovery orders), however, are not a remedy for any act of discrimination. Because the waiver contained in section 2000e-16 must be interpreted in accordance with the above-mentioned rules of construction, this statutory provision does not supply the authority EEOC seeks. EEOC's reliance on *West v. Gibson*, 527 U.S. 212 (1999), is therefore entirely misplaced. In *West*, the Court determined that compensatory damages are an "appropriate remedy" for violations of Title VII as applied to the federal workplace, *see id*. at 217, and that EEOC therefore "possesses the legal authority to enforce" Title VII through such awards. *Id*. at 223. As discussed above, the parties in *West* agreed that Congress had waived the government's sovereign immunity from compensatory damages. By contrast, neither section 2000e-16(b), nor any other statute, contains a provision that even pertains to violations of AJ orders, much less provides an explicit waiver of the government's immunity to monetary sanctions for violations of such orders.

EEOC next asserts that "the Federal Rules of Civil Procedure provide the statutory waiver of sovereign immunity for payments by federal agencies of attorney's fees as sanctions incurred during the federal court adjudicatory process." EEOC Letter at 4. Without further analysis, EEOC simply declares that "[t]hose rules also allow agencies engaged in administrative adjudicatory processes to sanction parties before them, including federal agencies." *Id*. Some courts have concluded that the Federal Rules of Civil Procedure, either by their own force or through the EAJA, waive the United States' sovereign immunity from monetary sanctions imposed by federal district courts. *See, e.g.*, *M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1181–84 (Fed. Cir. 1993); *Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991); *Adamson v. Bowen*, 855 F.2d 668, 671–72 (10th Cir. 1988). We disagree with this position. *See* Memorandum for Roger B. Clegg, Associate Deputy Attorney General, Office of the Attorney General, from Larry L. Simms, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Departmental Policy on Special Masters* (Oct. 2, 1984).[3] But even were we to

---

[3] In *Mattingly*, the Ninth Circuit noted that the Federal Rules of Civil Procedure "apply by their own force to all litigants before the court" and that Rule 11 did not expressly exempt attorneys representing the United States. 939 F.2d at 818. The court concluded that because Congress authorized promulgation of the Rules, "applying them to the government with full force cannot be said to violate the principles of sovereign immunity." *Id*. Sovereign immunity principles, however, clearly foreclose

agree with these holdings, nothing in them supports EEOC's assertion that the Federal Rules of Civil Procedure somehow work such a waiver for sanctions imposed during the administrative process for violations of AJ orders.

The Federal Rules of Civil Procedure do not even apply to EEOC proceedings, *see* Fed. R. Civ. P. 1 ("These rules govern the procedure *in the United States district courts* . . . .") (emphasis added), a point on which EEOC has itself relied, *see Bell v. Dalton*, EEOC Appeal No. 01940852, 1994 WL 741530, at *5 (Aug. 17) ("While the Federal Rules of Civil Procedure are used as guidance, they are not binding upon the Commission."). Thus, even if we accepted the proposition that the Federal Rules of Civil Procedure waive the government's sovereign

---

the result reached by the court, even assuming that the Federal Rules of Civil Procedure are functionally equivalent to a statute for these purposes. Because the Rules wholly fail to mention the federal government, it certainly cannot be said that they contain an unequivocal waiver of sovereign immunity. *See Lane*, 518 U.S. at 192. And, of course, such waivers may not be implied. *See, e.g.*, *id.*; *Irwin*, 498 U.S. at 95. The fact that the Rules seemingly apply equally to all parties appearing before the court does not change the analysis. As the Supreme Court has explained, "when it comes to an award of money damages, sovereign immunity place[s] the Federal Government on an entirely different footing than private parties." *Lane*, 518 U.S. at 196.

Moreover, both the Rules Enabling Act, 28 U.S.C. § 2072 (2000), and the Federal Rules of Civil Procedure themselves preclude the conclusion that the Rules constitute such a waiver. The Rules Enabling Act provides that the Rules may not "enlarge substantive rights." 28 U.S.C. § 2072(b). But by awarding attorney's fees under the Federal Rules of Civil Procedure, where such awards would otherwise be unavailable, these courts have enlarged substantive rights. *See, e.g.*, *Alyeska*, 421 U.S. at 259 n.31 (suggesting strongly that rules for awarding attorney's fees are substantive for purposes of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)). Further, the Supreme Court has explained that "it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978); *United States v. Sherwood*, 312 U.S. 584, 589–90 (1941). The Federal Rules of Civil Procedure themselves clearly state that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein," Fed. R. Civ. P. 82. Because, as we explained above, sovereign immunity *is jurisdictional*, *see, e.g.*, *Meyer*, 510 U.S. at 475, the Federal Rules of Civil Procedure are quite incapable of providing a waiver.

Although not discussed by EEOC, some courts have found that the EAJA, 28 U.S.C. § 2412 (2000), waives sovereign immunity for sanctions imposed for violations of the Federal Rules of Civil Procedure. *See, e.g.*, *Mortenson*, 996 F.2d at 1181–84 (finding it "permissible to look beyond the specific language used" in the EAJA and resorting quite candidly to legislative history to find a waiver of sovereign immunity for discovery sanctions imposed in violation of Rule 37(b)(2) of the U.S. Claims Court); *Adamson v. Bowen*, 855 F.2d 668, 671–72 (10th Cir. 1988). *But see Mattingly*, 939 F.2d at 818 (declining to find the asserted waiver in the EAJA). This does not help EEOC either, if for no other reason than that, as noted below, the Federal Rules of Civil Procedure do not apply to EEOC proceedings. We must note, however, that the approach taken by these courts cannot be reconciled with clear Supreme Court precedent, which requires that waivers of the "Federal Government's sovereign immunity must be *unequivocally expressed in statutory text*." *Lane*, 518 U.S. at 192 (emphasis added). The EAJA allows "the *prevailing party* in any *civil action*" to recover from the United States certain costs and fees. 28 U.S.C. § 2412(a), (b) (emphases added). In *Adamson*, the court simply ignored the pellucid prevailing-party requirement. Instead, the court relied on legislative history and its estimation of Congress's intent. *See Adamson*, 855 F.2d at 671–72. But this flouts the Supreme Court's admonition that "the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text. *If clarity does not exist there, it cannot be supplied by a committee report*." *Nordic Village*, 503 U.S. at 37 (emphasis added) (citation omitted).

immunity from fee awards imposed by federal district courts for breach of those rules, we do not see how this waiver could extend to agency proceedings in which the rules do not apply. That is, even if Congress had waived sovereign immunity for violations of the Federal Rules of Civil Procedure in federal court, it would not follow that it has also waived immunity for arguably analogous (though formally distinct) violations before an entirely different body where these rules do not apply. Indeed, as we have emphasized, the doctrine of sovereign immunity requires the exact opposite presumption. *See supra* Part II; *see also McElrath*, 102 U.S. at 440.

The tentative and unsupported suggestion in *West*—that the traditional sovereign immunity canons may not apply in determining whether an administering agency may grant a form of relief for which sovereign immunity has clearly been waived at least before the district courts—could not help EEOC, even if we believed that it represented the best view of the law. *See West*, 527 U.S. at 222; *see also supra* Part II. In *West*, everyone agreed that sovereign immunity from compensatory damages had been waived; the only issue was *when* such damages could be awarded. Because it is impossible to violate the Federal Rules of Civil Procedure in EEOC proceedings for the simple reason that those rules do not apply, there is no need to analyze the timing issue here.

Finally and in light of the foregoing analysis, we note that Congress has in fact waived sovereign immunity from attorney's fees to a limited extent in the Title VII context. Section 2000e-5(k) provides that "[i]n any action or proceeding under this subchapter *the court*, in its discretion, may allow the *prevailing party* . . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k) (2000) (emphasis added). When an agency violates an AJ order in an EEOC proceeding, we do not yet have a prevailing party in an administrative proceeding, let alone in a civil action. This consideration (among others) renders section 2000e-5(k) inapplicable to violations of such AJ orders. Furthermore, "[t]he clarity of [this] provision[] is in sharp contrast to the waiver [EEOC] seeks to tease out of" other provisions, and "illustrates Congress' ability to craft a clear waiver of the Federal Government's sovereign immunity against particular remedies." *Lane*, 518 U.S. at 194. Extending this waiver to cover awards of attorney's fees for violations of orders issued by AJs in the course of EEOC proceedings would constitute an impermissible broadening of the terms and scope of the waiver.

Because EEOC points to no explicit statutory text in which we could begin to find a waiver of sovereign immunity, let alone a waiver that "unambiguously . . . extends to monetary claims," *Nordic Village*, 503 U.S. at 34, we conclude that EEOC lacks express authority to impose monetary sanctions on federal agencies for failure to comply with AJ orders.

### B. EEOC Does Not Have Inherent Power to Impose Monetary Sanctions on Federal Agencies

EEOC next argues that its power to impose attorney's fees against federal agencies flows from "the judicial doctrine of the 'inherent powers' of the forum." EEOC Letter at 3. EEOC directs our attention to *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), in which the Court discussed the inherent power of the federal courts. But EEOC is not a federal court, and the sanctioned party in *Chambers* was not a federal agency. Because we conclude that the latter difference proves decisive, we address the former only in passing.

To be sure, Congress has waived sovereign immunity to some extent by applying Title VII to the federal workplace and empowering EEOC to investigate and remedy violations of the statute. Furthermore, agencies *may* possess *some* inherent power to impose sanctions designed to protect the integrity of their proceedings, at least against litigants other than the federal government. *See, e.g.*, *Touche Ross & Co. v. SEC*, 609 F.2d 570, 582 (2d Cir. 1979) (upholding SEC rule enabling agency to bar attorneys from practicing before it); *see also Am. Bus Ass'n v. Slater*, 231 F.3d 1, 7 (D.C. Cir. 2000) (discussing inherent powers of agencies). *But see Slater*, 231 F.3d at 9 (Sentelle, J., concurring) ("Agencies have no inherent powers. They instead are creatures of statute and may act only because, and only to the extent that, Congress has delegated them the power to act.") (citations omitted). And arguably, EEOC may have some inherent power to impose some type of sanctions designed to maintain the integrity of its proceedings even against federal agencies. One could infer this from the fact that Congress is presumed to have made its statutory scheme effective.

But it follows from our discussion above that whatever inherent power EEOC may possess cannot possibly extend to the imposition of *monetary* sanctions against the federal government. As we have explained, the imposition of such sanctions would require a clear statement of consent in the text of a statute (the very antithesis of inherent power). That is, as discussed above, the authority to waive sovereign immunity (especially with respect to monetary claims) rests with Congress, not the Executive Branch. Thus, no act of EEOC (including promulgation or invocation of a regulation) can, by itself, waive the government's sovereign immunity. Because we have already concluded that Congress has not waived this immunity, it follows that EEOC lacks the authority to impose these monetary sanctions.[4]

---

[4] EEOC contends that 29 C.F.R. § 1614.109(f)(3) (2002) provides AJs with the authority to impose monetary sanctions against the Government. That provision allows AJs to impose certain sanctions for failure to comply with their orders. Those sanctions include drawing adverse inferences against the noncomplying party, exclusion of other evidence offered by the noncomplying party, issuing an adverse ruling against that party, and taking "such other actions as appropriate." *Id.* Noticeably absent is any mention of monetary sanctions, a fact that has not evaded EEOC, *see* EEOC Letter at 3 (noting that EEOC regulations "explicitly provide for sanctions other than attorney's fees"). Even if this

*Authority of EEOC to Impose Monetary Sanctions Against Federal Agencies*

Finally, we note that significant controversy surrounds the question whether even Article III courts enjoy inherent power to impose monetary sanctions against the federal government. *Compare Horn*, 29 F.3d at 763–67; *id*. at 765 n.13 (noting that "when the two doctrines [sovereign immunity and inherent powers] lock horns, contempt is barred by sovereign immunity"), *with Cobell v. Norton*, 226 F. Supp. 2d 1, 154–55 (D.D.C. 2002) (arguing that if sovereign immunity were to bar the court from exercising its claimed inherent power, the court would be unable to enforce its orders against the Executive Branch, a result that the court believed to be inconsistent "with the tripartite framework established by the Constitution"); *see also United States v. Waksberg*, 112 F.3d 1225, 1227 (D.C. Cir. 1997) (characterizing the separation of powers argument as serious enough to invoke the canon of constitutional avoidance); *cf. Chambers*, 501 U.S. at 58 (Scalia, J., dissenting) (agreeing with the majority that Article III courts derive a measure of independent authority from the Constitution). Whatever the merit of this debate, it has no application in this context, because EEOC and the Navy are both part of the Executive Branch.

### IV. Conclusion

We conclude that the doctrine of sovereign immunity bars EEOC from imposing monetary sanctions against federal agencies for violations of AJ orders.

JOAN L. LARSEN<br>
*Deputy Assistant Attorney General*<br>
*Office of Legal Counsel*

---

provision were found in a statute (and not merely a regulation), the provision "fails to establish unambiguously that the waiver extends to monetary claims," *Nordic Village*, 503 U.S. at 34, and therefore fails to waive immunity from those claims, *see id*. at 37. *See also Availability of Money Damages Under the Religious Freedom Restoration Act*, 18 Op. O.L.C. 180, 181 (1994) (concluding that the term "appropriate relief" in the Religious Freedom Restoration Act does not suffice to authorize monetary relief against the federal government). Indeed, in *United States v. Woodley*, 9 F.3d 774, 781–82 (9th Cir. 1993), the Ninth Circuit refused to find a waiver of sovereign immunity in the similarly-worded Federal Rule of Criminal Procedure 16(d)(2), under which "the court may order [a non-complying] party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, *or it may enter such other order as it deems just under the circumstances*" (emphasis added). The court found fatal the fact that Federal Rule of Criminal Procedure 16(d)(2), unlike several provisions of the Federal Rules of Civil Procedure, "provides no independent authority for a monetary sanction." *Woodley*, 9 F.3d at 781–82. *See also Tri-State Steel Constr. Co. v. Herman*, 164 F.3d 973, 980 (6th Cir. 1999) (concluding that agency rule providing for non-monetary sanctions "indicates an intention to preclude monetary sanctions").