# EXHIBIT 15

## Service Credit for Retirement Annuities of USPS Employees When USPS Has Not Made Required Contributions

The Office of Personnel Management may not address the United States Postal Service's failure to make statutorily required retirement contributions by denying its employees accrued service credit under the Federal Employees' Retirement System during their periods of qualifying federal employment.

November 1, 2011

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF PERSONNEL MANAGEMENT
AND
THE GENERAL COUNSEL AND EXECUTIVE VICE PRESIDENT
UNITED STATES POSTAL SERVICE

On June 22, 2011, the United States Postal Service ("USPS" or "Postal Service") notified the Office of Personnel Management ("OPM") that, because of its financial difficulties, the Postal Service, as a cash conservation measure, was suspending its employer contributions to the Civil Service Retirement and Disability Fund ("the Fund") on behalf of those postal employees covered by the Federal Employees' Retirement System Act ("FERS"), 5 U.S.C. §§ 8401–8479 (2006 & Supp. IV 2010). In light of that suspension, OPM requested an opinion from our Office regarding (1) whether, and to what extent, OPM has discretion to offset the Postal Service's obligation to make employer retirement contributions against a "surplus" the Postal Service asserts that it has accumulated in the Fund; and (2) whether postal employees are entitled to receive service credit, for purposes of determining their eligibility for retirement and calculating the amount of their retirement annuity, for periods of employment during which the Postal Service has not made its required employer contributions.[1] The Postal Service, an independent agency, joined OPM in the request for an opinion and agreed to be bound by our decision.[2]

---

[1] *See* Memorandum for Virginia Seitz, Assistant Attorney General, Office of Legal Counsel, from Elaine Kaplan, General Counsel, Office of Personnel Management (July 14, 2011) ("OPM Memo"). OPM enclosed with its submission an undated paper it had received from USPS, with the heading "Effect of Suspension of Agency Contribution to

35 Op. O.L.C. 181 (2011)

In its submission to the Office of Legal Counsel ("OLC"), the Postal Service indicated that, despite earlier disagreement, it now "does not contest OPM's position that the Postal Service is still obligated by the statute to make its employer contribution, despite the existence of the surplus." USPS Memo at 14; *see also id.* at 4. The Postal Service, however, also specifically stated that it considers the question "whether the [Postal Service's] Board [of Governors] was justified in its decision to suspend the employer contribution in order to conserve cash so as to avoid a shutdown in mail service" to be outside "the scope of [OLC's] review." *Id.* at 3 n.2. Thus, we do not address (i) whether OPM could offset the Postal Service's required contributions against any surplus it may have in the Fund; (ii) whether the Postal Service's apparent statutory violation may be excused; or (iii) what other avenues of recourse OPM may have against the Postal Service for its failure to make the statutorily required contributions. Instead, this opinion addresses only the question whether, under the relevant provisions of the FERS statute, postal employees are entitled to receive service credit for periods during which the Postal Service has not made the required employer contributions to the Fund. The Postal Service argues that its employees should receive such credit. *Id.* at 2–14. OPM disagrees, maintaining that employees cannot be credited with service for periods in which no employer contributions have been made into the Fund. OPM Memo at 5–9. For the reasons that follow, we agree with the Postal Service that OPM may not address the Postal Service's failure to make statutorily required contributions by denying its employees accrued service credit under FERS during their periods of qualifying federal employment.

## I.

In 1986, Congress enacted the Federal Employees' Retirement System Act of 1986, Pub. L. No. 99-335, 100 Stat. 514 (codified as amended at

---

FERS on Employees" ("USPS Paper"). OPM has agreed provisionally to provide service credit to postal employees who may retire while the issue is pending before our Office. OPM Memo at 2.

[2] *See* Memorandum for Virginia Seitz, Assistant Attorney General, Office of Legal Counsel, from Mary Anne Gibbons, General Counsel and Executive Vice President, United States Postal Service (Aug. 12, 2011) ("USPS Memo").

*Service Credit for Retirement Annuities of USPS Employees*

5 U.S.C. §§ 8401–8479 and scattered U.S.C. sections), a system of retirement and other benefits for federal employees that will gradually supersede the Civil Service Retirement System ("CSRS"), which has been in effect since 1920. *See* Pub. L. No. 66-215, 41 Stat. 614 (1920) (codified as amended at 5 U.S.C. §§ 8331–8351 (2006 & Supp. 2010)). In enacting FERS, Congress set out, among other things, "to establish a Federal employees' retirement plan which is coordinated with title II of the Social Security Act"; "to ensure a fully funded and financially sound retirement benefits plan for Federal employees"; and "to assist in building a quality career work force in the Federal Government." Pub. L. No. 99-335, § 100A(1), (2), & (5), 100 Stat. at 516 (codified at 5 U.S.C. § 8401 note (2006)).[3] With certain exceptions, the Act became effective on January 1, 1987. *Id.* § 702, 100 Stat. at 631 (codified at 5 U.S.C. § 8401 note). Since then, most newly hired federal employees who are covered by Social Security have also been covered by FERS.

FERS is a three-tiered retirement system that consists of Social Security, a basic annuity, and a Thrift Savings Plan ("TSP"). *See* 5 U.S.C. § 8403 (2006) (except as otherwise provided, benefits payable under FERS are in addition to benefits payable under the Social Security Act); *id.* §§ 8410–8425 (2006 & Supp. IV 2010) (basic annuity); *id.* §§ 8431–8440f (2006 & Supp. IV 2010) (TSP).[4] The Postal Service and its employees fall within FERS coverage. 39 U.S.C. § 1005(d) (2006 & Supp. III 2009). The dispute between OPM and the Postal Service concerns the basic annuity.

Under FERS, an "employee," as defined in 5 U.S.C. § 8401(11) (2006), must complete at least five years of creditable civilian service under 5 U.S.C. § 8411 to be eligible for the annuity. 5 U.S.C. § 8410

---

[3] From Congress's enactment of the Social Security Act in 1935, Pub. L. No. 74-271, 49 Stat. 620 (1935), until 1983, federal employees were excluded from Social Security coverage. In 1983, the Social Security Act was amended to cover newly hired federal employees. Pub. L. No. 98-21, § 101, 97 Stat. 65, 67–70 (1983) (codified at 42 U.S.C. § 410). That expansion of Social Security was a major impetus behind the adoption of FERS, the new retirement system for federal employees, in 1986. *See generally* S. Rep. No. 99-166, at 1–2 (1985) (providing background on the CSRS and amendment of the Social Security Act to cover federal employees).

[4] The TSP is a tax-deferred savings plan for federal employees in which employee contributions are matched in part by employer agency contributions.

(2006). As a general matter, creditable service includes "employment as an employee . . . after December 31, 1986." *Id.* § 8411(b)(1). With certain exceptions, the annuity of a retiring employee is 1 percent of that individual's average pay (the highest average pay in effect over any three consecutive years of service) multiplied by that individual's "total [years of] service." *Id.* §§ 8415(a), 8401(3) (defining "average pay"). The statute establishes different potential retirement ages for employees depending on the number of years of service completed. *Id.* § 8412 (2006 & Supp. IV 2010). For example, an employee who is separated from service after becoming 62 years old and completing five years of service is entitled to an annuity. *Id.* § 8412(c). "[S]ervice," in turn, "means service which is creditable under section 8411." *Id.* § 8401(26). As these provisions make clear, the determination whether service is creditable under the statute has important ramifications for an employee's eligibility to receive a basic annuity, the applicable retirement age, and the calculation of the amount of the annuity.[5]

The FERS basic annuity is funded through a combination of employee deductions and employer agency contributions to the Civil Service Retirement and Disability Fund. *Id.* §§ 8422, 8423, 8401(6) (2006 & Supp. IV 2010). Under FERS, the employing agency is required to deduct and withhold from each employee's basic pay a percentage that is equal to 7 percent of basic pay (with a different percentage applicable to Members of Congress and certain categories of employees) less the Old Age, Survivors, and Disability Insurance ("OASDI") tax rate in effect, which is now 6.2 percent. *Id.* § 8422(a), (c) (2006 & Supp. IV 2010); 26 U.S.C. § 3101(a) (2006). Accordingly, the employer is required by the statute to deduct 0.8 percent of most employees' basic pay for contribution to the Fund.

The employing agency's own contribution to the Fund is much larger and is based on the "normal-cost percentage," which is "the entry-age normal cost of the provisions of [FERS] which relate to the Fund," as computed by OPM "in accordance with generally accepted actuarial

---

[5] Creditable service is also important to other facets of the retirement system. For example, an employee is not entitled to retain the employer's contributions to the TSP and earnings attributable to such contributions before completing specific periods of service. *See* 5 U.S.C. § 8432(g)(2) (2006).

*Service Credit for Retirement Annuities of USPS Employees*

practice and standards" and "expressed as a level percentage of aggregate basic pay." 5 U.S.C. § 8401(23) (defining "normal-cost percentage"); *see id.* § 8423(a) (2006 & Supp. IV 2010).[6] Under the statute, "each employing agency having any employees or Members subject to section 8422(a) shall contribute to the Fund an amount" that is the product of the applicable normal-cost percentage and the aggregate amount of basic pay payable by the agency for the period involved. *Id.* § 8423(a)(1). In determining the normal-cost percentage to be applied, the employee deductions required by section 8422 must be taken into account. *Id.* § 8423(a)(2).[7] Thus, for

---

[6] "Entry age normal cost" is

generally understood as the percentage of every paycheck that should be invested, over the total career of each employee in a group of new entrants, to pay fully for all benefits received by that group, including all eligible survivors. Normal cost is formally defined as the present value of future benefits divided by the present value of future compensation. These values are expressed as a percentage of payroll, and provide a consistent measure of relative pension costs over time.

S. Rep. No. 99-166, at 35 (1985). OPM publishes the "normal cost percentages" for particular categories of employees in the Federal Register. At the time the Postal Service suspended its employer contributions to the Fund, the government-wide normal cost percentage for most employees was 12.5 percent. Federal Employees' Retirement System; Normal Cost Percentages, 75 Fed. Reg. 35,098 (June 21, 2010). For the first pay period commencing on or after October 1, 2011, the normal cost percentage for most employees rose to 12.7 percent. Federal Employees' Retirement System; Normal Cost Percentages, 76 Fed. Reg. 32,242, 32,243 (June 3, 2011).

[7] Section 8422(a) requires that "[t]he employing agency shall deduct and withhold from basic pay of each employee . . . a percentage of basic pay." 5 U.S.C. § 8422(a)(1). Thus, so long as the individual is an "employee," *see id.* § 8401(11), and is not otherwise excluded from coverage under the statute, *see id.* § 8402 (2006), the individual is "subject to section 8422(a)," and the employing agency is required to make contributions to the Fund under section 8423. There is no dispute here that the Postal Service's employees for whom the employer contributions have been withheld are "employees" for purposes of FERS. As a general matter, the FERS definition of "employee" refers to the definition of "employee" for CSRS benefits under chapter 83, in 5 U.S.C. § 8331(1) (2006). Section 8331(1), in turn, defines the term by reference to 5 U.S.C. § 2105. Under section 2105(a), an "employee" is an individual who is "appointed in the civil service" by a federal official; "engaged in the performance of a Federal function"; and "subject to the supervision" of a federal official. 5 U.S.C. § 2105(a) (2006); *see Taylor v. OPM*, 82 M.S.P.R. 237, 241 (M.S.P.B. 1999). Employees of the Postal Service, who are generally covered by the retirement statutes by virtue of 39 U.S.C. § 1005(d), must still meet the definition of "employee" to be covered by FERS. *See Taylor*, 82 M.S.P.R. at 241. An "employee" for purposes of FERS must also be covered by title II of the Social Security Act. 5 U.S.C. § 8401(11).

most employees, employing agencies contribute to the Fund an amount equal to 11.9 percent of basic pay—the aggregate normal cost of 12.7 percent minus the 0.8 percent employee deduction—which is more than 93 percent of the normal cost. OPM, which has authority to prescribe regulations under the statute, *id.* § 8461(g) (2006), has construed FERS to require the employing agency to "remit in full the total amount of normal cost (which includes both employee deductions and Government contributions), so that payment is received by the Fund on the day of payment to the employee of the basic pay from which the employee deductions were made." 5 C.F.R. § 841.504(h) (2011); *see also id.* § 841.413 (2011).[8]

## II.

The dispute between OPM and the Postal Service was precipitated by the Postal Service's decision, in light of its current financial crisis, to conserve cash by suspending its employer contributions for the basic annuity, effective June 24, 2011, for those postal employees covered by FERS. OPM Memo at 1; USPS Memo at 2. The Postal Service is continuing to withhold employee deductions from basic pay; it also continues to make its automatic and matching contributions to the TSP accounts of FERS employees and to remit those contributions, along with employee TSP contributions. USPS Memo at 2. OPM does not dispute that the Postal Service and its employees continue to satisfy all the requirements of the statute *except* the agency's obligation to make employer contributions to the Fund for the basic annuity. The question we must address is

---

[8] FERS further requires OPM to compute the amount of the "supplemental liability" of the Fund as of the close of each fiscal year, both with respect to current or former employees of the Postal Service and other individuals. 5 U.S.C. § 8423(b)(1). The "supplemental liability" is the estimated excess of the actuarial present value of all future benefits payable from the Fund based on the service of current or former employees or Members of Congress over the sum of the actuarial present value of employee deductions, employer contributions, and the Fund balance. *Id.* § 8401(27). The amount of any supplemental liability must be amortized in 30 equal annual installments, with interest. *Id.* § 8423(b)(2). At the end of each fiscal year, OPM must notify the Postmaster General of the amount of the required installment computed with respect to current or former postal employees and the Secretary of the Treasury of the amount computed with respect to other individuals. *Id.* § 8423(b)(3). Upon receiving such notifications, the Postal Service is required to pay, and the Secretary of the Treasury is required to credit, to the Fund the amounts specified. *Id.* § 8423(b)(4).

thus narrow: whether postal employees are entitled to service credit for retirement purposes for the periods in which the Postal Service has suspended its employer contributions under 5 U.S.C. § 8423, but in all other respects has complied with the FERS statute.

OPM states that its "longstanding interpretation of the statute," as codified in its regulations, provides that "in order for an employee to be covered under FERS, an agency must make the periodic contributions to the Retirement Fund that are required by law." OPM Memo at 2. OPM does not claim that FERS expressly provides that employer contributions are a necessary precondition for employee coverage or that employees shall not receive service credit for periods in which their employing agencies fail to make employer contributions. Instead, OPM points out that section 8423 of FERS mandates that USPS must make contributions to the Fund on behalf of employees covered by FERS. *See* 5 U.S.C. § 8423(a)(1) ("[e]ach employing agency having any employees . . . subject to section 8422(a) *shall contribute* to the Fund" an amount that is based on the normal-cost percentage set by OPM) (emphasis added)). And while section 8423 does not expressly make the mandatory employer contributions a precondition to employee eligibility, in OPM's view, the relevant OPM regulation does:

To be covered under FERS, an individual must:

(a) Be an employee, Member, or specifically covered by another provision of law;

(b) Be covered by social security;

(c) Have retirement deductions withheld from pay and have agency contributions made; and

(d) Be paid based on units of time.

Except as provided in § 842.104 and as excluded by § 842.105, an employee or Member is covered by FERS.

5 C.F.R. § 842.103 (2011) (emphasis added); *see also id.* § 842.304(a) (2011) (providing, with exceptions not relevant here, that "an employee . . . is entitled to credit for all purposes under FERS for a period of civilian service with the Government or the U.S. Postal Service—[p]erformed after December 31, 1986, *which is covered service under subpart A of this part*," a reference back to section 842.103) (emphasis added).

35 Op. O.L.C. 181 (2011)

As OPM explains, section 842.103 "merges the various statutory requirements applicable to FERS into one regulatory provision that determines whether an individual is covered by FERS." OPM Memo at 5. OPM's basic claim is thus that, "while there is no single provision in the statute which states that each of these requirements is essential to 'coverage,' when read as a whole, it was clearly reasonable for OPM to make coverage dependent upon compliance with all of the statutory requirements." *Id.* at 6. In OPM's view, section 842.103 makes "clear" that "to be 'covered by FERS' an individual must not only have deductions withheld from their pay—their employing agency must make the necessary contributions" as well. *Id.* at 5–6.

On its face, section 842.103 is not as free from ambiguity as OPM suggests. In particular, the last sentence in the provision states that "[e]xcept as provided in § 842.104 and as excluded by § 842.105, an employee or Member is covered by FERS," 5 C.F.R. § 842.103, language that appears to define coverage under FERS without making employer contributions a prerequisite. We do not think that the ambiguity in this language can be resolved by examining OPM's practice because there does not appear to be any relevant practice: OPM has pointed us to no instance of an agency refusing to remit the contributions it is statutorily required to pay under CSRS or FERS. *Cf.* OPM Memo at 9 (stating that no agency has failed to make employer contributions under CSRS). Nonetheless, we assume that OPM's interpretation of its own regulation is entitled to deference, and thus that section 842.103 has the meaning OPM suggests. *See Talk Am., Inc. v. Mich. Bell Tel. Co.*, 131 S. Ct. 2254, 2261 (2011).

In addition to relying on the statutory text and its regulation, OPM also finds support for its view in Congress's purpose. OPM notes that "Congress created FERS as a fully funded pension system," intending that "the Fund would be placed on a firm financial footing by requiring agencies to pay the full 'normal costs' for FERS employees." OPM Memo at 6. In light of Congress's "'interest in sound fiscal and accounting management,'" *id.* at 7 (quoting S. Rep. No. 99-166, at 29 (1985)), OPM contends that it is "highly unlikely that Congress would have provided that employees would be considered 'covered' by FERS and credited for their service if their employing agencies did not make the requisite contribution to the Fund." *Id.*

*Service Credit for Retirement Annuities of USPS Employees*

The Postal Service, for its part, does not deny that FERS requires it to make its employer contributions, USPS Memo at 4, 14, or that Congress intended that FERS be placed on a sound financial footing, *id.* But it points out that Congress chose to further this goal by requiring all employers to contribute to the Fund, not by depriving employees of service credit in the highly unusual situation in which an agency fails to make its required payments. *Id.* at 2–3. The Postal Service contends that under the statute, "creditable service is generated so long as employees are performing the required service for the Federal government and are contributing the required amounts to their pension, without regard to whether the employing agency cannot or does not make its employer contribution." *Id.* at 2. None of the key statutory provisions, in the Postal Service's view, "indicate[s] that creditable service under FERS is dependent on the employer contribution." *Id.* at 6. The Postal Service emphasizes that in enacting the basic annuity, Congress "intended to provide clearly defined and reliable benefits to employees"—a purpose that would be "vitiated by OPM's interpretation, which would predicate the level of employee benefits on the funding decisions of agency officials." *Id.* at 3; *see also id.* at 12. Accordingly, the Postal Service argues that OPM's interpretation of FERS, as embodied in its regulations, is at odds with the statute or, at least, unreasonable, *id.* at 5, and that OPM cannot enforce the Postal Service's statutory obligation to contribute by denying service credit to its employees.

We assume that OPM's authority to implement FERS by regulation, 5 U.S.C. § 8461(g), would entitle it, in appropriate circumstances, to deference in its construction of FERS pursuant to *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, OPM's construction of the statute is entitled to deference only "if the statute is silent or ambiguous with respect to the specific issue" at hand. *Id.* at 843. If, on the other hand, "Congress has directly spoken to the precise question at issue," and in so doing made its intent clear, "that is the end of the matter." *Id.* at 842. And here, for the reasons set forth below, we conclude that FERS makes clear that postal employees who otherwise qualify for retirement benefits under FERS are both covered by and accrue service credit under the statute notwithstanding the Postal Service's failure to make its employer contributions pursuant to 5 U.S.C. § 8423. Thus, OPM's interpretation of FERS—that OPM can address the

35 Op. O.L.C. 181 (2011)

Postal Service's failure to remit the required contributions by depriving employees of accrued service credit—is foreclosed by the statute.

## III.

### A.

"We begin with the text of the statute." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1331 (2011). Section 8410 of FERS, which governs eligibility, provides: "Notwithstanding any other provision of this chapter, an employee or Member must complete at least 5 years of civilian service creditable under section 8411 in order to be eligible for an annuity under this subchapter." 5 U.S.C. § 8410. Central to resolving this controversy is section 8411, which governs creditable service. It provides that "[t]he total service of an employee . . . is the full years and twelfth parts thereof, excluding from the aggregate the fractional part of a month, if any." *Id.* § 8411(a)(1). Section 8411 further specifies, in relevant part, that for purposes of FERS, "creditable service of an employee . . . includes . . . employment as an employee . . . after December 31, 1986." *Id.* § 8411(b), (b)(1). These provisions are not vague or unclear. They indicate plainly the category of employees who are eligible for FERS benefits, and Congress's broad, but not unbounded, definition of "creditable service" for FERS purposes.

Section 8401(11) excludes certain categories of individuals from the definition of "employee," and section 8402 excludes certain categories of individuals from coverage under FERS. *Id.* §§ 8401(11), 8402. But these exclusions are irrelevant to the present dispute. As USPS points out, OPM does not argue that "the non-payment of the employer contribution means that Postal Service employees are no longer 'employees' under the FERS statute or that they now fall within one of the exceptions in 5 U.S.C. § 8402 by virtue of such non-payment." USPS Memo at 6. And the postal employees potentially affected by their employer's non-payment of its contributions are still engaged in "employment." The plain language of FERS, then, supports the view that employees earn creditable service so long as they are employed as "employee[s]" after December 31, 1986, 5 U.S.C. § 8411(b)(1), regardless of whether their employer has suspended its contributions to the Fund.

*Service Credit for Retirement Annuities of USPS Employees*

To be sure, as noted earlier, OPM acknowledges that FERS's definition of "creditable service" does not mention employer contributions. Its argument is that a correct determination of what counts as "creditable service" under FERS does not depend on the wording of section 8411(b)(1) alone, but also on the overall statutory plan—in particular, on the fact that another provision of FERS clearly requires employer contributions as part of the overall FERS scheme.

We agree that section 8423 of FERS requires employers to make contributions to the Fund. We further agree that "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). However, the mere fact that employer contributions are a mandatory part of the overall FERS scheme does not indicate that OPM is authorized to suspend or eliminate the accrual of employees' service credit as a remedy for an employer's failure to make such contributions. *Cf. Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 247 (2000) (ERISA's "'comprehensive and reticulated' scheme warrants a cautious approach to inferring remedies not expressly authorized by the text" (citations and internal quotation marks omitted)). As noted above, the specific statutory provision that addresses creditable service says nothing that suggests that an employee's accrual of credit depends on the fact or extent of employer contributions. Section 8423 of FERS likewise fails to mandate, or even suggest, that a lapse in an employing agency's contributions should result in a denial of service credit to that agency's employees.

Certainly, as OPM states, section 8423 reflects Congress's goal that "the Fund . . . be placed on a firm financial footing by requiring agencies to pay the full 'normal costs' for FERS employees." OPM Memo at 6. But it does so not by stipulating that employees will earn service credit (and therefore future benefits) only if their employers make all required contributions, but rather by imposing on agency employers a legal obligation to make the required contributions. OPM itself has suggested no reason to think that in practice this statutory mechanism has proven ineffective in serving Congress's goal. *Cf.* OPM Memo at 9 ("no agency has ever defaulted on its obligation to make the required contributions" under CSRS).

35 Op. O.L.C. 181 (2011)

Moreover, the text of the FERS statute suggests that Congress considered the question of statutory mechanisms to address funding shortfalls and enacted a mechanism to deal with one kind of shortfall, without indicating that the suspension of employee service credit might be used as a solution to that or any other funding deficiency. Specifically, the statute provides that, in the event that OPM determines, on an annual review, that an agency's employer contributions do not in fact satisfy the statute's funding goals, OPM must notify the Postmaster General (or the Secretary of the Treasury, as applicable) of any "supplemental liability" and the amount of the required installment payments, amortized over 30 years. 5 U.S.C. § 8423(b); *see supra* note 8. The Postal Service must then pay the amount specified in the notification to address the funding shortfall. 5 U.S.C. § 8423(b)(4)(B). The existence of this supplemental liability process does not affirmatively authorize the Postal Service to avoid making its employer contributions as they come due in favor of amortizing such payments over 30 years. But the existence of a supplemental liability remedy for at least one type of funding shortfall shows that Congress was aware of the possibility that the employer contributions remitted under section 8423 might in some circumstances fail to result in agency funding of the full costs of employee benefits. Congress chose nonetheless to provide expressly for only one response to such a possibility. In light of that awareness, the omission of any other mechanism for addressing this or other kinds of shortfalls, such as denying service credit to employees when their employer defaults on its contributions, suggests that "the statute fails to mention [other responses] 'by deliberate choice, not inadvertence.'" *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1076 (2011) (citation omitted).

In sum, none of the most clearly relevant provisions of the statute suggests that either employee eligibility or creditable service under FERS depends upon the extent of the employer's contributions to the Fund. As OPM insists, and the Postal Service effectively concedes, the plain language of FERS's key provisions specifies that agency employers must contribute to the Fund the normal cost of their covered employees' basic pay. At the same time, these provisions fail to link an agency's failure to comply with this requirement to the affected employees' eligibility for an annuity or accrual of creditable service. Instead, they appear on their face to provide that an employee is entitled to service credit so long as he or

*Service Credit for Retirement Annuities of USPS Employees*

she is employed as an "employee" after December 31, 1986. *See* 5 U.S.C.
§ 8411(a) & (b). Given the harsh penalty federal employees would suffer
if they were denied FERS coverage or service credit for periods of em-
ployment during which their agency employers failed to make the re-
quired contributions to the Fund—an action over which the employees
have no control—the absence of any reference in FERS's key provisions
to OPM's authority to impose that particular remedy for an agency's
noncompliance strongly suggests that Congress did not intend such au-
thority to exist. As we discuss next, we do not think any of OPM's addi-
tional arguments in support of this authority are persuasive.

## B.

OPM offers several other arguments that, in its view, show that the
FERS statute requires employer contributions as a condition of employ-
ees' coverage and accrual of creditable service under FERS. First, OPM
relies heavily on the Postal Service's concession that, to receive service
credit under FERS, an employee must have deductions withheld from his
or her wages, even though, in the Postal Service's view, the employing
agency's contributions are not required for that purpose. OPM Memo at 7;
*see* USPS Memo at 5–10. OPM insists that these two propositions cannot
be reconciled because it is illogical to distinguish between the employee's
deduction and the employer's contribution—both of which are statutorily
required and neither of which is expressly linked by the statutory text to
accrual of service credit—for purposes of determining whether an em-
ployee accrues creditable service for periods when employee deductions
or employer contributions have not been made. OPM Memo at 7.

We need not resolve this issue. As a practical matter, the Postal Service
has continued to withhold from its employees' basic pay the deductions
required under 5 U.S.C. § 8422—including the employee deductions—
and to deposit the deductions into the Fund. USPS Memo at 2. If fulfill-
ment of the Postal Service's obligations under section 8422 is a necessary
condition to postal employees receiving credit under FERS, that condition
is being met. Furthermore, although OPM and the Postal Service agree
that a failure to make these employee deductions would affect employees'
ability to earn creditable service, we are unsure that they are correct. In
our view, this issue is difficult, particularly in the context of a scheme in

which it is the *agency's* legal obligation to effectuate the employee deduction. *See* 5 U.S.C. § 8422(a). In fact, the answer to the question may well depend on the reason that employee deductions have not been made.[9] In any event, even if employee deductions constitute a prerequisite to the accrual of service credit under FERS—one that does not appear in the FERS eligibility or accrual provisions themselves—that would not necessarily mean that employer contributions likewise would be a prerequisite for the accrual of such credit, because the significance and treatment of employee deductions and employer contributions within the statutory scheme are different. Each argument for linking employee service credit to separate requirements in the statute would have to be considered on its own terms.

Both OPM and the Postal Service cite different subsections of section 8411—some requiring employee deductions as a condition of receiving creditable service and a couple requiring employee deductions *and* em-

---

[9] For example, if the employer failed to make the employee deduction because the affected employee was not subject to deductions under 5 U.S.C. § 8422, the employee's eligibility for coverage and ability to accrue creditable service under FERS might be implicated. *Cf. Tomboc v. OPM*, 355 Fed. Appx. 422, 424 (Fed. Cir. 2009) (noting that "[w]hile the absence of deductions" under the CSRA "is an indication" regarding whether a position is covered, "it is not necessarily dispositive"). Alternatively, if the employer failed to make the employee deductions because of an agency error, the error may be corrected, *see* 5 C.F.R. § 841.505 (2011); and, in any event, an agency error would not necessarily affect the employee's entitlement to coverage. *Cf. Noveloso v. OPM*, 45 M.S.P.R. 321, 324 n.2 (M.S.P.B. 1990) (noting, in addressing CSRS coverage, that "[i]f no deductions were withheld because of agency error, or because it was not determined until after the fact that such service should have been covered, the employment will still constitute covered service"); *accord Staffney v. OPM*, 54 M.S.P.R. 99, 102–03 (M.S.P.B. 1992) (same, under CSRS coverage); *In re Kaltakji*, 1 M.S.P.R. 63, 64 (M.S.P.B. 1978) (same). *But see* 5 U.S.C. § 8339(i) (2006) (providing, for purposes of computing a CSRS annuity, that the total service of an employee "shall not include any period of civilian service . . . for which retirement deductions or deposits [under section 8334] have not been made" unless the employee makes a deposit under section 8334(c) or (d)(1) or no deposit is required for such service as specified under section 8334(g) or another statute). And, for the same reasons that an agency error may not affect the employee's entitlement to coverage, a willful agency refusal to make the required employee deductions likewise may not affect that entitlement. For the reasons stated in the text, however, we need not decide the circumstances, if any, in which an employing agency's failure to make the employee deductions and deposit them into the Fund would affect an employee's coverage and accrual of service under FERS.

ployer contributions—to support their respective positions. On the one hand, OPM contends that, where Congress intended to permit service credit to be afforded even if no contributions were made by the agency, it did so explicitly. It cites as an example section 8411(b)(3), which permits employees to receive service credit for periods of employment during which no employing agency contributions or employee deductions were paid into the Fund for certain service performed prior to January 1, 1989. OPM Memo at 8 n.5. In such instances, the employee must make a deposit into the Fund of 1.3 percent of his or her basic pay, with interest, for that period of service. *Id.* (citing 5 U.S.C. § 8411(f)(2)).[10] However, no employing agency contribution is required for that period. *Id.*[11] The Postal

---

[10] Section 8411(b)(3), with the introductory language in section 8411(b), provides:

> For the purpose of this chapter, creditable service of an employee or Member includes[,] except as provided in subsection (f) or (h), any civilian service (performed before January 1, 1989, other than any service under paragraph (1) or (2)) which, but for the amendments made by subsections (a)(4) and (b) of section 202 of the Federal Employees' Retirement System Act of 1986, would be creditable under subchapter III of chapter 83 of this title (determined without regard to any deposit or redeposit requirement under such subchapter, any requirement that the individual become subject to such subchapter after performing the service involved, or any requirement that the individual give notice in writing to the official by whom such individual is paid of such individual's desire to become subject to such subchapter)[.]

5 U.S.C. § 8411(b), (b)(3). Section 8411(f)(2) prohibits an employee from receiving "credit under this chapter for any service described in subsection (b)(3) for which retirement deductions under subchapter III of chapter 83 have not been made, unless such employee or Member deposits an amount equal to 1.3 percent of basic pay for such service, with interest." *Id.* § 8411(f)(2). Section 8411(f)(1) requires an employee who has received a refund of CSRS retirement deductions for service described in subsections (b)(2) or (b)(3) to "deposit[] an amount equal to 1.3 percent of basic pay for such service, with interest," as a condition of receiving credit for such service. *Id.* § 8411(f)(1).

The Senate Committee on Governmental Affairs released a Committee Print in October 1986, four months after the enactment of FERS, that set out a detailed section-by-section analysis of the statute. The committee print explains that section 8411(b)(3) "provides that creditable service includes . . . service before January 1, 1989, which was either non-covered or was not vested under CSRS in which case a contribution must be made under subsection (f)." S. Comm. on Governmental Affairs, 99th Cong., Supplemental Information Regarding the Federal Employees' Retirement System Act of 1986, at 7 (Comm. Print 1986) ("FERS Comm. Print").

[11] Section 8411(b)(3) is not unique in requiring employees who had not contributed to the Fund (sometimes because they had been covered by other retirement systems) but who

35 Op. O.L.C. 181 (2011)

Service, on the other hand, cites two instances in which the statute expressly requires the payment of an employer contribution to render certain service creditable, arguing that there would have been no reason for Congress to have explicitly required an employer contribution if accrual of service credit is invariably conditioned on an agency's having made employer contributions to the Fund. USPS Memo at 8 (citing 5 U.S.C. § 8411(e), (g) (the latter of these added in subsequent amendments to FERS)).[12]

---

seek service credit within the FERS system, to make payments to the Fund equal to the amounts that would have been deducted as FERS employee contributions for that period of service—without any mention of the necessity of an employer contribution. *See, e.g.*, 5 U.S.C. § 8411(b)(4) & (5) (the latter of these added in subsequent amendments to FERS); USPS Paper at 6. In still other instances, Congress treated service for which deductions were not paid to the Fund as creditable with no requirement of any kind of employee or employer deposit. *See* 5 U.S.C. § 8411(c)(1)(A) (military service performed before January 1, 1957); *id.* § 8411(d) (certain periods of leave without pay); USPS Paper at 7.

[12] Section 8411(e) provides:

> Credit shall be allowed for periods of approved leave without pay granted an employee to serve as a full-time officer or employee of an organization composed primarily of employees . . . , subject to the employee arranging to pay, through the employee's employing agency, within 60 days after commencement of such leave without pay, *amounts equal to the retirement deductions and agency contributions which would be applicable under sections 8422(a) and 8423(a)*, respectively, if the employee were in pay status. If the election and all payments provided by this subsection are not made, the employee may not receive credit for the periods of leave without pay, notwithstanding the third sentence of subsection (d).

5 U.S.C. § 8411(e) (emphasis added). Section 8411(g), in turn, provides that "[a]ny employee who—

> "(1) served in a position in which the employee was excluded from coverage under this subchapter because the employee was covered under a retirement system established under section 10 of the Federal Reserve Act; and

> "(2) transferred without a break in service to a position to which the employee was appointed by the President, with the advice and consent of the Senate, and in which position the employee is subject to this subchapter,

"shall be treated for all purposes of this subchapter as if any service that would have been creditable under the retirement system established under section 10 of the Federal Reserve Act was service performed while subject to this subchapter *if any employee and employer deductions, contributions or rights with respect to the employee's service are transferred from such retirement system to the Fund*." *Id.* § 8411(g) (emphasis added).

196

*Service Credit for Retirement Annuities of USPS Employees*

None of these examples, in our view, supports either inference. As the Postal Service observes, section 8411 sets forth a variety of rules regarding when certain types of service that fall outside the scope of section 8411(b)(1) (the service at issue here) nonetheless may be credited for FERS purposes. *Id.* Congress's varying responses to divergent coverage and employee deduction scenarios do not shed light on what it intended as a general matter for employees otherwise covered by FERS. With respect to section 8411(b)(3), for example, Congress's decision to allow the accrual of service credit for employees in a transitional period during the early implementation of FERS and to address the absence of retirement deductions by requiring that the employee deposit an amount compensating for those missing employee deductions, 5 U.S.C. § 8411(f)(2), suggests, at most, that Congress viewed employee deductions as more significant to coverage requirements than employer contributions. By the same token, that Congress required employer contributions to be made as a condition of receiving service credit in the examples cited by the Postal Service, *id.* § 8411(e), (g), shows little more than that Congress chose to impose that additional requirement in those instances and explicitly provided for employer contributions to make the requirement clear.[13]

---

[13] For similar reasons, we do not find Congress's treatment of reemployed annuitants in 5 U.S.C. § 8468, on which the Postal Service relies, *see* USPS Memo at 6–7, particularly illuminating. In language added to that section after the enactment of FERS, the statute provides that, with certain exceptions, if the annuitant becomes reemployed, "deductions for the Fund shall be withheld from the annuitant's pay under section 8422(a) and contributions under section 8423 shall be made." 5 U.S.C. § 8468(a) (2006). The Postal Service makes much of the fact that a subsequent subsection provides that if an annuitant "*subject to deductions* under the second sentence of subsection (a)" serves for at least 5 years, the annuitant may elect to have his or her rights redetermined under FERS. *Id.* § 8468(b)(2)(A) (emphasis added). The Postal Service finds it significant that this subsection mentions "deductions" and not employer "contributions." But an employee subject to "deductions" under the second sentence of section 8468(a) would also be subject to "contributions," and so there was no need for Congress to repeat the full phrase in section 8468(b)(2)(A) to indicate the employees to whom it was referring. Moreover, contrary to the Postal Service's assertion that Congress made clear that reemployed annuitants earn service credit "so long as 'deductions' are being made from their basic pay," USPS Memo at 7, Congress merely referred to reemployed annuitants who were "subject to deductions," without regard to whether the deductions were actually "being made." *See* 5 U.S.C. § 8468(b)(2)(A). More importantly, however, we believe again that Congress's policy determination about the coverage of reemployed annuitants tells us little about

35 Op. O.L.C. 181 (2011)

What these examples reveal is that, even where there was no other statutory commitment to treat service as creditable under FERS or where employees were covered under other federal retirement systems, Congress sometimes extended FERS service credit in exchange for the payment of specified employee deductions—or the payment of employer contributions, or the relinquishment of service credit under other retirement systems, or without imposing any conditions—to serve some other policy goal, such as increased portability of retirement benefits. *See* Pub. L. No. 99-335, § 100A(3), 100 Stat. at 516 (codified at 5 U.S.C. § 8401 note) (one purpose of FERS was "to enhance portability of retirement assets earned as an employee of the Federal Government"). In our view, the discrete scenarios addressed in section 8411 provide little assistance, one way or another, in the assessment whether Congress intended to authorize OPM to deny service credit to employees otherwise subject to the FERS retirement plan for periods of employment under that plan if agencies violated the statutory requirement that they make employer contributions to the Fund.

Finally, as noted above, OPM argues that, in light of Congress's creation of FERS as a "fully funded pension system," OPM Memo at 6, and its purpose to ensure "sound fiscal and accounting management," *id.* at 7 (citing S. Rep. No. 99-166, at 29), "it is highly unlikely that Congress would have provided that employees be considered 'covered' by FERS and credited for their service if their employing agencies did not make the requisite contribution[s] to the Fund." *Id.* But, of course, Congress did require employing agencies to make specified contributions to the Fund, and the Postal Service is legally obligated to do so. *See supra* pp. 184–186, 191. The question here is only whether Congress intended that the remedy for the Postal Service's failure to meet its obligations would be to deny employees the service credit that the statute contemplates they will earn.

We agree with OPM that Congress was concerned with the fiscal management of the Fund. But "ensur[ing] a fully funded and financially sound retirement benefits plan for Federal employees," Pub. L. No. 99-335, § 100A(2), 100 Stat. at 516 (codified at 5 U.S.C. § 8401 note), was only

---

whether Congress intended generally to condition coverage and accrual of service credit for FERS employees on the agency's deposit of its employer contributions into the Fund.

one of several congressional purposes in enacting FERS. Among other things, Congress also enacted FERS to establish a new retirement plan "to assist in building a quality career work force in the Federal Government." *Id.* § 100A(5). That goal could well be subverted if Congress were to create a retirement system in which employees' retirement benefits could be diminished or stripped away by their agencies' failure to pay the statutorily required contributions into the Fund. Even recognizing that a fully funded pension system was an important congressional objective, "no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular object is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987).

Further, although we do not "resort to legislative history to cloud a statutory text that is clear," *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994), we believe that, to the extent that the legislative history of FERS is illuminating, it undermines, rather than supports, the view that Congress intended to deny employees eligibility and creditable service under FERS for periods of employment in which their employing agencies fail to make their required employer contributions to the Fund.

The legislative history makes clear that Congress intended the basic annuity in FERS to operate as a defined benefit plan. *See, e.g.*, S. Rep. No. 99-166, at 6, 9, 30, 42; FERS Comm. Print at 7. Such a plan consists of "a general pool of assets" out of which an employee, "upon retirement, is entitled to a fixed periodic payment." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (citation omitted). "A defined benefit plan promises a participant a specific amount of pension benefits at retirement determined under a formula based on years of participation in the plan, and in most nonbargained plans, based on an average of compensation." Stephen R. Bruce, *Pension Claims: Rights and Obligations* 17–18 (1988) ("Bruce"); *see also* James E. Burk, *Pension Plan Management Manual: Administration and Investment* ¶ 1.01[8], at 1-8 (1987) ("Burk") (benefits in a defined benefits plan determined "by a formula that is generally related to service and compensation"); H.R. Comm. on Post Office and Civil Serv., 98th Cong., *Designating a Retirement System for Federal Workers Covered by Social Security* 6 (Comm. Print 1984) (prepared by

the Congressional Research Service) ("CRS Comm. Print") ("A defined benefit plan determines benefit amount by a formula. Upon reaching the terms specified in the definition of eligibility (usually a combination of age and years of service), the worker receives the benefit computed from the application of the formula to the employee's years of service and salary.").[14]

The FERS basic annuity follows this model. FERS promises participants a specific level of benefits by application of a formula that is generally dependent on the employee's average pay and total service, 5 U.S.C. § 8415(a), and that bases the employing agencies' contributions on the "normal-cost percentage" of benefits, *id.* § 8423(a), which is actuarially computed by OPM. *Id.* § 8401(23); *cf.* Burk ¶ 2.01, at 2-4 (employer's contribution in a defined benefit plan is actuarially computed). The benefit formula in a defined benefit plan "is geared to providing a specific retirement benefit rather than based on the rate of contributions made by the employer to the pension fund." Burk ¶ 2.01, at 2-5. A pension plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (2006 & Supp. III 2009), for example, "is liable for benefits without regard to whether the employer has made required contributions." ABA Section of Labor and Employment Law, *Employment Benefits Law* 279 (1991). Thus, it was well established by the time Congress enacted FERS, *see* USPS Memo at 9, that a multiemployer pension plan covered by ERISA, which is analogous in many respects to the multi-agency approach of FERS, must award credit based on the service performed for a participating employer regardless of whether the employer made the required contributions for such service. As the Supreme Court recognized a year before the enactment of FERS:

---

[14] By contrast, under a "defined contribution plan," the promise is that "certain contributions will be made and credited to an employee's individual account. Contribution rates are fixed, usually as a percentage of the employee's earnings. Such plans do not guarantee an employee any fixed level of benefits at retirement. An employee's benefit will vary, depending on the amount of the contributions and the interest and capital appreciation accumulated on them." Burk ¶ 1.02[8], at 1-8–1-9; *see also Hughes*, 525 U.S. at 439; Bruce at 18. "Under defined contribution plans, employers know exactly what the pension obligation is and the benefits are fully funded at the time of the contribution. Employees bear the risk of variable market performance[.]" CRS Comm. Print at 6–7.

*Service Credit for Retirement Annuities of USPS Employees*

The consistent view of the Secretary of Labor is that, under ERISA's minimum participation, vesting, and benefit accrual standards for pension plans . . . a pension plan covered by ERISA *must* award credit "solely on the basis of service performed for a participating employer, regardless [of] whether that employer is required to contribute for such service or has made or defaulted on his required contributions." In the Secretary's judgment, "[a]ny plan term or Trustees' resolution to the contrary is . . . unlawful and unenforceable."

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 567 n.7 (1985) (citations omitted).[15]

Given this backdrop, it would be reasonable to expect some indication in the text of FERS, or at least in its legislative history, if Congress had intended to depart from these principles and make accrual of employee

---

[15] *Accord Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1151 (7th Cir. 1988) ("Multi-employer plans are defined-contribution in, defined-benefits out. Once they promise a level of benefits to employees, they must pay even if the contributions they expected to receive do not materialize[.]"); Bruce at 135–36 ("[H]ours of service for use in determining [years of work] are determined solely on the basis of hours of work, or hours for which payment is due the employee from the employer, without reference to the delinquency or nondelinquency of the employer's contributions to the [multiemployer] plan."). As the Supreme Court noted, the longstanding position of the Secretary of Labor at the time of the enactment of FERS was that ERISA required that credit for hours worked "must be given solely on the basis of service performed for a participating employer, regardless whether that employer is required to contribute for such service or has made or defaulted on his required contributions. Any plan term or Trustees resolution to the contrary is, in our judgment, unlawful and unenforceable." Dep't of Labor Advisory Op. No. 76–89 (Aug. 31, 1976); *accord* Dep't of Labor Advisory Op. No. 78-28A (Dec. 5, 1978); Dep't of Labor Advisory Op. 78-21A (Oct. 16, 1978); Dep't of Labor Advisory Op. No. 78-20A (Oct. 6, 1978); *see also* Rules and Regulations for Minimum Standards for Employee Pension Benefit Plans, 41 Fed. Reg. 56,462, 56,464 (Dec. 28, 1976) (explaining, with respect to 29 C.F.R. § 2530.200b-2, regarding accrual of hours of service, that employee hours "must be credited to an employee regardless of whether contributions are required to be made to the plan on account of such hours or whether such contributions, even though required, have not in fact been made"). Before the passage of FERS, the IRS had also issued a Revenue Ruling explaining that a multiemployer plan that did not credit all years of service because of an employer's failure to make the required contributions failed to meet the requirements of "a qualified pension plan" that it provide "definitely determinable benefits" to its employees and violated the minimum participation and vesting standards of the Internal Revenue Code. Rev. Ruling 85-130, 1985-2 C.B. 137.

benefits contingent on employer contributions. Instead, the legislative history underlines that Congress intended to establish a new retirement plan for federal employees that would "provid[e] employees with financial security through a retirement program that compares favorably with those found in the private sector." S. Rep. No. 99-166, at 38.[16] It is unlikely, in light of this goal, that Congress would have incorporated into FERS an arrangement that would have been unlawful in the private sector without saying so.

Finally, OPM argues that construing FERS to give employees an entitlement to service credit without the employer's contribution "would be inconsistent with the Director's fiduciary responsibilities to the Fund." OPM Memo at 7. But, as set forth above, OPM is obligated under the statute to award service credit to employees who satisfy the statutory conditions set forth, *see supra* Part III.A, and to "pay all benefits that are payable under subchapter II, IV, V, or VI of this chapter from the Fund." 5 U.S.C. § 8461(a). As we read the statute, OPM is required to pay those benefits without regard to whether the employing agency—here, the Postal Service—has made its employer contributions to the Fund. The Director's fiduciary obligations thus include awarding service credit and paying benefits in accordance with the statute, and he would not violate those obligations by doing so.

---

[16] *See also, e.g.*, 132 Cong. Rec. 11,912 (1986) (statement of Rep. Myers) (conference report includes "many of the concepts that a great many of the better private retirement programs have"); *id.* at 11,909 (1986) (statement of Rep. Ford) (Congress had an opportunity "to create a new pension system with the best features found in the private sector"); *id.* at 11,304 (1986) (statement of Sen. Gore) ("The retirement system which we have developed employs a three-tier design that combines Social Security with a defined benefit tier that focuses on providing a reliable base pension benefit[.]"); *id.* at 11,303 (1986) (statement of Sen. Glenn) (FERS "provides Government employees with a three-part program which is comparable to plans widely used in private industry" and "one that helps to recruit and maintain an excellent and skilled work force"); *id.* at 11,301 (1986) (statement of Sen. Stevens) (praising the new retirement plan as "a top notch, economical retirement system for the Federal workforce which is on part with the best in the private sector," providing "solid retirement benefits" and "offering financial security to Federal retirees"); S. Rep. No. 99-166, at 4 (emphasizing that "the Federal Government must have the ability to attract and retain highly qualified individuals in all occupations" and that "[a]n attractive, flexible retirement plan can assist the government in meeting these objectives . . . to build a career workforce" and "to assist in recruiting midcareer employees").

*Service Credit for Retirement Annuities of USPS Employees*

## IV.

"If, upon examination of 'the particular statutory language at issue, as well as the language and design of the statute as a whole,' . . . it is clear that [the agency's] interpretation is incorrect, then we need look no further[.]" *Fort Stewart Sch. v. FLRA*, 495 U.S. 641, 645 (1990) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)). In our view, FERS has "directly spoken to the precise question at issue," *Chevron*, 467 U.S. at 842, and OPM may not address the Postal Service's failure to make the employer contributions required by FERS by denying postal employees coverage or creditable service under FERS. We do not address the propriety of any other action OPM might take to address the Postal Service's failure to make the required contributions to the Fund.

VIRGINIA A. SEITZ
*Assistant Attorney General*
*Office of Legal Counsel*