**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAMPAIGN FOR ACCOUNTABILITY,<br><br>       Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>       Defendant. | No. 1:16-cv-1068 (Calendar Committee) |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.    DC Circuit Precedent Forecloses Plaintiff's Argument that OLC Opinions that Address Interagency Disputes Categorically Constitute "Working Law."............... 2

II.   OLC Opinions Addressing Interagency Disputes Are Privileged and Exempt From Disclosure Under FOIA. .............................................................................. 11

      A.  The Fact That OLC Opinions Address Interagency Disputes Does Not Render Them Statements of Policy or Interpretations That an Agency Has Adopted. ................................................................................................. 11

      B.  OLC Opinions Addressing Interagency Disputes Are Not "Final Opinions Made in the Adjudication of Cases.".............................................................. 13

III.  Plaintiff's Arguments, Including on Working Law, Would Undermine Rule of Law Interests. ..................................................................................................... 17

CONCLUSION................................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Brennan Ctr. for Just. at N.Y. Univ. Sch. of Law v. U.S. DOJ*,
  697 F.3d 184 (2d Cir. 2012) ........................................................................................ 3

*Brinton v. Dep't of State*,
  636 F.2d 600 (D.C. Cir. 1980) ................................................................................... 13

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) .................................................................................................... 5

* *Citizens for Resp. & Ethics in Wash. v U.S. DOJ*,
  922 F.3d 480 (D.C. Cir. 2019) ............................................................................. *passim*

*Crocker v. Piedmont Aviation*,
  49 F.3d 735 (D.C. Cir. 1995) ................................................................................... 17

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ....................................................................................................... 7

*Elec. Frontier Found. v. U.S. DOJ*,
  739 F.3d 1 (D.C. Cir. 2014) ................................................................................ *passim*

*Gillig v. Advanced Cardiovascular Systems, Inc.*,
  67 F.3d 586 (6th Cir. 1995) ..................................................................................... 17

*In re Grand Jury Investigation*,
  399 F.3d 527 (2d Cir. 2005) ..................................................................................... 19

*N.H. Right to Life v. HHS*,
  778 F.3d 43 (1st Cir. 2015) ...................................................................................... 18

*N.Y. Times Co. v. U.S. DOJ*,
  806 F.3d 682 (2d Cir. 2015) ...................................................................................... 3

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ........................................................................................ 3, 12, 13

*Public Citizen, Inc. v. Office of Management & Budget*,
  598 F.3d 865 (D.C. Cir. 2010) ................................................................................. 15

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
  421 U.S. 168 (1975) .......................................................................................... 12, 14

*Tereshchuk v. Bureau of Prisons*,
  67 F. Supp. 3d 441 (D.D.C. 2014) *aff'd sub nom Tereshchuk v. Bureau of Prisons Dir.*,
  Civ. A. No. 14-5278, 2015 WL 7072055 (D.C. Cir. June 29, 2015)......................................... 10

*U.S. DOJ v. Reps. Comm. for Freedom of Press*,
  489 U.S. 749 (1989)................................................................................................................. 14

## Statutes

5 U.S.C. § 552 ..............................................................................................................*passim*

## Other Authorities

1b James. W. Moore et al., Moore's Federal Practice ¶ 0.401 (2d ed.1994) ............................ 167

*Applicability of the Cargo Preference Act to the Transportation of Alaskan Oil to the Strategic Petroleum Reserve*,
7 Op. O.L.C. 139 (1983) ........................................................................................................... 9

*Applicability of Government Corporation Control Act to "Gain Sharing Benefit" Agreement*,
 24 Op. O.L.C. 212 (2000)......................................................................................................... 5

Clarifying and Protecting the Right of the Public to Information,
  H.R. Rep. No. 89-1497 (1966) ............................................................................................... 17

Clarifying and Protecting the Right of the Public to Information, and for Other Purposes,
  S. Rep. No. 89-813 (1965) ...................................................................................................... 14

Easterbrook, Privacy and the Optimal Extent of Disclosure Under the Freedom of
  Information Act,
  9 J. Legal Studies 775 (1980) ................................................................................................. 14

*Payment of Back Wages to Alien Physicians Hired Under H-1B Visa Program*,
  32 Op. O.L.C. 47 (2008).......................................................................................................... 8

*Scope of the Environmental Protection Agency's Discretion to Adopt Any One of Three
 Alternative Interpretations of the Mitchell-Conte Amendment to the Clean Air Act*,
13 Op. O.L.C. 105 (1989) .......................................................................................................... 5

## INTRODUCTION

Plaintiff asks this Court to grant it relief that is implausible and hard to square with controlling D.C. Circuit precedent: a judgment that an entire category of opinions by the Office of Legal Counsel (OLC) is subject to affirmative disclosure under the Freedom of Information Act (FOIA). The Court should deny that request and grant summary judgment to Defendant. Although this Court's opinion, granting in part and denying in part Defendant's motion to dismiss, left open the possibility that a single category of OLC opinions—those that address disputes among federal agencies—were materially different from the other types of OLC opinions to which the Court has already granted the government's motion to dismiss, the undisputed facts and Plaintiff's own brief confirm that these opinions have no unique features that would render them categorically subject to FOIA's reading-room provision.

As the D.C. Circuit and this Court have recognized, OLC opinions generally are protected by the deliberative process privilege and are not subject to mandatory disclosure. First, the D.C. Circuit has rejected Plaintiff's categorical argument that OLC opinions are "working law" under FOIA because they bear the "indicia of a binding legal decision." *Elec. Frontier Found. v. U.S. DOJ*, 739 F.3d 1, 9 (D.C. Cir. 2014) ("*EFF*"). For a document to constitute an agency's working law, it must be the agency's effective law and policy. But OLC lacks the authority to adopt or dictate policy. It is policymaking agencies that will have working law that will be subject to FOIA's disclosure requirement. A legal interpretation in an OLC opinion could conceivably become an agency's working law if the policymaking agency takes some subsequent action to adopt that interpretation. But because of the requirement for some subsequent action by the policymaking agency, it is simply not true as a categorical matter, nor is it common, that OLC opinions themselves are an agency's working law. And in any event, any disclosure obligation for

a policymaking agency's working law falls on the agency whose policy is being set and not on OLC.

OLC opinions that address interagency disputes are covered by the deliberative process privilege and are thus exempt from FOIA under 5 U.S.C. § 552(b)(5), regardless of whether they would otherwise be subject to affirmative disclosure under 5 U.S.C. § 552(a)(2). The opinions are not "statements of policy"—OLC cannot issue policy statements—and would only become "interpretation[s] adopted by the agency" based on the subsequent action of another agency that would bear the burden of disclosing the interpretations that it had adopted. Nor can Plaintiff show that the relevant OLC opinions are "final decisions made in the adjudication of cases." OLC opinions are not final dispositions of agency policy, to which the phrase "final decision" refers, and they do not represent the type of "adjudications of cases" that Congress intended the provision to reach.

Finally, Plaintiff offers little defense of the broad implications of its legal theory. Plaintiff's theory would render large swaths of predecisional legal advice subject to affirmative disclosure under FOIA. Judgment for Plaintiff would threaten the Executive Branch's ability to receive confidential legal advice (as well as other kinds of predecisional advice), thereby undermining important rule-of-law values. The Court should grant Defendant's motion, and deny Plaintiff's, for this and the forgoing reasons.

## ARGUMENT

### I.    DC Circuit Precedent Forecloses Plaintiff's Argument that OLC Opinions that Address Interagency Disputes Categorically Constitute "Working Law."

Fundamentally, Plaintiff's various arguments for why OLC must disclose its opinions that address interagency disputes all come down to a common theme: that unlike other OLC opinions, such opinions allegedly constitute final determinations rather than privileged legal advice. This

2

claim is exemplified by Plaintiff's insistence that OLC opinions in this category constitute "working law" of an agency. *See* Mem. of Law in Supp. of Pl.'s Cross-Mot. for Summ. J. & in Opp'n to Def.'s Mot. for Summ. J., at 26-30, ECF No. 60 ("Pl.'s Mot."). Because Plaintiff fails to meaningfully distinguish this category of OLC opinions from other opinions that have been held to be subject to the deliberative process privilege—and thus not to constitute working law—this argument must fail.

1. It is well established that OLC opinions, as a general matter, constitute privileged legal advice. This Court so held in this case, agreeing with all of the courts to consider the issue. *See Citizens for Resp. & Ethics in Wash. v. U.S. DOJ*, 922 F.3d 480, 489 (D.C. Cir. 2019) *(CREW)*; *EFF*, 739 F.3d at 9; *see also N.Y. Times Co. v. U.S. DOJ*, 806 F.3d 682, 687 (2d Cir. 2015) (rejecting claim that OLC documents are "working law" because "they provide, in their specific contexts, legal advice as to what a department or agency 'is *permitted* to do'" and OLC lacks "authority to establish the 'working law' of the [agency]" (quoting *EFF*, 739 F.3d at 8, 10)); *Brennan Ctr. for Just. at N.Y. Univ. Sch. of Law v. U.S. DOJ*, 697 F.3d 184, 203 (2d Cir. 2012) (rejecting assertion that OLC advice documents were "working law," because the doctrine requires disclosure of otherwise privileged documents only if they have become an agency's "effective law and policy") (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975)).

OLC is not a policymaking entity; instead, its opinions provide legal guidance to other agencies that are responsible for setting their own policy. Agencies that receive legal advice from OLC may use that advice in the formulation of their own policies. Any policy or legal interpretation that the agency ultimately adopts to set the rules by which agency personnel carry out their functions (often referred to as "working law") would be subject to 5 U.S.C. § 552(a)(2), but the obligation would fall on the agency whose working law was being set rather than on OLC.

In unusual circumstances, the agency policy might take the form of the OLC opinion itself, if the agency expressly adopts both the decision and the reasoning of the OLC opinion rather than issuing its own standalone policy.  *See infra* at 11-13 (adoption).  Even in that situation, however, the publication burden would run to the agency, because the OLC opinion would be the working law of the agency that adopted the opinion as its own policy.  In this respect, the OLC opinion would be no different from any other legal interpretation that the agency adopted as its own.  This result is also the most practical, both because members of the public should be able to ascertain an agency's law by looking at materials published by that agency rather than by OLC, and because OLC is not often in a position to know exactly how a recipient agency makes use of its advice, while a recipient agency that has converted an OLC opinion into its own working law is well-positioned to comply with the publishing obligation imposed by § 552(a)(2).

None of this analysis depends on whether the OLC opinion was issued at the request of a single agency or was instead issued to address a dispute among agencies.  The D.C. Circuit's analysis in *EFF* is illustrative.  In *EFF*, the D.C. Circuit concluded that OLC's formal written opinion at issue had not become the FBI's working law.  There, the FBI sought "legal advice from OLC" about certain "investigative tactics" that the FBI had previously employed.  *EFF*, 739 F.3d at 5.  The OLC opinion concluded that the FBI had legal authority to use those investigative tactics. *Id.*  The D.C. Circuit rejected the view that this opinion was the FBI's working law, because "OLC cannot speak authoritatively on the FBI's policy" and "OLC is not authorized to make decisions about the FBI's investigative policy."  *Id.* at 9.  The OLC opinion was thus a privileged "legal memorand[um] that concern[ed] the advisability of a particular policy" and not subject to disclosure under FOIA.  *Id.*  Nothing about the D.C. Circuit's holding and rationale would change if the OLC opinion had been written because another agency had disagreed with the FBI about its

authority to employ the investigative tactics at issue, as opposed to merely arising from the FBI's own inquiry to OLC. In either case, the OLC opinion would be transformed into an agency's working law only if it were expressly adopted by the agency or agencies involved. It would not become the working law of OLC.

A review of some previously published OLC opinions that addressed interagency disputes confirms the point. Consider, for example, *Scope of the Environmental Protection Agency's Discretion to Adopt Any One of Three Alternative Interpretations of the Mitchell-Conte Amendment to the Clean Air Act*, 13 Op. O.L.C. 105 (1989). There, OLC advised that three statutory interpretations were legally available to the EPA as reasonable interpretations, under *Chevron U.S.A. Inc. v Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), of an amendment to the Clean Air Act. 13 Op. O.L.C. at 111-12. OLC did not dictate which interpretation the EPA should adopt in implementing policy. In fact, OLC would not have the authority to do so, even if it wanted to. *See EFF*, 739 F.3d at 9. Nothing in the OLC opinion, thus, became the working law of the agency just because OLC issued the opinion and it was binding on the agency. Likewise, in *Applicability of Government Corporation Control Act to "Gain Sharing Benefit" Agreement*, 24 Op. O.L.C. 212 (2000), OLC disagreed with the Office of Management and Budget's position and concluded that a particular statute did not require the National Aeronautics and Space Administration ("NASA") to obtain legislative authorization to enter into a gain sharing benefit agreement with a private corporation. The OLC opinion did not dictate NASA's policy as to that agreement or similar contracts; it only advised as to NASA's legal authority to enter the agreement. *Id.* at 221. These exemplar opinions illustrate the distinction between legal advice, which is given by OLC, and setting working law, which is done by agencies in the context of policy decisions.

2. Plaintiff identifies five factors that it believes make OLC opinions that address interagency disputes into an agency's working law. *See* Pl.'s Mot. at 27-30. But these factors are not unique to opinions addressing interagency disputes, and the D.C. Circuit has already concluded that these factors do not render OLC opinions working law.

*First*, Plaintiff asserts that OLC opinions addressing interagency disputes are controlling. *See* Pl.'s Mot. at 27. All OLC opinions, however, are controlling in the sense that, by custom and practice of the Executive Branch, agencies cannot act contrary to the conclusion (though not necessarily the reasoning) of OLC opinions, unless those opinions are overruled by OLC, the Attorney General, or the President. *CREW*, 922 F.3d at 486; *EFF*, 739 F.3d at 9. But the D.C. Circuit held in *EFF* that this attribute of OLC opinions does not render them an agency's "working law," as OLC lacks authority to make *any* "binding" determinations of policy and the agency is not required to use OLC opinions to authorize any actions, let alone to adopt the reasoning of those opinions as its own. *See EFF*, 739 F.3d at 9.

*Second*, Plaintiff argues that OLC opinions are precedential in the sense that OLC relies on them in issuing subsequent opinions, unless the earlier opinions are expressly overruled. *See* Pl.'s Mot. at 28. This, too, is no more true of OLC opinions addressing interagency disputes than of other OLC opinions, and the D.C. Circuit has also rejected this feature of OLC opinions as sufficient to transform them into working law. *CREW*, 922 F.3d at 486; *EFF*, 739 F.3d at 9. The precedential nature of OLC opinions, among other "indicia of a binding legal decision," does "not overcome the fact that OLC does not speak with authority on" the law that governs a policy that a different agency may or may not adopt. *EFF*, 739 F.3d at 9.

*Third*, Plaintiff points to the fact that OLC opinions flow outward to agencies that are required to apply them. *See* Pl.'s Mot. at 28-29. But this characteristic is shared by all OLC

opinions—not just those addressing interagency disputes—and it does not thereby render them working law.  *See EFF*, 739 F.3d at 8-9.

*Fourth*, Plaintiff similarly argues that the "authoritative" nature of OLC opinions makes them working law.  *See* Pl.'s Mot. at 30.  Yet no less for the category of opinions at issue here than for other OLC opinions, this authoritative nature is "insufficient to render an OLC opinion the 'working law' of an agency."  *CREW*, 922 F.3d at 486.  As noted above, the custom and practice of the Executive Branch of treating OLC advice as authoritative applies across-the-board; agencies are no more bound to follow opinions that address interagency disputes than any other formal OLC opinion.

*Fifth*, Plaintiff's final argument—that OLC opinions are issued prospectively to guide agencies in the discharge of their duties—again does not distinguish opinions addressing interagency disputes from any other OLC opinion.  *See* Pl.'s Mot. at 29-30.  It is not clear that this argument is distinct from the point that OLC opinions are "controlling," "authoritative," and "precedential."  *See CREW*, 922 F.3d at 486-88 (rejecting these three arguments).  Regardless, this is a core characteristic of all predecisional advice and this feature would not serve to distinguish *EFF*, where the D.C. Circuit recognized that the OLC opinion at issue in that case "compris[ed] part of a process by which governmental decisions and polices are formulated."  *EFF*, 739 F.3d at 4 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).

3. Plaintiff's discussion of individual OLC opinions addressing interagency disputes merely highlights its inability to articulate a principle under which this category of such opinions would constitute working law.  *See* Pl.'s Mot. at 22-24.

Plaintiff argues that OLC superseded agency policy when it addressed a dispute between the Department of Veterans Affairs (VA) and the Office of Personnel Management (OPM) over

whether a reservist who qualified for leave under two statutory provisions could take leave under only one provision or under either. Pl.'s Mot. at 23-24. Plaintiff does not explain why that OLC opinion should be treated differently than a hypothetical opinion reaching the same conclusion in response to an opinion request from a single agency, and this Court has already correctly recognized that even OLC opinions identifying an agency's non-discretionary legal obligations are not subject to mandatory disclosure by OLC. *See* Ren. MTD Op. at 38. Likewise, Plaintiff believes that OLC issued a "controlling opinion" that determined the agency's policy position in a dispute between the Department of Labor (DOL) and the VA over an award of back pay to physicians, where OLC concluded that sovereign immunity barred the award of back wages against the VA. Pl.'s Mot. at 24 (citing *Payment of Back Wages to Alien Physicians Hired Under H-1B Visa Program*, 32 Op. O.L.C. 47 (2008)). Again, that opinion would have no different effect had it merely been issued at the request of the VA alone; in either case, it would be up to the VA to use that legal advice in setting its own policy, and that policy, rather than the inputs to that policy, would be subject to mandatory disclosure.

These opinions are relevant only insofar as they highlight Plaintiff's inability to escape the D.C. Circuit's reasoning. *See EFF*, 739 F.3d at 10 ("Even if the OLC Opinion describes the legal parameters of what the FBI is *permitted* to do, it does not state or determine the FBI's policy."). With respect to the VA-OPM opinion, OLC's conclusion that the statute did not contain an exhaustion requirement was simply a legal conclusion describing which policy options were available to the VA. The same is true of the DOL-VA opinion, where OLC's conclusion that sovereign immunity barred the award of back wages was a legal determination that impacted DOL's available policy options. Both determinations are the same type of conclusion that was at issue in *EFF*. *See* 739 F.3d at 10; *cf.* OLC Resp. Ltr. at 2-4. And in the particular context of the

DOL-VA opinion, DOL made at least two policy decisions: first, the initial order that VA must pay back wages; and second, whatever DOL chose to do after the OLC opinion (*e.g.*, perhaps DOL decided to employ one of the other enforcement mechanisms available to it). In connection with that second policy decision, OLC's opinion likely played a role in DOL's decision-making—but so did any number of other pre-decisional inputs (for example, discussions weighing the relative pros and cons of alternative enforcement options). None of those pre-decisional inputs by themselves determined what DOL's ultimate policy would be, even if they had the effect of removing certain options from consideration (whether due to legal concerns, practical concerns, or any other type of concern). Thus, none of the pre-decisional inputs were policy decisions on their own, nor did they themselves become working law of the agency, regardless of whether they had the effect of constraining the agency's ultimate policy choices.

Plaintiff's attempts to distinguish the exemplar opinions offered by Defendant likewise fail. Pl.'s Mot. at 33-37. For instance, Plaintiff is wrong to argue that *Applicability of the Cargo Preference Act to the Transportation of Alaskan Oil to the Strategic Petroleum Reserve*, 7 Op. O.L.C. 139 (1983), supports its argument. Plaintiff accurately describes the opinion as concluding that the Department of Energy (DOE) "*could* count [certain] oil shipments toward the statutory requirement." Pl.'s Mot. at 33 (emphasis added). But the opinion left open DOE's decision about *whether* to count the shipments. Plaintiff suggests that the opinion "resolved the legal questions" at issue in "a concrete dispute over legal policy." *Id.* Yet the dispute at issue was not about "legal policy"; it was about the scope of the policies that were legally available to the agency. Unless and until DOE made its own policy decision, DOE had no working law on the subject, and once DOE made such a decision, its working law with respect to that policy would be whatever legal parameters DOE itself promulgated, even if they might be derived from the OLC opinion. *See*

*EFF*, 739 F.3d at 9.  And Plaintiff in any event identifies no respect in which the fact that the opinion addressed an interagency dispute makes any relevant difference, as compared to a hypothetical version of the same opinion addressed only to one or the other of the requesting agencies.

4. Defendant's reliance on exemplar opinions is appropriate and entitles it to summary judgment, because Plaintiff's Amended Complaint alleges that the *entire category* of opinions addressing interagency disputes must be disclosed under the reading room provision.  *See* Am. Compl. ¶¶ 35-49 (ECF No. 22).  This Court recognized as much in its prior order.  Ren. MTD Op. (for Plaintiff to plausibly state its claim, a category of documents must "*necessarily* amount to either 'final opinions . . . made in the adjudication of cases[,]' or 'statements of policy and interpretations which have been adopted by the agency.'") (quoting 5 U.S.C. § 552(a)(2)(A)-(B)) (emphasis added).  Given that Plaintiff can only prevail if OLC opinions addressing interagency disputes categorically fall within FOIA's reading room provision, it logically follows that Defendant is entitled to summary judgment on Plaintiff's claims if even one opinion in that category calls outside of the affirmative disclosure requirement.  *See CREW*, 922 F.3d at 485 ("[T]he dispositive question before us is whether CREW has plausibly alleged that the OLC's formal written opinions have *all* been adopted by the agencies to which they were addressed, subjecting the opinions to disclosure under FOIA's reading-room provision as the 'working law' of those agencies") (emphasis added).  Plaintiff may not now re-plead its claim, as it effectively does by suggesting that Defendant must justify the decision to not affirmatively publish opinions addressing interagency disputes on an opinion-by-opinion basis.  *See* Pl.'s Mot. at 38.[1]

---

[1] This Court has granted summary judgment to the government on claims under the reading room provision without the document-by-document review that Plaintiff suggests is required.  *See Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441 (D.D.C. 2014), *aff'd sub nom Tereshchuk v. Bureau of Prisons, Dir.*, No. 14-5278, 2015 WL 4072055 (D.C. Cir. June 29, 2015).

II.   **OLC Opinions Addressing Interagency Disputes Are Privileged and Exempt From Disclosure Under FOIA.**

Plaintiff's inability to distinguish the category of OLC interagency dispute opinions from opinions that have been held to be protected by the deliberative process privilege is fatal to its case. The statute clearly provides that privileged documents are exempt from FOIA, including from FOIA's affirmative disclosure provision. *See* 5 U.S.C. § 552(b)(5) ("This section does not apply to matters that are . . . inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency").

A.   **The Fact That OLC Opinions Address Interagency Disputes Does Not Render Them Statements of Policy or Interpretations That an Agency Has Adopted.**

OLC opinions that address interagency disputes are not necessarily adopted by an agency and so are not categorically subject to affirmative disclosure under § 552(a)(2)(B).

1. Plaintiff's first adoption argument—that OLC adopts its own OLC opinions, and therefore necessarily subjects them to disclosure, Pl.'s Mot. at 25-26—again draws no distinction between OLC opinions that address interagency disputes and other OLC opinions. This argument is thus foreclosed by the D.C. Circuit's decisions in *EFF* and *CREW*. First, OLC does not have the authority to set any agency "policy." *See EFF*, 739 F.3d at 9 (crediting statement that "OLC does not purport, and in fact lacks authority, to make policy decisions"). For this reason, OLC opinions are not "statements of policy," much less those that OLC "adopt[s]." Second, as to Plaintiff's argument that opinions addressing interagency disputes are "interpretations" adopted by the agency, the D.C. Circuit has rejected the argument that OLC opinions are subject to affirmative disclosure because they are "controlling" "precedent[]." *CREW*, 922 F.3d at 486 (citing *EFF*, 739 F.3d. at 4, 8-9). Plaintiff does not—and cannot—distinguish these authorities.

11

*See id.* 489 n.6 (stating that it is "a fair reading of *EFF*" to interpret the decision as "suggest[ing] that many of OLC's formal written opinions are privileged").

2. Plaintiff's second "adoption" argument is that agencies "adopt" OLC's opinions when they "conform their interpretations to" "OLC's view." Pl.'s Mot. at 22. As noted above, the custom and practice of the Executive Branch that agencies comply with the legal conclusions in OLC opinions is no different for opinions that address interagency disputes. The D.C. Circuit's rejection of the adoption argument in *EFF* thus applies with full force here. *See EFF*, 739 F.3d at 10-11 (holding that adoption occurs only if the agency expressly adopts the entire document as its own—both the document's conclusion and its reasoning (discussing *Sears*, 421 U.S. at 161; *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)).

3. Plaintiff cannot establish that any OLC opinion addressing an interagency dispute— much less all of them—is subject to mandatory disclosure by referring to this Court's earlier suggestion that, as Plaintiff put it, there is a "possibility that a client agency . . . can 'adopt' the OLC's legal advice' when the OLC opinion 'speak[s] with authority' as to the client agency's policies and interpretations." Pl.'s Mot. at 22 (quoting Ren. MTD Op. at 21). Plaintiff has not established that opinions addressing interagency disputes are automatically adopted by the agencies involved as law that they follow. To be sure, an agency is not free to follow an interpretation of law that is contrary to an OLC conclusion. But when an agency acts consistent with an OLC interpretation, the agency must still take some further step, such as promulgating an internal memorandum explaining to agency officials the law the agency will or must henceforth follow. When the agency promulgates such a document, the agency (not OLC) becomes responsible for making public *that* document setting forth the agency's law, rather than the OLC opinion that informed it—unless the agency simply instructs agency officials that they must follow

12

the OLC opinion. (And in that case, it is the agency, not OLC, that must make the OLC opinion public.) This is as true with respect to OLC opinions addressing interagency disputes as it is for any other OLC opinions. Because Plaintiff has failed to show that this entire category of OLC opinions is subject to affirmative disclosure under FOIA, Defendant is entitled to summary judgment.

### B. OLC Opinions Addressing Interagency Disputes Are Not "Final Opinions Made in the Adjudication of Cases."

OLC opinions that address interagency disputes are not final opinions made in the adjudication of cases and so are not categorically subject to affirmative disclosure under § 552(a)(2)(A).

1. OLC opinions are not final opinions under FOIA's affirmative disclosure provision. "[F]inal opinions," for these purposes, "not only invariably explain agency action *already taken* or an agency decision *already made*, but also constitute 'final dispositions' of matters by an agency." *Sears*, 421 U.S. at 153-54 (emphasis added). Moreover, "'final opinions,' [ ] typically flow from a superior with policy-making authority to a subordinate who carries out the policy." *Brinton v. Dep't of State*, 636 F.2d 600, 605 (D.C. Cir. 1980). As discussed above and in Defendant's opening brief, the summary-judgment record illustrates that OLC opinions that arise from interagency disputes are no different from other OLC opinions. The record does not bear out Plaintiff's apparent view that these opinions are somehow categorically different from other OLC opinions and more akin to situations in which an adjudicator selects between opposing positions and issues a judgment in favor of one litigant or the other. In particular, Defendant has already provided multiple examples of OLC opinions that address interagency disputes, provide legal analysis, and leave all policy decisions to the agency. *See* Def.'s Mot. at 20-24. Because OLC lacks policy decision-making authority, and thus cannot undertake the relevant agency action, its

advice documents remain privileged predecisional legal advice and are not subject to the reading room publication requirements. *See Grumman Aircraft Eng'g Corp.*, 421 U.S. at 188 ("[T]he Regional Boards' total lack of decisional authority brings their reports within Exemption 5 and prevents them from being 'final opinions.'"); OLC Resp. Ltr. at 3 ("OLC opinions provide legal advice regarding the overall legal framework within which policymakers act as a predecisional part of government deliberative processes, but the opinions do not compel the ultimate policy decision reached or adopted by any agency. . . . Like any other client, a department or agency receives the opinion of its counsel, but then must bear the responsibility for making the final decision.").

2. The OLC opinions at issue are not "made in the adjudications of cases" because that phrase refers to agencies' adjudications of private rights. Def.'s Mot. at 15-17. First, the text of § 552(a)(2)— initially adopted as part of the Administrative Procedure Act and predating FOIA by 20 years—states that the covered documents refer to typical adjudicatory and regulatory contexts involving private individuals, not internal agency disputes. *See* 5 U.S.C. § 552(a)(2) (failure to publish a covered document precludes using the document "as precedent . . . *against a party other than an agency*," *i.e.*, against a private party (emphasis added)). This textual understanding is consistent with the Supreme Court's determination that § 552(a)(2)'s overall purpose is to require an agency to "disclose its rules governing relationships with private parties and its demands on private conduct." *U.S. DOJ v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 772 n.20 (1989) (quoting Easterbrook, Privacy and the Optimal Extent of Disclosure Under the Freedom of Information Act, 9 J. Legal Studies 775, 777 (1980)) (emphasis added). The legislative history of FOIA's amendment to the provision reveals the same. *See* Clarifying and Protecting the Right of the Public to Information, and for Other Purposes, S. Rep. No. 89-813 at 7

(1965) (This provision "is necessary to afford the private citizen the essential information to enable him to deal effectively and knowledgeably with the Federal agencies. This change will prevent a citizen from losing a controversy with an agency because of some obscure and hidden order or opinion which the agency knows about but which has been unavailable to the citizen."). Disputed legal interpretations between agencies lack any direct connection to individual rights.

Additional textual support for the private-party limitation is found in the sanction of § 552(a)(2)—that failure to publish a covered document precludes using the document "as precedent . . . against a party other than an agency," *i.e.*, against a private party. 5 U.S.C. § 552(a)(2). This sanction, the broader text of the provision, and the legislative history of FOIA are all persuasive evidence that § 552(a)(2) has an outward-facing purpose.[2]

3. Plaintiff suggests that the relevant OLC opinions are "adjudications of cases" because agencies invoke internal procedures to present their disagreement to OLC. But these procedures do not resemble adjudications of private rights contemplated by §552(a)(2) or the Administrative Procedure Act (APA), which initially enacted the "all final opinions . . . in the adjudication of cases" language. OLC's processes for addressing interagency disputes lack nearly all of these indicia of adjudications. OLC traditionally solicits statements of views from the agencies involved, but there are no formal procedures governing how such views are submitted, let alone opportunity for an adversarial hearing, prohibitions on *ex parte* communications, or a requirement of a decision that rests solely on a hearing record. *See* Stipulation, ECF No. 56 at ¶¶ 7-17. Instead, OLC may reach directly back to either or both of the affected agencies with follow-up questions,

---

[2] Plaintiff relies on *Public Citizen, Inc. v. Office of Management & Budget*, 598 F.3d 865 (D.C. Cir. 2010), to argue that the working-law doctrine applies to agency law even if it does not affect private rights. Pl.'s Mot. at 19-20. But that decision did not purport to address or decide the scope of § 552(a)(2). In any event, that case is best understood as involving documents that were never privileged in the first place, see *Pub. Citizen*, 598 F.3d at 876, and the analogy to "working law" was used only to reject OMB's broad argument that all of its documents were deliberative. *Id.* at 875. Again, that decision was one of the cases that the D.C. Circuit expressly distinguished in *EFF*, 739 F.3d at 8-9, and does not support expanding § 552(a)(2) beyond its intended scope.

may reach out to other agencies for their views, and "not every communication between OLC and the interested agencies is shared with every other interested agency." *Id.* ¶ 17; *see also* Memorandum for Attorneys of the Office, from David J. Barron, Acting Assistant Att'y Gen., Office of Legal Counsel, Re: Best Practices for OLC Legal Advice and Written Opinions 6 (July 16, 2010), at 3, ECF No. 22-4 ("Best Practices Memo") (setting out best practices to guide OLC opinions).

These processes are much more similar to other forms of Executive Branch predecisional legal advice. Indeed, OLC opinions addressing interagency disputes are akin to a general counsel's legal advice. *See* Def.'s Mot. at 26-27 (explaining that agency general counsel advice is often treated as similarly binding within an agency). For example, when an agency client approaches its general counsel for legal advice, it does so because it has a "right" to seek that advice. That request sets into motion a process whereby the general counsel, like OLC, will consider the legal question presented—presumably considering "the full range of relevant legal sources and significant arguments," *see* Pl.'s Mot. at 17 (quoting Best Practices Memo at 2), including those in dispute among various agency officials—before issuing controlling legal advice. Plaintiff's broad interpretation of "adjudication of cases" thus could lead to large swaths of confidential legal advice in the Executive Branch being subject to affirmative disclosure under FOIA. The Court should reject an interpretation of § 552(a)(2)(A) that could require that result.

4. Plaintiff argues that accepting this interpretation of final opinions made in the adjudication of cases would render § 552(a)(2)(A) superfluous because § 552(a)(2)(B) already requires disclosure of statements of policy and interpretations. Pl.'s Mot. 15-16. Defendant's argument, however, is entirely consistent with the relationship between the two subsections, which look to different types of documents. Section 552(a)(2)(A) is limited to documents related to

16

agencies' precedential adjudications of individual rights, which looks backward at decisions rendered by an agency. *See* Def.'s Mot. at 15-17 (citing, *inter alia*, Clarifying and Protecting the Right of the Public to Information, H.R. Rep. No. 89-1497 at 8 (1966)). By contrast, § 552(a)(2)(B) looks forward at all statements of policy and interpretation adopted by an agency, which will govern future agency action. The two subsections are certainly related, as they both require disclosure of types of records that govern private rights, and OLC opinions fall under neither section. That outcome does not render either subsection superfluous.

5. At the motion to dismiss stage, prior to receiving the parties' factual evidence, the Court disagreed with the view that § 552(a)(2) is limited to records that govern private rights. Ren. MtD Op. at 20. As Plaintiff appears to acknowledge, *see* Pl.'s Mot. at 12-13 (recognizing that Court's prior order was based only on plausible allegations and asking the Court to now hold in its favor), this Court has full authority to revisit a prior legal determination, particularly when made solely on pleadings under Rule 12. *See Crocker v. Piedmont Aviation*, 49 F.3d 735, 739 (D.C. Cir. 1995) (law of the case is a prudential, rather than jurisdictional, rule); *Gillig v. Advanced Cardiovascular Systems, Inc.*, 67 F.3d 586, 589–90 (6th Cir. 1995) (unlike stare decisis, the law of the case doctrine is applied "flexibly in its application to reconsideration by the courts that made the earlier decision") (citing 1b James. W. Moore et al., Moore's Federal Practice ¶ 0.401 (2d ed.1994)). It should do so here, because the OLC opinions that constitute the record make clear that the documents are not within the realm that Congress intended to be subject to the reading room provisions.

## III. Accepting Plaintiff's Arguments, Including on Working Law, Would Undermine Rule of Law Interests.

Defendant's motion for summary judgment should be granted, and Plaintiff's motion denied, because the record shows that OLC opinions that address interagency disputes are

17

privileged and not subject to FOIA's reading room provisions under D.C. Circuit precedent. Were there any doubt, however, Plaintiff's motion effectively confirms that its claims would undermine important rule-of-law values. For that further reason, Plaintiff's claims should be rejected. *See* Def.'s Mot. at 25-27.

Plaintiff's argument that disclosure serves the public interest in avoiding agencies following "secret law" begs the question by taking as given their theory that OLC legal opinions constitutes working law merely upon being received by the client agency. *See* Pl.'s Mot. at 39-40. Defendant agrees that the public interest is served by an *agency's* disclosure of documents that are its true working law, but Plaintiff is simply incorrect in its view that OLC opinions addressing interagency disputes, as opposed to the agency's subsequent actions and legal pronouncements, create working law. When an agency decides to expressly adopt the decision and reasoning of an OLC opinion *as its own working law*, then the agency has an obligation to publish the document in which it does so, along with the OLC opinion incorporated by reference, under the reading room provision. That publication obligation fully satisfies any concerns about secret law.

Plaintiff tries to cabin its arguments by representing that they only reach certain OLC opinions and not the broader category of Executive Branch predecisional legal advice. Pl.'s Mot. at 41-42. But Plaintiff's extreme position would eviscerate the confidentiality upon which the government relies in order to provide good counsel. Contrary to Plaintiff's suggestion, courts have frequently recognized that government officials should be encouraged to seek out informed legal advice and that disclosure of that advice could undermine rule-of-law interests. *See N.H. Right to Life v. HHS*, 778 F.3d 43, 55 (1st Cir. 2015) ("It is a good thing that Government officials on appropriate occasion confirm with legal counsel that what the officials wish to do is legal. To hold that the Government must turn over its communications with counsel whenever it acts in this

manner could well reduce the likelihood that advice will be sought.  Nothing in FOIA compels such a result."); *see also In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005) ("[T]he traditional rationale for the [attorney-client] privilege applies with special force in the government context. It is crucial that government officials . . . be encouraged to seek out and receive fully informed legal advice."); OLC Resp. Ltr. at 2-3; Best Practices Memo at 5-6.  The Court should avoid hollowing out the important privileges upon which the Government relies by accepting the Plaintiff's overbroad theory of FOIA's affirmative disclosure statute.

## CONCLUSION

For these reasons, this Court should grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment.

Dated:  October 11, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD
Trial Attorney (Maine Bar No. 006018)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel:  (202) 305-7667
Fax:  (202) 616-8470
E-mail:  brian.c.rosen-shaud@usdoj.gov

*Counsel for Defendant*