APPEAL,TYPE I–FOIA

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:16–cv–01068–JMC</u>
### *Internal Use Only*

CAMPAIGN FOR ACCOUNTABILITY v. U.S.
DEPARTMENT OF JUSTICE
Assigned to: Judge Jia M. Cobb
Cause: 05:552 Freedom of Information Act

Date Filed: 06/08/2016
Jury Demand: None
Nature of Suit: 895 Freedom of
Information Act
Jurisdiction: U.S. Government Defendant

**Plaintiff**

| | | |
|---|---|---|
| **CAMPAIGN FOR ACCOUNTABILITY** | represented by | **Alexander Abraham Abdo** |

**Alexander Abraham Abdo**
KNIGHT FIRST AMENDMENT
INSTITUTE AT COLUMBIA
UNIVERSITY
475 Riverside Drive
Suite 302
New York, NY 10115
(646) 745–8500
Email: alex.abdo@knightcolumbia.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Diakun**
KNIGHT FIRST AMENDMENT
INSTITUTE AT COLUMBIA
UNIVERSITY
475 Riverside Drive
Suite 302
New York City, NY 10115
646–745–8500
Email: anna.diakun@knightcolumbia.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anne L. Weismann**
5335 Wisconsin Avenue, NW
Suite 640
Washington, DC 20015
(301) 717–6610
Email: weismann.anne@gmail.com
*TERMINATED: 03/08/2017*

**Jameel Jaffer**
KNIGHT FIRST AMENDMENT
INSTITUTE AT COLUMBIA
UNIVERSITY

475 Riverside Drive
Suite 302
New York, NY 10115
(646) 745–8500
Email: jameel.jaffer@knightcolumbia.org
*ATTORNEY TO BE NOTICED*

**Scott Allan Hodes**
SCOTT A. HODES, ATTORNEY AT
LAW
P.O. Box 42002
Washington, DC 20015
(301) 404–0502
Fax: (413) 641–2833
Email: infoprivacylaw@yahoo.com
*TERMINATED: 03/18/2019*

**Stephanie Krent**
KNIGHT FIRST AMENDMENT
INSTITUTE AT COLUMBIA
UNIVERSITY
475 Riverside Drive
Suite 302
New York City, NY 10115
646–745–8500
Email: stephanie.krent@knightcolumbia.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Xiangnong Wang**
KNIGHT FIRST AMENDMENT
INSTITUTE AT COLUMBIA
UNIVERSITY
475 Riverside Drive
Suite 302
New York City, NY 10115
646–745–8500
Email: george.wang@knightcolumbia.org
*TERMINATED: 08/05/2021*
*PRO HAC VICE*

V.

**Defendant**

| U.S. DEPARTMENT OF JUSTICE | represented by | **Brian C. Rosen–Shaud** |
| --- | --- | --- |

U.S. DEPARTMENT OF JUSTICE
Federal Programs Branch
1100 L Street
Rm. 12022
Washington, DC 20530
202–305–7667

Email: brian.c.rosen−shaud@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Stephen Garrett Schwei**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
(202) 305−8693
Fax: (202) 616−8470
Email: daniel.s.schwei@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/08/2016 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0090−4558969) filed by Anne Campaign for Accountability. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons)(Weismann, Anne) (Entered: 06/08/2016) |
| 06/08/2016 | 2 | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by Anne Campaign for Accountability (Weismann, Anne) (Entered: 06/08/2016) |
| 06/08/2016 | | Case ASSIGNED to Judge Ketanji Brown Jackson. (dr) (Entered: 06/08/2016) |
| 06/08/2016 | 3 | SUMMONS (3) Issued Electronically as to U.S. DEPARTMENT OF JUSTICE (U.S. Attorney and U.S. Attorney General) (Attachment: # 1 Consent Forms)(dr) (Entered: 06/08/2016) |
| 06/13/2016 | 4 | GENERAL ORDER AND GUIDELINES FOR CIVIL CASES BEFORE JUDGE KETANJI BROWN JACKSON. The Court will hold the parties and counsel responsible for following these directives, and parties and counsel should pay particular attention to the Courts instructions for briefing motions. Failure to adhere to this Order may, when appropriate, result the imposition of sanctions and/or sua sponte denial of non−conforming motions. Signed by Judge Ketanji Brown Jackson on 6/13/2016. (lckbj1) (Entered: 06/13/2016) |
| 06/22/2016 | 5 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 6−10−2016. (Weismann, Anne) (Entered: 06/22/2016) |
| 06/22/2016 | 6 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF JUSTICE served on 6/22/2016 (Weismann, Anne) Modified party served on 6/23/2016 (znmw). (Entered: 06/22/2016) |
| 06/22/2016 | 7 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/14/2016. Answer due for ALL FEDERAL DEFENDANTS by 7/14/2016. (Weismann, Anne) Modified dates on 6/23/2016 (znmw). (Entered: 06/22/2016) |
| 06/23/2016 | | Set/Reset Deadlines: Answer due by 7/14/2016, (znmw) (Entered: 06/23/2016) |

| 07/11/2016 | 8 | Joint MOTION for Extension of Time to *Respond to Complaint, and for Entry of Briefing Schedule* by U.S. DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Schwei, Daniel) (Entered: 07/11/2016) |
| --- | --- | --- |
| 07/13/2016 | | MINUTE ORDER granting, for good cause shown, 8 Joint Motion for Extension of Time to Respond to Complaint, and for Entry of Briefing Schedule. Defendant shall file its motion to dismiss on or before 7/21/2016. Plaintiff's reply to the motion to dismiss is due on or before 8/15/2016. Defendant's reply in further support if its motion to dismiss is due on or before 9/1/2016. Signed by Judge Ketanji Brown Jackson on 07/13/2016. (lckbj1) (Entered: 07/13/2016) |
| 07/21/2016 | 9 | MOTION to Dismiss by U.S. DEPARTMENT OF JUSTICE (Attachments: # 1 Memorandum in Support, # 2 Appendix Index of Exhibits, # 3 Exhibit 1 – Letter from CFA to OLC, # 4 Exhibit 2 – Response Letter from OLC to CFA, # 5 Exhibit 3 – OLC Best Practices Memo, # 6 Text of Proposed Order)(Schwei, Daniel) (Entered: 07/21/2016) |
| 08/09/2016 | 10 | Unopposed MOTION for Extension of Time to File Response/Reply as to 9 MOTION to Dismiss by CAMPAIGN FOR ACCOUNTABILITY (Attachments: # 1 Text of Proposed Order)(Weismann, Anne) (Entered: 08/09/2016) |
| 08/11/2016 | | MINUTE ORDER granting, for good cause shown, 10 Consent Motion for Extension of Time to File Response and Reply re 9 Motion to Dismiss. Plaintiff's response to 9 is due on or before 8/22/2016; Defendant's reply re 9 is due on or before 9/8/2016. Signed by Judge Ketanji Brown Jackson on 08/11/2016. (lckbj1) (Entered: 08/11/2016) |
| 08/22/2016 | 11 | Memorandum in opposition to re 9 MOTION to Dismiss filed by CAMPAIGN FOR ACCOUNTABILITY. (Attachments: # 1 Text of Proposed Order)(Weismann, Anne) (Entered: 08/22/2016) |
| 09/08/2016 | 12 | REPLY to opposition to motion re 9 MOTION to Dismiss filed by U.S. DEPARTMENT OF JUSTICE. (Schwei, Daniel) (Entered: 09/08/2016) |
| 11/07/2016 | | MINUTE ORDER. In light of Plaintiff's representation that the D.C. Circuit's resolution of Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice (D.C. Cir. No. 16–5110) might require dismissal of the instant lawsuit, it is hereby ORDERED that this case is STAYED until further order of this Court. It is FURTHER ORDERED that the parties shall file a joint status report, no later than 30 days after the D.C. Circuit issues its mandate in Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice (D.C. Cir. No. 16–5110), describing the parties' respective views regarding any impact of that decision on this case. Signed by Judge Ketanji Brown Jackson on November 7, 2016. (lckbj2) (Entered: 11/07/2016) |
| 03/08/2017 | 13 | NOTICE of Appearance by Scott Allan Hodes on behalf of CAMPAIGN FOR ACCOUNTABILITY (Hodes, Scott) (Entered: 03/08/2017) |
| 03/08/2017 | 14 | NOTICE OF WITHDRAWAL OF APPEARANCE as to CAMPAIGN FOR ACCOUNTABILITY. Attorney Anne L. Weismann terminated. (Weismann, Anne) (Entered: 03/08/2017) |
| 04/26/2017 | 15 | Joint STATUS REPORT by U.S. DEPARTMENT OF JUSTICE. (Schwei, Daniel) (Entered: 04/26/2017) |
| 05/02/2017 | | ORDER LIFTING STAY and setting a hearing on Defendant's 9 Motion to Dismiss for July 18, 2017 at 10:30 AM in Courtroom 17 before Judge Ketanji Brown Jackson. Signed by Judge Ketanji Brown Jackson on May 2, 2017. (lckbj2) (Entered: |

| | | |
|---|---|---|
| | | 05/02/2017) |
| 06/20/2017 | 16 | NOTICE of Appearance by Jameel Jaffer on behalf of All Plaintiffs (Jaffer, Jameel) (Entered: 06/20/2017) |
| 06/20/2017 | 17 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Alex Abdo, :Firm– Knight First Amendment Institute at Columbia University, :Address– 535 West 116th Street, 314 Low Library, New York, NY 10027. Phone No. – 2128549600. Fax No. – 2128547997 Filing fee $ 100, receipt number 0090–4998929. Fee Status: Fee Paid. by CAMPAIGN FOR ACCOUNTABILITY (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Jaffer, Jameel) (Entered: 06/20/2017) |
| 06/20/2017 | | MINUTE ORDER granting 17 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that Alex Abdo is admitted pro hac vice in this matter as counsel for Plaintiff. Signed by Judge Ketanji Brown Jackson on 06/20/2017. (lckbj1) (Entered: 06/20/2017) |
| 07/18/2017 | | Minute Entry for proceedings held before Judge Ketanji Brown Jackson: Motion Hearing held on 7/18/2017, re 9 MOTION to Dismiss. Oral argument heard and motion taken under advisement. (Court Reporter: Barbara DeVico) (gdf) (Entered: 07/18/2017) |
| 09/29/2017 | 18 | ORDER granting 9 Motion to Dismiss. See attached document for details. Signed by Judge Ketanji Brown Jackson on September 29, 2017. (lckbj2) (Entered: 09/29/2017) |
| 10/06/2017 | 19 | MEMORANDUM OPINION granting 9 Motion to Dismiss. See attached document for details. Signed by Judge Ketanji Brown Jackson on October 6, 2017. (lckbj2) (Entered: 10/06/2017) |
| 10/06/2017 | 20 | ORDER. See attached document for details. Signed by Judge Ketanji Brown Jackson on October 6, 2017. (lckbj2) (Entered: 10/06/2017) |
| 10/10/2017 | 21 | TRANSCRIPT OF PROCEEDINGS before Judge Ketanji Brown Jackson held on 7–18–17; Page Numbers: 1–92. Date of Issuance:10–10–17. Court Reporter/Transcriber Barbara DeVico, Telephone number 202–354–3118, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 10/31/2017. Redacted Transcript Deadline set for 11/10/2017. Release of Transcript Restriction set for 1/8/2018.(DeVico, Barbara) (Entered: 10/10/2017) |
| 10/27/2017 | 22 | AMENDED COMPLAINT against U.S. DEPARTMENT OF JUSTICE filed by CAMPAIGN FOR ACCOUNTABILITY. (Attachments: # 1 Exhibit Index of Exhibits, # 2 Exhibit Exhibit A – CfA Request (3/22/16), # 3 Exhibit Exhibit B – OLC Response (5/26/2016), # 4 Exhibit Exhibit C – Barron Best Practices Memo (7/16/10), # 5 Exhibit Exhibit D – Bradbury Best Practices Memo (5/16/05), # 6 Exhibit Exhibit E – OLC Opn (SBA Regulations), # 7 Exhibit Exhibit F – OLC Opn (EEOC Monetary |

5

|  |  |  |
|---|---|---|
|  |  | Award), # <u>8</u> Exhibit Exhibit G – OLC Opn (Back Wages), # <u>9</u> Exhibit Exhibit H – OLC Opn (EEOC Monetary Sanctions), # <u>10</u> Exhibit Exhibit I – OLC Opn (DOMA and SSA), # <u>11</u> Exhibit Exhibit J – OLC Opn (Lobbying), # <u>12</u> Exhibit Exhibit K – OLC Opn (USPS v OPM), # <u>13</u> Exhibit Exhibit L – OLC Opn (EAJA Fees), # <u>14</u> Exhibit Exhibit M – OLC Opn (Direct Reporting), # <u>15</u> Exhibit Exhibit N – OLC Opn (Emoluments))(Abdo, Alexander) (Entered: 10/27/2017) |
| 11/15/2017 | <u>23</u> | MOTION to Stay re <u>22</u> Amended Complaint,,, *Pending Submission and Exhaustion of a FOIA Request* by U.S. DEPARTMENT OF JUSTICE (Attachments: # <u>1</u> Exhibit 1 – Meet and Confer Correspondence, # <u>2</u> Text of Proposed Order)(Schwei, Daniel) (Entered: 11/15/2017) |
| 11/16/2017 | <u>24</u> | Memorandum in opposition to re <u>23</u> MOTION to Stay re <u>22</u> Amended Complaint,,, *Pending Submission and Exhaustion of a FOIA Request* filed by CAMPAIGN FOR ACCOUNTABILITY. (Abdo, Alexander) (Entered: 11/16/2017) |
| 11/17/2017 | <u>25</u> | REPLY to opposition to motion re <u>23</u> MOTION to Stay re <u>22</u> Amended Complaint,,, *Pending Submission and Exhaustion of a FOIA Request* filed by U.S. DEPARTMENT OF JUSTICE. (Schwei, Daniel) (Entered: 11/17/2017) |
| 12/01/2017 |  | Case reopened. Signed by Judge Ketanji Brown Jackson on 12/1/2017. (lckbj1) (Entered: 12/01/2017) |
| 12/01/2017 | <u>26</u> | ORDER granting in part and denying in part <u>23</u> Motion to Stay. Signed by Judge Ketanji Brown Jackson on 12/1/2017. (lckbj2) (Entered: 12/01/2017) |
| 12/04/2017 |  | Set/Reset Deadlines: Joint Proposed Schedule due by 1/23/2018. (gdf) (Entered: 12/04/2017) |
| 01/23/2018 | <u>27</u> | Joint STATUS REPORT by CAMPAIGN FOR ACCOUNTABILITY. (Attachments: # <u>1</u> OLC Response Letter, # <u>2</u> OLC Response Enclosures)(Abdo, Alexander) (Entered: 01/23/2018) |
| 01/29/2018 |  | MINUTE ORDER order adopting the parties' proposed briefing schedule. It is hereby ORDERED that Defendant's motion to dismiss is due on or before 2/13/2018; Plaintiff's opposition is due on or before 3/6/2018; and Defendant's reply is due on or before 3/20/2018. Signed by Judge Ketanji Brown Jackson on 1/29/2018. (lckbj1) (Entered: 01/29/2018) |
| 01/31/2018 | <u>28</u> | NOTICE of Change of Address by Alexander Abraham Abdo (Abdo, Alexander) (Entered: 01/31/2018) |
| 02/13/2018 | <u>29</u> | Renewed MOTION to Dismiss *Amended Complaint* by U.S. DEPARTMENT OF JUSTICE (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Text of Proposed Order)(Schwei, Daniel) (Entered: 02/13/2018) |
| 03/06/2018 | <u>30</u> | Memorandum in opposition to re <u>29</u> Renewed MOTION to Dismiss *Amended Complaint* filed by CAMPAIGN FOR ACCOUNTABILITY. (Attachments: # <u>1</u> Ex. A – Kadzik Letter)(Abdo, Alexander) (Entered: 03/06/2018) |
| 03/20/2018 | <u>31</u> | REPLY to opposition to motion re <u>29</u> Renewed MOTION to Dismiss *Amended Complaint* filed by U.S. DEPARTMENT OF JUSTICE. (Schwei, Daniel) (Entered: 03/20/2018) |
| 04/11/2018 |  | MINUTE ORDER setting a motion hearing on <u>29</u> Defendant's Renewed Motion to Dismiss on 7/3/2018 at 10:00 AM in Courtroom 17 before Judge Ketanji Brown |

| | | |
|---|---|---|
| | | Jackson. Signed by Judge Ketanji Brown Jackson on 4/11/2018. (lckbj2) (Entered: 04/11/2018) |
| 04/11/2018 | | Set/Reset Hearings: Motion Hearing set for 7/3/2018 at 10:00 AM in Courtroom 17 before Judge Ketanji Brown Jackson. (gdf) (Entered: 04/11/2018) |
| 04/12/2018 | 32 | Unopposed MOTION for Scheduling Order *(Motion to Change Hearing Date)* by CAMPAIGN FOR ACCOUNTABILITY (Attachments: # 1 Text of Proposed Order)(Abdo, Alexander) (Entered: 04/12/2018) |
| 04/12/2018 | | MINUTE ORDER granting 32 Motion for Scheduling Order. Signed by Judge Ketanji Brown Jackson on 4/12/2018. (lckbj2) (Entered: 04/12/2018) |
| 04/12/2018 | | MINUTE ORDER setting a motion hearing on 29 Defendant's Renewed Motion to Dismiss on 7/20/2018 at 10:00 AM in Courtroom 17 before Judge Ketanji Brown Jackson. Signed by Judge Ketanji Brown Jackson on 4/12/2018. (lckbj2) (Entered: 04/12/2018) |
| 05/09/2018 | | MINUTE ORDER. It is hereby ORDERED that the Motion Hearing currently set for 7/20/2018 at 10 AM is VACATED and RESET for 7/20/2018 at 10:30 AM in Courtroom 17 before Judge Ketanji Brown Jackson. Signed by Judge Ketanji Brown Jackson on 05/09/2018. (lckbj1) (Entered: 05/09/2018) |
| 07/20/2018 | | Minute Entry for proceedings held before Judge Ketanji Brown Jackson: Motion Hearing held on 7/20/2018, re 29 Renewed MOTION to Dismiss *Amended Complaint. Oral argument heard and motion taken under advisement. (Court Reporter: Crystal Pilgrim) (gdf) (Entered: 07/20/2018)* |
| 12/28/2018 | 33 | TRANSCRIPT OF PROCEEDINGS before Judge Ketanji Brown Jackson held on 07/20/2018; Page Numbers: 1−82. Date of Issuance:12/28/18. Court Reporter/Transcriber Crystal M. Pilgrim, Telephone number 202.354.3127, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referen ced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/18/2019. Redacted Transcript Deadline set for 1/28/2019. Release of Transcript Restriction set for 3/28/2019.(Pilgrim, Crystal) (Entered: 12/28/2018) |
| 03/18/2019 | 34 | NOTICE OF WITHDRAWAL OF APPEARANCE as to CAMPAIGN FOR ACCOUNTABILITY. Attorney Scott Allan Hodes terminated. (Hodes, Scott) (Entered: 03/18/2019) |
| 05/07/2019 | 35 | NOTICE OF SUPPLEMENTAL AUTHORITY by U.S. DEPARTMENT OF JUSTICE (Schwei, Daniel) (Entered: 05/07/2019) |

| 05/10/2019 | 36 | RESPONSE re 35 NOTICE OF SUPPLEMENTAL AUTHORITY filed by CAMPAIGN FOR ACCOUNTABILITY. (Abdo, Alexander) (Entered: 05/10/2019) |
|---|---|---|
| 04/30/2020 | 37 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Anna Diakun, Filing fee $ 100, receipt number ADCDC–7075967. Fee Status: Fee Paid. by CAMPAIGN FOR ACCOUNTABILITY (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Jaffer, Jameel) (Entered: 04/30/2020) |
| 05/04/2020 | | MINUTE ORDER granting 37 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that Anna Diakun is admitted pro hac vice in this matter as counsel for Plaintiff. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Ketanji Brown Jackson on 5/4/2020. (jag) (Entered: 05/04/2020) |
| 05/08/2020 | 38 | NOTICE of Appearance by Anna Diakun on behalf of CAMPAIGN FOR ACCOUNTABILITY (Diakun, Anna) (Entered: 05/08/2020) |
| 05/08/2020 | 39 | NOTICE OF SUPPLEMENTAL AUTHORITY by CAMPAIGN FOR ACCOUNTABILITY (Diakun, Anna) (Entered: 05/08/2020) |
| 09/11/2020 | 40 | MEMORANDUM OPINION, granting in part and denying in part Defendant's 29 Motion to Dismiss Amended Complaint. Signed by Judge Ketanji Brown Jackson on 09/11/2020. (lckbj2) (Main Document 40 replaced on 9/14/2020) (ztnr). (Entered: 09/11/2020) |
| 09/11/2020 | 41 | ORDER, granting in part and denying in part Defendant's 29 Motion to Dismiss Amended Complaint. Signed by Judge Ketanji Brown Jackson on 09/11/2020. (lckbj2) (Entered: 09/11/2020) |
| 09/25/2020 | 42 | ANSWER to 22 Amended Complaint,,, by U.S. DEPARTMENT OF JUSTICE.(Schwei, Daniel) (Entered: 09/25/2020) |
| 11/05/2020 | | MINUTE ORDER. It is hereby ORDERED that the parties shall promptly confer and shall file a joint proposed schedule for further proceedings, if litigation is going to be necessary, on or before 11/19/2020. Signed by Judge Ketanji Brown Jackson on 11/5/2020. (jag) (Entered: 11/05/2020) |
| 11/10/2020 | 43 | NOTICE of Appearance by Brian C. Rosen–Shaud on behalf of All Defendants (Rosen–Shaud, Brian) (Entered: 11/10/2020) |
| 11/18/2020 | 44 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Stephanie Krent, Filing fee $ 100, receipt number ADCDC–7852123. Fee Status: Fee Paid. by CAMPAIGN FOR ACCOUNTABILITY (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Jaffer, Jameel) (Entered: 11/18/2020) |
| 11/18/2020 | 45 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Xiangnong Wang, Filing fee $ 100, receipt number ADCDC–7852153. Fee Status: Fee Paid. by CAMPAIGN FOR ACCOUNTABILITY (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Jaffer, Jameel) (Entered: 11/18/2020) |
| 11/19/2020 | 46 | Joint STATUS REPORT by CAMPAIGN FOR ACCOUNTABILITY. (Abdo, Alexander) (Entered: 11/19/2020) |
| 11/20/2020 | | MINUTE ORDER. In light of the representations in the parties' 46 Joint Status Report, it is hereby ORDERED that, on or before 12/3/2020, the parties shall file a further joint status report, which shall include a proposed schedule for further proceedings if |

| | | |
|---|---|---|
| | | litigation is going to be necessary. Signed by Judge Ketanji Brown Jackson on 11/20/2020. (jag) (Entered: 11/20/2020) |
| 11/20/2020 | | MINUTE ORDER granting <u>44</u> , <u>45</u> Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that Stephanie Krent and Xiangnong Wang are admitted pro hac vice in this matter as counsel for Plaintiff. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). <u>Click for instructions</u>**. Signed by Judge Ketanji Brown Jackson on 11/20/2020. (jag) (Entered: 11/20/2020) |
| 12/02/2020 | <u>47</u> | NOTICE of Appearance by Stephanie Krent on behalf of CAMPAIGN FOR ACCOUNTABILITY (Krent, Stephanie) (Entered: 12/02/2020) |
| 12/02/2020 | <u>48</u> | NOTICE of Appearance by Xiangnong Wang on behalf of CAMPAIGN FOR ACCOUNTABILITY (Wang, Xiangnong) (Entered: 12/02/2020) |
| 12/03/2020 | <u>49</u> | Joint STATUS REPORT by U.S. DEPARTMENT OF JUSTICE. (Rosen–Shaud, Brian) (Entered: 12/03/2020) |
| 12/29/2020 | | MINUTE ORDER. In light of the representations in the parties' <u>49</u> Joint Status Report, it is hereby ORDERED that, on or before 2/12/2021, the parties shall file a further joint status report, which shall include a proposed schedule for further proceedings if litigation is going to be necessary. Signed by Judge Ketanji Brown Jackson on 12/29/2020. (jag) (Entered: 12/29/2020) |
| 01/05/2021 | <u>50</u> | Consent MOTION for Extension of Time to *File Joint Status Report* by U.S. DEPARTMENT OF JUSTICE (Rosen–Shaud, Brian) (Entered: 01/05/2021) |
| 01/07/2021 | | MINUTE ORDER granting, for good cause shown, <u>50</u> Consent Motion for Extension of Time to File Joint Status Report. It is hereby ORDERED that the parties shall file their joint status report on or before 3/29/2021. Signed by Judge Ketanji Brown Jackson on 1/7/2021. (jag) (Entered: 01/07/2021) |
| 02/19/2021 | <u>51</u> | Consent MOTION for Extension of Time to *File Joint Status Report* by U.S. DEPARTMENT OF JUSTICE. (Rosen–Shaud, Brian) (Entered: 02/19/2021) |
| 03/05/2021 | | MINUTE ORDER granting, for good cause shown, <u>51</u> Consent Motion for Extension of Time to File Joint Status Report. It is hereby ORDERED that the parties shall file their status report on or before 4/5/2021. Signed by Judge Ketanji Brown Jackson on 3/5/2021. (jag) (Entered: 03/05/2021) |
| 04/05/2021 | <u>52</u> | Joint STATUS REPORT by CAMPAIGN FOR ACCOUNTABILITY. (Abdo, Alexander) (Entered: 04/05/2021) |
| 04/27/2021 | | MINUTE ORDER. In light of the representations in the parties' <u>52</u> Joint Status Report, it is hereby ORDERED that, on or before 5/24/2021, the parties shall file further joint status report, which shall contain a proposed schedule for further proceedings if litigation is going to be necessary. Signed by Judge Ketanji Brown Jackson on 4/27/2021. (jag) Modified on 4/27/2021 (jag, ). (Entered: 04/27/2021) |
| 05/24/2021 | <u>53</u> | Joint STATUS REPORT by CAMPAIGN FOR ACCOUNTABILITY. (Abdo, Alexander) (Entered: 05/24/2021) |
| 06/17/2021 | | MINUTE ORDER adopting the parties' proposed briefing schedule: Defendant shall file its motion for summary judgment on or before 7/9/2021; Plaintiff shall file its opposition and cross–motion for summary judgment on or before 8/6/2021; Defendant |

| | | |
|---|---|---|
| | | shall file its reply and cross−motion opposition on or before 9/2/2021; and Plaintiff shall file its cross−motion reply on or before 9/22/2021. Signed by Judge Ketanji Brown Jackson on 6/17/2021. (jag) (Entered: 06/17/2021) |
| 06/28/2021 | | Judge Ketanji Brown Jackson has been elevated to serve on the U.S. Court of Appeals for the D.C. Circuit. She is therefore no longer assigned to this case, and this matter has been reassigned to the Calendar Committee, which will oversee it until it is assigned to another district judge. Any questions should be directed to Judge Jackson's former deputy clerk, Gwendolyn Franklin, at 202−354−3145 or gwen_franklin@dcd.uscourts.gov. (rj) (Entered: 06/28/2021) |
| 07/08/2021 | 54 | Unopposed MOTION for Extension of Time to File *Motions for Summary Judgment* by U.S. DEPARTMENT OF JUSTICE. (Rosen−Shaud, Brian) (Entered: 07/08/2021) |
| 07/09/2021 | | MINUTE ORDER granting 54 Defendant's Unopposed Motion for Extension of Time: It is hereby ORDERED that Defendant shall file its motion for summary judgment on or before July 15, 2021; Plaintiff shall file its opposition and cross−motion for summary judgment on or before August 12, 2021; Defendant shall file its reply and cross−opposition on or before September 2, 2021; and Plaintiff shall file its cross−reply on or before September 22, 2021. SO ORDERED. Signed by Judge Rudolph Contreras on 7/9/2021. (lcrc1) (Entered: 07/09/2021) |
| 07/12/2021 | | Set/Reset Deadlines: Cross Motions due by 8/12/2021. Response to Cross Motions due by 9/2/2021. Reply to Cross Motions due by 9/22/2021. Summary Judgment motions due by 7/15/2021. Response to Motion for Summary Judgment due by 8/12/2021. Reply to Motion for Summary Judgment due by 9/2/2021. (zgdf) (Entered: 07/12/2021) |
| 07/15/2021 | 55 | ENTERED IN ERROR.....STIPULATION by U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Exhibit A − Best Practices Memo)(Rosen−Shaud, Brian) Modified on 7/15/2021 (zjf). (Entered: 07/15/2021) |
| 07/15/2021 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 55 Stipulation was entered in error and counsel was instructed to refile said pleading with signature page. (zjf) (Entered: 07/15/2021) |
| 07/15/2021 | 56 | STIPULATION by U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Exhibit A − Best Practices Memo)(Rosen−Shaud, Brian) (Entered: 07/15/2021) |
| 07/15/2021 | 57 | MOTION for Summary Judgment by U.S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Text of Proposed Order)(Rosen−Shaud, Brian) (Entered: 07/15/2021) |
| 08/05/2021 | 58 | NOTICE OF WITHDRAWAL OF APPEARANCE as to CAMPAIGN FOR ACCOUNTABILITY. Attorney Xiangnong Wang terminated. (Wang, Xiangnong) (Entered: 08/05/2021) |
| 08/12/2021 | 59 | Cross MOTION for Summary Judgment by CAMPAIGN FOR ACCOUNTABILITY. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Response to Defendant's Rule 7(h)(1) Statement, # 4 Text of Proposed Order, # 5 Declaration of Stephanie Krent, # 6 Exhibit 1, # 7 Exhibit 2, # 8 Exhibit 3, # 9 Exhibit 4, # 10 Exhibit 5, # 11 Exhibit 6, # 12 Exhibit 7, # 13 Exhibit 8, # 14 Exhibit 9, # 15 Exhibit 10, # 16 Exhibit 11, # 17 Exhibit 12, # 18 Exhibit 13, # 19 Exhibit 14, # 20 Exhibit 15, # 21 Exhibit 16, # 22 Exhibit 17, # 23 Exhibit 18)(Abdo, Alexander) Modified on 8/13/2021 (zjf). (Entered: 08/12/2021) |
| 08/12/2021 | 60 | |

| | | |
|---|---|---|
| | | Memorandum in opposition to re <u>57</u> MOTION for Summary Judgment filed by CAMPAIGN FOR ACCOUNTABILITY. (Attachments: # <u>1</u> Statement of Facts, # <u>2</u> Response to Defendant's Rule 7(h)(1) Statement, # <u>3</u> Text of Proposed Order, # <u>4</u> Declaration of Stephanie Krent, # <u>5</u> Exhibit 1, # <u>6</u> Exhibit 2, # <u>7</u> Exhibit 3, # <u>8</u> Exhibit 4, # <u>9</u> Exhibit 5, # <u>10</u> Exhibit 6, # <u>11</u> Exhibit 7, # <u>12</u> Exhibit 8, # <u>13</u> Exhibit 9, # <u>14</u> Exhibit 10, # <u>15</u> Exhibit 11, # <u>16</u> Exhibit 12, # <u>17</u> Exhibit 13, # <u>18</u> Exhibit 14, # <u>19</u> Exhibit 15, # <u>20</u> Exhibit 16, # <u>21</u> Exhibit 17, # <u>22</u> Exhibit 18)(Abdo, Alexander) (Entered: 08/12/2021) |
| 08/27/2021 | <u>61</u> | Consent MOTION for Extension of Time to File Response/Reply as to <u>57</u> MOTION for Summary Judgment , <u>59</u> Cross MOTION for Summary Judgment by U.S. DEPARTMENT OF JUSTICE. (Attachments: # <u>1</u> Text of Proposed Order)(Rosen–Shaud, Brian) (Entered: 08/27/2021) |
| 08/30/2021 | | MINUTE ORDER: granting <u>61</u> Defendant's Consent Motion for Extension of Deadlines. It is hereby ORDERED that Defendant shall file its combined opposition and reply by October 11, 2021, and Plaintiff shall file its reply by November 8, 2021. SO ORDERED. Signed by Judge Rudolph Contreras on 8/30/2021. (lcrc2) (Entered: 08/30/2021) |
| 08/30/2021 | | Set/Reset Deadlines: Reply to Motion for Summary Judgment and Response to Cross Motion due by 10/11/2021. Reply to Cross Motion due by 11/8/2021. (zgdf) (Entered: 08/30/2021) |
| 10/11/2021 | <u>62</u> | Memorandum in opposition to re <u>59</u> Cross MOTION for Summary Judgment filed by U.S. DEPARTMENT OF JUSTICE. (Attachments: # <u>1</u> Response to Plaintiff's Rule 7(h)(1) Statement)(Rosen–Shaud, Brian) (Entered: 10/11/2021) |
| 10/11/2021 | <u>63</u> | REPLY to opposition to motion re <u>57</u> MOTION for Summary Judgment filed by U.S. DEPARTMENT OF JUSTICE. (Attachments: # <u>1</u> Response to Plaintiff's Rule 7(h)(1) Statement)(Rosen–Shaud, Brian) (Entered: 10/11/2021) |
| 11/08/2021 | <u>64</u> | REPLY to opposition to motion re <u>59</u> Cross MOTION for Summary Judgment filed by CAMPAIGN FOR ACCOUNTABILITY. (Abdo, Alexander) (Entered: 11/08/2021) |
| 11/15/2021 | | Case directly reassigned to Judge Jia M. Cobb. Judge Ketanji Brown Jackson has been appointed to the D.C. Circuit and is no longer assigned to the case. (rj) (Entered: 11/15/2021) |
| 09/30/2022 | <u>65</u> | ENTERED IN ERROR.....Joint STATUS REPORT by U.S. DEPARTMENT OF JUSTICE. (Rosen–Shaud, Brian) Modified on 9/30/2022 (zed). (Entered: 09/30/2022) |
| 09/30/2022 | | NOTICE OF ERROR regarding <u>65</u> Status Report. The following error(s) need correction: Incorrect document or case. Please refile. (zed) (Entered: 09/30/2022) |
| 01/11/2023 | <u>66</u> | MOTION to Set a Date for Oral Argument by CAMPAIGN FOR ACCOUNTABILITY. (Attachments: # <u>1</u> Text of Proposed Order)(Krent, Stephanie) (Entered: 01/11/2023) |
| 02/14/2023 | | MINUTE ORDER. The Parties are ORDERED to appear for a status conference on March 16, 2023, at 2:00 PM. The meeting will be on the record and conducted via Zoom. The Court's Deputy Clerk will contact the Parties with the information necessary to access the call. Signed by Judge Jia M. Cobb on February 14, 2023. (lcjmc3) (Entered: 02/14/2023) |
| 03/13/2023 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER re 66 Motion to Set a Date for Oral Argument: The Court has now had an opportunity to review the briefing in this case and has determined that an oral argument is not necessary to resolve the case. Accordingly, the Court DENIES the Motion to Set a Date for Oral Argument and VACATES the Status Conference that had been scheduled for March 16, 2023, at 2:00 PM. The Court will work expeditiously to resolve the pending summary judgment motions. Signed by Judge Jia M. Cobb on March 13, 2023. (lcjmc3) (Entered: 03/13/2023) |
| 04/19/2024 | 67 | MEMORANDUM OPINION re 57 Motion for Summary Judgment and 59 Cross Motion for Summary Judgment: See document for details. Signed by Judge Jia M. Cobb on April 19, 2024. (lcjmc3) (Entered: 04/19/2024) |
| 04/19/2024 | 68 | ORDER denying 57 Motion for Summary Judgment; granting 59 Cross Motion for Summary Judgment: See document for details. Signed by Judge Jia M. Cobb on April 19, 2024. (lcjmc3) (Entered: 04/19/2024) |
| 04/30/2024 | 69 | Joint STATUS REPORT by U.S. DEPARTMENT OF JUSTICE. (Rosen–Shaud, Brian) (Entered: 04/30/2024) |
| 05/02/2024 | | MINUTE ORDER: In light of the joint status report 69 , the Court ORDERS the Parties to submit a joint status report by June 20, 2024, with a proposed schedule for further proceedings, including the release of responsive records. Signed by Judge Jia M. Cobb on May 2, 2024. (lcjmc3) (Entered: 05/02/2024) |
| 06/18/2024 | 70 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 68 Order on Motion for Summary Judgment,, Set/Reset Deadlines by U.S. DEPARTMENT OF JUSTICE. Fee Status: No Fee Paid. Parties have been notified. (Rosen–Shaud, Brian) (Entered: 06/18/2024) |

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMPAIGN FOR ACCOUNTABILITY,<br><br>       Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE,<br><br>       Defendant. | No. 1:16-cv-1068 (JMC) |

## <u>NOTICE OF APPEAL</u>

PLEASE TAKE NOTICE that Defendant hereby appeals to the United States Court of Appeals for the District of Columbia Circuit this Court's final appealable Order of April 19, 2024, ECF No. 68, as well as all associated opinions and orders.

Dated: June 18, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD
Trial Attorney (Maine Bar No. 006018)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington, D.C. 20005
Telephone: (202) 305-7667
Email: Brian.C.Rosen-Shaud@usdoj.gov

*Counsel for Defendant*

13

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CAMPAIGN FOR ACCOUNTABILITY,

                     Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
JUSTICE,

                  Defendant.

Civil Action No. 16-1068 (JMC)

## <u>ORDER</u>

For the reasons stated in the accompanying memorandum opinion, it is hereby

**ORDERED** that Defendant's motion for summary judgment, ECF 57, is **DENIED**, and that

Plaintiff's cross-motion for summary judgment, ECF 59, is **GRANTED**.

The Parties are **DIRECTED** to confer and submit a status report by May 17, 2024, with a

proposed schedule for further proceedings, including the release of responsive records.

This is a final appealable Order.

**SO ORDERED.**

                               _____
                               JIA M. COBB
                               United States District Judge

Date: April 19, 2024

1

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

</div>

|  |  |
|---|---|
| CAMPAIGN FOR ACCOUNTABILITY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | Civil Action No. 16-1068 (JMC) |

<div align="center">

**<u>MEMORANDUM OPINION</u>**

</div>

This lawsuit arises under the "reading-room" provision of the Freedom of Information Act (FOIA), which requires agencies to affirmatively make certain records available to the public, without the need for a prior request.[1] *See* 5 U.S.C. § 552(a)(2). The Campaign for Accountability (CfA) initiated this litigation seeking an order requiring the Department of Justice, Office of Legal Counsel (OLC) to make certain records available under that provision. Following two orders by this Court dismissing the majority of Plaintiff's claims, the Parties have cross-moved for summary judgment on the limited claims that remain.

Specifically, CfA seeks a judgment that the OLC's formal, written opinions resolving interagency disputes are subject to FOIA's reading-room provision because such opinions are both "final opinions . . . made in the adjudication of cases," § 552(a)(2)(A), and "statements of policy

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

<div align="center">

1

</div>

and interpretations which have been adopted by the agency," § 552(a)(2)(B). The OLC, on the other hand, seeks a judgment that they are not. The Court agrees with CfA that such opinions are subject to disclosure under § 552(a)(2)(A) as "final opinions . . . made in the adjudication of cases," and accordingly does not reach CfA's other argument that these opinions would also be subject to disclosure under § 552(a)(2)(B). The Court DENIES Defendant's motion for summary judgment, ECF 57, and GRANTS Plaintiff's cross-motion for summary judgment, ECF 59.

## I.   BACKGROUND

### A.  The Office of Legal Counsel

The following facts are undisputed. The OLC "is a component of the Department of Justice" charged with "provid[ing] controlling legal advice to executive branch officials on questions of law involving the operations of the executive branch." ECF 56 ¶ 1.[2] Specifically, the OLC's responsibilities include "[p]reparing the formal opinions of the Attorney General; rendering informal opinions and legal advice to the various agencies of the Government; and assisting the Attorney General in the performance of his functions as legal adviser to the President and as a member of, and legal adviser to, the Cabinet." 28 C.F.R. § 0.25(a).

As part of its advice-giving function, the OLC sometimes prepares "formal written opinions" to advise the President and executive agencies on questions of law.[3] The guiding principles for preparing and publishing such opinions are laid out in a 2010 "Best Practices Memo" published by the agency, ECF 56-1, which has been cited as authoritative by both Parties, *see, e.g.,*

---

[2] Prior to filing its motion for summary judgment, the agency submitted a joint stipulation of facts for purposes of the litigation. ECF 56 at 1 & n.1. The Court accepts the facts in the stipulation as undisputed.

[3] The OLC also "frequently conveys its legal advice to executive agencies through informal means." *Citizens for Resp. & Ethics in Washington v. Dep't of Just. (CREW II)*, 922 F.3d 480, 484 (D.C. Cir. 2019); *see also* ECF 56-1 at 2. Such informal opinions are not at issue in this case. *See* ECF 59-1 at 11 n.2.

ECF 56 ¶ 13; ECF 57-1 at 7; ECF 59-1 at 10, as well as the D.C. Circuit, *see Citizens for Resp. & Ethics in Washington v. Dep't of Just. (CREW II)*, 922 F.3d 480, 484 (D.C. Cir. 2019). The Best Practices Memo suggests—and the OLC appears to concede—that the OLC's formal written opinions are legally binding. ECF 56-1 at 1–2; ECF 57-1 at 23.

"A [formal] written opinion is most likely to be necessary when the legal question is the subject of a concrete and ongoing dispute between two or more executive agencies." ECF 56-1 at 3. In 1979, President Carter formalized the OLC's role as the arbiter of such disputes. *See* Exec. Order No. 12,146, 44 Fed. Reg. 42657 (July 18, 1979), § 1-402. Through Executive Order 12,146, President Carter required that "[w]henever two or more Executive agencies whose heads serve at the pleasure of the President are unable to resolve [] a legal dispute, the agencies shall submit the dispute to the Attorney General." *Id.* That same executive order also "encouraged [independent agencies] to submit the[ir] dispute[s] to the Attorney General." *Id.* § 1-401. By regulation, the Attorney General has in turn delegated the responsibility to resolve such disputes to the OLC. *See* 28 C.F.R. § 0.25(a). Consistent with that responsibility, the OLC is unaware of any time it has declined an agency's request to issue an opinion resolving an interagency dispute. ECF 56 ¶ 7.

In resolving interagency disputes, the OLC's "general practice" is to "ask" each agency to submit "a detailed memorandum setting forth the agency's own analysis of the question." ECF 56-1 at 3. The OLC then ensures that those memoranda are shared with the opposing agency so that the agency can submit "reply comments, when necessary." *Id.* The OLC sometimes solicits the views of other agencies with subject-matter expertise regarding a dispute, but will only do so after acquiring the consent of the requesting agency. *Id.* In drafting an opinion to resolve an interagency dispute, the OLC strives to address only "concrete and ongoing" disputes that focus on specific legal questions. *Id.* The Best Practices Memo is clear that the OLC should refrain from providing

"unnecessary advice," opining on "broad" or "abstract" legal issues, or making definitive statements about "the legality of past conduct." *Id.* A formal written opinion resolving an interagency dispute "should take care to consider fully and address impartially the points raised on both sides," although the OLC may sometimes also consider arguments that are not raised by a party. *Id.* at 4.[4]

Once finalized, the OLC's formal written opinions become a part of the agency's "system of precedent," from which its attorneys may not "lightly depart." *Id*. at 2. Opinions are printed on bond paper and signed by the drafting attorney. *Id*. at 4. Unclassified opinions are added to the OLC's database and included in its "day books." *Id*. In addition, the OLC maintains a separate file for each opinion, containing a copy of the signed opinion, the opinion control sheet, the original request, the submissions of interested agencies, and any "obscure sources" cited in the opinion, so that future OLC attorneys may refer back to the opinion and its underlying sources. *Id*. at 4–5.

The OLC also has a "longstanding internal process" to select and voluntarily publish "significant opinions" to the public. *Id.* at 5. In deciding which opinions to publish, the OLC "operates from the presumption that it should make its significant opinions fully and promptly available to the public"—a presumption that "furthers the interests of Executive Branch transparency, thereby contributing to accountability and effective government, and promoting public confidence in the legality of government action." *Id*. In some cases, however,

---

[4] Then-Attorney General William P. Barr described the OLC's role in resolving interagency disputes as follows:

> In this context, the Attorney General's role is much like a court's in an adversarial proceeding. Because each agency has its own staff of lawyers, disputes between them come before the Attorney General with legal positions already well-established. Each agency will usually have legal authority or good arguments to support its view. The [OLC] requires each side to come in with briefs, just as if it were a judicial proceeding. Deciding among the positions being taken requires the Attorney General—or in most cases the [OLC]—to function as a judge.

ECF 59-10 at 8.

4

"countervailing considerations may lead the Office to conclude that it would be improper or inadvisable to publish an opinion that would otherwise merit publication." *Id.* For example, in some cases "disclosure would reveal classified or other sensitive information relating to national security." *Id.* In others, an agency may "request[] advice regarding a proposed course of action, the Office concludes it is legally impermissible, and the action is therefore not taken." *Id.* at 6. The Best Practices Memo also cautions that, as a matter of policy, if the "OLC routinely published its advice concerning all contemplated actions of uncertain legality, Executive Branch officials would be reluctant to seek OLC advice in the early stages of policy formulation—a result that would undermine rule-of-law interests." *Id.* According to the agency's website, the OLC has published over 1,400 opinions, dating from 1934 to the present, including some that addressed interagency disputes. OLC, *Opinions*, http://www.justice.gov/olc/opinions-main (last visited April 17, 2024).

## B. Procedural History

This case has a somewhat complicated history, which is briefly recounted here. CfA originally filed a complaint seeking an order that the OLC "mak[e] available for public inspection . . . *all past and future final opinions* . . . that provide controlling legal advice to executive branch officials and agencies on questions of law."[5] ECF 1 ¶ 35 (emphasis added). CfA alleged that all such opinions are subject to the reading-room provision of FOIA for two reasons: first, because those documents are "final opinions . . . made in the adjudication of cases," 5 U.S.C. § 552(a)(2)(A); and second, because they qualify as "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register,"

---

[5] At the time this lawsuit was filed, another court in this jurisdiction had recently ruled that FOIA, and not the Administrative Procedure Act, was the proper vehicle for CfA to pursue the relief it sought. *See Citizens for Resp. & Ethics in Washington v. Dep't of Just.*, 164 F. Supp. 3d 145, 147 (D.D.C. 2016). That decision was subsequently affirmed. *See Citizens for Resp. & Ethics in Washington v. Dep't of Just. (CREW I)*, 846 F.3d 1235 (D.C. Cir. 2017).

§ 552(a)(2)(B). ECF 1 ¶ 31. The Court granted Defendant's motion to dismiss CfA's original complaint for failure to state a claim, finding that Plaintiff had failed to "identif[y] an ascertainable set of OLC opinions that OLC has withheld from the public and that is also plausibly subject to the FOIA's reading-room requirement." *CfA v. Dep't of Just. (CfA I)*, 278 F. Supp 3d 303, 306 (D.D.C. 2017). However, that dismissal was without prejudice; the Court ordered that Plaintiff would be permitted to file an amended complaint to remedy that shortcoming.[6] *Id.*

CfA took the Court up on that offer. In its amended complaint, ECF 22, CfA alleges that FOIA's reading-room provision requires affirmative publication of four, more specific categories of OLC opinions: (1) formal written opinions that resolve interagency disputes, *id.* ¶¶ 35–38; (2) formal written opinions that interpret an agency's non-discretionary legal obligations, *id.* ¶¶ 41–44; (3) opinions that "find[] that particular statutes are unconstitutional and that therefore agencies need not comply with them," *id.* ¶¶ 45–46; and (4) opinions that adjudicate or determine private rights, *id.* ¶¶ 47–49.[7] With respect to each of those four categories of records, Plaintiff alleges that the agency has failed to comply with the disclosure obligations of § 552(a)(2) by failing to make the documents automatically available for public inspection, *id.* ¶¶ 54–59 (Count I), and has therefore also failed to comply with the indexing requirement of § 552(a)(2), which requires an agency to maintain and make available for public inspection indices of materials that are subject to the reading-room provision, *see id.* ¶¶ 60–64 (Count II). CfA seeks a declaratory judgment that the OLC has failed to comply with its obligations under § 552(a)(2), an order that the OLC disclose

---

[6] The Court also clarified that it lacks the authority under FOIA to order the OLC to publish any materials to the public in general. *CfA I*, 278 F. Supp. 3d at 315–16. Rather, the Court's authority under FOIA is limited to issuing an order that OLC produce materials directly to Plaintiff. *Id.*

[7] The amended complaint also identified a fifth category of OLC opinions—formal written opinions issued to independent agencies. ECF 22 ¶¶ 39–40. Plaintiff has since withdrawn its claims with respect to that category of records. ECF 30 at 35 n.11.

to CfA "all formal written opinions issued by the OLC to executive branch agencies or to executive branch officials other than the president," and an order that the OLC make indices of all such opinions available for public inspection and copying. *Id.* at 23. The OLC moved to dismiss the amended complaint, contending that Plaintiff had still failed to state a claim that the OLC has an affirmative obligation to disclose the specified categories of materials. ECF 29.

While that motion was pending, the D.C. Circuit issued an opinion in a related case, *CREW II*, 922 F.3d 480. In that case, the plaintiff brought claims similar to those made in the original complaint in this case, which were dismissed for substantially the same reasons. *Id.* at 485. However, instead of filing an amended complaint in district court, the plaintiff in *CREW II* appealed the dismissal. *Id.* The D.C. Circuit affirmed. Citing heavily to another case, *Elec. Frontier Found. v. Dep't of Just. (EFF)*, 739 F.3d 1 (D.C. Cir. 2014), the *CREW II* court held that, for a plaintiff to state a claim under 5 U.S.C. § 552(a)(2), it is insufficient to allege merely that the OLC's opinions are "controlling," "authoritative," and/or "binding." 922 F.3d at 486. The court's opinion in *CREW II* also cites to this case (and the motion to dismiss that was pending at the time), suggesting that the *CREW II* plaintiff would have been better off had it followed the same course as CfA has here, filing an amended complaint that identified specific "subcategories of OLC's formal written opinions." *Id.* at 489.

Following the release of *CREW II*, this Court turned to the OLC's motion to dismiss the amended complaint. Citing to both *EFF* and *CREW II*, the Court dismissed CfA's claims as to three of the four categories of opinions at issue: (1) those that interpret an agency's non-discretionary legal obligations; (2) those that announce the unconstitutionality of particular statutes; and (3) those that adjudicate or determine private rights. *CfA v. Dep't of Just. (CfA II)*, 486 F. Supp. 3d 424, 444 (D.D.C. 2020). For each of those three categories of documents, the

7

Court reasoned that CfA failed to state a claim because the amended complaint alleged only that the OLC's opinions were controlling, authoritative, and binding—not that they were final opinions made in the adjudication of cases, or that a client agency had adopted those opinions as its own. *See id.* at 441–44. As for "the OLC's opinions regarding the unconstitutionality of statutes," the Court determined that CfA did not effectively distinguish those documents from the broader category containing all of the OLC's formal written opinions—a shortcoming that would be fatal to CfA's claims given the D.C. Circuit's holding in *CREW II* that the OLC has no categorical obligation to affirmatively disclose its opinions. *See id.* at 443.

Although this Court dismissed the bulk of CfA's claims, it agreed with CfA that the D.C. Circuit's opinions in *EFF* and *CREW II* had left open the possibility that *some* categories of OLC opinions might be subject to the reading-room provision. *Id.* at 435–36. Indeed, the Court found that the first category of opinions described in the amended complaint—formal written opinions that resolve disputes between agencies—is, at least plausibly, such a category. *Id.* at 441. More specifically, the Court found that CfA had stated a plausible claim regarding those opinions for two reasons—first, OLC opinions that resolve interagency disputes are plausibly "final opinions made in the adjudication of cases," *id.* at 438 (citing § 552(a)(2)(A)); and second, such opinions are plausibly "statements of policy and interpretations" that are adopted *ex ante* by subject agencies when they consent to submit the dispute to the OLC, *id.* at 439–40 (citing § 552(a)(2)(B)). The Court, however, stressed the legal limits of its conclusions:

> [A]t this juncture, the Court's conclusion is based simply and solely on the amended complaint's allegations, and it might eventually determine, in the context of summary judgment, that OLC opinions resolving inter-agency disputes are not "statements of policy and interpretations" adopted by those agencies *ex ante*, or that "'adjudications' between two parts of the executive branch are not the kind of 'adjudication of cases' to which that section refers."

*CfA II*, 486 F. Supp. 3d at 445 (quoting *CREW II*, 922 F.3d at 491 (Pillard, J., dissenting)). The Court addresses those questions today.

## II.   LEGAL STANDARD

FOIA cases are typically decided at summary judgment. *See Laverpool v. Dep't of Hous. & Urban Dev.*, 315 F. Supp. 3d 388, 390 (D.D.C. 2018). A court will grant a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA cases, it is the defending agency's burden to prove it has complied with its obligations under the statute. *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989); *see also CREW II*, 922 F.3d at 487 (stating the rule in the context of the reading-room provision). To satisfy its burden, the "agency must prove that each document that falls within the [request] has been produced, is unidentifiable[,] or is wholly exempt from the Act's inspection requirements." *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).

## III.   ANALYSIS

Two FOIA provisions are relevant here: the reading-room provision itself, § 552(a)(2), and FOIA's Exemption 5, § 552(b)(5). FOIA's reading-room provision requires an agency to "make available for public inspection" several enumerated categories of records. *See* 5 U.S.C. § 552(a)(2)(A)–(E). Two such categories are "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases," § 552(a)(2)(A), and "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," § 552(a)(2)(B). The "primary objective" of FOIA's reading-room provision is the "elimination of secret law." *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 772 n.20 (1989). Because FOIA's reading-room provision reflects "an affirmative congressional purpose to require disclosure of documents which have the force and effect of law,"

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975), courts have sometimes referred to the categories of documents that are subject to disclosure under § 552(a)(2) as the "working law" of the agency, *see, e.g.*, *id.*; *CREW II*, 922 F.3d at 486.

"[I]n addition to requiring the disclosure of certain agency records, [] FOIA permits an agency to withhold covered documents pursuant to certain statutory exemptions." *CfA II*, 486 F. Supp. 3d at 427. Where a FOIA exemption applies, the duty to disclose "does not apply," regardless of whether a document would be otherwise disclosable. § 522(b); *see also Sears*, 421 U.S. at 154 n.21. One of these exemptions—Exemption 5—allows an agency to withhold any and all materials that would normally be privileged from discovery in civil litigation, including under the deliberative process privilege, the attorney-client privilege, or the attorney work-product doctrine. *Tax Analysts v. I.R.S.*, 117 F.3d 607, 616 (D.C. Cir. 1997). Exemption 5 is relevant to this opinion not because it may be invoked to protect specific documents from disclosure, but because the Supreme Court has suggested that there is a mutually exclusive relationship between materials protected by that exemption and materials subject to disclosure under § 552(a)(2). *See Sears*, 421 U.S. at 153 ("We should be reluctant, therefore, to construe Exemption 5 to apply to the documents described in 5 U.S.C. § 552(a)(2)."); *see also CfA II*, 486 F. Supp. 3d at 428 ("[I]f a record can be withheld under Exemption 5, then it is generally not subject to affirmative disclosure under the reading-room provision and vice versa."). More specifically, if a document is pre-decisional (i.e., if it "reflect[s] the agency's group thinking in the process of working out its policy and determining what its law shall be"), it cannot be said to constitute the agency's working law for purposes of the reading-room provision. *Sears*, 421 U.S. at 153. On the other hand, "final opinions, which not only invariably explain agency action already taken or an agency decision

10

already made, but also constitute final dispositions of matters by an agency," are "never" protected from disclosure under the deliberative process privilege in Exemption 5. *Id.* at 153–54.

Turning to this case, CfA argues that the OLC's final written opinions resolving interagency disputes are subject to disclosure under both §§ 552(a)(2)(A) and (B). The Court finds that the documents at issue are "final opinions . . . made in the adjudication of cases," § 552(a)(2)(A), and thus subject to affirmative disclosure. Having made this determination, the Court finds it unnecessary to opine whether the documents might also be subject to disclosure under § 552(a)(2)(B).

### A. The OLC's formal written opinions resolving interagency disputes are "final opinions . . . made in the adjudication of cases" and must therefore be affirmatively disclosed under § 552(a)(2)(A).

To satisfy the requirements of § 552(a)(2)(A), a document must be (1) a final opinion and (2) made in the adjudication of a case. At the motion to dismiss phase, this Court concluded that CfA's amended complaint stated a plausible claim that the OLC's formal opinions resolving interagency disputes satisfy both of those conditions and are therefore subject to disclosure under § 552(a)(2)(A). Now, the Court considers the issue under the summary judgment standard, ultimately concluding that the documents at issue are subject to disclosure under § 552(a)(2)(A). The Court also finds that the OLC has not created a genuine dispute that those opinions are categorically protected by Exemption 5. Accordingly, the Court grants CfA's cross-motion for summary judgment and denies the OLC's motion for summary judgment.

#### 1. *Final Opinion*

Agency opinions are final when they both (1) "serve as law in the specific case to which they are addressed" and (2) "serve as law-like precedent in subsequent cases." *Schlefer v. United States*, 702 F.2d 233, 237, 244 (D.C. Cir. 1983). To be final, an opinion must have legal effect; if it has no effect until it is ratified or adopted by a higher authority, then it is not final until that

occurs. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867–68 (D.C. Cir. 1980).

The mere possibility of legal review (for instance, via discretionary appeal) does not affect the

finality of an agency opinion, provided the opinion has "real operative effect" prior to any review.

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 186–87 (1975). In determining

whether a document is an opinion, a court may consider whether that document provides legal

reasoning to explain its conclusions, *Sears*, 421 U.S. at 158–59, and whether that reasoning is

communicated in "straight-forward, objective, and impersonal prose," *Schlefer*, 702 F.2d at 243.

According to the Best Practices Memo, the OLC's formal opinions constitute "controlling

legal advice," which represents—short of intervention by the courts—the "final word on the

controlling law." ECF 56 ¶ 13 (adopting ECF 56-1); ECF 56-1 at 1. As this Court previously

explained, the OLC's authority to issue such controlling advice flows from "Article II's vesting of

the 'executive power' in one President," *CfA II*, 486 F. Supp. 3d at 438, and from the agency's

position as the presidential appointee that serves as a "neutral arbiter to resolve the differing

stances" of two agencies, *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 92

(D.C. Cir. 1986). The OLC does not contest that client agencies treat its opinions as binding. ECF

57-1 at 23. Nor does it dispute that the OLC gives its own opinions precedential effect. ECF 56-1

at 2. The OLC has not suggested that its written opinions are mere "recommendations" that have

no effect absent approval by some higher authority. Moreover, looking to the OLC opinions cited

and submitted as evidence in this case, the OLC consistently explains its legal reasoning using

"straight-forward, objective, and impersonal prose." *Schlefer*, 702 F.2d at 243. In other words,

OLC opinions read like legal opinions, not ruminations on government policy. *See, e.g.*, *Scope of*

*the Environmental Protection Agency's Discretion to Adopt Any One of Three Alternative*

*Interpretations of the Mitchell-Conte Amendment to the Clean Air Act*, 13 Op. O.L.C. 105, 105

12

(1989) ("For the reasons set forth below, we conclude that EPA does possess the authority to adopt either the second or third alternative interpretation, in addition to the first interpretation.").

Despite all that, the OLC argues that its formal written opinions resolving interagency disputes are more like "advice documents" than final opinions. ECF 57-1 at 19. That is because those opinions sometimes "leave agencies with a broad range of potential avenues for action and prospective policy choices," and therefore do not necessarily dispose of any agency action. *Id*. at 23. The OLC cites several opinions that it contends illustrate that point. For example, in *Scope of the Environmental Protection Agency's Discretion to Adopt Any One of Three Alternative Interpretations of the Mitchell-Conte Amendment to the Clean Air Act*, the OLC determined that the EPA could lawfully choose any one of three interpretations of a statute, disagreeing with another agency that took the position there was only one valid interpretation. 13 Op. O.L.C. at 105. According to the OLC, that opinion was not final because it deferred to the EPA on the question of which of those three interpretations it should ultimately adopt. ECF 57-1 at 26. The OLC makes similar arguments regarding two other opinions. *See Whether the Defense of Marriage Act Precludes the Non-Biological Child of a Member of a Vermont Civil Union From Qualifying for Child's Insurance Benefits Under the Social Security Act*, 31 Op. O.L.C. 243 (2007); *Applicability of Government Corporation Control Act to Gain Sharing Benefit Agreement*, 24 Op. O.L.C. 212 (2000). Those opinions, in the OLC's view, only decided whether a client agency had the legal authority to take a proposed action, not whether the agency was required to do so. ECF 57-1 at 27–28.[8] The OLC argues that none of the above opinions are subject to § 552(a)(2)(A) because, like

---

[8] The OLC cites one additional opinion, *Applicability of the Cargo Preference Act to the Transportation of Alaskan Oil to the Strategic Petroleum Reserve*, 7 Op. O.L.C 139 (1983), in which it contends not only that the agency did not dictate the policy of the affected agency, but also that the OLC did not even fully resolve the agencies' dispute when it declined to take a position on two non-legal questions presented by one of the agencies, ECF 57-1 at 25–26. Perhaps.

the opinion in *EFF*, they are each binding only in the legal sense, and do not "speak with authority on the [agency's] policy." 739 F.3d at 9.

That argument misses the mark. As an initial matter, neither *EFF* nor *CREW II* were decided on the basis of § 552(a)(2)(A). Although both of those opinions cite to and discuss § 552(a)(2)(A), the requirement that an agency "adopt" an OLC opinion as its own was developed and has been applied only in the context of § 552(a)(2)(B). *See CREW II*, 922 F.3d at 486 ("An OLC opinion *in the latter category* qualifies as the 'working law' of an agency only if the agency has 'adopted' the opinion as its own." (emphasis added) (citing *EFF*, 739 F.3d at 9)). And that rule makes perfect sense in the context of § 552(a)(2)(B). After all, when it comes to a question of policy or legal interpretation where the agency has discretion to choose its preferred path, the solicitation of an OLC opinion to determine the scope of that discretion may indeed be pre-decisional. For example, in *EFF* the OLC issued an opinion concluding the FBI had the authority to request telephone records "without legal basis or qualifying emergency," 739 F.3d at 5, which the FBI then chose not to do as a matter of policy, *id.* at 10.

Section 552(a)(2)(A) is different. For one thing, it makes no mention of policy. *See CfA II*, 486 F. Supp. 3d at 439 ("The reading-room provision does not predicate affirmative disclosure on whether the agency's 'final opinions . . . made in the adjudication of cases' have a discernable policy impact."). The fact that an OLC opinion does not definitively resolve questions of policy has no bearing on whether it is final as to the legal issue it resolves. Consider the judicial context. Nobody would dispute that the D.C. Circuit's opinion in *CREW II* was a "final opinion." But in that case, despite the court's conclusion that the OLC has no general obligation to publish its

---

But, to the extent the OLC is correct that the cited opinion does not resolve the agencies' dispute, that opinion would lie outside the category described by the amended complaint and would not be at issue in this case.

opinions, the agency remained perfectly free to voluntarily do so. Indeed, the OLC's website shows it has continued to do just that. *See* OLC, *Opinions*, http://www.justice.gov/olc/opinions-main (including opinions published as recently as March 26, 2024). Similarly, the OLC's opinions—which represent both the "final word" on the matter at hand and are treated as binding precedent in future cases—are also final.

### 2. Made in the adjudication of cases

Having determined that the OLC's formal opinions resolving interagency disputes are "final opinions," the Court next concludes that such opinions are "made in the adjudication of cases." § 552(a)(2)(A). According to the statute, "adjudication" is an "agency process for the formulation of an order." § 551(7). An "order" is "a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making." § 551(6). An advisory opinion is not a final disposition. *See Int'l Tel. & Tel. Corp., Commc'ns Equip. & Sys. Div. v. Loc. 134, Int'l Bhd. of Elec. Workers*, 419 U.S. 428, 446 (1975).

As detailed in the Best Practices Memo, the OLC diligently avoids issuing advisory opinions—issuing written opinions only for disputes that are "concrete and ongoing." ECF 56-1 at 3. Moreover, the process by which the OLC researches, drafts, and finalizes its opinions that resolve interagency disputes is standardized, thorough, and bears many of the hallmarks of adversarial adjudication. *See generally id.* Before formulating its order, the OLC solicits a "detailed" brief from each of the client agencies laying out its side of the dispute. *Id.* at 3. Those briefs are shared with the opposing agency (or agencies) so that it (or they) may have an opportunity to respond when necessary. *Id.* The OLC functions like a neutral decisionmaker, "tak[ing] care to consider fully and address impartially" all the arguments made by each side, *id.* at 4, applying not only its own precedents, but judicial caselaw and the various tools of statutory interpretation as well, *see, e.g., Payment of Back Wages to Alien Physicians Hired Under H-1B*

15

*Visa Program*, 32 U.S. Op. O.L.C. 47 (2008). The OLC's formal opinions, once complete, are carefully edited and cite-checked, signed, and filed away for use as precedent in the future. ECF 56-1 at 4–5.

The OLC makes two arguments that the opinions at issue in this case are not "made in adjudications." The first of those arguments is that the OLC's procedures (as described in the Best Practices memo) lack some of the characteristics of a formal adjudication under the Administrative Procedures Act (APA), as described by 5 U.S.C. § 554. Specifically, the OLC asserts that it has "no formal procedures governing how [agency briefs] are submitted, let alone opportunity for an adversarial hearing, prohibitions on *ex parte* communications, or a requirement of a decision that rests solely on a hearing record." ECF 62 at 19 (citing ECF 56 ¶¶ 7–17). The OLC is correct that its procedures do not satisfy all the requirements of § 554. But that provision concerns only the subset of "adjudication[s] required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a). That language, as a matter of ordinary meaning, carves out a subcategory of adjudications, which must mean that the term "adjudication" encompasses something broader than only those "formal" adjudications that satisfy the requirements of § 554(a). That proposition finds additional support elsewhere in the statute, *see* 5 U.S.C. § 551(7) (defining "adjudication" broadly as any "agency process for the formulation of an order"); 5 U.S.C. § 551(6) (defining "order" as "a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making"), as well as in myriad opinions that differentiate between "formal" and "informal" adjudications, *see, e.g.*, *Watts v. SEC*, 482 F.3d 501, 506 (D.C. Cir. 2007) (referencing "the broad scope of formal and informal adjudications under the APA"). In other words, even granting that the OLC's decision-making process does not qualify as

a *formal* adjudication under the APA, that has no bearing as to whether the opinions at issue are "made in the adjudication of cases."

Next, the OLC asks the Court to revisit an argument it rejected at the motion to dismiss phase. Specifically, the OLC argues that the phrase "made in the adjudication of cases" cannot apply to the OLC's opinions because the phrase was only intended to encompass "agencies' adjudications of private rights." ECF 62 at 18; *see also id*. at 21 (asking the Court to reconsider). In support of that argument, the OLC points out that the preclusive effect of an agency's failure to disclose documents that are subject to FOIA's reading-room provision is that the undisclosed documents may not be "relied on, used, or cited as precedent by an agency *against a party other than an agency*." 5 U.S.C. § 552(a)(2)(E) (emphasis added). In the OLC's view, the nature of that remedy, considered together with the legislative history of the reading-room provision, confirms that "Congress's primary concern in § 552(a)(2) was with the adjudication of private rights." ECF 57-1 at 21. The OLC goes on to cite several cases in which the D.C. Circuit suggested that § 552(a)(2)'s central focus is to safeguard private rights. *See, e.g.*, *Schlefer*, 702 F.2d at 244 ("A strong theme of our opinions has been that an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public."); *Bannercraft Clothing Co. v. Renegotiation Bd*., 466 F.2d 345, 352 (D.C. Cir. 1972) (Congress enacted § 552(a)(2) because it was "troubled by the plight of those forced to litigate with agencies on the basis of secret laws or incomplete information"), *rev'd on other grounds*, 415 U.S. 1 (1974); *see also Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352–53, 360 n.23 (1979) (policy directives are "intra-agency memorandums" exempt from § 552(a)(2) because they "do not establish rules that govern the adjudication of individual rights, nor do they require particular conduct or forbearance by any member of the public").

The Court is unpersuaded and reaffirms its earlier conclusion that the phrase "made in the adjudication of cases" has no such meaning. *See CfA II*, 486 F. Supp. 3d at 432–35, 439. As the Court has explained, there is "nothing in the plain text or history of section 552(a)(2), or in the few cases that have interpreted that statutory provision, [to] establish[] that [] FOIA's affirmative obligation to publish certain agency records extends only to agency records that pertain to the regulation of private entities." *Id.* at 432. Moreover, the Court finds that the overarching purpose of the reading-room provision—to prevent the development of secret law—casts a wider net than the OLC imagines. FOIA embodies the principle that the public has a strong interest in keeping "informed about what their government is up to." *Dep't of Def. v. F.L.R.A.*, 510 U.S. 487, 495 (1994). That purpose encompasses all manner of documents that are not themselves adjudications of private rights. *See, e.g.*, *Pub. Citizen v. Off. of Mgmt. & Budget*, 598 F.3d 865 (D.C. Cir. 2010) (Office of Management and Budget memoranda designating which agencies are permitted to submit budgetary materials to Congress without prior clearance "fit comfortably within the working law framework"); *Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) (reports evaluating how various federal agencies had been carrying out their personnel management responsibilities not subject to Exemption 5). Even if one accepts that FOIA's drafters were primarily concerned that a "citizen [might] los[e] a controversy with an agency because of some obscure or hidden order or opinion which the agency knows about but which has been unavailable to the citizen," ECF 57-1 at 21 (quoting *Clarifying and Protecting the Right of the Public to Information*, H.R. Rep. No. 89-1497 at 2425 (1966)), that is not decisive because it is easy to imagine scenarios in which many of the opinions cited by the OLC, if undisclosed, could be cited as "secret law" in a subsequent proceeding that directly involves the adjudication of individual rights.

18

In summary, there is no requirement in the APA that an "adjudication" must involve members of the public, and the Court declines to create one based on the legislative history alone. Here, the record shows that the OLC has developed a process to formulate a final disposition of an adversarial dispute that has been submitted to the agency as a neutral decisionmaker. That is an adjudication. Accordingly, the Court finds that the OLC's formal written opinions that resolve interagency disputes are "made in the adjudication of cases." § 552(a)(2).

### 3.  Deliberative process

Finally, the OLC argues that, if the Court concludes that even a subset of its opinions are subject to disclosure under § 552(a)(2), the precedent could be invoked to require the publication of all sorts of legal advice throughout the executive branch. ECF 57-1 at 30. The result would be not only to discourage agencies from seeking advice from the OLC itself, but to hamstring agencies' ability to access confidential legal advice in general, even from their own counsel. *Id.* at 31–32. In the OLC's view, that result would fly in the face of the deliberative process privilege and constitute a serious threat to "rule-of-law values," outweighing any interest the public might have in the publication of the narrow category of opinions at issue in this case. ECF 62 at 21–23.

The OLC's argument touches on a real concern. The deliberative process privilege is meant to protect "confidential [] advisory opinions disclosure of which would be injurious to the consultative functions of government." *Taxation With Representation Fund v. IRS*, 646 F.2d 666, 677 (quoting *Sears*, 421 U.S. at 149). It "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism." *Coastal States*, 617 F.2d at 866. To the extent agencies rely on the OLC's expertise as part of their decision-making process, subjecting its opinions to the harsh and sometimes distorting glare of the public spotlight could affect agencies' ability to think through their decisions. At the very least, that outcome would

create some tension with the Supreme Court's observation in *Sears* that the deliberative process privilege and the reading-room provision are generally mutually exclusive. *See* 421 U.S. at 153.

The Court has carefully considered that argument, but it is unpersuaded for three reasons. First, the Court does not find that there is any ambiguity as to whether § 552(a)(2)(A) applies to the opinions at issue here. Having found that the plain text of § 552(a)(2)(A) encompasses the documents, the Court is "reluctant" to construe § 552(b)(5) to apply to those documents. *Sears*, 421 U.S. at 153. Second, the OLC's predictions as to how agencies will respond to the Court's decision is entirely speculative. There is nothing in the record that can be construed as evidence that agencies would stop turning to the OLC to resolve their disputes—particularly given that many of the OLC's opinions resolving interagency disputes are already published voluntarily under the status quo. *See* ECF 56-1 at 5. Finally, the OLC's argument that today's decision will have serious "rule-of-law" ramifications throughout the executive branch ignores the limited scope of this opinion. All the Court decides today is that the subset of the OLC's formal opinions that resolve interagency disputes are subject to the requirements of § 552(a)(2)(A), and (by implication) that they are not categorically protected by the deliberative process privilege. Any individual document might still be shielded from disclosure under one or more of FOIA's other exemptions. Those exemptions protect, amongst other things, classified materials, § 522(b)(1), materials that pertain to the internal practices of an agency, § 522(b)(2), materials that would be subject to the attorney-client privilege,[9] § 522(b)(5), and materials compiled for law enforcement purposes, § 522(b)(7). The Court makes no ruling as to those exemptions, even with regard to the documents in this case.

---

[9] Although the OLC invoked the attorney-client privilege in its pre-litigation correspondence with CfA, ECF 22-3 at 2, it does not do so now.

In short, the Court finds little reason to conclude that today's opinion will drastically change the process by which the OLC releases its opinions to the public, let alone eviscerate the ability of the executive branch to obtain candid advice. Accordingly, the Court determines that the deliberative process privilege does not categorically protect the OLC's formal written opinions resolving interagency disputes, and that those opinions are therefore subject to the affirmative disclosure requirements of FOIA's reading-room provision.

## IV.    CONCLUSION

The Court DENIES the Department of Justice's motion for summary judgment, ECF 57, and grants CfA's cross-motion for summary judgment, ECF 59. As this Court explained in *CfA I*, FOIA grants the Court the authority to order that documents and indices be *produced* to the Plaintiff individually, not that they be *published* to the public at large. 278 F. Supp. 3d at 315–16; *see also CREW I*, 846 F.3d at 1244 ("CREW may, in a FOIA suit to enforce section 552(a)(2), seek an injunction that would . . . require disclosure of documents and indices only to CREW, not disclosure to the public."). Accordingly, the Court's order requires OLC to produce its responsive, formal written opinions that resolve interagency disputes to CfA, along with an index of those materials. A separate order accompanies this opinion, which includes the date upon which the Parties should submit a status report to propose a schedule for further proceedings.

**SO ORDERED.**

DATE: April 19, 2024

_____
Jia M. Cobb
U.S. District Court Judge